1    MICHAEL J. STORTZ (SBN 139386)
     Michael.Stortz@dbr.com
2    MATTHEW J. ADLER (SBN 273147)
     Matthew.Adler@dbr.com
3    DRINKER BIDDLE & REATH LLP
     50 Fremont Street, 20th Floor
4    San Francisco, California  94105-2235
     Telephone:     415-591-7500
5    Facsimile:     415-591-7510

6    SEAMUS C. DUFFY*
     seamus.duffy@dbr.com
7    MICHAEL W. MCTIGUE JR.*
     michael.mctigue@dbr.com
8    MICHAEL P. DALY*
     michael.daly@dbr.com
9    MEREDITH C. SLAWE*
     meredith.slawe@dbr.com
10   DRINKER BIDDLE & REATH LLP
     One Logan Square, Ste. 2000
11   Philadelphia, PA  19103-6996
     Telephone:     (215) 988-2700
12   Facsimile:     (215) 988-2757

13   Attorneys for Defendants
     COMCAST CORPORATION and
14   COMCAST CABLE COMMUNICATIONS, LLC
     *pro hac vice to be sought

15

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

16

17

18

19

| | |
|---|---|
| 20   CHARLES TILLAGE, JOSEPH LOOMIS, DAN ADKINS, and CHRISTOPHER ROBERTSON, Individually, As Private Attorneys General, and On Behalf of All Others Similarly Situated, | Case No. _____ |
| 21 | **DEFENDANTS' NOTICE OF REMOVAL** |
| 22   Plaintiffs, | |
| 23        v. | |
| 24   COMCAST CORPORATION, COMCAST CABLE COMMUNICATIONS, LLC, and DOES 1-20, inclusive, | |
| 25 | |
| 26        Defendants. | |
| 27 | |

28

**NOTICE TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:**

Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendants Comcast Corporation and Comcast Cable Communications, LLC (collectively, "Defendants") hereby remove this action from the Superior Court of California, San Francisco County, to the United States District Court for the Northern District of California.[1]  In support of this removal, Defendants state as follows:

**I.**

**JURISDICTIONAL STATEMENT**

1.     The Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), grants federal courts diversity jurisdiction over putative class actions that have:  (1) been commenced after February 18, 2005; (2) minimal diversity; (3) 100 or more class members; and (4) an aggregate amount in controversy in excess of $5,000,000.  *See* 28 U.S.C. §§ 1332 note, 1332(d)(2)(A), 1332(d)(5)(B), 1332(d)(2).  This putative class action satisfies every applicable jurisdictional prerequisite.[2]

**A.     Commencement**

2.     CAFA applies to civil actions that are commenced after CAFA's effective date, *i.e.*, after February 18, 2005.  *See* 28 U.S.C. § 1332 note.

3.     Plaintiffs Charles Tillage, Joseph Loomis, Dan Adkins, and Christopher Robertson (collectively, "Plaintiffs") commenced this action on October 6, 2017, by filing a Complaint in the Superior Court of California, San Francisco County, under the caption *Charles Tillage et al. v.*

---

[1]     By removing this action, Defendants do not waive any defenses, objections or motions available to them under state or federal law.  Comcast Corporation expressly reserves the right to argue that it is not subject to the personal jurisdiction of this Court or any other court in California.

[2]     Strictly speaking, CAFA's amount-in-controversy requirement is located in § 1332, which applies to actions that are filed by plaintiffs, not in § 1453, which applies to actions that are removed by defendants.  Although under an action is only removable if it could have been filed in federal court originally, Congress can "expressly provid[e]" otherwise.  *See* 28 U.S.C. § 1441(a).  Here, Section 1453(b) states that an action may be removed so long as it is a "class action."  *See* 28 U.S.C. § 1453(b).  Nothing in Section 1453(b) suggests that removed actions must satisfy Section 1332.  *Cf.* 14B Charles A. Wright et al., Federal Practice & Procedure § 3724 (4th ed. 2009).  Indeed, the plain language of Section 1453 suggests otherwise, as it incorporates Section 1332's definition of "class action" but not its various other requirements.  *See* 28 U.S.C. § 1453(a).  This is an academic point here, however, as Section 1332(d) is satisfied in any event.  *See infra.*

*Comcast Corporation et al.*, No. CGC-17-561739.  *See* Compl. (attached as part of Exhibit A).

4.     Accordingly, this action was commenced after February 18, 2005.

**B.     Minimal Diversity**

5.     CAFA requires only minimal diversity, *i.e.*, that "any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A); *see also Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020, 1021 (9th Cir. 2007) ("[U]under CAFA, complete diversity is not required; 'minimal diversity' suffices." (citations omitted)).

6.     Comcast Corporation is a citizen of the Commonwealth of Pennsylvania because it is organized under the laws of Pennsylvania and has its principal place of business in Pennsylvania. *See* Am. Compl. ¶ 16 (attached as part of Exhibit A); *see also* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."); *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities.  It is the place that Courts of Appeals have called the corporation's 'nerve center.'  And in practice it should normally be the place where the corporation maintains its headquarters.").

7.     Comcast Cable Communications, LLC is a citizen of the Commonwealth of Pennsylvania and the State of Delaware because it is organized under the laws of Delaware and has its principal place of business in Pennsylvania.  *See* Am. Compl. ¶ 17; *see also* 28 U.S.C. § 1332(d)(10) ("For purposes of this subsection and section 1453, an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized.").

8.     Plaintiffs allege that they are residents of California.  *See* Am. Compl. ¶¶ 12-15. Upon information and belief, Plaintiffs have no present intention to relocate to another state and are therefore not only residents but also domiciliaries and citizens of California. *See, e.g.*, *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989) (discussing residence, domicile, and citizenship); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (same).

9. Plaintiffs define the putative class as "[a]ll persons who received cable television services in California from Comcast and whom Comcast charged a 'Broadcast TV Fee' and/or 'Regional Sports Fee' within the applicable statute of limitations." Am. Compl. ¶ 230.

10. Accordingly, there is minimal diversity between at least one defendant (neither of which is a citizen of California) and at least one named Plaintiff (all of whom are residents and citizens of California) or unnamed member of the putative class (all of whom received service in California and not all of whom are citizens of Pennsylvania or Delaware). *See* 28 U.S.C. § 1332(d)(2)(A).

**C.   Numerosity**

11. CAFA does not apply to class actions "in which . . . the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5)(B).

12. Plaintiffs define the putative class as "[a]ll persons who received cable television services in California from Comcast and whom Comcast charged a 'Broadcast TV Fee' and/or 'Regional Sports Fee' within the applicable statute of limitations." Am. Compl. ¶ 230.

13. Plaintiffs allege that the putative class is "so numerous that joinder of all members is impracticable." Am. Compl. ¶ 232; *see also id.* ¶ 177 ("The experiences of Plaintiffs Charles Tillage, Joseph Loomis, Dan Adkins, and Christopher Robertson are typical of millions of Californians."); *id.* ¶ 180 ("Plaintiffs also seek public injunctive relief for the benefit of themselves and for the benefit of millions of other California consumers."); *id.* ¶ 217 ("Comcast has induced millions of consumers.").

14. Substantially more than 100 subscribers paid the BTV or RSN fee in the year preceding the filing of this action.

15. Accordingly, there are more than 100 putative class members. *See* 28 U.S.C. § 1332(d)(5)(B).

**D.   Amount in Controversy**

16. CAFA requires that "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2).

17. "[T]o determine whether the matter in controversy exceeds the sum or value of

1   $5,000,000," the "claims of the individual class members shall be aggregated." *Id.* § 1332(d)(6).

2        18.    Plaintiffs claim that Comcast has imposed the BTV and RSN fees on them in

3   violation of California law and request as redress (among other things) "actual damages,"

4   "disgorgement or restitution" of the fees, and "punitive and exemplary damages."  Am. Compl.,

5   Prayer for Relief ¶¶ 2-4.  Plaintiffs also request an order permanently enjoining Defendants from,

6   among other things, "charging the Broadcast TV Fee and/or the Regional Sports Fee or any like or

7   equivalent fee however named or denominated," and "[i]ncreasing the Broadcast TV Fee or the

8   Regional Sports Fee during a time certain if Comcast advertised or promised a price certain for

9   services during that time certain." *Id.*, Prayer for Relief ¶¶ 6-7.

10       19.    More than $5,000,000 in BTV and RSN fees were collected from subscribers in

11  California in the last year alone.  For their part, Plaintiffs allege that the fees collected from Comcast

12  Cable subscribers in California amounts to "over $200 million annually," *id.* ¶ 9—an amount well

13  in excess of the $5,000,000 amount-in-controversy requirement.

14       20.    Plaintiffs also seek an award of attorneys' fees and costs.  *See* Am. Compl., Prayer

15  for Relief ¶¶ 8-9.  Awards of attorneys' fees and costs may be included in the amount in

16  controversy.  *See, e.g.*, *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 698 (9th Cir. 2007); *Galt*

17  *G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("[W]here an underlying statute

18  authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees

19  may be included in the amount in controversy.").  A fee award in a certified class action can often

20  amount to as much as thirty percent (30%) of a class's recovery, which could increase the amount

21  in controversy by 30% or, put another way, to 130% of the class's claimed recovery.  *See, e.g.*,

22  *Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007) (citing cases); *Jasso v. Money Mart*

23  *Exp., Inc.*, No. 11-5500, 2012 WL 699465, at *7 (N.D. Cal. Mar. 1, 2012) (stating that fee award

24  of 25% of class recover was "not unreasonable").

25       21.    The amount in controversy would increase if it included alleged damages that accrue

26  after the date of this Notice of Removal.  *See, e.g.*, *Lao v. Wickes Furniture Co.*, 455 F. Supp. 2d

27  1045, 1050 (C.D. Cal. 2006) (including "future damages" in amount in controversy because class

28  period continued from date of filing to date of certification); *Home Depot v. Rickher*, No. 06-8006,

2006 WL 1727749, at *2 (7th Cir. May 22, 2006) (including future effects of injunction in calculation of amount in controversy).

22.     Although Defendants deny that they have any liability to Plaintiffs or anyone else, and deny that the putative class could be properly certified under Federal Rule of Civil Procedure 23, the aggregate amount placed "in controversy" by the Complaint—that is, the aggregate value of all damages and fees sought and the costs of complying with all equitable relief sought—exceeds $5,000,000.  *See* 28 U.S.C. § 1332(d)(6) ("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.").

23.     Because this is a putative class action that was commenced after February 18, 2005 in which there is minimal diversity, more than 100 putative class members, and more than $5,000,000 in the aggregate in controversy, this Court has original subject matter jurisdiction.  *See* 28 U.S.C. § 1332(d)(2)(A).

24.     Because this action states a basis for original subject matter jurisdiction under 28 U.S.C. § 1332, it is removable pursuant to 28 U.S.C. § 1441(a).

## II.

## PROCEDURAL STATEMENT

**A.     Timeliness**

25.     Pursuant to 28 U.S.C. § 1446(b) and Federal Rule of Civil Procedure 6, this Notice of Removal has been timely filed within thirty (30) days of service because Plaintiffs purported to serve Defendants on October 9, 2017.  *See Murphy Bros, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 351-52 (1999).

**B.     Defendants**

26.     Pursuant to 28 U.S.C. § 1453(b), a putative class action may be removed "without regard to whether any defendant is a citizen of the State in which the action is brought." Nevertheless, no Defendant is a citizen of the state in which this action was brought.

**C.     Consent**

27.     Pursuant to 28 U.S.C. § 1453(b), it is not necessary to obtain the consent of all

1  Defendants in order to remove a putative class action.  Nevertheless, all Defendants join in and

2  consent to this removal.

3  **D.**    **District**

4      28.    Pursuant to 28 U.S.C. § 1441(a), removal to the United States District Court for the

5  Northern District of California, San Francisco Division, is proper because that District and Division

6  embrace the Superior Court of California, San Francisco County, where this action is now pending.

7  *See* 28 U.S.C. § 84(a).

8  **E.**    **Attachments**

9      29.    Pursuant to 28 U.S.C. § 1446(a), copies of the Complaint, First Amended

10  Complaint, and any other process, pleadings and orders that Plaintiffs purportedly served on

11  Defendants as of the date of this Notice, as well as Defendants' Answer to the First Amended

12  Complaint, are attached collectively as Exhibit A.

13  **F.**    **Evidence**

14      30.    Pursuant to 28 U.S.C. § 1446(a), it is sufficient to provide a "short and plain"

15  allegation of jurisdiction and it is not necessary to attach evidence establishing those allegations.

16  *See Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014) ("A statement 'short

17  and plain' need not contain evidentiary submissions.").

18  **G.**    **Notices**

19      31.    Pursuant to 28 U.S.C. § 1446(d), Defendants will promptly file a copy of this Notice

20  of Removal in the Superior Court of California, San Francisco County, and give written notice of

21  the removal of this action to counsel for Plaintiffs.

22  **H.**    **Defenses**

23      32.    By removing this action to this Court, Defendants do not concede that they have any

24  liability, let alone liability of greater than $5,000,000, to the members of the putative class.  *See,*

25  *e.g.*, *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005) ("[The defendant]

26  did not have to confess liability in order to show that the controversy exceeds the threshold.").

27  Rather, "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a

28  prospective assessment of defendant's liability."  *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395,

1  400 (9th Cir. 2010) (citing cases); *Helm v. Alderwoods Grp., Inc.*, No. 08-1184, 2008 WL 2002511,

2  at *5 (N.D. Cal. May 7, 2008) ("[D]efendants cannot be expected to try the case themselves for

3  purposes of establishing jurisdiction, and then admit to the opposing party and to the Court that a

4  certain number of . . . violations did indeed occur.").

5      33.    By removing this action to this Court, Defendants do not waive any defenses,

6  objections or motions available to them under state or federal law.  Defendants expressly reserve

7  the right to move to dismiss or for judgment in favor of Defendants pursuant to Rules 12 and 56 of

8  the Federal Rules of Civil Procedure, to strike or oppose the certification of any putative class

9  pursuant to Federal Rule of Civil Procedure 23, and to move to compel arbitration of Plaintiffs'

10  claims pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16.

11      **WHEREFORE**, Defendants respectfully remove this action from the Superior Court of

12  California, San Francisco County, to the United States District Court for the Northern District of

13  California, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

14

15  Dated: November 7, 2017                    DRINKER BIDDLE & REATH LLP

16

17                                            By: /s/ Michael J. Stortz

18                                               Michael J. Stortz
                                                 Matthew J. Adler

19                                               Seamus C. Duffy
20                                               Michael W. McTigue Jr.
                                                 Michael P. Daly
21                                               Meredith C. Slawe

22                                            Attorneys for Defendants
                                              COMCAST CORPORATION and
23                                            COMCAST CABLE COMMUNICATIONS,
                                              LLC

24

25

26

27

28

# EXHIBIT A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

COMCAST CORPORATION, COMCAST CABLE
COMMUNICATIONS, LLC, and DOES 1-20, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

CHARLES TILLAGE, JOSEPH LOOMIS, DAN ADKINS, and
CHRISTOPHER ROBERTSON (see Attachment 1 for continuation)

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le dé más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* San Francisco Superior Court | CASE NUMBER:<br>*(Número del Caso):*<br>**CGC - 1 7 - 5 6 1 7 3 9** |

Civic Center Courthouse, 400 McAllister Street,
San Francisco, CA 94102

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Daniel Hattis, Esq., Hattis Law PLLC, P.O. Box 1645, Bellevue, WA 98009; tel: 1-650-980-1990

| | | | |
|---|---|---|---|
| DATE: October 6, 2017<br>*(Fecha)* | **Clerk of the Court** Clerk, by | | , Deputy<br>*(Adjunto)* |
| OCT 06 2017 | *(Secretario)* | NEYL WEBB | |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

BY FAX
ONE LEGAL LLC

**NOTICE TO THE PERSON SERVED:** You are served

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)     [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)     [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership)     [ ] CCP 416.90 (authorized person)
   [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| TILLAGE v. COMCAST CORPORATION | |

ATTACHMENT *(Number)*: __One (1)__

*(This Attachment may be used with any Judicial Council form.)*

ATTACHMENT TO SUMMONS

The Plaintiffs in this civil action are:

Individually, As Private Attorneys General, and On Behalf of All Others Similarly Situated

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page __2__ of __2__

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT
to Judicial Council Form**

www.courtinfo.ca.gov

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Daniel M. Hattis, Esq. (SBN 232141)<br>Hattis Law PLLC<br>P.O. Box 1645<br>Bellevue, Washington 98009<br>TELEPHONE NO.: (650) 980-1990    FAX NO.: (425) 412-7171<br>ATTORNEY FOR (Name): Plaintiffs Charles Tillage, Joseph Loomis, Et Al. | **FILED**<br>San Francisco County Superior Court<br><br>OCT 06 2017<br><br>CLERK OF THE COURT<br>BY:<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: Civic Center Courthouse

CASE NAME:
CHARLES TILLAGE ET AL. v. COMCAST CORPORATION ET AL.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER:<br>**CGC - 17 - 561739** |
|---|---|---|---|
| ✓ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400–3.403) |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | ☐ Other collections (09) | ☐ Construction defect (10) |
| **Damage/Wrongful Death) Tort** | ☐ Insurance coverage (18) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Other contract (37) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | **Real Property** | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | ☐ Eminent domain/Inverse | ☐ Insurance coverage claims arising from the |
| ☐ Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | types (41) |
| ✓ Business tort/unfair business practice (07) | ☐ Other real property (26) | **Enforcement of Judgment** |
| ☐ Civil rights (08) | **Unlawful Detainer** | ☐ Enforcement of judgment (20) |
| ☐ Defamation (13) | ☐ Commercial (31) | **Miscellaneous Civil Complaint** |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ RICO (27) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | ☐ Other complaint (not specified above) (42) |
| ☐ Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Partnership and corporate governance (21) |
| **Employment** | ☐ Petition re: arbitration award (11) | ☐ Other petition (not specified above) (43) |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is   ✓ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:

   a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel   e. ☐ Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve       in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☐ monetary   b. ✓ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action (specify): Four: unfair competition; false advertising; CLRA; injunctive relief.
5. This case ✓ is   ☐ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: October 6, 2017
Daniel M. Hattis, Esq., Counsel for Plaintiffs
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

BY FAX
ONE LEGAL LLC

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

1  Daniel M. Hattis (SBN 232141)
2  Paul Karl Lukacs (SBN 197007)
   HATTIS LAW PLLC
3  P.O. Box 1645
   Bellevue, WA 98009
4  Telephone: (650) 980-1990
   Facsimile: (425) 412-7171
5  Email: dan@hattislaw.com
   Email: pkl@hattislaw.com

6  (Additional Attorneys Listed
7  After Signature Line)

8  Attorneys for Plaintiffs and the Proposed Class

**FILED**

San Francisco County Superior Court

OCT 0 6 2017

CLERK OF THE COURT

BY:_____
                        Deputy Clerk

9          SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                 COUNTY OF SAN FRANCISCO

11

12  CHARLES TILLAGE,              Case No. **CGC - 1 7 - 5 6 1 7 3 9**
    JOSEPH LOOMIS,
13  DAN ADKINS, and               **CLASS ACTION**
    CHRISTOPHER ROBERTSON,
14  Individually, As Private Attorneys   **COMPLAINT FOR:**
    General, and On Behalf of All Others
15  Similarly Situated,           1.  **Violation of Unfair Competition Law,**
                                       **Business & Professions Code §17200** *et*
16  Plaintiffs,                        *seq.*

17  v.                            2.  **Violation of False Advertising Law,**
                                       **Business & Professions Code §17500** *et*
18  COMCAST CORPORATION,               *seq.*
    COMCAST CABLE
19  COMMUNICATIONS, LLC, and      3.  **Violation of Consumers Legal Remedies**
    DOES 1-20, inclusive,             **Act, Civil Code §1750** *et seq.*
20
    Defendants.                   4.  **Permanent Public Injunctive Relief**
21
                                  **JURY TRIAL DEMANDED**
22

23

24                                **BY FAX**
                                  ONE LEGAL LLC
25

26

27

28

                                  **CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

I.     INTRODUCTION AND SUMMARY .................................................. - 1 -

II.    PARTIES .......................................................................................... - 4 -

III.   JURISDICTION AND VENUE ...................................................... - 4 -

IV.    PLAINTIFFS' FACTUAL ALLEGATIONS .................................. - 6 -

       A.   Plaintiff Charles Tillage .......................................................... - 6 -
       B.   Plaintiff Joseph Loomis .......................................................... - 9 -
       C.   Plaintiff Dan Adkins .............................................................. - 14 -
       D.   Plaintiff Christopher Robertson ............................................ - 21 -

V.     COMMON FACTUAL ALLEGATIONS OF COMCAST'S
       CALIFORNIA-WIDE AND NATIONWIDE SCHEME ...................... - 26 -

       A.   Comcast Engages in False and Misleading Advertising About the Prices
            It Charges for Its Cable Television Service Packages ........................ - 29 -
       B.   Comcast's Sales Agents Make False and Misleading Statements About
            the Prices Comcast Charges for Its Cable Television Service Packages ........... - 31 -
       C.   Comcast Lies to Customers Who Enquire or Complain About the
            Broadcast TV Fee or the Regional Sports Fee By Telling Them the Charges
            Are Taxes or Government Fees ........................................................ - 32 -
       D.   Comcast's Form Contracts Do Not Adequately Disclose the Broadcast TV
            Fee or the Regional Sports Fee ....................................................... - 34 -
       E.   Comcast Falsely Advertises Guaranteed, Locked-In Prices for Its Term
            Contracts, When Comcast In Fact Repeatedly Raises Its Prices
            Mid-Contract Via Increases in the Broadcast TV Fee and the Regional
            Sports Fee ................................................................................ - 36 -
       F.   Comcast's Bait-and-Switch Scheme Is Central to Its Marketing Plan
            and Accounts for an Increasingly Large Part of Comcast's Total Revenues
            and Profits ................................................................................ - 37 -

VI.    CLASS ACTION ALLEGATIONS ................................................ - 38 -

CAUSES OF ACTION ............................................................................ - 40 -

COUNT I – California Business & Professions Code § 17200 et seq. ("UCL") ................. - 40 -

COUNT II – California Business & Professions Code § 17500 et seq. ("FAL") ................. - 41 -

COUNT III – California Civil Code § 1750 et seq. ("CLRA") ................................. - 43 -

COUNT IV – Permanent Public Injunctive Relief ............................................... - 47 -

PRAYER FOR RELIEF .......................................................................... - 47 -

JURY DEMAND ..................................................................................... - 49 -

CLASS ACTION COMPLAINT

1    Plaintiffs, demanding trial by jury as to all issues so triable, allege on personal knowledge

2    and on information and belief, as follows:

3    **I.      INTRODUCTION AND SUMMARY**

4         1.    This proposed class action is an injunctive-relief-only lawsuit which seeks to put

5    an end to a massive bait-and-switch scheme perpetrated by Defendants Comcast Corporation and

6    Comcast Cable Communications, LLC (collectively, "Comcast") on Plaintiffs, on Comcast's

7    more than two million other California cable television subscribers, and on the general public.

8    Through this scheme, Comcast falsely advertises and promotes its cable television service

9    packages for much lower prices than it actually charges in order to induce consumers to subscribe

10   to Comcast's services.

11        2.    Comcast's advertising, and its sales staff, misled Plaintiffs, and continue to

12   mislead California consumers, into falsely believing that the advertised price for Comcast's

13   television service packages is the actual price consumers will pay – except for equipment charges

14   and bona fide taxes and government fees.

15        3.    However, Comcast excludes from the advertised price of its service packages two

16   self-created charges named the Broadcast TV Fee and the Regional Sports Fee (collectively, the

17   "Programming Charges"). The Programming Charges are additional discretionary impositions

18   invented by Comcast to pad its bottom line.

19        4.    The Programming Charges are disguised double-charges for the same channel

20   programming that Comcast has promised is *already included* in the advertised service package

21   price (e.g., ABC, CBS, NBC, FOX, and local sports channels). For example, Comcast will

22   advertise a service package as including local broadcast channels and as available for a

23   promotional flat monthly price subject only to government-imposed charges and one-time

24   installation fees; Comcast will then turn around and charge the Broadcast TV Fee – in addition to

25   the set monthly price – for those same local broadcast channels.

26        5.    Comcast *never* qualifies the advertised price with an asterisk or other adjacent

27   marker, and the hidden disclosures that Comcast makes about the Programming Charges are not

28

only inadequate, but are themselves deceptive. Comcast's disclaimers are designed to mislead consumers into falsely believing the Programming Charges are taxes or government charges over which Comcast has no control.

6.     When customers inquire or complain about the Programming Charges, Comcast doubles down on its initial deception by engaging in a practice of outright lying to customers. Comcast tells customers that the Programming Charges are taxes or government charges rather than what they truly are: self-created fees used to double-charge Comcast's customers for the same channel programming that Comcast promised would be included in the advertised price.

7.     Comcast perpetrates this scheme to hook and trap customers into 1-year or 2-year contracts at supposedly "guaranteed" locked-in rates with significant early termination penalties, with the intent of charging the customers more than it has promised via the deceptive and hidden Programming Charges.

8.     Even worse, a few months into customers' purported fixed-price contracts, Comcast raises its prices *even higher* on these trapped customers via the backdoor method of increasing the Programming Charges. Comcast's justification for the mid-contract price increases is pure double-talk: Comcast claims that its "guaranteed" promotional price for the service package has remained the same, and that only "applicable fees" "that are not included in your agreement" have increased. This is cold comfort to California consumers. They see their total monthly payments for television service packages increase over the purportedly "locked-in" price level that Comcast's own misleading advertising and representations led the consumers to expect.

9.     Comcast has increased the Programming Charges by 800% since they were first introduced in 2014, and the Programming Charges now add as much as $12 per month to customer cable bills. Plaintiffs estimate that Comcast earns approximately $2 billion per year from these bogus double-charges – over $200 million annually from its California customers alone.

10.     In short, Comcast engages in a California-wide and nationwide scheme in which:

(a)     Comcast promises consumers cable television service at a locked-in, fixed monthly price (i.e., the cost for the channel programming plus bona fide taxes) for a set term of

1    one or two years, and that local broadcast television channels are included in the promised price;

2            (b)    Comcast invents a Broadcast TV Fee, ostensibly to defray Comcast's costs

3    to provide the television broadcast channels (e.g., ABC, NBC, CBS, and FOX);

4            (c)    Comcast invents a Regional Sports Fee, ostensibly to defray Comcast's

5    costs to provide regional sports programming (i.e., local sports channels);

6            (d)    Comcast fails to adequately disclose the existence of the two Programming

7    Charges to consumers in Comcast's advertising and during the order process — in fact, Comcast

8    quotes fixed monthly prices which do not include the Programming Charges and which do not

9    contain any asterisk, disclaimer, or other communication device to alert consumers to the

10   Programming Charges in a manner calculated to secure their knowing and voluntary consent;

11           (e)    Comcast imposes the Programming Charges on its customers, which raises

12   the total monthly price of service above the lower fixed price Comcast previously promised and

13   advertised to the customers;

14           (f)    The Broadcast TV Fee and the Regional Sports Fee are effectively double-

15   charges for the local broadcast channels and sports channels – because Comcast misleads

16   consumers into believing that the fixed monthly price (plus bona fide taxes) includes all

17   programming charges, i.e., that the fixed monthly price is all that consumers have to pay to

18   receive the channels Comcast has promised are included;

19           (g)    When customers ask about the Programming Charges, Comcast flat out lies

20   and says that the Programming Charges are imposed by the government and/or that Comcast has

21   no control over the Programming Charges; and

22           (h)    Even though Comcast represented to consumers that the monthly price of

23   the cable television services was "locked-in" and "guaranteed" for a contract period of one or two

24   years, Comcast continually increases the price of its television programming during this time via

25   the backdoor method of increasing the Programming Charges mid-contract, which raises the total

26   monthly price of service above the fixed price Comcast previously promised and advertised to

27   customers.

28           11.    Plaintiffs bring this injunctive relief lawsuit on behalf of themselves individually,

CLASS ACTION COMPLAINT

- 3 -

as private attorneys general, and on behalf of a proposed class to put an end to Comcast's Broadcast TV Fee and Regional Sports Fee false advertising scheme in order to prevent future injury to themselves and the general public.

## II.   PARTIES

12.   Plaintiff Charles Tillage is an individual residing in San Francisco, California.

13.   Plaintiff Joseph Loomis is an individual residing in Moss Beach, California.

14.   Plaintiff Dan Adkins is an individual residing in Oakland, California.

15.   Plaintiff Christopher Robertson is an individual who resided in Sacramento, California during the term of the Comcast service contract which is the subject of this lawsuit.

16.   Defendant Comcast Corporation is a multinational, mass media company incorporated in Pennsylvania and headquartered in Philadelphia, Pennsylvania. It is the largest broadcasting and cable company in the world by revenue, and it is the largest home television and Internet service provider in the United States.

17.   Defendant Comcast Cable Communications, LLC ("Comcast Cable"), according to Comcast Corporation's 2015 Form 10-K, is a "100% owned cable holding company subsidiary" of Comcast Corporation. Comcast Cable is headquartered in Philadelphia, Pennsylvania, and incorporated in Delaware.

18.   Comcast markets its cable services under the XFINITY brand name.

## III.   JURISDICTION AND VENUE

19.   This Court has jurisdiction over this civil action pursuant to, without limitation, the California Constitution, Article VI, Section 10, and Code of Civil Procedure § 410.10. Jurisdiction is also proper under Business and Professions Code § 17200 *et seq.*, Business and Professions Code § 17500 *et seq.*, and Civil Code § 1750 *et seq.*

20.   This Court has personal jurisdiction over Comcast Cable because, without limitation: (1) Comcast Cable has purposely availed itself of the privilege of conducting business activities in California; (2) Comcast Cable currently maintains systematic and continuous business contacts with this State including marketing, selling and issuing cable television service

CLASS ACTION COMPLAINT

- 4 -

1   packages and bundles to Plaintiffs and other California consumers; (3) Comcast Cable has entered

2   into contracts with Plaintiffs and other California consumers regarding their cable television

3   service packages; and (4) Comcast Cable maintains offices and retail locations in this State.

4   Comcast Cable has sufficient minimum contacts with this state to render the exercise of

5   jurisdiction by this Court permissible.

6         21.     This Court has personal jurisdiction over Comcast Corporation because Comcast

7   Corporation has entered into contracts with certain Plaintiffs and with certain California

8   consumers regarding their cable television service packages. Attached at **Exhibit A** is the

9   Comcast Agreement for Residential Services (the "Subscriber Agreement") posted on Comcast's

10   website as of May 16, 2016. The very first sentences of the Subscriber Agreement explicitly state

11   that Comcast Corporation is a party to the contract:

12   ABOUT THIS AGREEMENT, OUR SERVICES, AND YOUR RIGHTS. XFINITY®
Service(s) will be provided to you ("you," "your," or "Customer") on the terms and

13   conditions set forth in this Agreement for Residential Services (the "Agreement") and
applicable law by the operating company subsidiary of **Comcast Corporation** that (i)

14   owns and/or operates the cable television system in your area and/or (ii) the subsidiary
that is the XFINITY Digital Voice service provider or Unlimited Select and Local Select

15   service provider (**"Comcast," "we," "us," or "our"**). **For purposes of this Agreement,**

16   **"affiliate" means any entity that controls, is controlled by or is under common
control with Comcast Corporation.**

17   **Exhibit A**, p. 1 (emphasis added). (To be clear, Plaintiffs do not concede that they or members of

18   the Class are parties to the Subscriber Agreement.)

19         22.     The terms "Comcast" and "affiliate" are then used throughout the Subscriber

20   Agreement.

21         23.     This Court also has personal jurisdiction over Comcast Corporation because

22   Comcast Corporation executives are responsible for business aspects of Comcast cable

23   operations. For example, David N. Watson is simultaneously President and CEO of Comcast

24   Cable and Senior Executive Vice President of Comcast Corporation. Comcast's official

25   biography of Mr. Watson on the Comcast corporate website states: "David N. Watson serves as

26   President and Chief Executive Officer, Comcast Cable *and* Senior Executive Vice President,

27   Comcast Corporation. *In this role, he is responsible for all business aspects of the Company's*

28

CLASS ACTION COMPLAINT

1  *cable operations*" (emphasis added). See ComcastCorporation's website at

2  http://corporate.comcast.com/news-information/leadership-overview/david-n-watson, a

3  screenshot of which is attached as **Exhibit B**. Further evidence of Comcast Corporation's

4  involvement in business aspects of Comcast cable operations include Comcast's response to

5  Plaintiff Christopher Robertson's cease and desist letter: Comcast's response was written on

6  Comcast Corporation letterhead (e.g., the footer of the letterhead states the address for Comcast

7  Corporation and references the web address www.comcastcorporation.com), and the response

8  references actions of "Comcast" or "the company" and makes no reference to Comcast Cable. See

9  **Exhibit C**. When identifying the proper defendant(s) regarding these claims, Comcast (through

10  counsel) stated that "if you are just naming the parent Comcast CORP you should be fine. People

11  sometimes name the operating entity, which I believe is Comcast Cable Communications LLC,

12  but in my experience we don't make an issue between the two so you are fine with CORP." See

13  **Exhibit D**.

14      24.    Venue is proper in the San Francisco Superior Court because, without limitation:

15  (1) Comcast engages in and performs business activities in the City and County of San Francisco;

16  and (2) Plaintiff Charles Tillage entered into an agreement to purchase Comcast's cable television

17  services while in the City and County of San Francisco, and he received Comcast cable television

18  services while in the City and County of San Francisco.

19  **IV.    PLAINTIFFS' FACTUAL ALLEGATIONS**

20      **A.    Plaintiff Charles Tillage**

21      25.    In June 2016, Plaintiff Charles Tillage moved into a new apartment in San

22  Francisco, California.

23      26.    The management company for the apartment complex provided a move-in

24  information package to Mr. Tillage, which included the phone number for the Comcast sales

25  representative who was assigned to the apartment complex.

26      27.    Mr. Tillage called AT&T to see if AT&T offered Internet and television service to

27  his apartment, but he was told AT&T did not provide service to his location.

28

CLASS ACTION COMPLAINT

- 6 -

28.     Mr. Tillage also looked into getting DirecTV for television service at his apartment. However, the apartment complex rules prohibited residents from putting the satellite dish on the balcony railing, and other residents told him that the reception was not good when using a stand on the balcony.

29.     Mr. Tillage called the Comcast sales representative assigned to the apartment complex.

30.     The Comcast sales representative recommended Mr. Tillage sign up for a bundled service plan which included certain television channels, broadband Internet, and phone service, which the representative offered and promised would have a total fixed price of $129.99 under a 2-year contract.

31.     The agent explained that there would be a termination charge if Mr. Tillage ended his contract early, but that if Mr. Tillage moved he could move his contract with him to the new address.

32.     Relying on the Comcast representative's representations and promises to him on the phone call, Mr. Tillage accepted the offer from the Comcast representative. He placed an order for the bundled plan.

33.     Mr. Tillage had agreed to commit himself to a 2-year contract in reliance on Comcast's promise of a guaranteed and predictable lower price for his service during those two years.

34.     The Comcast representative did not tell Mr. Tillage that Comcast would charge him an additional amount each month for the Broadcast TV Fee and the Regional Sports Fee.

35.     Mr. Tillage never agreed to pay these Programming Charges, which were essentially double-charges for the channels the Comcast representative had promised him were already included in the package price.

36.     Mr. Tillage never received a confirmation email or letter of his order.

37.     Mr. Tillage never signed or otherwise agreed to the Subscriber Agreement concerning the contract. Comcast did not mail, email, or otherwise transmit or present to Mr. Tillage a copy of the Subscriber Agreement upon the placing of his order.

CLASS ACTION COMPLAINT

38.     Mr. Tillage never signed or otherwise agreed to the document which Comcast dubs the Minimum Term Agreement. Comcast did not inform Mr. Tillage of the existence of a Minimum Term Agreement document before Mr. Tillage placed the order for his service. Comcast did not mail, email, or otherwise transmit or present to Mr. Tillage a copy of a Minimum Term Agreement upon the placing of Mr. Tillage's order. A Minimum Term Agreement was never posted to or available to Mr. Tillage in the Comcast online customer portal.

39.     Mr. Tillage was not aware of the existence of a purported 30-day Money-Back Guarantee by Comcast, and this option was never presented to him in any of his communications with Comcast.

40.     The first bill Mr. Tillage received from Comcast under the contract was dated June 16, 2016. Mr. Tillage did not understand the bill due to the fourteen different credits and charges in the "Other charges and credits" section.

41.     However, it appeared to Mr. Tillage that Comcast was imposing charges that were not included in the total price the Comcast representative had promised him.

42.     Mr. Tillage called the Comcast representative assigned to the apartment complex with whom he signed up, but the representative was unable to answer any of his questions.

43.     Mr. Tillage then called Comcast's main customer service phone number to complain about the bill which was higher than promised. The Comcast agent he spoke to told him that Comcast could not reduce the charges on the bill.  However, the agent offered to give him three free movie coupons.

44.     When Mr. Tillage received his July 2017 bill, he was surprised to see that Comcast had increased the monthly Broadcast TV Fee from $5.00 to $7.00 and the Regional Sports Fee from $3.00 to $5.00. Meanwhile, Mr. Tillage had never agreed to pay those Programming Charges in the first place, let alone agreed to further increases in these Programming Charges in the middle of his promised fixed-price contract.

45.     On August 17, 2017, Mr. Tillage (through counsel) mailed a letter to Comcast Corporation CEO Brian L Roberts and Comcast Cable CEO David N. Watson demanding, among other things, that Comcast stop its deceptive practices and return all money paid by

CLASS ACTION COMPLAINT

- 8 -

1  California Comcast customers for the Broadcast TV Fee and the Regional Sports Fee. See
2  **Exhibit E.**

3       46.     On August 22, 2017 Mr. Tillage mailed a letter to Comcast notifying Comcast that
4  he desired to opt out of the arbitration provision in the Subscriber Agreement. That same day, Mr.
5  Tillage also opted out of the arbitration provision on Comcast's "Arbitration Opt Out" webpage.

6       47.     On September 14, 2017, a Comcast agent named Cheyenne, who identified herself
7  as being from "Comcast's Executive Office," sent an email to Mr. Tillage's counsel in response
8  to the August 17, 2017 letter. In Cheyenne's email response, Comcast ignored all of Mr. Tillage's
9  demands and falsely asserted that Mr. Tillage had agreed to pay the Broadcast TV Fee and the
10 Regional Sports Fee.

11      48.     Mr. Tillage relied upon Comcast's promises, misrepresentations, and omissions,
12 which in conjunction with Comcast's acts and practices alleged herein caused Mr. Tillage to
13 suffer harm, injury in fact, and lost money or property.

14      **B.      Plaintiff Joseph Loomis**

15      49.     As of June 2016, Plaintiff Joseph Loomis received broadband Internet service
16 from Comcast at his home in Moss Beach, California.

17      50.     On or about June 21, 2016, Mr. Loomis engaged in an online chat with a Comcast
18 sales chat agent named "Surinder."

19      51.     Surinder offered Mr. Loomis a Starter Double Play service package bundle which
20 included both Internet and television service at a fixed monthly price of $79.99 for months 1-12
21 and $99.94 for months 13-24.

22      52.     Surinder made no mention of the existence of the Broadcast TV Fee or the
23 Regional Sports Fee.

24      53.     Surinder stated, "With the changes, the new monthly bill would be **$79.99/mo +**
25 **taxes** for the next 12 months." (Emphasis added.)

26      54.     Relying on Surinder's representations, Mr. Loomis accepted the offer and told
27 Surinder to place the order under this new contract.

28

1   55. Surinder told Mr. Loomis that he would "receive an email confirmation within the

2 next 2 hours with all the information."

3   56. Mr. Loomis never received an email order confirmation for the order placed with

4 Surinder.

5   57. Mr. Loomis did not sign or otherwise agree to the Subscriber Agreement

6 concerning the new contract. Comcast did not mail, email, or otherwise transmit or present to Mr.

7 Loomis a copy of the Subscriber Agreement upon the placing of his order.

8   58. Mr. Loomis never signed or otherwise agreed to the document which Comcast

9 dubs the Minimum Term Agreement. Comcast did not inform Mr. Loomis of the existence of a

10 Minimum Term Agreement document before Mr. Loomis placed the order for the new contract.

11 Comcast did not mail, email, or otherwise transmit or present to Mr. Loomis a copy of a

12 Minimum Term Agreement upon the placing of his order.

13   59. The first bill Mr. Loomis received from Comcast under the new contract was dated

14 July 10, 2016. Mr. Loomis did not fully understand the July 10 bill due to the twenty different

15 pro-rated credits and charges in the "Other charges and credits" section, such that it was unclear

16 to him the items for which he was being charged versus the items for which there were offsetting

17 credits.

18   60. The second bill Mr. Loomis received under the new contract was dated August 10,

19 2016. In this bill, the only line items listed in the "Other charges and credits" section were

20 charges for the Broadcast TV Fee ($5.00) and the Regional Sports Fee ($3.00) for a total of $8.00,

21 this time with no offsetting credits.

22   61. Mr. Loomis was upset about these mysterious unauthorized charges (which are

23 referred to in this Complaint as the "Programming Charges"), which had not been previously

24 disclosed to him and which caused his bill to be $8.00 higher than promised.

25   62. Mr. Loomis called Comcast customer service several times to complain about the

26 Programming Charges and spoke with several Comcast agents. Comcast agents falsely and

27 repeatedly told him that the Programming Charges were "required by federal law" and were

28 "taxes."

63.     When he Comcast agents told him that they could not remove the Programming Charges from his bill because they were required by law and that everyone with television service had to pay them, Mr. Loomis requested that the agents reduce his base package price of $79.99 by $8.00 per month to offset the amount of the Programming Charges to honor his promised monthly price. The agents refused, telling Mr. Loomis they were unable to do so and that their hands were tied.

64.     On August 16, 2016, Mr. Loomis drafted a letter in which he documented his experience and enclosed a copy of his chat session with Surinder containing the terms of his agreement which did not include the Programming Charges. Mr. Loomis demanded in the letter that Comcast remove the $8.00 in Programming Charges from his monthly bills, or, alternatively, that Comcast reduce his monthly bill by $8.00 to offset the amount of the Programming Charges in order to comply with the agreed upon contractual terms. Mr. Loomis mailed the letter to three different Comcast addresses including Comcast's corporate headquarters in Philadelphia, Pennsylvania.

65.     On September 12, 2016, in response to his letters, Mr. Loomis received an email and voicemail from "Mark" of Comcast's "Executive Customer Relations" department. The email stated that Mark was his "case manager."

66.     Mr. Loomis spoke by telephone to Mark. Mark acknowledged that Mr. Loomis had not been informed of the Programming Fees, and he gave Mr. Loomis a credit of $192.00, representing a refund of 24 months of $8.00 in monthly Programming Charges.

67.     But Mark told Mr. Loomis that despite this credit, Comcast could increase the Broadcast TV Fee or the Regional Sports Fee, or add other fees, anytime after the first three months of the 2-year purported fixed-rate contract term, and that Mr. Loomis would be responsible for the increases and additional fees.

68.     Mr. Loomis asked Mark how could that be since he had a 24 month agreement with Comcast for a guaranteed price per month plus tax only.

69.     Mark said the only thing Comcast can guarantee in a 24-month contract is that the "package price" will remain the same.

70.     Mr. Loomis responded to Mark that increasing the Programming Charges after the first three months is just a surreptitious way of increasing the "guaranteed" package price.

71.     Mark replied that "all the cable companies do this," and that Comcast's "contract" permitted it.

72.     Mr. Loomis told Mark he had never seen, signed, or agreed to any such "contract," and he asked Mark to send it to him.

73.     Mark sent to Mr. Loomis, via US Postal Service, a 24-month Minimum Term Agreement, which Mr. Loomis received on September 26, 2016. (See a copy of the agreement at **Exhibit F**.) Mr. Loomis had never seen the document before.

74.     Mr. Loomis examined the Minimum Term Agreement, and saw that the undefined terms "Broadcast TV Fee" and "Regional Sports Fee" were buried in a sentence combined with taxes and government fees, implying to him that these charges were somehow mandated by the government and being levied by the government, not by Comcast.

75.     On October 23, 2016, Mr. Loomis submitted a complaint to the FCC outlining: (1) Comcast's practice of imposing the unauthorized Programming Charges in breach of its promises to him; and (2) Comcast's assertion that it could increase the Programming Charges after three months into his 2-year contract despite Comcast's having promised him a guaranteed locked-in rate that did not include these charges which were not part of his contract in the first place.

76.     In response to this FCC complaint, Mr. Loomis received a call from a Comcast agent named "Robert."

77.     Robert told Mr. Loomis that what Comcast was doing regarding its billing was "legal."

78.     Mr. Loomis informed Robert that he had previously received a $192.00 credit from Comcast representing a refund of 24 months of $8.00 in monthly Programming Charges.

79.     Robert told Mr. Loomis he was "surprised" that Comcast had granted him the credit.

80.     Mr. Loomis told Robert that Mark, the agent who had granted the credit, had told Mr. Loomis that Comcast could increase these Programming Charges – which Mr. Loomis never

1    agreed to in the first place – at any time, and that the $192.00 would not cover these increases.

2    Mr. Loomis asked Robert if Comcast's position was indeed that it could increase the

3    Programming Charges at any time during the contract and hold Mr. Loomis responsible for the

4    increases.

5        81.    Robert responded that yes, Comcast could increase the Broadcast TV Fee and the

6    Regional Sports Fee from time to time even during the 24-month fixed-rate contract, and that

7    Comcast could even unilaterally add new fees if it so desired.

8        82.    On November 18, 2016, Mr. Loomis received an email from the FCC that

9    Comcast had provided the FCC with a response and that his complaint was now closed.

10       83.    Mr. Loomis then mailed a letter of complaint to the FCC dated December 9, 2016,

11   with a copy to Comcast. Mr. Loomis stated in the letter that, despite Comcast granting him the

12   $192.00 credit for the unauthorized Programming Charges, Comcast agents had told him that

13   Comcast could increase these unauthorized charges in the future at any time during the term of

14   his purported fixed-rate contract and that he would be responsible for paying the resulting higher

15   service price. Mr. Loomis wrote that he objected to any future increase in the Programming

16   Charges, and he stated that he had not agreed to the Programming Charges in the first place, let

17   alone to their increase in the middle of his promised fixed-rate contract.

18       84.    On December 28, 2016, in response to the letter, Mr. Loomis received a phone call

19   from another Comcast agent named "Ryan." Ryan told Mr. Loomis, as Comcast agents Mark and

20   Robert had told him previously, that Comcast could raise the Broadcast TV Fee and the Regional

21   Sports Fee at any time during the promised fixed-rate contract. Mr. Loomis then got the

22   impression from Ryan's demeanor and words that he was implying that if Mr. Loomis continued

23   to complain, Comcast could even reverse the $192.00 credit.

24       85.    Approximately two months later, Comcast stated in the fine print of Mr. Loomis'

25   March 10, 2017 bill that Comcast would be increasing the Broadcast TV Fee from $5.00 to $7.00,

26   and the Regional Sports Fee from $3.00 to $5.00, effective July 1, 2017 — approximately half-

27   way through his 2-year purported fixed-price contract.

28

CLASS ACTION COMPLAINT

86.     On April 17, 2017, Mr. Loomis (through counsel) mailed a letter to Comcast Corporation CEO Brian L. Roberts and Comcast Cable CEO David N. Watson demanding, among other things, that Comcast stop its deceptive practices and return all money paid by California Comcast customers for the Broadcast TV Fee and the Regional Sports Fee. See **Exhibit G.**

87.     On April 21, 2017, in response to the April 17, 2017 demand letter, Mr. Loomis received a phone call from a Comcast agent named "Keethora." Keethora told Mr. Loomis she was calling from "Comcast's Executive Office" in response to the letter and wanted to discuss his dispute over the Broadcast TV Fee and the Regional Sports Fee.

88.     Keethora falsely told Mr. Loomis that the Broadcast TV Fee and the Regional Sports Fee were required by the federal government and were regulated by the FCC. Keethora told Mr. Loomis that Comcast's hands were tied and that Comcast was powerless to do anything about the Broadcast TV Fee and the Regional Sports Fee charges.

89.     Mr. Loomis did not receive a further response from Keethora or from any other Comcast representative or department.

90.     In sum, Comcast failed to honor its agreements with and representations to Mr. Loomis, made false statements to him, and is charging Mr. Loomis more for his cable service package than what Comcast had promised him it would charge. Mr. Loomis relied upon Comcast's misrepresentations and omissions, which, in conjunction with Comcast's acts and practices alleged herein, caused Mr. Loomis to suffer imminent harm, injury in fact, and lost money or property.

C.     **Plaintiff Dan Adkins**

91.     After moving to a new home in Oakland, California, Plaintiff Dan Adkins went online to Comcast's website on September 26, 2016 to research Comcast's service package offerings. Mr. Adkins wanted to sign up for a bundle package with television and broadband Internet that would work with his TiVo video recorder device.

92.     Based on a review of Comcast's offerings, Mr. Adkins narrowed his choice to two packages: Comcast's Starter Double Play package at $69.99 per month versus the Starter Double Play with "Blast" (i.e. faster Internet) at $79.99 per month.

93.     On the offer webpage for the packages, Mr. Adkins noticed that next to the prominently advertised package prices there was small print which stated "per month for 12 mo. With 2-year agreement." However, there was no asterisk or qualifier next to the advertised prices, and nothing on the page stated what the price would be in months 13-24.  This made Mr. Adkins wary, because it was not clear what he would be charged after the first year.

94.     Mr. Adkins then noticed a small text link below the "Add to Cart" button for each package labeled "Pricing & Other Info." Mr. Adkins clicked on the "Pricing & Other Info." link, and a pop-up dialog box then appeared containing over 20 lines of small print. Buried in the "Pricing & Other Info." fine print was the information he was looking for, i.e., what the price would be for months 13-24. The tiny text stated that for both the $69.99 and the $79.99 packages, the price for months 13-24 would be $89.99.

95.     Based on these representations, Mr. Adkins decided on the $79.99 Starter Double Play with Blast Internet.

96.     Mr. Adkins decided to take screenshots of the offer page and of nearly every page of the order process as he viewed them that day on September 26, 2016, to make sure he had documentation of Comcast's offer to him so he could refute any possible later surprise charges.

97.     Mr. Adkins took a screenshot of the offer page which advertised the Starter Double Play packages. The screenshot of the offer page taken by Mr. Adkins is attached as **Exhibit H**. There was no asterisk or other qualifier next to the prices; the only small print was the text stating the advertised price would be charged for 12 months. The ad stated that the prices included "140 Channels" of TV, and that the packages included "24/7 Sports coverage on all major networks."

98.     In making his decision to proceed with his purchase, Mr. Adkins relied on these representations that the $79.99 price for the Starter Double Play with Blast was the total monthly cost for those channels, including the major broadcast TV channels, plus Blast Internet. Mr.

CLASS ACTION COMPLAINT

1    Adkins took a screenshot of the pop-up dialog box which appeared after he clicked on the

2    "Pricing & Other Info." link. See **Exhibit I**.

3         99.    Mr. Adkins then clicked on the prominent blue "Add to cart" button. Mr. Adkins

4    then viewed the "TV Options" webpage. The screenshot taken by Mr. Adkins of the TV Options

5    webpage is attached as **Exhibit J**. Mr. Adkins viewed the "My Order Summary" box on the right

6    side of the page which listed the various "Options" that were "Included" at no extra charge, "One-

7    time Charges" of $14.99, and the "Monthly Total" of $79.99. Based on these representations, Mr.

8    Adkins understood that the $79.99 "Monthly Total" price was the total amount Comcast would

9    charge him for television and Internet service with the exception of taxes (Mr. Adkins did not

10   require any additional television equipment and already had his own modem). Mr. Adkins did not

11   want the included X1 Digital Service receiver for his television, because he wanted to choose a

12   cable card instead for his TiVo. However, there was no option for him to choose a cable card on

13   the page. The webpage made no mention of the Broadcast TV Fee or the Regional Sports Fee.

14        100.   Mr. Adkins then clicked on the blue "Next" button. He then viewed the "Internet

15   Options" webpage. The screenshot taken by Mr. Adkins of the Internet Options page is attached

16   as **Exhibit K**. The identical "My Order Summary" box was on the right side. Mr. Adkins

17   accepted the default option to "use my own equipment" for no charge because he owned his own

18   modem. The webpage made no mention of the Broadcast TV Fee or the Regional Sports Fee.

19        101.   Mr. Adkins then clicked on the blue "Next" button. He then viewed a webpage

20   with installation options.  The screenshot taken by Mr. Adkins of the installation options page is

21   attached as **Exhibit L**. He accepted the default option of self installation and standard shipping

22   for the self-install kit. Mr. Adkins observed the identical "My Order Summary" box on the right

23   side as compared to the two previous pages. The webpage made no mention of the Broadcast TV

24   Fee or the Regional Sports Fee.

25        102.   On each webpage displaying the "My Order Summary" (see **Exhibits J-L**),

26   Comcast displayed to Mr. Adkins a prominent blue question mark next to the "Monthly Total"

27   amount. Upon hovering over the question mark, a text box appeared stating:

28

1
2

**This is the base monthly total of all recurring charges for the services you have selected.** It does not include tax or one-time charges (such as installation or Pay-Per-View fees) that may appear on individual bills.

3   (Emphasis added.) Mr. Adkins viewed and relied upon this language and statement that the

4   "Monthly Total" price of $79.99 was the total of all recurring monthly charges except for tax for

5   the services Comcast was providing. Although Mr. Adkins did not take a screenshot of this

6   language, an example of how this text box is displayed when the consumer hovers over the

7   prominent blue question mark is provided in **Exhibit M** (which contains screenshots taken March

8   6, 2016 of a webpage in the online order process for service in the Sacramento, California area,

9   red highlight added).

10         103.    Mr. Adkins then clicked on the blue "Next" button on the installation webpage,

11   which brought him to an account info webpage where he entered his personal and payment

12   information. These webpages made no mention of the Broadcast TV Fee or the Regional Sports

13   Fee.

14         104.    After entering and confirming his personal and payment information, Mr. Adkins

15   was brought to the final order submittal webpage. The screenshot taken by Mr. Adkins of the

16   order submittal page is attached as **Exhibit N**. The order submittal page contained yet another list

17   of all the services and items included in the package, and at the bottom showed a "Total" of

18   "Monthly Charges" of $79.99. As always, there was no asterisk or qualifier regarding this total

19   monthly price.

20         105.    Mr. Adkins observed and read the tiny fine print at the bottom of the order

21   submittal webpage which stated: "Equipment, installation, taxes and fees, including regulatory

22   recovery fees and other applicable charges extra." This fine print, like the rest of the page and all

23   the other pages of the online order process, made no mention of the Broadcast TV Fee or the

24   Regional Sports Fee.

25         106.    Mr. Adkins observed some small text above the large blue "Submit Your Order"

26   button, with a check box which stated that by checking the small box he represented "I have read

27   and agree to the Comcast Agreement for Residential Services" and "agree to the terms of the

28

1   Minimum Term Agreement." Mr. Adkins clicked on the link for the Comcast Agreement for

2   Residential Services, which displayed the Subscriber Agreement with 23 pages of small type. Mr.

3   Adkins took a screenshot of the agreement, and quickly scanned the agreement, specifically

4   looking to see if there was an arbitration clause and if it was possible to opt out of the arbitration

5   clause. Meanwhile, the 23-page Subscriber Agreement made no mention of the Broadcast TV Fee

6   or the Regional Sports Fee.

7       107.    Mr. Adkins then returned to the order submittal webpage, and clicked on the link

8   labeled "Minimum Term Agreement." A pop up window of text then appeared, which Mr. Adkins

9   took a screenshot of (the screenshot is attached as **Exhibit O**). The text was not of an actual

10  Minimum Term Agreement; instead, it simply mentioned the existence of an early termination fee

11  and stated that a Minimum Term Agreement would later be emailed or mailed to him. The

12  entirety of the displayed text is as follows (italics are added):

13      **Minimum Term Agreement**. The offer you selected requires a minimum term
        agreement and is subject to an early termination fee if all XFINITY services are
14      cancelled during the agreement term. *A copy of the agreement will be sent to the
        mail or email address you provided.* You have the option to cancel the minimum
15      term agreement within 30 days of the date the services under the offer are
        installed/activated without incurring an early termination fee. If you wish to cancel
16      the agreement, you must contact Comcast by calling 1-800-XFINITY. If you
        cancel the agreement during the 30 day period, the charges for your remaining
17      services may increase to the non-term contract rate. If you do not cancel the
        minimum term agreement within the 30 day period, the terms of the minimum
18      term agreement will automatically apply.

19
20      108.    Thus, despite Comcast requiring Mr. Adkins to check the box on the order

21  submittal webpage that "I have read and agree to the terms of the Minimum Term Agreement," it

22  was *impossible* for him to actually do so, because according to the pop-up box, the actual

23  Minimum Term Agreement document would not be sent to him until later – if it was ever sent at

24  all.

25      109.    Therefore, Mr. Adkins did not, and could not have possibly agreed to the Comcast

26  Minimum Term Agreement prior to submitting his order online.

27      110.    Mr. Adkins then submitted his order by clicking on the blue "Submit Your Order"

28  button at the bottom of the page.

CLASS ACTION COMPLAINT

- 18 -

111. Relying on Comcast's representations and promises to him in its website advertising and throughout the online purchase process, Mr. Adkins reasonably expected and believed that his total monthly bill for his television and Internet service for months 1-12 would be $79.99 plus taxes and government fees. Mr. Adkins also understood that his total monthly bill for months 13-24 would be $89.99 plus taxes and government fees.

112. Mr. Adkins had agreed to commit himself to a 2-year contract in reliance on Comcast's promise of a guaranteed and predictable lower price for his service during those two years.

113. Later that day, on September 26, 2016, Mr. Adkins received an "Order Summary" email from Comcast stating his order was being reviewed and that the order would not be finalized until he received a confirmation email. This Order Summary email is attached as **Exhibit P**. The Order Summary stated his "Monthly Fees" would be $79.99 and "One-time Fees" would be $14.99. The email did not mention the Broadcast TV Fee or the Regional Sports Fee, even in the fine print at the bottom of the email.

114. Mr. Adkins then opted out of Comcast's arbitration clause on Comcast's "Arbitration Opt Out" webpage.

115. On September 28, 2016, two days after placing his order online, Mr. Adkins called Comcast customer service to ask about two concerns: (1) Mr. Adkins never received the "confirmation email" that the September 26, 2016 "Order Summary" email told him would be forthcoming; and (2) he wanted a cable card for his TiVo instead of the cable box. The first agent he spoke to was unable to help him, so he called a second time. The second Comcast agent asked him to confirm that "the order was placed for a Double Play Starter XF at $79.99, you own your own modem, and requested self installation kit, correct?" Mr. Adkins confirmed this was correct. The agent told Mr. Adkins that Mr. Adkins could switch the box for a cable card at a local Comcast service center.

116. Mr. Adkins never received an order confirmation email from Comcast.

117. Mr. Adkins received his first bill on October 6, 2016. See **Exhibit Q**. Mr. Adkins noticed that Comcast was charging him a $5.00 Broadcast TV Fee and a $3.00 Regional Sports

1    Fee, which he did not understand and which had not been previously disclosed to him. Mr.

2    Adkins also noticed that Comcast was charging him an additional $15.00 for Blast Pro Internet,

3    contrary to Comcast's repeated promises to him on the offer webpage and throughout the order

4    process that Blast Pro Internet was "Included" for no additional charge (in fact, Comcast had

5    called the $79.99 package he selected "Starter Double Play with Blast!"). See Mr. Adkins'

6    screenshots of the offer webpage and the online order process at **Exhibits H, J-L, N**).

7        118.    Upset by these extra charges, Mr. Adkins wrote a letter to Comcast, which he

8    mailed on October 7, 2016, asking Comcast to remove the Broadcast TV Fee, the Regional Sports

9    Fee, and the Blast Pro Internet monthly charges. See **Exhibit R**. Mr. Adkins included print-outs

10   of the screenshots he had taken during the order process. He also asked Comcast to give him a

11   $2.50 monthly credit for using a cable card in his own device pursuant to Comcast policy, and

12   questioned whether he had been double-charged for the self-install kit.

13       119.    On or about October 7, 2016, Mr. Adkins opted out of the Comcast's arbitration

14   agreement a second time, this time taking a screenshot so that he had documentary evidence of

15   his opt-out.

16       120.    Mr. Adkins never signed or otherwise agreed to the document which Comcast

17   dubs the Minimum Term Agreement. Comcast did not present a copy of a Minimum Term

18   Agreement to Mr. Adkins before he ordered his Comcast service. Comcast did not mail, email, or

19   otherwise transmit or present to Mr. Adkins a copy of a Minimum Term Agreement after Mr.

20   Adkins ordered his Comcast service.

21       121.    Mr. Adkins was not aware of the existence of a purported 30-day Money-Back

22   Guarantee by Comcast, and this option was never presented to him in any of his communications

23   with Comcast regarding his complaints.

24       122.    On October 8, 2016, Mr. Adkins (through counsel) faxed and emailed a letter to

25   Comcast demanding, among other things, that Comcast stop its deceptive practices and return all

26   money paid by Comcast customers for the Broadcast TV Fee and the Regional Sports Fee. See

27   **Exhibit S**. A Comcast litigation paralegal acknowledged receipt of the October 8, 2016 letter by

28   an email reply on October 10, 2016. Mr. Adkins (through counsel) also mailed a notice letter to

CLASS ACTION COMPLAINT

1   Comcast by certified mail return receipt on October 10, 2016.  Comcast did not respond to the

2   letters.

3          123.    Starting on Mr. Adkins' July 2017 bill, Comcast raised the Broadcast TV Fee from

4   $5.00 to $7.00 and the Regional Sports Fee from $3.00 to $5.00. Mr. Adkins never agreed to

5   these double-charges for the channels in his service package in the first place. Further, the main

6   reason Mr. Adkins agreed to a 2-year contract was in reliance on Comcast's promise of a

7   guaranteed and predictable lower price for his service for those two years. Now, 9 months into his

8   24-month fixed-rate contract, Comcast was utilizing the Programming Charges as a sneaky,

9   backdoor way to increase its rates in breach of Comcast's agreement with him.

10         124.    Mr. Adkins relied upon Comcast's promises, misrepresentations, and omissions,

11  which in conjunction with Comcast's acts and practices alleged herein caused Mr. Adkins to

12  suffer harm, injury in fact, and lost money or property.

13         **D.**     **Plaintiff Christopher Robertson**

14         125.    Prior to November 2015, Plaintiff Christopher Robertson, then a resident of

15  Sacramento, California, subscribed to DirecTV for television and AT&T for Internet and phone

16  service. Towards the end of 2015, he learned that AT&T was going to increase the monthly

17  service rate from approximately $40.00 per month to approximately $55.00 per month.

18  Meanwhile, Mr. Robertson did not watch much television and decided he did not need his

19  DirecTV subscription.

20         126.    In October 2015, Mr. Robertson received a direct mail advertisement from

21  Comcast promoting a "Triple Play" "deal" with television, broadband Internet, and phone service.

22  A copy of the flyer is attached as **Exhibit T**.

23         127.    The first page of the flyer prominently advertised a price of "$89.99 per month for

24  12 months" for a "Triple Play" package of "TV, Internet & Voice," which was purportedly

25  discounted from a strike-through price of $99.00. The sale price and the strike-through price were

26  featured in huge text in two locations on the page.

27         128.    There was no asterisk or qualifier next to the giant "$89.99" advertised price, and

28  there was no mention of the Broadcast TV Fee or the Regional Sports Fee on the page.

CLASS ACTION COMPLAINT

- 21 -

1    129.    The first page of the flyer stated that the $89.99 price included "Over 140

2    channels" and listed bullets with other features that were included in the package.

3    130.    There was no fine print anywhere on the first page of the flyer. The footer of the

4    first page displayed "CALL NOW!" in huge text adjacent to Comcast's phone number and

5    website address.

6    131.    The second page of the flyer did not appear to contain information about the

7    pricing or details regarding the service. Mr. Robertson did not notice or read the fine print which

8    was only on the bottom of the second page and which was not referenced at all by the first page.

9    132.    The mailer piqued Mr. Robertson's interest in what other service offers were

10   available from Comcast. Mr. Robertson went to Comcast's website and began researching

11   Comcast's service offerings. On Comcast's website, Mr. Robertson read various statements in

12   which Comcast said it had made improvements including in customer service. Mr. Robertson

13   priced out various Comcast offerings available to him, and determined that the advertised price

14   for a bundle package of Internet plus basic television at $49.99 was cheaper than the price for

15   broadband Internet alone.

16   133.    On or about November 9, 2015, Mr. Robertson returned to the Comcast website.

17   Mr. Robertson selected the $49.99 Internet Plus 25 Plan on an offer webpage, and proceeded to

18   go through the online purchase process. The service package included only a few television

19   channels (primarily the broadcast channels ABC, CBS, NBC and FOX which Comcast stated

20   were included in the $49.99 plan price), along with broadband Internet.

21   134.    Mr. Robertson observed the prominently advertised $49.99 price, which was

22   offered pursuant to a 1-year agreement. Mr. Robertson did not notice, or have any reason to

23   search for and click on – given there was no asterisk or other qualifier next to the $49.99

24   advertised price – the small "Pricing & Other Info." text link below the "Add to Cart" button.

25   135.    The webpages Mr. Robertson viewed during the online purchase process were

26   substantially similar in format, style, and content to the pages viewed by Plaintiff Dan Atkins (see

27   **Exhibits H, J-N**), differing primarily in the prices and the specific included features.

28

CLASS ACTION COMPLAINT

136.    On each page of the online purchase process, Comcast prominently displayed to Mr. Robertson the $49.99 price as the "Monthly Total." Next to this "Monthly Total" amount was a prominent blue question mark which caused to display the following representation viewed by Mr. Robertson: "This is the base monthly total of all recurring charges for the services you have selected. It does not include tax or one-time charges (such as installation or Pay-Per-View fees) that may appear on individual bills."

137.    Based on these representations, Mr. Robertson understood that the $49.99 "Monthly Total" price was the total amount Comcast would charge him for television and Internet service with the exception of taxes (Mr. Robertson did not require any additional television equipment and he already had his own modem).

138.    Mr. Robertson went through most of the online purchase process. Prior to submitting his order, he entered into an online chat with a Comcast agent by clicking on an online chat dialog box which popped up on one of the purchase process webpages.

139.    Mr. Robertson told the chat agent he was interested in the Internet Plus 25 plan. Mr. Robertson asked the agent what the total monthly bill would be for the $49.99 plan, and told the agent he wanted to confirm other fees would not be later added to the bill.

140.    The chat agent assured Mr. Robertson there would be no extra charges with the exception of government fees and taxes. The agent told Mr. Robertson that the monthly total during the 1-year contract would be the $49.99 advertised price plus approximately $10.00 in taxes and government fees.

141.    The chat agent did not mention the existence of the Broadcast TV Fee, and Mr. Robertson was never informed about the Broadcast TV Fee during the online order process.

142.    Relying on the representations of the Comcast chat agent, as well as on his understanding of Comcast's representations in its flyer and online as described above, Mr. Robertson placed the order for service.

143.    Based on Comcast's representations and promises to him in its flyer, on its website, and by the Comcast chat agent, Mr. Robertson reasonably expected and believed that the total monthly bill for his television and Internet service for 12 months would be $49.99 plus

approximately $10 in taxes and government fees. In reality, contrary to the chat agent's representations to him, the monthly taxes and government fees (labeled as "Taxes and fees" on the Comcast bill) amounted to less than $3.00. Meanwhile, the monthly charge for the Broadcast TV Fee (which was a discretionary, bogus double-charge for the same broadcast channels Comcast had already promised him were included in the advertised package price) was $3.25 – higher than all of the true "Taxes and fees" combined.

144.    Meanwhile, Mr. Robertson had agreed to commit himself to a 1-year contract in reliance on Comcast's promise of a guaranteed fixed lower price for his service for those twelve months.

145.    Mr. Robertson received his first bill on or about November 14, 2015. He was surprised to see that the bill was $73.94, much higher than Comcast had promised. Upon further examination of the bill, Mr. Robertson saw a $6.00 Video Transfer Fee, a $6.00 CHSI Transfer Fee, and a $3.25 Broadcast TV Fee.

146.    Mr. Robertson initiated an online chat on Comcast's website with a customer service agent, and he asked that these charges be removed from his bill. The chat agent said he could remove the Video Transfer Fee and CHSI Transfer Fee. The agent apologized that nobody had told Mr. Robertson about the Broadcast TV Fee, but told him that it was impossible to waive the charge because it was a fee all customers had to pay. The agent was unable to explain or define what the Broadcast TV Fee was.

147.    On December 2, 2015, Mr. Robertson opted out of Comcast's arbitration clause on Comcast's "Arbitration Opt Out" webpage.

148.    On December 24, 2015, Mr. Robertson (through counsel) mailed a letter to Comcast demanding that Comcast end its unlawful scheme and return all money Comcast customers paid for the Broadcast TV Fee and the Regional Sports Fee. See **Exhibit U.**

149.    On February 25, 2016, Comcast Senior Vice President Thomas R. Nathan mailed a response letter refusing to change Comcast practices or refund any money. See **Exhibit C.**

150. On March 19, 2016, Mr. Robertson initiated an online chat with a Comcast customer service agent. Mr. Robertson asked the agent to remove the Broadcast TV Fee charge from his bills and to refund his past payments of the charge.

151. The agent stated that the Broadcast TV Fee was a "Government approved charge implemented by Comcast to all cable service subscribers."

152. Mr. Robertson complained to the agent that he had not been told about the charge, and that "I signed a 1 year agreement to pay a specific amount for a specific service from Comcast, that is the amount I should be paying each month." He stated that "Comcast told me one price, then charged me another."

153. The agent responded that the "Broadcast TV Fee is part of the fees for having cable service which is on top of the service price you currently have."

154. The agent refused to refund or stop charging the Broadcast TV Fee, stating "it cannot be refunded... since you have agreed to sign up for the package with us."

155. On Mr. Robertson's May 8, 2016 bill, Comcast appended a "Products and Services Price List" which stated that "Starting on July 1, 2016 the following XFINITY services and fees will be changing." The list showed that the Broadcast TV Fee would be increasing on July 1, 2016 to $5.00. Yet contrary to the stated upcoming increase, a statement at the bottom of the page declared: "If you're currently receiving services on a promotional basis, under a minimum term agreement associated with a specific rate, or in the guaranteed period of one of our SurePrice plans, the prices for those specific services will not be affected during the applicable period." See Mr. Robertson's May 8, 2016 bill at **Exhibit V**.

156. Starting on Mr. Robertson's July 8, 2016 bill, Comcast increased the Broadcast TV Fee from $3.25 to $5.00.

157. Mr. Robertson never agreed to this double-charge for the broadcast channels – which comprised most of the few channels included in his package – in the first place. Further, Mr. Robertson agreed to a 1-year contract in reliance on Comcast's promise of a guaranteed and fixed lower price for his service during those twelve months. Yet now, with 4 months still

1   remaining on his 12 month contract, Comcast was utilizing the Broadcast TV Fee as a sneaky,

2   backdoor way to increase its rates in breach of Comcast's agreement with him.

3       158.   Mr. Robertson never signed or otherwise agreed to the document which Comcast

4   dubs the Minimum Term Agreement. Comcast did not present a copy of a Minimum Term

5   Agreement to Mr. Robertson before he ordered his Comcast service. Comcast did not mail, email,

6   or otherwise transmit or present to Mr. Robertson a copy of a Minimum Term Agreement upon

7   the placing of his order.

8       159.   Soon after Mr. Robertson's 1-year contract with Comcast expired at the end of

9   2016, Mr. Robertson terminated his service with Comcast.

10      160.   Mr. Robertson relied upon Comcast's promises, misrepresentations, and

11  omissions, which in conjunction with Comcast's acts and practices alleged herein caused Mr.

12  Robertson to suffer harm, injury in fact, and lost money or property.

13  **V.   COMMON FACTUAL ALLEGATIONS OF COMCAST'S CALIFORNIA-WIDE AND NATIONWIDE SCHEME**

14

15      161.   The experiences of Plaintiffs Charles Tillage, Joseph Loomis, Dan Adkins, and

16  Christopher Robertson are typical of millions of Californians and tens of millions of consumers

17  throughout the United States. Since 2014, these consumers have been victims of Comcast's

18  nationwide scheme of charging more for its services than Comcast advertised and promised them

19  it would charge.

20      162.   Plaintiffs bring this lawsuit on behalf of themselves individually, as private

21  attorneys general, and also as a class action. Plaintiffs seek public injunctive relief for the benefit

22  of themselves and for the benefit of millions of other California consumers. If successful, the

23  lawsuit will also likely benefit tens of millions of consumers and Comcast customers nationwide

24  because the Comcast advertising practices which are the subject of this Complaint are uniform

25  and standard throughout the country.

26      163.   Comcast began perpetrating this Broadcast TV Fee and Regional Sports Fee bait-

27  and-switch scheme in January 2014. In recent testimony to the U.S. Senate, Comcast *admitted*

28  that: (1) prior to January 1, 2014 the Programming Charges represented by the current Broadcast

1   TV Fee and Regional Sports Fee had been *included* in the advertised and billed "sticker price";

2   and (2) starting in 2014 Comcast "decided" to exclude some video programming charges from the

3   sticker price in the form of the Broadcast TV Fee and to instead now bill them as separate line

4   items "*as opposed to simply raising our sticker price.*" See S. Hrg. 114-409, pp. 35, 54, emphasis

5   added.[1]

6        164.    In January 2015, Comcast expanded this scheme by introducing the "Regional

7   Sports Fee" in order to similarly disguise programming price increases for local sports channels

8   (which, like the broadcast channels, were already promised as being included in the advertised

9   "sticker price" for the channel package). Comcast charges the Broadcast TV Fee to all Comcast

10   cable television subscribers. Comcast charges the Regional Sports Fee to Comcast cable

11   television subscribers with the Digital Starter Package or above.

12        165.    Comcast perpetrates this scheme, which affects all of its over two million

13   California cable television subscribers, in order to increase demand for its services and to increase

14   its profits. Comcast tricks customers into thinking they will pay the lower advertised "sticker

15   price," rather than the significantly higher price they will actually be charged. The Programming

16   Charges now add as much as $12.00 per month to California customer bills, often accounting for

17   more than 10% of the subscriber's total bill.

18        166.    In a statement to the Senate Subcommittee investigating cable customer service

19   and billing practices, the National Association of Telecommunications Officers and Advisors

20

21   [1] Senate Hearing on Customer Service and Billing Practices in the Cable and Satellite Industry, June 23, 2016, available at https://www.gpo.gov/fdsys/pkg/CHRG-114shrg21423/content-

22   detail.html. Also see Comcast Senior Vice President Tom Karinshak's testimony at p. 35, excerpted below (emphasis added):

23

24   **Senator McCaskill:** Now, what I want to make sure I understand here is that this has been a decision, I believe by all of you – raise your hand if you did not – that you would

25   take – OK, DISH did not. You did not put any RSN [Regional Sports Network] or broadcast surcharge fees in. OK. So DISH decided not to do this, but the rest of *you*

26   *decided that you were going to take something that was in the basic programming fee for buying your service, and you were going to put it in another place on the bill and call it*

27   *something else.* I would ask you, can you tell me why all of you decided—*isn't it true that all of these were previously in your video charges*?

28   **Mr. Karinshak:** *Yes, Senator.*

("NATOA"), whose members represent Local Franchising Authorities ("LFAs") that are actively involved in monitoring and enforcing cable customer service standards, described the Broadcast TV Fee and Regional Sports Fee scheme alleged in this Complaint as deceptive:

> One issue that has risen to the top of consumer complaints has to do with increases to basic service tier rates and fees… *Consumer bills also have been complicated by the addition of new, unexplained fees for programming that was already included in their subscription packages.* In 2016, many LFAs saw huge increases in the "broadcast TV" fee - from $1.50 to $4.50 - and "regional sports network" fee - from $1.00 to $3.00. *These fees are not only confusing to consumers, but misleading, as well.* Many subscribers choose specific programming bundles to lower their costs and they sign contracts to keep those costs in place. However, because these fees are outside the agreed upon bundle price, subscribers see their budget busted and locked into an agreement they cannot get out of.

S. Hrg. 114-409, p. 183 (July 23, 2016), emphasis added.

167.    A regulatory cable commission in Oregon recently wrote a letter to the Oregon Attorney General's Office describing complaints by consumers regarding the Broadcast TV Fee and Regional Sports Fee scheme:

> The issues of concern revolve around "fees" cable companies charge to subscribers that are not included in the stated monthly rates for cable TV programming packages but that subscribers are required to pay monthly as part of the programming package (i.e. a subscriber cannot "opt out" of the fee and still receive the programming package). The subscriber complaints we've received generally take three different, but related forms: Subscribers with long-term service contracts for set rates are charged new add-on fees and increases to those fees resulting in monthly rates higher than the contract amount; subscribers are told a monthly programming package rate but their bill for the programming package – with all the required "fees" added - is much higher; or the rates advertised by a company do not include the fees and therefore, the programming package is not actually available at the advertised rate… We began receiving complaints about add-on fees in December 2013. This practice was first implemented by Comcast and other cable companies have followed their lead…

Letter from Mt. Hood Cable Regulatory Commission to Oregon Attorney General's Office (March 15, 2017)[2], attached as **Exhibit W**.

---

[2] Available online at http://media.oregonlive.com/silicon-forest/other/Cable%20Fees%20Letter%20to%20Oregon%20AG%20-%20final%20draft.pdf.

A.    **Comcast Engages in False and Misleading Advertising About the Prices It Charges for Its Cable Television Service Packages.**

168.    In its website advertising and online order process, Comcast *never* includes an asterisk or qualifier next to the prominently displayed price for its television service packages which could put the consumer on notice that the sticker price does not include additional programming charges which are hidden in the form of the automatically billed Broadcast TV Fee and Regional Sports Fee. E.g., see **Exhibits H-N**. On each page of the online order process, Comcast prominently displays the advertised price as the "Monthly Total," despite that total not including the cost of the Broadcast TV Fee and the Regional Sports Fee. *Id.*

169.    Comcast displays a prominent blue question mark next to the "Monthly Total" amount; when one hovers over the question mark, a text box appears stating:

> **This is the base monthly total of all recurring charges for the services you have selected**. It does not include tax or one-time charges (such as installation or Pay-Per-View fees) that may appear on individual bills.

See **Exhibit M**. But the stated "base monthly total" does not include the cost of the Broadcast TV Fee and the Regional Sports Fee, which are in fact recurring double-charges for ABC, NBC, CBS, FOX and local sports channels which Comcast has already advertised and promised are included in the package price.

For example, see the offer webpage screenshot taken by Plaintiff Adkins at **Exhibit H**. Comcast advertises the $79.99 price as including "140 Channels" of TV and "24/7 Sports coverage on all major networks." This offer is deceptive because the $79.99 price does not include the additional – and automatically charged – $8.00 for the monthly Broadcast TV Fee ($5.00) and Regional Sports Fee ($3.00) to provide those very same channels. This $8.00 in double-charges represents a 10% price increase above the promised and advertised price for the television and Internet service package.

For example, see the offer webpage screenshot of service packages advertised on Comcast's website for the Sacramento, California area on January 14, 2016, attached as **Exhibit X** (red highlight added). The webpage advertisement specifically and prominently states that the Internet Plus 75 bundle includes "local channels like ABC, NBC & FOX" for the price of $54.99,

1    and even includes the logos for NBC and FOX in the ad This statement that the package price is

2    $54.99 is false and misleading because the true price of the bundle is $58.24, i.e., $54.99 plus the

3    $3.25 automatically-applied Broadcast TV Fee, which is charged to provide the very channels

4    (ABC, NBC and FOX) that Comcast has promised are included in the $54.99 monthly price.

5        170.    Comcast makes similar misrepresentations and omissions in its other forms of

6    advertising such as direct mail. As reflected in the advertising flyer mailed to Plaintiff Robertson

7    (see **Exhibit T**), Comcast likewise never includes an asterisk or qualifier next to the prominently

8    advertised price for its service packages, and Comcast buries its unreferenced disclaimers in tiny

9    fine print in a location consumers are unlikely to notice.

10       171.    Meanwhile, Comcast's hidden advertising disclaimers, in the event they are seen

11   by consumers, are themselves misleading. The disclaimers are designed to falsely imply that the

12   Programming Charges are government-imposed charges. For example, buried in the fine print on

13   the bottom of page 2 of the flyer sent to Mr. Robertson is the following sentence: "Equipment,

14   installation, *taxes and fees, including* regulatory recovery fees, Broadcast TV Fee (up to

15   $3.50/mo.), Regional Sports Fee (up to $1.00/mo.) and other applicable charges extra ..."

16   (emphasis added). *Id.*

17       172.    A reasonable consumer would assume the phrase "*taxes and fees*" which explicitly

18   "include" the strange and undefined terms "Broadcast TV Fee" and "Regional Sports Fee," refers

19   to taxes and government fees outside of Comcast's control.

20       173.    In fact, **Comcast is on record as stating to the U.S. Senate that the phrase**

21   **"Taxes and fees" has a clear meaning to consumers of government taxes and regulatory**

22   **assessments**. Comcast told the U.S. Senate that the "Taxes, Surcharges, & Fees" section of the

23   customer bill was "dedicated to government-mandated taxes or regulatory fees. ... *This is a clear*

24   *distinction between those charges that are discretionary and those that are pursuant to taxes and*

25   *regulatory assessments.*" S. Hrg. 114-409 at p. 190 (July 23, 2016, emphasis added). Since then,

26   Comcast has renamed the "Taxes, Surcharges, & Fees" section of the bill to simply "Taxes and

27   fees." E.g. see **Exhibit V**. It is thus eminently reasonable – and consistent with Comcast's own

28   stated intent – that consumers interpret the phrase "taxes and fees" as used in its advertising

CLASS ACTION COMPLAINT

disclaimers to mean only taxes and government fees (as opposed to discretionary, double-charges for channels Comcast has already promised are included in the advertised package price).

174.    Comcast's representations on its website and in its advertising are false, because it charges more than it promises it will charge for television service packages, via the deceptive Broadcast TV Fee and Regional Sports Fee.

**B.    Comcast's Sales Agents Make False and Misleading Statements About the Prices Comcast Charges for Its Cable Television Service Packages.**

175.    Comcast sales agents – including telesales agents, online chat agents, and in-store sales staff – universally do not disclose or mention the existence of the Broadcast TV Fee and the Regional Sports Fee to prospective customers. Further, when they quote customers the total order price, the agents uniformly and falsely say that the stated price is the total price *"plus taxes"* or *"plus taxes and fees."* (As discussed *supra* at ¶ 173, a reasonable consumer, as Comcast has itself affirmed and intends, would interpret the phrase "taxes and fees" to mean government or regulatory charges.)

176.    For example, a Comcast online sales chat agent lied to Plaintiff Loomis by falsely promising him a specific, all-inclusive price, with the only extra charge being "plus tax" – but where in fact the quoted price did not include the Programming Charges and where the agent never disclosed the existence of the Programming Charges.

177.    For example, a Comcast online sales chat agent lied to Plaintiff Robertson by falsely promising him there would be no extra charges above the advertised and promised $49.99 package price except for taxes and government fees – but where in fact the $49.99 price did not include the Broadcast TV Fee and where the agent did not disclose the existence of the Broadcast TV Fee.

178.    Other Comcast customers similarly placed their orders in reliance on statements by Comcast sales agents that the quoted price was the total cost plus taxes or plus taxes and government fees, but were not informed by the sales agents of the existence of the Broadcast TV Fee and the Regional Sports Fee.

179.    For example, when John Bailey, a Comcast customer from Covington, Washington, spoke with a Comcast telesales agent on July 23, 2016 to upgrade his Internet-only plan to a Double Play plan with Internet plus television service, the agent falsely promised him the total price would be the advertised package price "plus taxes," and the agent did not disclose the additional $5.00 Broadcast TV Fee.[3]

180.    For example, when Dian Wordinger of Mishawaka, Indiana, signed up for Comcast in person at a Comcast service center in June 2017, the agent behind the counter falsely promised her that the total monthly bill would be "$75.98 before taxes," even hand-writing that phrase on Ms. Wordinger's paperwork. The agent made no disclosure of the additional Programming Charges which would in fact be charged to her.

181.    The experiences of Plaintiffs Loomis and Robertson, and the experiences of these other named Comcast customers, are typical of the experiences of other Comcast customers and prospective customers. Through the discovery process in this case, Plaintiffs will obtain further evidence showing that Comcast has a uniform, standard policy of directing and/or encouraging its sales agents to deceptively state that the advertised price plus equipment charges is the total monthly service price plus "taxes" or "taxes and fees," and that Comcast policy is for sales agents to not mention or disclose the existence of the Broadcast TV Fee or the Regional Sports Fee (which in many cases adds more than 10% to the cost of the bill).

C.    **Comcast Lies to Customers Who Enquire or Complain About the Broadcast TV Fee or the Regional Sports Fee By Telling Them the Charges Are Taxes or Government Fees.**

182.    When customers contact Comcast to ask or complain about the Broadcast TV Fee and/or the Regional Sports Fee, Comcast doubles down on its deception through its practice of lying to customers by saying that these Programming Charges are taxes or government-imposed fees over which Comcast has no control.

183.    For example, when Plaintiff Loomis called Comcast to complain about the surprise Programming Charges in August 2016, Comcast agents repeatedly and falsely told him that the

---

[3] Plaintiffs are in possession of the official Comcast audio recording of this call.

1   Programming Charges were "required by federal law" and were "taxes." When a Comcast agent

2   from the "Comcast Executive Office" called Mr. Loomis on April 21, 2017 in direct response to

3   his demand letter regarding the Programming Charges, the agent told Mr. Loomis that the

4   Broadcast TV Fee and the Regional Sports Fee were required by the federal government and were

5   regulated by the FCC, and that Comcast's hands were tied and that Comcast could do nothing

6   about the Programming Charges.

7         184.   For example, when Plaintiff Robertson contacted a Comcast chat agent to

8   complain about the Broadcast TV Fee, the agent told him the Broadcast TV Fee was a

9   "Government approved charge implemented by Comcast to all cable subscribers."

10         185.   Plaintiffs' experiences are typical. Other consumers have described identical

11   behavior by Comcast.

12         186.   For example, Comcast customers have posted on Comcast's official online "Help

13   & Support Forums" that they were falsely told by Comcast agents that the Broadcast TV Fee and

14   the Regional Sports Fee are taxes or government fees:

15         Posted on Comcast's Website on June 11, 2016:

16         I called comcast today to complain about the extra [Broadcast TV Fee and
      Regional Sports Fee] charges that are added to the bill. I was told that it was a tax.

17         IT IS NOT A TAX, it is a fee charged by Comcast. They are charging us an extra
      $8 per month, without giving us any additional services. I believe we have a class

18         action lawsuit waiting to happen.[4]

19         Posted on Comcast's Website on July 19, 2015:

20         Upon review of my Comcast bills I called today, Sunday, to find out why I was
      being charged for a $3 Broadcast TV fee and a $1 Regional Sports Fee. These

21         charges appeared in my June and July bills under the section "Other Charges &
      Credits" and I wanted to get a better understanding of what and why these charges

22         appeared all of a sudden and if they can be removed. As an aside, I don't watch
      sports. The call center agent explained they were state and government taxes and

23         could not be removed. I asked her why they didn't appear in the "Taxes,
      Surcharges, and Fees" section and she corrected herself and stated that they are not

24         State fees but that they are government fees that Comcast had been approved to

25         charge customers.[5]

26    

27   [4] http://forums.xfinity.com/t5/Billing/Broadcast-TV-Fee/td-p/2671674

28   [5] http://forums.xfinity.com/t5/Billing/broadcast-tv-fee/td-p/2457405

187. For example, when Comcast customer Jonathan Bailey of Covington, Washington, spoke to a Comcast "customer loyalty department" telephone agent on August 23, 2016 and demanded that Comcast remove the previously undisclosed $5.00 Broadcast TV Fee from his bill, the agent responded, "There's no way we can remove the fee, it's from the state." When Mr. Bailey asked the agent to give him a $5.00 monthly credit instead, the agent refused, stating, "Well, we can't credit you $5.00 a month for a fee that is a state tax."[6]

188. For example, when Dian Wordinger of Mishawaka, Indiana emailed the Comcast agent who had signed her up for service to complain about the undisclosed Programming Charges, the agent replied that the Broadcast TV Fee "is all a part of taxes."

189. The experiences of Plaintiffs Loomis and Robertson, and the experiences of these other Comcast customers, are typical and representative of Comcast's general practices. Through the discovery process in this case, Plaintiffs will obtain further evidence showing that Comcast has a policy of encouraging and/or condoning its customer service agents to lie to customers who complain about the Programming Charges by telling them the Programming Charges are taxes or government fees.

**D. Comcast's Form Contracts Do Not Adequately Disclose the Broadcast TV Fee or the Regional Sports Fee.**

190. Comcast's form Subscriber Agreement does not mention the Broadcast TV Fee or Regional Sports Fee anywhere in its 23 pages of small type.

191. Section 2(a) of the Subscriber Agreement, which concerns the "Charges, Fees, and Taxes You Must Pay," is larded from top to bottom with references to government-imposed taxes, fees, and programs, and implies that all additional monthly non-equipment fees are government-related:

> **Charges, Fees, and Taxes You Must Pay.** You agree to pay all charges associated with the Service(s), including, but not limited to, installation/service call charges, monthly service charges, XFINITY Equipment (as defined below) charges, measured and per call charges, applicable federal, state, and local taxes and fees (however designated), regulatory recovery fees for municipal, state and federal government fees or assessments imposed on Comcast, permitted fees and

---

[6] Plaintiffs are in possession of the official Comcast audio recording of this call.

> cost recovery charges, or any programs in which Comcast participates, including, but not limited to, public, educational, and governmental access, universal service, telecom relay services for the visually/hearing impaired, rights-of-way access, and programs supporting the 911/E911 system and any fees or payment obligations imposed by governmental or quasi-governmental bodies for the sale, installation, use, or provision of the Service(s). YOU WILL BE RESPONSIBLE FOR PAYING ANY GOVERNMENT IMPOSED FEES AND TAXES THAT BECOME APPLICABLE RETROACTIVELY. We will provide you with notice and an effective date of any change in our prices or fees, unless the change in price is related to a change in governmental or quasi-governmental taxes, fees, or assessments, in which case we may elect not to provide notice except where required by applicable law. Not all fees apply to all Service(s).

**Exhibit A**, Section 2(a).

192.    Comcast's separate Minimum Term Agreement document also does not adequately disclose the Programming Charges. Meanwhile, in many cases – such as in the cases of *all four Plaintiffs* – Comcast does not get customer consent to its terms and does not mail, email, or otherwise transmit or present the Minimum Term Agreement to the customer.

193.    In bold, boxed text at the top of the Minimum Term Agreement, Comcast prominently displays the guaranteed monthly price for the contract term, *with no asterisk or qualifier*. E.g., see the Minimum Term Agreement for Plaintiff Loomis at **Exhibit F**.

194.    Comcast only mentions the Broadcast TV Fee and the Regional Sports Fee in a single disclaimer sentence in the Minimum Term Agreement which states that they are part of "taxes and fees":

> Equipment, installation, **taxes and fees, including** Broadcast TV Fee (currently up to $5.00/mo.), Regional Sports Fee (currently up to $3.00/mo.) and if XFINITY Digital Voice is included, regulatory recovery fees and other applicable charges (e.g. per-call or international charges) are extra, such charges and fees are subject to change during and after the term of this Agreement.

*Id.* (emphasis added).

195.    As discussed *supra* at ¶ 173, a reasonable consumer, as Comcast intends and has itself affirmed on the record to the U.S. Senate, would interpret the phrase "taxes and fees" to mean non-discretionary government charges.

1

2

    **E.**    **Comcast Falsely Advertises Guaranteed, Locked-In Prices for Its Term Contracts, When Comcast In Fact Repeatedly Raises Its Prices Mid-Contract Via Increases in the Broadcast TV Fee and the Regional Sports Fee.**

3

4

5

6

7

8

    196.    Comcast has induced millions of consumers to enter into 1-year or 2-year service contracts by promising them a "locked-in" and "guaranteed" low promotional rate which will not increase during the term of the contract. Comcast traps these customers by imposing a significant "termination fee" if they end their services early in mid-contract. For example, the Minimum Term Agreement for Plaintiff Loomis specifies a $230.00 termination fee, which is slowly reduced over time.[7] See **Exhibit F** at ¶ 5.

9

10

11

12

    197.    Yet contrary to Comcast's representations and advertising, and in breach of these promises, Comcast has a policy of increasing the Broadcast TV Fee and the Regional Sports Fee in the middle of "guaranteed" fixed-rate customer contracts as a backdoor way to repeatedly raise its prices on these trapped customers.

13

14

15

    198.    For example, in month 13 of Plaintiff Tillage's 24-month purported fixed-rate contract, Comcast increased the charges for the Broadcast TV Fee from $5.00 to $7.00 and for the Regional Sports Fee from $3.00 to $5.00.

16

17

18

    199.    For example, in month 12 of Plaintiff Loomis' 24-month purported fixed-price contract, Comcast increased the charges for the Broadcast TV Fee from $5.00 to $7.00 and for the Regional Sports Fee from $3.00 to $5.00.

19

20

21

    200.    For example, in month 9 of Plaintiff Adkins' 24-month purported fixed-price contract, Comcast increased the charges for the Broadcast TV Fee from $5.00 to $7.00 and for the Regional Sports Fee from $3.00 to $5.00.

22

23

    201.    For example, in month 8 of Plaintiff Robertson's 12-month purported fixed-rate contract, Comcast increased the charge for the Broadcast TV Fee from $3.25 to $5.00.

24

25

26

    202.    Comcast's stated justification for increasing the Programming Charges mid-contract is pure double-talk: Comcast insists that its "guaranteed" fixed promotional price for the

27

28

---

[7] Plaintiff Loomis does not concede that he agreed to or is bound by the Minimum Term Agreement.

CLASS ACTION COMPLAINT

service package has remained the same, and that only "applicable fees" "that are not included in your agreement" have increased.

203.   For example, when Plaintiff Loomis asked Comcast agents how Comcast could increase the monthly price for his services mid-contract despite having promised him a guaranteed flat lower rate, the agents told him: (1) the only thing Comcast guarantees in a 24-month contract is that the "package price" will remain the same, and (2) this package price does not include the Broadcast TV Fee and the Regional Sports Fee which may be increased from time to time mid-contract.

204.   For example, Comcast posted on its website the following response to a customer regarding forthcoming mid-contract increases of the Broadcast TV Fee and the Regional Sports Fee:

> You[r] 24 month agreement will not increase, so *your package price will remain the same*. However, you will notice an increase on your statement for *the services/fees that are not included in your agreement*. After reviewing your account, it shows that the following factors of your monthly subscription will be effected: Broadcast TV Fee will increase to $5.00. Regional Sports Network Fee will increase to $3.00.

See post dated December 16, 2015, on the Comcast online Help & Support Forum, available at: http://forums.xfinity.com/t5/Customer-Service/Question-regarding-new-rates-effective-in-January/td-p/2658968 (emphasis added).

205.   Comcast falsely advertises and promises "guaranteed" lower fixed-rate pricing to induce customers to enter into long-term contracts, when in fact Comcast never intends to honor these promises and representations made to its customers.

**F.    Comcast's Bait-and-Switch Scheme Is Central to Its Marketing Plan and Accounts for an Increasingly Large Part of Comcast's Total Revenues and Profits.**

206.   Comcast perpetrates this massive bait-and-switch scheme, which affects all of its over two million California television service subscribers, in order to increase demand for its services and to increase its profits. Comcast hooks and traps customers into 1-year or 2-year contracts, with the intent of charging them more than promised and then, to add insult to injury,

1   Comcast soon further raises the service price *even higher* in the middle of the promised fixed-rate
2   term via increases in the Broadcast TV Fee and the Regional Sports Fee.

3        207.   Comcast has increased these Programming Charges by 800% since they were first
4   introduced in 2014. Comcast regularly and methodically increases the Broadcast TV Fee and the
5   Regional Sports Fee on *all of its customers* at least once a year, regardless of whether the
6   customer is in the middle of a promised fixed-rate contract. The Broadcast TV Fee and the
7   Regional Sports Fee now add as much as $12.00 per month to California customer bills, often
8   accounting for more than 10% of the subscriber's total bill.

9        208.   Comcast will continue its false advertising and fraudulent representations to
10   prospective and current customers regarding the Programming Charges until it is forced by law to
11   stop. The scheme is far too profitable. Plaintiffs estimate that Comcast earns approximately $2
12   billion per year from these bogus double-charges – over $200 million annually from its California
13   customers alone.

14   **VI.   CLASS ACTION ALLEGATIONS**

15        209.   Plaintiffs bring this injunctive relief class-action lawsuit on behalf of themselves
16   and the members of the following class (the "Class"):

17          **All persons who received cable television services in California from Comcast
       and whom Comcast charged a "Broadcast TV Fee" and/or a "Regional Sports
18          Fee" within the applicable statute of limitations.**

19        210.   Specifically excluded from the Class are Comcast and any entities in which
20   Comcast has a controlling interest, Comcast's agents and employees, the judge to whom this
21   action is assigned, members of the judge's staff, and the judge's immediate family.

22        211.   *Numerosity.* Plaintiff does not know the exact number of Class members but
23   believes that the Class comprises approximately two million California consumers. As such,
24   Class members are so numerous that joinder of all members is impracticable.

25        212.   *Commonality and predominance.* Well-defined, nearly identical legal or factual
26   questions affect the members of the Class. These questions predominate over questions that might
27   affect individual Class members. These common questions include, but are not limited to, the

28

CLASS ACTION COMPLAINT

1 | following:

2        a.      Whether Comcast's advertising of its cable television packages at a fixed

3 | monthly price was part of a California-wide and nationwide advertising campaign;

4        b.      Whether an ordinary consumer who heard, saw, read or otherwise

5 | perceived any aspect of Comcast's advertising campaign (including disclosures contained in

6 | advertising and in contracts) was likely to be deceived as to a material term of the advertising,

7 | such as the price the consumer would pay each month for the cable television services being

8 | offered or how long the price would remain the same;

9        c.      Whether Comcast's charging of the Broadcast TV Fee or the Regional

10 | Sports Fee increased the total monthly cost of Comcast's cable television services to a total higher

11 | than an ordinary consumer would reasonably expect after hearing, seeing, reading, or otherwise

12 | perceiving any aspect of Comcast's advertising campaigns (including disclosures contained in

13 | advertising and in contracts);

14        d.      Whether the Broadcast TV Fee or the Regional Sports Fee is imposed by a

15 | government;

16        e.      Whether the Broadcast TV Fee or the Regional Sports Fee is a pass-

17 | through of a government or regulatory charge;

18        f.      What percentage, if any, of the Broadcast TV Fee or the Regional Sports

19 | Fee does Comcast turn over to a government or use to defray regulatory costs;

20        g.      Whether Comcast has represented to potential or current subscribers (in

21 | advertising, direct communications, or in customer bills or otherwise) that the Broadcast TV Fee

22 | or the Regional Sports Fee is imposed by a government;

23        h.      Whether Comcast has represented to potential or current subscribers (in

24 | advertising, direct communications, or in customer bills or otherwise) that the Broadcast TV Fee

25 | or the Regional Sports Fee is a pass-through of a government or regulatory charge;

26        i.      Whether Plaintiffs and the Class have suffered injury in fact and have lost

27 | money or property as a result of such unfair competition and other actions; and/or

28        j.      Whether Comcast should be enjoined from further engaging in the

CLASS ACTION COMPLAINT

1  misconduct alleged herein.

2  213. **Typicality.** Plaintiffs' claims are typical of Class members' claims. Plaintiffs and

3  Class members all sustained injury as a direct result of Comcast's standard practices and schemes.

4  214. **Adequacy.** Plaintiffs will fairly and adequately protect Class members' interests.

5  Plaintiffs have no interests antagonistic to Class members' interests. Plaintiffs have retained

6  counsel who has considerable experience and success in prosecuting complex class action and

7  consumer protection cases.

8  215. **Superiority.** A class action is the superior method for fairly and efficiently

9  adjudicating this controversy for the following reasons, without limitation:

10  a. Class members' interests are relatively small compared to the burden and

11  expense required to litigate each of their claims individually, so it would be impracticable for

12  Class members to seek individual redress for Comcast's illegal and deceptive conduct;

13  b. Even if Class members could afford individual litigation, the court system

14  could not. Individual litigation creates the potential for inconsistent or contradictory judgments

15  and increases the delay and expense to all parties and to the court system. By contrast, a class

16  action presents far fewer management difficulties and provides the benefits of single adjudication,

17  economy of scale, and comprehensive supervision by a single court; and

18  c. Plaintiffs anticipate no unusual difficulties in managing this class action.

## CAUSES OF ACTION

### COUNT I
### Violation of California's Unfair Competition Law
### (California Business and Professions Code § 17200 *et seq.*)

216. Plaintiffs reallege and incorporate by reference every allegation set forth in the

preceding paragraphs as though alleged in this Count.

217. Comcast's practices, misrepresentations, and omissions alleged herein constitute

unlawful, unfair, or fraudulent business practices in violation of California Business and

Professions Code § 17200 *et seq.*

218.    The misrepresentations and omissions by Comcast alleged herein were the type of misrepresentations and omissions that are regularly considered to be material, i.e., a reasonable person would attach importance to them and would be induced to act on the information in making purchase decisions.

219.    Plaintiffs reasonably relied upon Comcast's material misrepresentations and omissions in purchasing their television service packages.

220.    As a result of the foregoing, Plaintiffs and other California consumers: (1) have been injured and have lost money or property; (2) continue to be harmed on an ongoing basis; and (3) are entitled to injunctive relief.

221.    The balance of the equities favors the entry of permanent injunctive relief against Comcast. Plaintiffs and the Class will be irreparably harmed absent the entry of permanent injunctive relief against Comcast. Plaintiffs and the Class lack an adequate remedy at law. A permanent injunction against Comcast is in the public interest. Comcast's unlawful behavior is likely to reoccur absent the entry of a permanent injunction.

222.    Plaintiffs seek permanent injunctive relief in the form of a Judgment and Permanent Injunction containing the prohibitions and mandates pled hereinbelow, including in the Prayer, or as the Court otherwise deems just and proper.

223.    Unless restrained by this Court, Comcast will continue to engage in unfair, deceptive, and unlawful conduct, as alleged above, in violation of California Business and Professions Code § 17200 et. seq., harming Plaintiffs and other California consumers.

**COUNT II**
**Violation of California's False Advertising Law**
**(California Business and Professions Code § 17500 et seq.)**

224.    Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

225.    Comcast has committed acts of untrue and misleading advertising, as defined by California Business and Professions Code § 17500 ("False Advertising Law" or "FAL"), by

1  engaging in the acts and practices described herein with the intent to induce consumers to

2  purchase its cable television service packages.

3      226.    Comcast falsely advertised to Plaintiffs and California consumers that it would

4  charge them a fixed monthly rate for television service packages, when in fact Comcast intended

5  to charge them and did charge them a much higher rate via an inadequately disclosed and

6  deceptive Broadcast TV Fee and Regional Sports Fee.

7      227.    Comcast falsely advertised to Plaintiffs and California consumers that the charges

8  for the broadcast television and local sports channels were included in the advertised price, when

9  in fact Comcast intended to double-charge them and did double-charge them for the broadcast

10  television and local sports channels in the form of the Programming Charges.

11      228.    Comcast falsely advertised to Plaintiffs and California consumers that the long-

12  term contracts it advertised were at a fixed and/or guaranteed monthly rate, when in fact Comcast

13  intended to increase and did increase their monthly rate mid-contract via increases in the

14  Programming Charges.

15      229.    Comcast intentionally deceived Plaintiffs and California consumers by omitting,

16  hiding and/or disguising said Programming Charges in its statements to Plaintiffs and consumers

17  and in its advertising and customer agreements, and by falsely implying and/or stating that the

18  Programming Charges were non-discretionary government charges or taxes.

19      230.    Comcast's misrepresentations and omissions deceive or have a tendency to

20  deceive the general public.

21      231.    The misrepresentations and omissions by Comcast alleged herein were the type of

22  representations and omissions that are regularly considered to be material, i.e, a reasonable person

23  would attach importance to them and would be induced to act on the information in making

24  purchase decisions.

25      232.    Plaintiffs reasonably relied on Comcast's false advertising in purchasing their

26  cable service packages.

27

28

CLASS ACTION COMPLAINT

233. As a result of the foregoing, Plaintiffs and other California consumers: (1) have been injured and have lost money or property; (2) continue to be harmed on an ongoing basis and are in danger of being harmed in the future; and (3) are entitled to injunctive relief.

234. The balance of the equities favors the entry of permanent injunctive relief against Comcast. Plaintiffs and the Class will be irreparably harmed absent the entry of permanent injunctive relief against Comcast. Plaintiffs and the Class lack an adequate remedy at law. A permanent injunction against Comcast is in the public interest. Comcast's unlawful behavior is likely to reoccur absent the entry of a permanent injunction.

235. Plaintiffs seek permanent injunctive relief in the form of a Judgment and Permanent Injunction containing the prohibitions and mandates pled hereinbelow, including in the Prayer, or as the Court otherwise deems just and proper.

236. Unless restrained by this Court, Comcast will continue to engage in untrue and misleading advertising, as alleged above, in violation of California Business and Professions Code § 17500 *et seq.*, harming Plaintiffs and other California consumers.

## COUNT III
### Violation of the Consumers Legal Remedies Act
### (California Civil Code § 1750 *et seq.*)

237. Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

238. Comcast and each Doe defendant is a "person," as defined by California Civil Code § 1761(c).

239. Plaintiffs are "consumers," as defined by California Civil Code § 1761(d).

240. The television service packages marketed and sold by Comcast constitute "goods" and "services" as defined by California Civil Code § 1761(a) and (b).

241. Plaintiffs' purchases of Comcast's television service packages constitute "transactions," as defined by California Civil Code § 1761(e).

242. Venue is proper in San Francisco Superior Court under California Civil Code § 1780(d) because, without limitation: (1) Comcast engages in and performs business activities in

1   the City and County of San Francisco; and (2) Plaintiff Charles Tillage entered into an agreement

2   to purchase Comcast's cable television services while in the City and County of San Francisco,

3   and he received Comcast cable television services while in the City and County of San Francisco.

4       243.    Plaintiffs' declarations establishing that this Court has proper venue for this action

5   are attached hereto as Exhibit Y.

6       244.    Comcast intentionally misled Plaintiffs and California consumers to believe it

7   would charge them an advertised and promised fixed monthly rate for television programming,

8   but in fact Comcast charged a much higher rate via the inadequately disclosed and deceptive

9   Broadcast TV Fee and Regional Sports Fee charges.

10      245.    Comcast intentionally misled Plaintiffs and California consumers by promising

11  them that the charges for the broadcast television and local sports channels were included in the

12  advertised price, when Comcast in fact intended to double-charge them and did double-charge

13  them for the broadcast television and local sports channels in the form of the Programming

14  Charges.

15      246.    Comcast intentionally misled Plaintiffs and California consumers by inducing

16  them into signing long-term contracts by promising a lower fixed monthly rate, while in fact

17  intending to increase and in fact increasing their monthly rate mid-contract via increases in the

18  Programming Charges.

19      247.    Comcast intentionally deceived Plaintiffs and California consumers by omitting,

20  hiding and/or disguising said Programming Charges in its statements to Plaintiffs and consumers

21  and in its advertising and customer agreements, and by falsely implying or stating that the

22  Programming Charges were non-discretionary government charges or taxes.

23      248.    Comcast's misrepresentations, active concealment, and failures to disclose

24  violated the CLRA in ways including, but not limited to, the following:

25          a.      Comcast misrepresented that its television service packages had

26  characteristics, benefits, or uses that they did not have (Cal. Civ. Code § 1770(a)(5));

27          b.      Comcast advertised its television service packages with an intent not to sell

28  them as advertised (Cal. Civ. Code § 1770(a)(9));

1           c.      Comcast made false or misleading statements of fact concerning reasons

2  for, existence of, or amounts of price reductions (Cal. Civ. Code § 1770(a)(13));

3           d.      Comcast misrepresented that its television service packages conferred

4  rights, remedies or obligations that they did not have (Cal. Civ. Code § 1770(a)(14));

5           e.      Comcast misrepresented that its television service packages were supplied

6  in accordance with previous representations when they were not (Cal. Civ. Code § 1770(a)(16));

7  and

8           f.      Comcast inserted unconscionable provisions in its customer contracts (Cal.

9  Civ. Code § 1770(a)(19)).

10       249.    Comcast's misrepresentations and nondisclosures regarding its television service

11  packages were material to Plaintiffs because Plaintiffs considered, and a reasonable person would

12  have considered, them important in deciding whether to purchase Comcast's television service

13  packages, and because Comcast had a duty to disclose the truth.

14       250.    Plaintiffs reasonably relied upon Comcast's material misrepresentations and

15  nondisclosures, and had they known the truth, they would have acted differently.

16       251.    As a direct and proximate result of Comcast's material misrepresentations and

17  nondisclosures, Plaintiffs have suffered monetary damages and been irreparably harmed.

18       252.    In accordance with California Civil Code §1782(a), on December 24, 2015,

19  Plaintiff Christopher Robertson (through counsel) served Comcast with notice of its CLRA

20  violations by certified mail, return receipt requested. See **Exhibit U**. Comcast Senior Vice

21  President Thomas R. Nathan responded to the CLRA notice demand letter in a letter dated

22  February 25, 2016 in which Comcast denied liability and refused to provide any of the requested

23  relief whatsoever. See **Exhibit C**.

24       253.    On October 8, 2016, Plaintiff Dan Adkins (through counsel) emailed to Comcast

25  paralegal Claudia Salcedo a CLRA notice demand letter addressed to Mr. Nathan. See **Exhibit S**.

26  Ms. Salcedo acknowledged receipt of the notice in a reply email on October 10, 2016. See

27  **Exhibit Z**. Comcast did not respond to the notice letter except to acknowledge its receipt.

28

CLASS ACTION COMPLAINT

254. On April 17, 2017, Plaintiff Joseph Loomis (through counsel) mailed a CLRA notice demand letter to Comcast Corporation and to Comcast Cable Communications, LLC. See **Exhibit G**. On April 21, 2017, a Comcast agent named "Keethora" called Mr. Loomis and told him she was from the "Comcast Executive Office" and that she was calling in response to the demand letter. Keethora falsely told Mr. Loomis that the Broadcast TV Fee and the Regional Sports Fee were required by the federal government and were regulated by the FCC. Keethora told Mr. Loomis that Comcast's hands were tied and that Comcast could do nothing about the Programming Charges. Mr. Loomis did not receive a further response from Keethora or from any other Comcast representative or department.

255. On August 17, 2017, Plaintiff Charles Tillage (through counsel) mailed a CLRA notice demand letter to Comcast Corporation and to Comcast Cable Communications, LLC. See **Exhibit E.** On September 14, 2017, a Comcast agent from "Comcast's Executive Office" responded to the demand letter in an email to Mr. Tillage's counsel. In the email response, Comcast ignored all of Mr. Tillage's demands and falsely asserted that Mr. Tillage had agreed to pay the Broadcast TV Fee and the Regional Sports Fee.

256. Comcast has failed to provide appropriate relief for its CLRA violations within 30 days of its receipt of each of Plaintiffs' demand notices.

257. The balance of the equities favors the entry of permanent injunctive relief against Comcast. Plaintiffs and the Class will be irreparably harmed absent the entry of permanent injunctive relief against Comcast. Plaintiffs and the Class lack an adequate remedy at law. A permanent injunction against Comcast is in the public interest. Comcast's unlawful behavior is likely to reoccur absent the entry of a permanent injunction.

258. Plaintiffs seek permanent injunctive relief in the form of a Judgment and Permanent Injunction containing the prohibitions and mandates pled hereinbelow, including in the Prayer, or as the Court otherwise deems just and proper.

CLASS ACTION COMPLAINT

1

2

**COUNT IV**
**Permanent Public Injunctive Relief**
**(C.C.P. § 3422 and All Inherent or Other Authority)**

3       259.    Plaintiffs reallege and incorporate by reference every allegation set forth in the

4    preceding paragraphs as though alleged in this Count.

5       260.    If not enjoined by order of this Court, Comcast will continue to injure Plaintiffs

6    and California consumers through the misconduct alleged herein.

7       261.    Plaintiffs seek permanent public injunctive relief in the form of a Judgment and

8    Permanent Injunction containing the prohibitions and mandates pled hereinbelow, including in

9    the Prayer, or as the Court otherwise deems just and proper.

10      262.    The balance of the equities favors the entry of permanent public injunctive relief

11   against Comcast. Plaintiffs and the Class will be irreparably harmed absent the entry of

12   permanent public injunctive relief against Comcast. Plaintiffs and the Class lack an adequate

13   remedy at law. A permanent injunction against Comcast is in the public interest. Comcast's

14   unlawful behavior is likely to reoccur absent the entry of a permanent injunction.

15

**PRAYER FOR RELIEF**

16       Plaintiffs request that the Court order relief and enter judgment against Defendant

17   Comcast Corporation and Defendant Comcast Cable Communications, LLC, jointly and severally

18   or as otherwise appropriate, as follows:

19       1.      That the Court enter an order certifying the proposed Class and appointing

20   Plaintiffs and their counsel to represent the Class;

21       2.      That Defendants Comcast Corporation and Comcast Cable Communications, LLC

22   (collectively, "Comcast") and all of their parent corporations, subsidiaries, affiliates, successors,

23   assigns and the like, are each immediately, permanently and finally enjoined and restrained from

24   doing any of the following:

25           (a)     Failing to include the total dollar amount of the combined Broadcast TV

26   Fee and Regional Sports Fee in all prices in all advertisements (as broadly defined for purposes of

27   the Judgment) which contain a price for services on which the Broadcast TV Fee or the Regional

28

CLASS ACTION COMPLAINT

- 47 -

1  Sports Fee is levied (e.g., a $79.00/month service package on which Comcast levies an additional
2  $12.00 in the form of the combined Broadcast TV Fee and Regional Sports Fee must be
3  advertised in all advertisements as costing the consumer $91.00/month, with no other dollar
4  amount to appear or be used in the advertisement as the cost to the consumer of said services);

5          (b)     Failing to clearly and conspicuously disclose to the consumer, before the
6  consumer enters into a contract with Comcast and at all times thereafter when Comcast mentions
7  the Broadcast TV Fee and/or the Regional Sports Fee, that the Broadcast TV Fee and the
8  Regional Sports Fee are created and imposed by Comcast and are not government taxes or
9  government fees;

10         (c)     Listing, for purposes of advertising or billing or for any other purpose, the
11  Broadcast TV Fee or the Regional Sports Fee in or under a section, clause, or phrase labeled or
12  described as "taxes," "taxes and fees," or the like;

13         (d)     Failing to list the Broadcast TV Fee or the Regional Sports Fee in a
14  separate section labeled "Discretionary Comcast Programming Charges" in any order summary,
15  any order confirmation, or any customer bill;

16         (e)     Increasing the Broadcast TV Fee or the Regional Sports Fee during a time
17  certain if Comcast advertised or promised a price certain for services during that time certain;
18  and/or

19         (f)     Whatever other permanent injunctive relief the Court deems just and
20  proper.

21      3.      That Comcast pay Plaintiffs' and the Class's attorneys' fees to the extent allowed
22  by law;

23      4.      That Comcast pay Plaintiffs' and the Class's costs to the extent allowed by law;

24      5.      That the Court retain jurisdiction to police Comcast's compliance with the
25  permanent injunctive relief, and/or

26      6.      Such other relief as the Court deems just and proper including, without limitation,
27  temporary or preliminary injunctive relief.

28

CLASS ACTION COMPLAINT

- 48 -

1

**JURY DEMAND**

2          Plaintiffs demand a trial by jury on all issues so triable.

3

4    Dated:  October 5, 2017          Respectfully submitted,

5                                      *[signature]*

6                                      Daniel M. Hattis

7                                      Daniel M. Hattis (SBN 232141)
                                       Paul Karl Lukacs (SBN 197007)
8                                      HATTIS LAW PLLC
                                       P.O. Box 1645
9                                      Bellevue, WA 98009
                                       Telephone: (650) 980-1990
10                                     Facsimile: (425) 412-7171
                                       Email: dan@hattislaw.com
11                                     Email: pkl@hattislaw.com

12                                     Tony J. Tanke (SBN 74054)
                                       LAW OFFICES OF TONY J. TANKE
13                                     2050 Lyndell Terrace, Suite 240
                                       Davis, CA 95616
14                                     Telephone: (530) 758-4530
                                       Email: appeals@tankelaw.com
15
                                       Jason Skaggs (SBN 202190)
16                                     SKAGGS FAUCETTE LLP
                                       530 Lytton Ave 2nd FL
17                                     Palo Alto, CA 94301
                                       Telephone: (650) 617-3226
18                                     Email: jason@skaggsfaucette.com

19                                     Attorneys for Plaintiffs and the Proposed Class

20

21

22

23

24

25

26

27

28

---

CLASS ACTION COMPLAINT

# EXHIBIT A

# COMCAST AGREEMENT FOR RESIDENTIAL SERVICES

## ABOUT THIS AGREEMENT, OUR SERVICES, AND YOUR RIGHTS

XFINITY® Service(s) will be provided to you ("you," "your," or "Customer") on the terms and conditions set forth in this Agreement for Residential Services (the "Agreement") and applicable law by the operating company subsidiary of Comcast Corporation that (i) owns and/or operates the cable television system in your area and/or (ii) the subsidiary that is the XFINITY Digital Voice service provider or Unlimited Select and Local Select service provider ("Comcast," "we," "us," or "our"). For purposes of this Agreement, "affiliate" means any entity that controls, is controlled by or is under common control with Comcast Corporation. Service(s) may include, but are not limited to, XFINITY TV cable television service ("XFINITY Video"), XFINITY Internet service including XFINITY WiFi ("XFINITY Internet"), and XFINITY Voice or Unlimited Select and Local Select service (herein collectively "XFINITY Voice" WITH LIMITED EXCEPTIONS FOR UNLIMITED SELECT AND LOCAL SELECT AS OTHERWISE INDICATED BELOW) (each a "Service" and collectively the "Services"). The Service(s) do not include Comcast owned or controlled websites such as Comcast.com, Comcast.net, Xfinity.com, or XfinityTV.com. Those websites have their own terms of service and policies that are accessible directly from those sites.

We may change our prices, fees, the Service(s) and/or the terms and conditions of this Agreement in the future. Unless this Agreement or applicable law specifies otherwise, we will give you thirty (30) days prior notice of any significant change to this Agreement. If you find the change unacceptable, you have the right to cancel your Service(s). However, if you continue to receive Service(s) after the end of the notice period (the "Effective Date") of the change, you will be considered to have accepted the changes. You may not modify this Agreement by making any typed, handwritten, or any other changes to it for any purpose.

Note: This Agreement contains a binding arbitration provision in Section 13 that affects your rights under this Agreement with respect to all Service(s). These terms and conditions are subject to applicable tariffs and service guides.

## GENERAL TERMS AND CONDITIONS

1. **ACCEPTANCE OF THIS AGREEMENT**
   You will have accepted this Agreement and be bound by its terms if you use the Service(s) or otherwise indicate your affirmative acceptance of such terms.

2. **CHARGES AND BILLINGS**
   a. **Charges, Fees, and Taxes You Must Pay.** You agree to pay all charges associated with the Service(s), including, but not limited to, installation/service call charges, monthly service charges, XFINITY Equipment (as defined below) charges, measured and per-call charges, applicable federal, state, and local taxes and fees (however designated), regulatory recovery fees for municipal, state and federal government fees or assessments imposed on Comcast, permitted fees and cost recovery charges, or any programs in which Comcast participates, including, but not limited to, public, educational, and governmental access, universal service, telecom relay services for the visually/hearing impaired, rights-of-way access, and programs supporting the 911/E911 system and any fees or payment obligations imposed by governmental or quasi-governmental bodies for the sale, installation, use, or provision of the Service(s). **YOU WILL BE RESPONSIBLE FOR PAYING ANY GOVERNMENT IMPOSED FEES AND TAXES THAT BECOME APPLICABLE RETROACTIVELY.** We will provide you with notice and an effective date of any change in our prices or fees, unless the change in price is related to a change in governmental or quasi-governmental taxes, fees, or assessments, in which case we may elect not to provide notice except where required by applicable law. Not all fees apply to all Service(s).
      - **For XFINITY Video Customers.** XFINITY Video price information is supplied with our

Welcome Kit.

- **For XFINITY Internet Customers.** XFINITY Internet price information is available at www.comcast.com (or an alternative site if we notify you).
- **For XFINITY Voice Customers.** XFINITY Voice price information is available at www.comcast.com/voice/terms-of-service (or an alternative site if we notify you).
- **For Minimum Term Customers.** If you have agreed to a minimum term arrangement, your price for Service(s) is as specified in the minimum term arrangement.

b. **How We Will Bill You.** Unless you are subject to a minimum term arrangement, Service(s) are provided to you on a month-to-month basis. **If you are receiving Service(s) at a trial or introductory rate, you may cancel your Service(s) at the end of the trial or introductory period by calling your local Comcast customer service center.** You will generally be billed monthly, in advance, for recurring service charges, equipment charges, and fees. **YOU MUST PAY, ON OR BEFORE THE DAY WE INSTALL ANY OR ALL OF THE SERVICE(S), THE FIRST MONTH'S SERVICE CHARGES, XFINITY EQUIPMENT CHARGES, ANY DEPOSITS, AND ANY INSTALLATION CHARGES.** Your first bill may include pro-rated charges from the date you first begin receiving Service(s), as well as monthly recurring charges for the next month and charges for non-recurring services you have received. You may be billed for some Service(s) individually after they have been provided to you; these include measured and per-call charges (as explained below) and charges for pay-per-view movies or events, interactive television, and e-commerce. If you receive Service(s) under a promotion, after the promotional period ends, regular charges for the Service(s) will apply.

We do not waive our rights to collect the full balance owed to us by accepting partial payment. We will apply the partial payment to the outstanding charges in the amounts and proportions that we determine.

- **For XFINITY Voice Customers.** If you pay a flat monthly fee for your calling plan, that fee may not cover certain types of calls. You will be billed for these excluded call types on a per-call basis (e.g., operator services) or a measured basis (e.g., international calls).

  Generally, for billing purposes, a measured call begins when the call is answered by the called party or an automated answering device (such as an answering machine or fax machine); it ends when one of the parties disconnects the call. However, some providers (e.g., those involved in calls to foreign countries) charge for a completed call when the called party's line rings or after a certain number of rings. If such a provider charges Comcast, its affiliates, or suppliers as if your call were answered by the called party, Comcast will charge you for a completed call.

  Measured calls are recorded in whole minutes, with partial minutes rounded up to the next whole minute. If the charge for a measured call or for taxes or surcharges includes a fraction of a cent, the fraction is rounded up to the nearest whole cent. See www.comcast.com/voice/terms-of-service for information on per-call charges and the timing of measured-call charges.

  If your usage charges for XFINITY Voice exceed typical residential usage charges, we may: (i) require you to make advance payments for XFINITY Voice, which we may offset against any unpaid balance on your account; (ii) establish a credit limit for usage charges for XFINITY Voice and/or features; and/or (iii) restrict XFINITY Voice or features. If you exceed your credit limit, we reserve the right to suspend XFINITY Voice and require payment for usage charges assessed to your account.

  Our paper bills for XFINITY Voice contain only a summary of charges. Detailed information is available for a limited period at a password-protected portion of our website. You may call 1-800-XFINITY for a paper copy of outbound toll call records related to your most recent bill. There may be an additional charge for these paper copies except as otherwise required by applicable law.

c. **Third-Party Charges That Are Your Responsibility.** You acknowledge that you may incur charges with third-party service providers such as accessing on-line services, calling parties who charge for their telephone-based services, purchasing or subscribing to other

offerings via the Internet or interactive options on your XFINITY Video Service that are separate and apart from the amounts charged by us. You are solely responsible for all such charges payable to third parties, including all applicable taxes. In addition, you are solely responsible for protecting the security of credit card and other personal information provided to others in connection with such transactions.

**d. Alternative Billing Arrangements.** Comcast may agree to provide billing services on behalf of third parties, as the agent of the third party. Any such third-party charges shall be payable pursuant to any contract or other arrangement between you and the third party. We will not be responsible for any dispute regarding these charges between you and any third party. You must address all such disputes directly with the third party.

**e. Payment by Credit Card or Check.** If you use a credit card to pay for the Service(s), use of the card is governed by the card issuer agreement, and you must refer to that agreement for your rights and liabilities as a cardholder. If Comcast does not receive payment from your credit card issuer or its agents, you agree to pay all amounts due upon demand. If you make payment by check, you authorize Comcast to collect your check electronically. You agree that you may not amend or modify this Agreement with any restrictive endorsements (such as "paid in full"), or other statements or releases on or accompanying checks or other payments accepted by Comcast and any such notations shall have no legal effect.

**f. Our Remedies if You Pay Late or Fail to Pay.**

    **1. Late or Non-Payments:** You may be billed fees, charges, and assessments related to late or non-payments if for any reason (a) Comcast does not receive payment for the Service(s) by the payment due date or (b) you pay less than the full amount due for the Service(s).

- **For Maryland Customers. YOU WILL BE ASSESSED A LATE FEE OF 10% PER MONTH FOR ANY PAYMENT AMOUNT THAT HAS NOT BEEN PAID IN FULL AFTER 45 DAYS FROM THE DATE THE INVOICE WAS SENT, EXCEPT IN GARRETT AND ALLEGANY COUNTIES AND HANCOCK, MD. No more than three (3) monthly late fees will be imposed for any single payment amount that is past due, regardless of the period during which the payment remains past due.**
- **For Garrett and Allegany County, Maryland Customers. YOU WILL BE ASSESSED A LATE FEE OF $4.95 PER MONTH FOR EACH ACCOUNT THAT HAS NOT BEEN PAID IN FULL AFTER 45 DAYS FROM THE DATE THE INVOICE WAS SENT.**
- **For Hancock, Maryland Customers. YOU WILL BE ASSESSED A LATE FEE OF $2.00 PER MONTH FOR EACH ACCOUNT THAT HAS NOT BEEN PAID IN FULL AFTER 45 DAYS FROM THE DATE THE INVOICE WAS SENT.**

    **2. Fees Not Considered Interest or Penalties:** Comcast does not anticipate that you will fail to pay for the Service(s) on a timely basis, and we do not extend credit to customers. Any fees, charges, and assessments due to late payment or nonpayment are liquidated damages intended to be a reasonable advance estimate of our costs resulting from late payments and non-payments. These costs will be difficult to calculate or to predict when we set such fees, charges, and assessments, because we cannot know in advance: (a) whether you will pay for the Service(s) on a timely basis, if ever; (b) if you do pay late, when you will actually pay; and (c) what costs we will incur because of your late payment or non-payment.

    **3. Collection Costs:** If we use a collection agency or attorney to collect money owed by you, you agree to pay the reasonable costs of collection. These costs include, but are not limited to, any collection agency's fees, reasonable attorneys' fees, and arbitration or court costs.

    **4. Suspension/Disconnect:** If you fail to pay the full amount due for any or all of the Service(s) then Comcast, at its sole discretion in accordance with and subject to applicable law, may suspend or disconnect any or all the Service(s) you receive.

**g. Reconnection Fees and Related Charges.** If you resume Service(s) after any suspension, we may require you to pay a reconnection fee. If you reinstate any or all

Service(s) after disconnection, we may require you to pay an installation fee and/or service activation fee. These fees are in addition to all past due charges and other fees. Reconnection of the Service(s) is subject to our credit policies, this Agreement and applicable law.

**h. Our Right to Make Credit Inquiries. YOU AUTHORIZE COMCAST TO MAKE INQUIRIES AND TO RECEIVE INFORMATION ABOUT YOUR CREDIT EXPERIENCE FROM OTHERS, TO ENTER THIS INFORMATION IN YOUR FILE, AND TO DISCLOSE THIS INFORMATION CONCERNING YOU TO APPROPRIATE THIRD PARTIES FOR REASONABLE BUSINESS PURPOSES.** Comcast will not discriminate in the application of its credit inquiries and deposit policy on the basis of race, color, sex, creed, religion, nationality, sexual orientation, or marital status. Any risk assessments conducted by either Comcast or its third party credit bureau will be done in conformance with the requirements of all applicable state or federal laws.

**i. Your Responsibilities Concerning Billing Questions.** Subject to applicable law, if you intend to dispute a charge or request a billing credit, you must contact Comcast within sixty (60) days of the date on the bill. You waive any disputes or credits that you do not report within sixty (60) days.

- **For Sacramento, California Customers.** If there are any billing errors or other requests for credit, you must bring those to our attention within sixty (60) days of the time you receive the bill for which you are seeking correction, unless applicable law provides for a longer period which cannot be waived or otherwise modified. We will investigate and respond to all complaints within five (5) business days of the receipt of the complaint. In some cases, an investigation might require a search of historical records that could take up to 14 business days. If you believe a payment was made which was not credited to your account, a copy of a cancelled check or money order may be required and the disputed amount will be set aside for up to fourteen (14) days while you gather that documentation.

**3. REFUNDABLE DEPOSIT**

We may require you to pay a refundable deposit when you activate the Service(s), if you add XFINITY Equipment and/or Service(s) or if you fail to pay any amounts when they are due. If we disconnect your Service(s) or are otherwise required under applicable law to refund the deposit, we shall within forty-five (45) days or as otherwise specified by applicable law return a sum equal to the deposit(s) you paid (without interest unless otherwise required by law) minus any amounts due on your account (including without limitation, any amounts owed for the Service(s) or for any XFINITY Equipment that is damaged, altered, or not returned).

- **For Prince Georges, Maryland Customers.** If we disconnect your Service(s) or are otherwise required under applicable law to refund the deposit, we shall within thirty (30) days or your next billing cycle, whichever is earlier, return a sum equal to the deposit(s) you paid (without interest unless otherwise required by law) minus any amounts due on your account (including without limitation, any amounts owed for the Service(s) or for any XFINITY Equipment that is damaged, altered, or not returned).

**4. CHANGES TO SERVICES**

Subject to applicable law, we have the right to change our Service(s), XFINITY Equipment and rates or charges, at any time with or without notice. We also may rearrange, delete, add to, or otherwise change programming or features or offerings contained in the Service(s), including, but not limited to, content, functionality, hours of availability, customer equipment requirements, speed, and upstream and downstream rate limitations. If we do give you notice, it may be provided on your monthly bill, as a bill insert, e-mail, in a newspaper or other communication permitted under applicable law. If you find a change in the Service(s) unacceptable, you have the right to cancel your Service(s). However, if you continue to receive Service(s) after the change, this will constitute your acceptance of the change.

**5. ACCESS TO YOUR PREMISES AND CUSTOMER EQUIPMENT**

**a. Premises.** You agree to allow us and our agents the right to enter your property at which the Service(s) and/or XFINITY Equipment will be provided (the "Premises") at reasonable

times, for purposes of installing, configuring, maintaining, inspecting, upgrading, replacing and removing the Service(s) and/or XFINITY Equipment used to receive any of the Service(s). You warrant that you are either the owner of the Premises or that you have the authority to give us access to the Premises. If you are not the owner of the Premises, you are responsible for obtaining any necessary approval from the owner to allow us and our agents into the Premises to perform the activities specified above. In addition, you agree to supply us or our agent, if we ask, the owner's name, address, and phone number and/or evidence that the owner has authorized you to grant access to us and our agents to the Premises.

- **For California West Bay Area and San Francisco, California Customers.** If we fail to keep an appointment, we will credit your account with free installation or service call free of charge if the appointment was for an installation or service call for which a fee was to be charged or a minimum credit of $20.
- **For Sacramento, California Customers.** If we fail to keep an appointment, we will credit your account with one month of Limited Basic up to a maximum credit equal to one month of the Standard Cable price.

**b. Customer Equipment.** "Customer Equipment" means software, hardware or services that you elect to use in connection with the Service(s) or XFINITY Equipment. You agree to allow us and our agents the rights to insert cable cards and other hardware in the Customer Equipment, send software, firmware, and/or other programs to the Customer Equipment and install, configure, maintain, inspect and upgrade the Customer Equipment and XFINITY Equipment. You warrant you are either the owner of the Customer Equipment or that you have the authority to give us access to the Customer Equipment. If you are not the owner of the Customer Equipment, you are responsible for obtaining any necessary approval from the owner to allow us and our agents access to the Customer Equipment to perform the activities specified above. In addition, you agree to supply us or our agents, if we ask, the owner's name, address and phone number and/or evidence that the owner has authorized you to grant access to us and our agents to the Customer Equipment to perform the activities specified above.

**6. MAINTENANCE AND OWNERSHIP OF EQUIPMENT AND SOFTWARE**

**a. XFINITY Equipment.** "XFINITY Equipment" means any equipment provided by Comcast such as gateways, routers, cable modems, voice-capable modems, wireless gateway/routers, CableCARDs, converters, digital adapters, remote controls, and any other equipment provided or leased to you by us or our agents, excluding equipment purchased by you from Comcast and Customer Equipment. XFINITY Equipment also includes any software, firmware, or other programs contained within Customer Equipment or XFINITY Equipment. You agree that all XFINITY Equipment belongs to us or other third parties and will not be deemed fixtures or in any way part of the Premises. You agree to use XFINITY Equipment only for the Service(s) pursuant to this Agreement. We may remove or change the XFINITY Equipment at our discretion at any time the Service(s) are active or following the termination of your Service(s). You acknowledge and agree that our addition or removal of or change to the XFINITY Equipment may interrupt your Service(s). You may not sell, lease, abandon, or give away the XFINITY Equipment, or permit any other provider of video, broadband Internet (high speed data) or telephone services to use the XFINITY Equipment. The XFINITY Equipment may only be used in the Premises. At your request, we may relocate the XFINITY Equipment in the Premises for an additional charge, at a time agreeable to you and us. YOU UNDERSTAND AND ACKNOWLEDGE THAT IF YOU ATTEMPT TO INSTALL OR USE THE XFINITY EQUIPMENT OR SERVICE(S) AT A LOCATION OTHER THAN THE PREMISES, THE SERVICE(S) MAY FAIL TO FUNCTION OR MAY FUNCTION IMPROPERLY. You agree that you will not allow anyone other than Comcast or its agents to service the XFINITY Equipment. We suggest that the XFINITY Equipment in your possession be covered by your homeowners, renters, or other insurance. You will be directly responsible for loss, repair, replacement and other costs, damages, fees and charges if you do not return the XFINITY Equipment to us in an undamaged condition.

**b. Customer Equipment.**

**1. Responsibility:** Comcast has no responsibility for the operation or support, maintenance, or repair of any Customer Equipment including, but not limited to, Customer Equipment to which Comcast or a third party has sent software, firmware, or other programs.

- **For XFINITY Video, XFINITY Internet, and XFINITY Voice Customers.** You agree by using the Service(s), you are enabling and authorizing (i) Comcast, its authorized agents and equipment manufacturers to send code updates to the XFINITY Equipment and Customer Equipment, including, but not limited to, cable modems, digital interactive televisions with CableCARDs, and voice-capable modems at any time it is determined necessary to do so as part of the Service(s): and (ii) Comcast and its authorized agents to use the XFINITY Equipment, Customer Equipment and Inside Wiring connected to our cable network to provide the Service(s) to you and others, including, but not limited to, the XFINITY Internet WiFi Home Hotspot ("HHS"). Such code updates may change, add or remove features or functionality of any such equipment or the Service(s).

- **For XFINITY Internet and XFINITY Voice Customers.** You can find Comcast's current minimum technical and other requirements for XFINITY Internet customers at http://customer.comcast.com/help-and-support/internet and for XFINITY Voice customers at http://customer.comcast.com/help-and-support/phone. These requirements may be located at an alternative site if we so notify you. To use XFINITY Voice, you will need a voice-capable modem that meets our specifications. In some areas, we may permit you to use XFINITY Voice with a voice-capable modem that you have purchased. Depending on availability in your area, you may have an option to install the voice-capable modem yourself or to have Comcast install it for you. You agree to keep the voice-capable modem plugged into a working electrical power outlet at all times. Whether a cable modem, gateway/router, voice-capable modem or other device is owned by you or us, we have the unrestricted right, but not the obligation, to upgrade or change the firmware in these devices remotely or on the Premises at any time that we determine it necessary or desirable in order to provide Service(s) to you in accordance with our specifications and requirements.

- **For XFINITY Voice Customers.** You acknowledge and understand XFINITY Voice may not support or be compatible with non-recommended configurations including, but not limited to, voice-capable modems not currently certified by Comcast as compatible with XFINITY Voice; Customer Equipment, including, but not limited to, non-voice communications equipment, including certain makes or models of alarm and security systems or devices, certain medical monitoring devices, personal emergency alert, and home detention devices, certain fax machines, and certain "dial-up" modems; rotary-dial phone handsets, pulse-dial phone handsets, and models of other voice-related communications equipment such as private branch exchange (PBX) equipment, answering machines, and traditional Caller ID units. In order to use XFINITY Voice, you are required to provide certain equipment such as a phone handset or equivalent, inside phone wiring and outlets, and an electrical power outlet. CERTAIN MAKES AND MODELS OF CORDLESS PHONES USE THE ELECTRICAL POWER IN YOUR HOME. IF THERE IS AN ELECTRICAL POWER OUTAGE, THE CORDLESS PHONE WILL CEASE TO OPERATE DURING THE OUTAGE, PREVENTING USE OF XFINITY VOICE VIA THE CORDLESS PHONE. DO NOT ATTEMPT TO CONNECT XFINITY VOICE TO INSIDE PHONE WIRING YOURSELF. In order to use online features of XFINITY Voice, where we make those features available, you are required to provide certain hardware, such as a personal computer, software, an Internet browser, and access to the Internet.

- **For Unlimited Select and Local Select Customers.** You acknowledge and understand Unlimited Select and Local Select will not support or be compatible with: non-recommended configurations including, but not limited to, voice-capable modems not currently certified by Comcast as compatible with Unlimited Select

and Local Select; Customer Equipment, including, but not limited to, non-voice communications equipment, including certain alarm and security systems or devices, medical monitoring devices, personal emergency alert, and home detention devices, certain fax machines, and certain "dial-up" modems; rotary-dial phone handsets, pulse-dial phone handsets, and models of other voice-related communications equipment such as private branch exchange (PBX) equipment, answering machines, and traditional Caller ID units. In order to use Unlimited Select and Local Select, you are required to provide certain equipment such as a phone handset or equivalent, inside phone wiring and outlets, and an electrical power outlet. IF THERE IS AN ELECTRICAL POWER OUTAGE TO THE COMCAST NETWORK IN YOUR AREA, YOUR UNLIMITED SELECT AND LOCAL SELECT WILL CEASE TO OPERATE DURING THE OUTAGE, PREVENTING INBOUND OR OUTBOUND COMMUNICATIONS TO OR FROM SYSTEMS OR DEVICES CONNECTED TO UNLIMITED SELECT AND LOCAL SELECT, INCLUDING, BUT NOT LIMITED TO, HOME ALARM OR HOME SECURITY SYSTEMS, MEDICAL MONITORING DEVICES, PERSONAL EMERGENCY ALERT DEVICES OR HOME DETENTION DEVICES. DO NOT ATTEMPT TO CONNECT UNLIMITED SELECT AND LOCAL SELECT TO INSIDE PHONE WIRING YOURSELF. In order to use online features of Unlimited Select and Local Select, where we make those features available, you are required to provide certain hardware, such as a personal computer, software, an Internet browser, and access to the Internet.

2. **Non-Recommended Configurations:** Customer Equipment that does not meet Comcast's minimum technical or other specifications constitutes a "Non-Recommended Configuration." NEITHER COMCAST NOR ANY OF ITS AFFILIATES, SUPPLIERS OR AGENTS WARRANT THAT A NON-RECOMMENDED CONFIGURATION WILL ENABLE YOU TO SUCCESSFULLY INSTALL, ACCESS, OPERATE, OR USE THE SERVICE(S). YOU ACKNOWLEDGE THAT ANY SUCH INSTALLATION, ACCESS, OPERATION, OR USE COULD CAUSE CUSTOMER EQUIPMENT TO FAIL TO OPERATE OR CAUSE DAMAGE TO CUSTOMER EQUIPMENT, YOU, YOUR PREMISES OR XFINITY EQUIPMENT. NEITHER COMCAST NOR ANY OF ITS AFFILIATES, SUPPLIERS OR AGENTS SHALL HAVE ANY LIABILITY WHATSOEVER FOR ANY SUCH FAILURE OR DAMAGE. Comcast reserves the right to deny you customer support for the Service(s) and/or terminate Service(s) if you use a Non-Recommended Configuration.

3. **No Unauthorized Devices or Tampering:** You agree not to attach or assist any person to attach, any unauthorized device to our cable network, XFINITY Equipment or the Service(s). If you make or assist any person to make any unauthorized connection or modification to XFINITY Equipment or the Service(s) or any other part of our cable network, we may terminate your Service(s) and recover such damages as may result from your actions.

You also agree that you will not attach anything to the Inside Wiring, XFINITY Equipment, or Customer Equipment, whether installed by you or us, which singly or together impairs the integrity of our cable network or degrades our cable network's signal quality or strength or creates signal leakage.

You also agree that we may recover damages from you for tampering with any XFINITY Equipment or any other part of our cable network or for receiving unauthorized Service(s). You agree that it would be difficult, if not impossible, to calculate precisely the lost revenue resulting from your receipt of unauthorized Service(s) or the tampering with XFINITY Equipment or our cable network. You therefore agree to pay us as liquidated damages, the sum of $500.00 per device used to receive the unauthorized Service(s) in addition to our cost to replace any altered, damaged, or unreturned XFINITY Equipment or other equipment owned by Comcast, including any incidental costs. The unauthorized reception of the Service(s) may also result in criminal fines and/or imprisonment.

- **For XFINITY Voice Customers.** You will be liable for all authorized and unauthorized XFINITY Voice use at the Premises. You agree to notify us immediately in writing or by calling 1-800-XFINITY during normal business hours if your voice-

capable modem has been stolen or your Service(s) are being stolen or used without your authorization. When you call or write, you must provide your account number and a detailed description of the circumstances of the theft of your voice-capable modem or unauthorized XFINITY Voice use. If you fail to notify us in a timely manner, your Service(s) may be terminated without notice and you may incur additional charges.

**c. Inside Wiring.** You may install wiring inside your Premises ("Inside Wiring"), such as additional cable wiring and outlets, provided it does not interfere with the normal operations of our cable network. If you have us install Inside Wiring, we will charge you for that service. Regardless of who installed it, we consider the Inside Wiring your property or the property of whomever owns the Premises. Accordingly, you are responsible for the repair and maintenance of the Inside Wiring, unless you and Comcast have agreed otherwise in writing (If you do not own the Premises, contact your landlord or building manager about the installation, repair or maintenance of Inside Wiring.) If you have us repair or maintain the Inside Wiring, we will charge you for that service.

- **For Sacramento, California Customers.** Comcast will be responsible to repair any defects of the Inside Wiring installed by Comcast for thirty (30) days after new residential video installations.
- **For XFINITY Voice Customers.** Except as described below, you may use XFINITY Voice with your telephone Inside Wiring, as long as we have reasonable access to it and you have the right to give us access to it. If you wish to have your voice-capable modem connected to your telephone Inside Wiring, you are advised to have a Comcast technician perform the installation. To make that connection, we must first disconnect your telephone Inside Wiring from the network of your existing telephone provider, which may disable any services you receive from them. If you install XFINITY Voice yourself (where self-installation is an option), you should connect the voice-capable modem to a cordless phone, not directly to your telephone Inside Wiring. If the voice-capable modem is connected to your telephone Inside Wiring without first disconnecting the wiring from any existing telephone provider's network, the voice-capable modem may be damaged and/or XFINITY Voice may not operate properly.

**d. End User Software Licenses.** Your use of the software, firmware, and other programs contained within the XFINITY Equipment, and of any other software or plug-ins to such software distributed or used in connection with the Services shall comply with the terms of the Comcast Software License Agreement (www.comcast.net/terms/license), and any other end user license agreements accompanying such software, as such agreements may be amended from time to time. All such agreements are incorporated in this Agreement by reference. When this Agreement terminates, all end user licenses also terminate; you agree to destroy at that time all versions and copies of all software received by you in connection with the Services.

## 7. USE OF SERVICES

You agree that the Service(s) and the XFINITY Equipment will be used only for personal, residential non-commercial purposes, unless otherwise specifically authorized by us in writing. You will not use the XFINITY Equipment at any time at an address other than the Premises without our prior written authorization. You agree and represent that you will not resell or permit another to resell the Service(s) in whole or in part. You will not use or permit another to use the XFINITY Equipment or the Service(s), directly or indirectly, for any unlawful purpose, including, but not limited to, in violation of any posted Comcast policy applicable to the Service(s). Use of the XFINITY Equipment or Service(s) for transmission, communications or storage of any information, data or material in violation of any U.S. federal, state or local regulation or law is prohibited. You acknowledge that you are accepting this Agreement on behalf of all persons who use the XFINITY Equipment and/or Service(s) at the Premises and that you shall have sole responsibility for ensuring that all other users understand and comply with the terms and conditions of this Agreement and any applicable Comcast policies including, but not limited to, acceptable use and privacy policies. You further acknowledge and agree that you shall be

solely responsible for any transactions, including, without limitation, purchases made through or in connection with the Service(s). You agree to indemnify, defend and hold harmless Comcast and its affiliates, suppliers, and agents against all claims and expenses (including reasonable attorneys' fees) arising out of the use of the Service(s), the XFINITY Equipment and/or the Customer Equipment or the breach of this Agreement or any of the applicable Comcast policies by you or any other user of the Service(s) at the Premises. You shall not be required to indemnify Comcast and its affiliates, suppliers, and agents with respect to third parties use of HHS.

- **For XFINITY Internet Customers.** The Comcast Acceptable Use Policy ("AUP") and other policies concerning XFINITY Internet are posted at http://www.comcast.com/Corporate/Customers/Policies/Policies.html (or an alternative website if we so notify you). You further agree that Comcast may modify the AUP or other policies from time to time. Notwithstanding anything to the contrary in this Agreement, YOU ACKNOWLEDGE AND AGREE THAT THE TERMS OF THE AUP AND ANY OTHER APPLICABLE COMCAST POLICIES MAY BE PUT INTO EFFECT OR REVISED FROM TIME TO TIME WITH OR WITHOUT NOTICE BY POSTING A NEW VERSION OF THE AUP OR POLICY AS SET FORTH ABOVE. YOU AND OTHER USERS OF THE SERVICE(S) SHOULD CONSULT THE AUP AND ALL POSTED POLICIES REGULARLY TO CONFORM TO THE MOST RECENT VERSION.

- **For XFINITY Voice Customers.** The Comcast Acceptable Use Policy for Residential Voice Services ("Voice AUP") is posted at http://www.comcast.com/Corporate/Customers/Policies/Policies.html (or an alternative website if we so notify you). COMCAST RESERVES THE RIGHT TO LIMIT OR BLOCK ANY XFINITY VOICE USAGE AS COMCAST DEEMS NECESSARY TO PREVENT HARM TO ITS NETWORK, FRAUD, OR OTHER ABUSE OF XFINITY VOICE SERVICES. You agree the voice-capable modem and XFINITY Voice will only be used at the Premises, except that certain online features may be accessible from locations other than the Premises. You understand and acknowledge that if you improperly install the XFINITY Equipment or XFINITY Voice at another location in the Premises, then XFINITY Voice, including, but not limited to, 911/E911, may fail to function or may function improperly. If you move the voice-capable modem or XFINITY Voice to another location without notifying us, you do so in violation of this Agreement and at your own risk. You agree not to use XFINITY Voice for auto-dialing, continuous or extensive call forwarding, telemarketing, fax broadcasting or fax blasting, or for any other use that results in usage inconsistent with normal residential calling patterns. If we determine, in our sole discretion, that your use of XFINITY Voice is in violation of this Agreement, we reserve the right (1) to terminate or modify immediately and without notice or (2) to assess additional charges for each month in which such violation occurred.

8. **ASSIGNABILITY**

This Agreement and the Service(s) furnished hereunder may not be assigned by you. You agree to notify us immediately of any changes of ownership or occupancy of the Premises. We may freely assign our rights and obligations under this Agreement with or without notice to you.

9. **TERMINATION OF THIS AGREEMENT**

   a. **Term.** This Agreement will be in effect from the time that the Service(s) are activated until (1) it is terminated as provided for by this Agreement or by any addendum to this Agreement or (2) it is replaced by a revised Agreement. If you self-install XFINITY Equipment, Service(s) charges begin the earliest of (1) the day on which you picked up XFINITY Equipment at our service center, (2) the day you install the Service(s), or (3) five (5) days after the date we ship the XFINITY Equipment to you. If you self-install a voice-capable modem, cable modem, or converter you obtained from a source other than Comcast, charges begin the day your order for the Service(s) is entered into our billing system. The option to self-install a voice-capable modem, cable modem, or converter and/or to use a non-Comcast-supplied voice-capable modem, cable modem or converter is subject to availability.

   b. **Termination by You.** Unless you have signed a minimum term addendum, you may terminate this Agreement for any reason at any time by notifying Comcast in one of three

ways: (1) send a written notice to the postal address of your local Comcast business office; (2) send an electronic notice to the e-mail address specified on www.comcast.com; or (3) call our customer service line during normal business hours. Subject to applicable law or the terms of any agreements with governmental authorities, all applicable fees and charges for the Service(s) will accrue until this Agreement has terminated, the Service(s) have been disconnected, and all XFINITY Equipment has been returned. We will refund all prepaid monthly service fees charged for Service(s) after the date of termination (less any outstanding amounts due Comcast for the Service(s), affiliate services, XFINITY Equipment, or other applicable fees and charges).

- **For Prince Georges County, Maryland Customers.** All applicable fees and charges will accrue until the termination of this Agreement or the date you request the Service(s) to be disconnected, whichever is earlier.

**c. Suspension and Termination by Comcast.** Under the conditions listed below, Comcast reserves the right, subject to applicable law, to act immediately and without notice to terminate or suspend the Service(s) and/or to remove from the Service(s) any information transmitted by or to any authorized users (e.g., email or voicemail). Comcast may take these actions if it: (1) determines that your use of the Service(s) does not conform with the requirements set forth in this Agreement, (2) determines that your use of the Service(s) interferes with Comcast's ability to provide the Service(s) to you or others, (3) reasonably believes that your use of the Service(s) may violate any laws, regulations, or written and electronic instructions for use, or (4) reasonably believes that your use of the Service(s) interferes with or endangers the health and/or safety of our personnel or third parties. Comcast's action or inaction under this Section shall not constitute review or approval of your or any other users' use of the Service(s) or information transmitted by or to you or users.

**d. Your Obligations Upon Termination.** You agree that upon termination of this Agreement you will do the following:

1. You will immediately cease all use of the Service(s) and all XFINITY Equipment;
2. Except as provided in Section 9(b) for Prince Georges County Customers, you will pay in full for your use of the Service(s) up to the date that this Agreement has been terminated and the Service(s) are disconnected; and
3. Within ten (10) days of the date on which Service(s) are disconnected, you will return all XFINITY Equipment to us at our local business office or to our designee in working order, normal wear and tear excepted. Otherwise, you will be charged the amount set forth in the current pricing lists for such XFINITY Equipment, or the revised amount for which you receive notice; if no amount has been specified for the particular model of XFINITY Equipment, you will be charged the retail price for a new replacement. You may also be charged incidental costs that we incur in replacing the XFINITY Equipment. Upon our request during regular business hours at a time agreed upon by you and us, you will permit us and our employees, agents, contractors, and representatives to access the Premises during regular business hours to remove all XFINITY Equipment and other material provided by Comcast.

   - **For Prince Georges County, Maryland Customers.** Within five (5) business days of the date on which Service(s) are disconnected, you will return all XFINITY Equipment to us at our local business office or to our designee in working order, normal wear and tear excepted or make arrangements for Comcast to recover the XFINITY Equipment. Otherwise, you will be charged the amount set forth in the current pricing lists for such XFINITY Equipment, or the revised amount for which you receive notice; if no amount has been specified for the particular model of XFINITY Equipment, you will be charged the retail price for a new replacement. You may also be charged incidental costs that we incur in replacing the XFINITY Equipment. Upon our request, you will permit us and our employees, agents, contractors, and representatives to access the Premises during regular business hours to remove the XFINITY Equipment and other material provided by Comcast. We will conduct this removal at a time agreed on by you and us, and you will ensure that all XFINITY

Equipment is returned to Comcast.

- **For Montgomery County, Maryland XFINITY Internet Customers.** If you are mobility impaired, upon your request, we will arrange for the pickup or exchange of your cable modem at the Premises.

## 10. LIMITED WARRANTY

THE XFINITY EQUIPMENT AND THE SERVICE(S) ARE PROVIDED "AS IS," WITHOUT WARRANTY OF ANY KIND, EITHER EXPRESS OR IMPLIED. NEITHER COMCAST NOR ITS AFFILIATES, SUPPLIERS, EMPLOYEES, AGENTS, CONTRACTORS, DISTRIBUTORS, LICENSORS OR BUSINESS PARTNERS WARRANT THAT THE XFINITY EQUIPMENT OR THE SERVICE(S) WILL MEET YOUR REQUIREMENTS, PROVIDE UNINTERRUPTED USE, OR OPERATE AS REQUIRED, WITHOUT DELAY, OR WITHOUT ERROR. NEITHER COMCAST NOR ITS AFFILIATES, SUPPLIERS, EMPLOYEES, AGENTS, CONTRACTORS, DISTRIBUTORS, LICENSORS OR BUSINESS PARTNERS WARRANT THAT ANY COMMUNICATIONS WILL BE TRANSMITTED IN UNCORRUPTED FORM. ALL REPRESENTATIONS AND WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTIES OF PERFORMANCE, NONINFRINGEMENT, FITNESS FOR A PARTICULAR PURPOSE OR MERCHANTABILITY, ARE HEREBY DISCLAIMED AND EXCLUDED UNLESS OTHERWISE PROHIBITED OR RESTRICTED BY APPLICABLE LAW.

## 11. LIMITATION OF COMCAST'S LIABILITY

a. **Application.** The limitations of liability set forth in this Section apply to any acts, omissions, and negligence of Comcast and its underlying third-party service providers, agents, suppliers, distributors, licensors and business partners (and their respective officers, employees, agents, contractors or representatives) which, but for that provision, would give rise to a cause of action in contract, tort or under any other legal doctrine.

b. **Customer Equipment.** CUSTOMER EQUIPMENT MAY BE DAMAGED OR SUFFER SERVICE OUTAGES AS A RESULT OF THE INSTALLATION, SELF-INSTALLATION, USE, INSPECTION, MAINTENANCE, UPDATING, REPAIR, AND REMOVAL OF XFINITY EQUIPMENT, CUSTOMER EQUIPMENT AND/OR THE SERVICE(S). EXCEPT FOR GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, NEITHER COMCAST NOR ANY OF ITS AFFILIATES, SUPPLIERS, EMPLOYEES, AGENTS, CONTRACTORS, DISTRIBUTORS, LICENSORS OR BUSINESS PARTNERS SHALL HAVE ANY LIABILITY WHATSOEVER FOR ANY DAMAGE, LOSS, OR DESTRUCTION TO THE CUSTOMER EQUIPMENT. IN THE EVENT OF GROSS NEGLIGENCE OR WILLFUL MISCONDUCT BY COMCAST, SUPPLIERS, EMPLOYEES, AGENTS, CONTRACTORS, DISTRIBUTORS, LICENSORS OR BUSINESS PARTNERS WE SHALL PAY AT OUR SOLE DISCRETION FOR THE REPAIR OR REPLACEMENT OF THE DAMAGED CUSTOMER EQUIPMENT UP TO A MAXIMUM OF $500. THIS SHALL BE YOUR SOLE AND EXCLUSIVE REMEDY RELATING TO SUCH ACTIVITY.

- **For XFINITY Internet and XFINITY Video Customers.** YOU UNDERSTAND THAT YOUR COMPUTER OR OTHER DEVICES MAY NEED TO BE OPENED, UPDATED, ACCESSED OR USED EITHER BY YOU OR BY US OR OUR AGENTS, IN CONNECTION WITH THE INSTALLATION, UPDATING OR REPAIR OF XFINITY INTERNET OR VIDEO SERVICE(S). THE OPENING, ACCESSING OR USE OF YOUR COMPUTER, OTHER DEVICES USED IN CONNECTION WITH XFINITY INTERNET OR VIDEO SERVICE(S) MAY VOID WARRANTIES PROVIDED BY THE COMPUTER OR OTHER DEVICE MANUFACTURER OR OTHER PARTIES RELATING TO THE COMPUTER'S OR DEVICE'S HARDWARE OR SOFTWARE. NEITHER COMCAST NOR ANY OF ITS AFFILIATES, SUPPLIERS, OR AGENTS, SHALL HAVE ANY LIABILITY WHATSOEVER AS THE RESULT OF THE VOIDING OF ANY SUCH WARRANTIES.

c. **Other Services or Equipment.** BY ACCEPTING THIS AGREEMENT, YOU WAIVE ALL CLAIMS AGAINST COMCAST FOR INTERFERENCE, DISRUPTION, OR INCOMPATIBILITY BETWEEN THE XFINITY EQUIPMENT OR THE SERVICE(S) AND ANY OTHER SERVICE, SYSTEMS, OR EQUIPMENT. IN THE EVENT OF SUCH INTERFERENCE, DISRUPTION, OR INCOMPATIBILITY, YOUR SOLE REMEDY SHALL BE TO TERMINATE THE SERVICE(S) IN

ACCORDANCE WITH SECTION 9.

**d.  Software.** When you use certain features of the Service(s), such as online features (where available), you may require special software, applications, and/or access to the Internet. Comcast makes no representation or warranty that any software or application installed on Customer Equipment, downloaded to Customer Equipment, or available through the Internet does not contain a virus or other harmful feature. It is your sole responsibility to take appropriate precautions to protect any Customer Equipment from damage to its software, files, and data as a result of any such virus or other harmful feature. We may, but are not required to, terminate all or any portion of the installation or operation of the Service(s) if a virus or other harmful feature or software is found to be present on your Customer Equipment. We are not required to provide you with any assistance in removal of viruses. If we decide, in our sole discretion, to install or run virus check software on your Customer Equipment, we make no representation or warranty that the virus check software will detect or correct any or all viruses. You acknowledge that you may incur additional charges for any service call made or required on account of any problem related to a virus or other harmful feature detected on your Customer Equipment. NEITHER COMCAST NOR ITS AFFILIATES, SUPPLIERS, EMPLOYEES, AGENTS, CONTRACTORS, DISTRIBUTORS, LICENSORS OR BUSINESS PARTNERS SHALL HAVE ANY LIABILITY WHATSOEVER FOR ANY DAMAGE TO OR LOSS OF ANY HARDWARE, SOFTWARE, FILES, OR DATA RESULTING FROM A VIRUS, ANY OTHER HARMFUL FEATURE, OR FROM ANY ATTEMPT TO REMOVE IT. In addition, as part of the installation process for the software and other components of the Service(s), system files on your Customer Equipment may be modified. Comcast does not represent, warrant or covenant that these modifications will not disrupt the normal operations of any Customer Equipment including without limitation your computer(s), or cause the loss of files. Comcast does not represent, warrant, or covenant that the installation of the special software or applications or access to our Web portal(s) will not cause the loss of files or disrupt the normal operations of any Customer Equipment, including, but not limited to, your computer(s). FOR THESE AND OTHER REASONS, YOU ACKNOWLEDGE AND UNDERSTAND THE IMPORTANCE OF BACKING UP ALL FILES TO ANOTHER STORAGE MECHANISM PRIOR TO SUCH ACTIVITIES. YOU UNDERSTAND AND ACCEPT THE RISKS IF YOU DECIDE NOT TO BACK UP FILES. NEITHER COMCAST NOR ITS AFFILIATES, SUPPLIERS, EMPLOYEES, AGENTS, CONTRACTORS, DISTRIBUTORS, LICENSORS OR BUSINESS PARTNERS SHALL HAVE ANY LIABILITY WHATSOEVER FOR ANY DAMAGE TO OR LOSS OF ANY SOFTWARE, FILES, OR DATA.

**e.  Disruption of Services.** The Service(s) are not fail-safe and are not designed or intended for use in situations requiring fail-safe performance or in which an error or interruption in the Service(s) could lead to severe injury to business, persons, property, or environment ("High Risk Activities"). These High Risk Activities may include, without limitation, vital business, or personal communications, or activities where absolutely accurate data or information is required. You expressly assume the risks of any damages resulting from High Risk Activities. We shall not be liable for any inconvenience, loss, liability, or damage resulting from any interruption of the Service(s), directly or indirectly caused by, or proximately resulting from, any circumstances beyond our control, including, but not limited to, causes attributable to you or your property; inability to obtain access to the Premises; failure of any signal at the transmitter; failure of a communications satellite; loss of use of poles, or other utility facilities; strike; labor dispute; riot or insurrection; war; explosion; malicious mischief; fire, flood, lightning, earthquake, wind, ice, extreme weather conditions, or other acts of God; failure or reduction of power; or any court order, law, act or order of government restricting or prohibiting the operation or delivery of the Service(s). In all other cases of an interruption of the Service(s), you shall be entitled upon a request made within sixty (60) days of such interruption, to a pro rata credit for any Service(s) interruption exceeding twenty-four consecutive hours after such interruption is reported to us, or such other period of time as may be specifically provided by law. Unless specifically provided by law, such credit shall not exceed the fixed monthly charges for the month of such Service(s) interruption and excludes all nonrecurring charges, one-time charges, per call or measured

charges, regulatory fees and surcharges, taxes and other governmental and quasi-governmental fees. **EXCEPT AND UNLESS SPECIFICALLY PROHIBITED BY LAW, SUCH CREDIT SHALL BE YOUR SOLE AND EXCLUSIVE REMEDY FOR AN INTERRUPTION OF SERVICE(S).** Any credits provided by Comcast are at our sole discretion and in no event shall constitute or be construed as a course of conduct by Comcast.

- **For Connecticut XFINITY Video Customers.** In the event of an interruption of XFINITY Video of more than twenty four (24) consecutive hours and of which Comcast has received actual notice, a credit will be issued to your XFINITY Video monthly service charges for the length of time XFINITY Video was interrupted.
- **For Maine XFINITY Video Customers.** In the event your XFINITY Video services are interrupted for more than six (6) consecutive hours in a thirty (30) day period, you may request a pro-rate credit or refund by calling 1-800-XFINITY.
- **For New York XFINITY Video Customers.** In the event of an interruption of XFINITY Video for at least four (4) hours between 6:00 p.m. and 12:00 a.m., except for emergency notice events, a credit equal to one day will be issued to your XFINITY Video monthly service charges. If your XFINITY Video is interrupted for less than four (4) hours or outside of the hours of 6:00 p.m. and 12:00 a.m., please call 1-800-XFINITY to request a credit.
- **For Vermont XFINITY Video Customers.** In the event of an interruption of XFINITY Video for more than twenty-four (24) consecutive hours and of which Comcast has received actual notice, Comcast will issue a credit to your XFINITY Video monthly service charges for the total period of the interruption in an amount proportionate to your regular monthly service charge. If Comcast has not been made aware of the interruption, you must call 1-800-XFINITY to request a credit.
- **For Montgomery County, Maryland.**
  - **XFINITY Video Customers.** Under its franchise with Montgomery County, Maryland, Comcast has the following rebate policy: In the event of a XFINITY Video Service interruption (loss of picture or sound of one or more channels to any customer) Comcast shall repair the XFINITY Video Service interruption as soon as possible. This obligation is satisfied if Comcast offers you the next available repair appointment within the 24-hour period following the XFINITY Video Service interruption, or at your request to a mutually convenient later time for the repair call, and successfully repairs the XFINITY Video Service interruption during the agreed upon appointment. If the Service interruption is not repaired at the time of the scheduled appointment, you will receive a credit of 10% of your normal monthly bill for XFINITY Video for each 24-hour period, or segment thereof, that the Service interruption continues beyond the scheduled repair call. You may contact Comcast at (301) 424-4400.
  - **XFINITY Internet Customers.** Under its franchise with Montgomery County, Maryland, Comcast has the following rebate policy: In the event of a Service interruption of XFINITY Internet (loss of cable modem service) Comcast shall repair the XFINITY Internet Service interruption as soon as possible. This obligation is satisfied if Comcast offers you the next available repair appointment within the 24-hour period following the XFINITY Internet Service interruption, or at your request, to a mutually convenient later time for the repair call, and successfully repairs the XFINITY Internet Service interruption during the agreed upon appointment. If the XFINITY Internet Service interruption is not repaired at the time of the scheduled appointment, you will receive a prorated credit for each 24-hour period, or segment thereof, that the XFINITY Internet Service interruption continues beyond the scheduled repair call. You may contact Comcast at (301) 424-4400.
- **For Prince Georges County, Maryland Customers.** In the event of a XFINITY Video Service interruption (loss of picture or sound of one or more channel to any customer) lasting between two (2) and six (6) hours, you shall be entitled upon request, to a pro-rata credit for such XFINITY Video Service interruption. In the event of a XFINITY Video Service interruption lasting between six (6) and twenty-four (24) consecutive hours,

you shall be entitled to a pro-rata credit equal to one day of monthly XFINITY Video Service charge.

- **For New Jersey Customers.** Comcast will issue credit for XFINITY Video Service outages or service interruptions in accordance with N.J.A.C. 14:18-3.5.
- **For XFINITY Voice Customers.** You understand and acknowledge that you will not be able to use XFINITY Voice under certain circumstances, including, but not limited to, the following: (1) if our network or facilities are not operating or (2) if normal electrical power to the voice-capable modem is interrupted and the voice-capable modem does not have a functioning battery backup. You also understand and acknowledge that the performance of a battery backup is not guaranteed.If the battery backup does not provide power, XFINITY Voice will not function until normal power is restored. You also understand and acknowledge that Comcast does not support priority restoration of XFINITY Voice. You also understand and acknowledge that you will not be able to use online features of XFINITY Voice (where available), under certain circumstances including, but not limited to, the interruption of your Internet connection.

f. **Directory Listings.** IF WE MAKE AVAILABLE AN OPTION TO LIST YOUR NAME, ADDRESS, AND/OR TELEPHONE NUMBER IN A PUBLISHED DIRECTORY (WHETHER IN PRINT OR ONLINE) OR DIRECTORY ASSISTANCE DATABASE, AND ONE OR MORE OF THE FOLLOWING CONDITIONS OCCURS: (1) YOU REQUEST THAT YOUR NAME, ADDRESS AND/OR PHONE NUMBER BE OMITTED FROM A DIRECTORY OR DIRECTORY ASSISTANCE DATABASE, BUT THAT INFORMATION IS INCLUDED IN EITHER OR BOTH; (2) YOU REQUEST THAT YOUR NAME, ADDRESS AND/OR PHONE NUMBER BE INCLUDED IN A DIRECTORY OR DIRECTORY ASSISTANCE DATABASE, BUT THAT INFORMATION IS OMITTED FROM EITHER OR BOTH; OR (3) THE PUBLISHED OR LISTED INFORMATION FOR YOUR ACCOUNT CONTAINS MATERIAL ERRORS OR OMISSIONS, THEN THE AGGREGATE LIABILITY OF COMCAST AND ITS AFFILIATES, SUPPLIERS OR AGENTS SHALL NOT EXCEED THE MONTHLY CHARGES, IF ANY, WHICH YOU HAVE ACTUALLY PAID TO COMCAST TO LIST, PUBLISH, NOT LIST, OR NOT PUBLISH THE INFORMATION FOR THE AFFECTED PERIOD. YOU SHALL HOLD HARMLESS COMCAST AND ITS AFFILIATES, SUPPLIERS OR AGENTS AGAINST ANY AND ALL CLAIMS FOR DAMAGES CAUSED OR CLAIMED TO HAVE BEEN CAUSED, DIRECTLY OR INDIRECTLY, BY THE ERRORS AND OMISSIONS REFERENCED ABOVE.

g. **Third Parties.** Notwithstanding anything to the contrary in this Agreement, you acknowledge and understand that we may use third parties to provide components of the Service(s), including without limitation, their services, equipment, infrastructure, or content. Comcast is not responsible for the performance (or non-performance) of third-party services, equipment, infrastructure, or content, whether or not they constitute components of the Service(s). Comcast shall not be bound by any undertaking, representation or warranty made by an agent, or employee of Comcast or of our underlying third-party providers and suppliers in connection with the installation, maintenance, or provision of the Service(s), if that undertaking, representation, or warranty is inconsistent with the terms of this Agreement. In addition, you understand that you will have access to the services and content of third parties through the Service(s), including without limitation that of content providers [whether or not accessible directly from the Service(s)]. Comcast is not responsible for any services, equipment, infrastructure, and content that are not provided by us [even if they are components of the Service(s)], and we shall have no liability with respect to such services, equipment, infrastructure, and content. You should address questions or concerns relating to such services, equipment, infrastructure, and content to the providers of such services, equipment, infrastructure, and content. We do not endorse or warrant any third-party products, services, or content that are distributed or advertised over the Service(s).

h. **Damages.** EXCEPT AS SPECIFICALLY PROVIDED IN THIS AGREEMENT, NEITHER COMCAST NOR ITS AFFILIATES, SUPPLIERS, EMPLOYEES, AGENTS, CONTRACTORS, DISTRIBUTORS, LICENSORS OR BUSINESS PARTNERS SHALL UNDER ANY CIRCUMSTANCES OR UNDER ANY LEGAL THEORY (INCLUDING, BUT NOT LIMITED TO,

TRESPASS, CONVERSION, TORT OR CONTRACT) HAVE ANY LIABILITY TO YOU OR TO ANY OTHER PERSON OR ENTITY FOR THE FOLLOWING LOSSES, DAMAGES, OR COSTS:

(1) ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL, TREBLE, PUNITIVE, EXEMPLARY, OR CONSEQUENTIAL LOSSES OR DAMAGES (INCLUDING, BUT NOT LIMITED TO, LOSS OF PROFITS, LOSS OF EARNINGS, LOSS OF BUSINESS OPPORTUNITIES, PERSONAL INJURIES, OR DEATH) THAT RESULT DIRECTLY OR INDIRECTLY FROM OR IN CONNECTION WITH (a) YOUR RELIANCE ON OR USE OF THE XFINITY EQUIPMENT OR THE SERVICE(S); b) THE INSTALLATION, SELF-INSTALLATION, MAINTENANCE, FAILURE, OR REMOVAL OF THE SERVICE(S) (INCLUDING, BUT NOT LIMITED TO, ANY MISTAKES, OMISSIONS, INTERRUPTIONS, COMPUTER OR OTHER HARDWARE OR SOFTWARE BREACH, FAILURES OR MALFUNCTIONS, DELETION OR CORRUPTION OF FILES, WORK STOPPAGE, ERRORS, DEFECTS, DELAYS IN OPERATION, DELAYS IN TRANSMISSION, OR FAILURE OF PERFORMANCE OF THE SERVICE(S), THE XFINITY EQUIPMENT, OR THE CUSTOMER EQUIPMENT, OR ANY OTHER MISTAKES, OMISSIONS, LOSS OF CALL DETAIL, E-MAIL, VOICEMAIL, OR OTHER INFORMATION OR DATA); (c) THE USE OF XFINITY EQUIPMENT OR CUSTOMER EQUIPMENT TO PROVIDE THE SERVICES, INCLUDING, BUT NOT LIMITED TO, DAMAGES RESULTING FROM OTHERS ACCESSING CUSTOMER EQUIPMENT, COMCAST'S NETWORK, OR THE CONTENTS OF YOUR TRANSMISSIONS MADE THROUGH THE SERVICE(S), OR YOUR USE OF FILE SHARING, PRINT SHARING, OR OTHER CAPABILITIES THAT ALLOW OTHERS TO GAIN ACCESS TO YOUR COMPUTER NETWORK. OR

(2) ANY LOSSES, CLAIMS, DAMAGES, EXPENSES, LIABILITIES, LEGAL FEES, OR OTHER COSTS THAT RESULT DIRECTLY OR INDIRECTLY FROM OR IN CONNECTION WITH ANY ALLEGATION, CLAIM, SUIT, OR OTHER PROCEEDING BASED UPON A CONTENTION THAT THE USE OF THE XFINITY EQUIPMENT OR THE SERVICE(S) BY YOU OR ANY OTHER PERSON OR ENTITY INFRINGES UPON THE CONTRACTUAL RIGHTS, PRIVACY, CONFIDENTIALITY, COPYRIGHT, PATENT, TRADEMARK, TRADE SECRET, OR OTHER INTELLECTUAL PROPERTY RIGHTS OF ANY THIRD PARTY.

**i. Customer's Sole Remedies.** Your sole and exclusive remedies under this Agreement are as expressly set forth in this Agreement. Certain of the above limitations may not apply if your state does not allow the exclusion or limitation of implied warranties or does not allow the limitation or exclusion of incidental or consequential damages. In those states, the liability of Comcast and its employees, affiliates, suppliers, agents, contractors, distributors, licensors and business partners is limited to the maximum extent permitted by law.

**j. Survival of Limitations.** All representations, warranties, indemnifications, and limitations of liability contained in this Agreement shall survive the termination of this Agreement; any other obligations of the parties hereunder shall also survive, if they relate to the period before termination or if, by their terms, they would be expected to survive such termination.

## 12. INDEMNIFICATION AND LIABILITY OF CUSTOMER

YOU AGREE THAT YOU SHALL BE RESPONSIBLE FOR AND SHALL DEFEND, INDEMNIFY, AND HOLD HARMLESS COMCAST AND ITS EMPLOYEES, AFFILIATES, SUPPLIERS, AGENTS, CONTRACTORS, DISTRIBUTORS, LICENSORS AND BUSINESS PARTNERS AND SHALL REIMBURSE US FOR ANY DAMAGES, LOSSES OR EXPENSES (INCLUDING WITHOUT LIMITATION, REASONABLE ATTORNEYS' FEES AND COSTS) INCURRED BY US IN CONNECTION WITH ANY CLAIMS, SUITS, JUDGMENTS, AND CAUSES OF ACTION ARISING OUT OF (a) YOUR USE OF THE SERVICE(S) OR XFINITY EQUIPMENT; (b) VIOLATION OR INFRINGEMENT OF CONTRACTUAL RIGHTS, PRIVACY, CONFIDENTIALITY, COPYRIGHT, PATENT, TRADEMARK, TRADE SECRET, OR OTHER INTELLECTUAL PROPERTY AND PROPRIETARY RIGHTS ARISING FROM YOUR USE OF THE SERVICE(S) OR ANY UNAUTHORIZED APPARATUS OR SYSTEM; (c) ANY CLAIMS OR DAMAGES ARISING OUT OF THE LACK OF 911/E911 OR DIALING ASSOCIATED WITH A HOME SECURITY, HOME DETENTION, OR MEDICAL MONITORING SYSTEM; AND (d) YOUR BREACH OF ANY PROVISION OF THIS AGREEMENT.

## 13. BINDING ARBITRATION

a. **Purpose.** If you have a Dispute (as defined below) with Comcast that cannot be resolved through an informal dispute resolution with Comcast, you or Comcast may elect to arbitrate that Dispute in accordance with the terms of this Arbitration Provision rather than litigate the Dispute in court. Arbitration means you will have a fair hearing before a neutral arbitrator instead of in a court by a judge or jury. Proceeding in arbitration may result in limited discovery and may be subject to limited review by courts.

b. **Definitions.** The term "Dispute" means any dispute, claim, or controversy between you and Comcast regarding any aspect of your relationship with Comcast, whether based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, negligence, or any other intentional tort), or any other legal or equitable theory, and includes the validity, enforceability or scope of this Arbitration Provision. "Dispute" is to be given the broadest possible meaning that will be enforced. As used in this Arbitration Provision, "Comcast" means Comcast and its parents, subsidiaries and affiliated companies and each of their respective officers, directors, employees and agents.

c. **Right to Opt Out.** IF YOU DO NOT WISH TO BE BOUND BY THIS ARBITRATION PROVISION, YOU MUST NOTIFY COMCAST IN WRITING WITHIN 30 DAYS OF THE DATE THAT YOU FIRST RECEIVE THIS AGREEMENT BY VISITING WWW.COMCAST.COM/ ARBITRATIONOPTOUT, OR BY MAIL TO COMCAST 1701 JOHN F. KENNEDY BLVD., PHILADELPHIA, PA 19103-2838, ATTN: LEGAL DEPARTMENT/ARBITRATION. YOUR WRITTEN NOTIFICATION TO COMCAST MUST INCLUDE YOUR NAME, ADDRESS AND COMCAST ACCOUNT NUMBER AS WELL AS A CLEAR STATEMENT THAT YOU DO NOT WISH TO RESOLVE DISPUTES WITH COMCAST THROUGH ARBITRATION. YOUR DECISION TO OPT OUT OF THIS ARBITRATION PROVISION WILL HAVE NO ADVERSE EFFECT ON YOUR RELATIONSHIP WITH COMCAST OR THE DELIVERY OF SERVICE(S) TO YOU BY COMCAST. IF YOU HAVE PREVIOUSLY NOTIFIED COMCAST OF YOUR DECISION TO OPT OUT OF ARBITRATION, YOU DO NOT NEED TO DO SO AGAIN.

d. **Initiation of Arbitration Proceeding/Selection of Arbitrator.** If you or Comcast elect to resolve your Dispute through arbitration pursuant to this Arbitration Provision, the party initiating the arbitration proceeding may open a case with the American Arbitration Association - Case Filing Services, 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043, 877-493-4185, www.adr.org under the Commercial Arbitration Rules of the American Arbitration Association "AAA."

e. **Arbitration Procedures.** Because the Service(s) provided to you by Comcast concerns interstate commerce, the Federal Arbitration Act ("FAA"), not state arbitration law, shall govern the arbitrability of all Disputes. However, applicable federal law or the law of the state where you receive the service from Comcast may apply to and govern the substance of any Disputes. No state statute pertaining to arbitration shall be applicable under this Arbitration Provision.

If there is a conflict between this Arbitration Provision and the rules of the arbitration organization, this Arbitration Provision shall govern. If the AAA will not enforce this Arbitration Provision as written, it cannot serve as the arbitration organization to resolve your dispute with Comcast. If this situation arises, the parties shall agree on a substitute arbitration organization. If the parties are unable to agree, the parties shall mutually petition a court of appropriate jurisdiction to appoint an arbitration organization that will enforce this Arbitration Provision as written. If there is a conflict between this Arbitration Provision and the rest of this Agreement, this Arbitration Provision shall govern.

A single arbitrator will resolve the Dispute. The arbitrator will honor claims of privilege recognized by law and will take reasonable steps to protect customer account information and other confidential or proprietary information

The arbitrator will make any award in writing but need not provide a statement of reasons unless requested by a party. An award rendered by the arbitrator may be entered in any court having jurisdiction over the parties for purposes of enforcement.

If an award granted by the arbitrator exceeds $75,000, either party can appeal that award to a three-arbitrator panel administered by the same arbitration organization by a written

notice of appeal filed within thirty (30) days from the date of entry of the written arbitration award. The members of the three-arbitrator panel will be selected according to the rules of the arbitration organization. The arbitration organization will then notify the other party that the award has been appealed. The three-arbitrator panel will issue its decision within one hundred and twenty (120) days of the date of the appealing party's notice of appeal. The decision of the three-arbitrator panel shall be final and binding, except for any appellate right which exists under the FAA.

f. **Restrictions:**
   1. YOU MUST CONTACT US WITHIN ONE (1) YEAR OF THE DATE OF THE OCCURRENCE OF THE EVENT OR FACTS GIVING RISE TO A DISPUTE (EXCEPT FOR BILLING DISPUTES, ABOUT WHICH YOU MUST CONTACT COMCAST WITHIN SIXTY (60) DAYS AS PROVIDED IN SECTION 2 OF THIS AGREEMENT), OR YOU WAIVE THE RIGHT TO PURSUE ANY CLAIM BASED UPON SUCH EVENT, FACTS, OR DISPUTE.
   2. ALL PARTIES TO THE ARBITRATION MUST BE INDIVIDUALLY NAMED. THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED OR LITIGATED ON A CLASS ACTION OR CONSOLIDATED BASIS OR ON BASES INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC (SUCH AS A PRIVATE ATTORNEY GENERAL), OTHER SUBSCRIBERS, OR OTHER PERSONS.

g. **Location of Arbitration.** The arbitration will take place at a location convenient to you in the area where you receive the service from us.

h. **Payment of Arbitration Fees and Costs.** COMCAST WILL ADVANCE ALL ARBITRATION FILING FEES AND ARBITRATOR'S COSTS AND EXPENSES UPON YOUR WRITTEN REQUEST GIVEN PRIOR TO THE COMMENCEMENT OF THE ARBITRATION. YOU ARE RESPONSIBLE FOR ALL ADDITIONAL COSTS THAT YOU INCUR IN THE ARBITRATION, INCLUDING, BUT NOT LIMITED TO, FEES FOR ATTORNEYS OR EXPERT WITNESSES. IF THE ARBITRATION PROCEEDING IS DECIDED IN COMCAST'S FAVOR, YOU SHALL REIMBURSE COMCAST FOR THE FEES AND COSTS ADVANCED TO YOU ONLY UP TO THE EXTENT AWARDABLE IN A JUDICIAL PROCEEDING. IF THE ARBITRATION PROCEEDING IS DETERMINED IN YOUR FAVOR, YOU WILL NOT BE REQUIRED TO REIMBURSE COMCAST FOR ANY OF THE FEES AND COSTS ADVANCED BY COMCAST. IF A PARTY ELECTS TO APPEAL AN AWARD TO A THREE-ARBITRATOR PANEL, THE PREVAILING PARTY IN THE APPEAL SHALL BE ENTITLED TO RECOVER ALL REASONABLE ATTORNEYS' FEES AND COSTS INCURRED IN THAT APPEAL. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS ARBITRATION PROVISION, COMCAST WILL PAY ALL FEES AND COSTS THAT IT IS REQUIRED BY LAW TO PAY.

i. **Severability.** If any clause within this Arbitration Provision is found to be illegal or unenforceable, that clause will be severed from this Arbitration Provision, and the remainder of this Arbitration Provision will be given full force and effect. If the class action waiver clause is found to be illegal or unenforceable, the entire Arbitration Provision will be unenforceable, and the dispute will be decided by a court.
   In the event this entire Arbitration Provision is determined to be illegal or unenforceable for any reason, or if a claim is brought in a Dispute that is found by a court to be excluded from the scope of this Arbitration Provision, you and Comcast have each agreed to waive, to the fullest extent allowed by law, any trial by jury.

j. **Exclusions from Arbitration.** YOU AND COMCAST AGREE THAT THE FOLLOWING WILL NOT BE SUBJECT TO ARBITRATION: (1) ANY CLAIM FILED BY YOU OR BY COMCAST THAT IS NOT AGGREGATED WITH THE CLAIM OF ANY OTHER SUBSCRIBER AND WHOSE AMOUNT IN CONTROVERSY IS PROPERLY WITHIN THE JURISDICTION OF A COURT THAT IS LIMITED TO ADJUDICATING SMALL CLAIMS; (2) ANY DISPUTE OVER THE VALIDITY OF ANY PARTY'S INTELLECTUAL PROPERTY RIGHTS; (3) ANY DISPUTE RELATED TO OR ARISING FROM ALLEGATIONS ASSOCIATED WITH UNAUTHORIZED USE OR RECEIPT OF SERVICE; (4) ANY DISPUTE THAT ARISES BETWEEN COMCAST AND ANY STATE OR LOCAL REGULATORY AUTHORITY OR AGENCY THAT IS EMPOWERED BY FEDERAL, STATE, OR LOCAL LAW TO GRANT A FRANCHISE UNDER 47 U.S.C. § 522(9);

AND (5) ANY DISPUTE THAT CAN ONLY BE BROUGHT BEFORE THE LOCAL FRANCHISE AUTHORITY UNDER THE TERMS OF THE FRANCHISE.

**k. Continuation.** This Arbitration Provision shall survive the termination of your Service(s) with Comcast.

- **For New York XFINITY Video Customers.** You may elect to resolve a Dispute through the New York Public Service Commission in accordance with NYCRR 16§890.709(a) and NYCRR 16§709(c).

## 14. CUSTOMER PRIVACY NOTICE AND SECURITY

**a.** Comcast will provide you with a copy of our customer privacy notice at the time we enter into an agreement to provide any Service(s) to you, and annually afterwards, or as otherwise permitted by law. You can view the most current version of our privacy notice by going to www.comcast.com/customerprivacy.

**b.** To the extent Comcast is expressly required to do so by applicable law, we will provide notice to you of a breach of the security of certain personally identifiable information about you. It is Comcast's information security policy to provide such notice to you in the manner set forth in Section 16.

## 15. GENERAL

**a. Entire Agreement.** This Agreement and any other documents incorporated by reference constitute the entire agreement and understanding between you and Comcast with respect to the subject matter of this Agreement, and replace any and all prior written or verbal agreements. If any portion of this Agreement is held to be unenforceable, the unenforceable portion shall be construed in accordance with applicable law as nearly as possible to reflect the original intentions of the parties, and the remainder of the provisions shall remain in full force and effect. Comcast does not waive any provision or right if it fails to insist upon or enforce strict performance of any provision of this Agreement. Neither the course of conduct between you and Comcast nor trade practice shall act to modify any provision of this Agreement.

**b. Additional Representations and Warranties.** In addition to representations and warranties you make elsewhere in this Agreement, you also represent and warrant that:

**i. Age:** You are at least 18 years of age.

**ii. Customer Information:** During the term of this Agreement, you have provided and will provide to Comcast information that is accurate, complete and current, including without limitation your legal name, address, telephone number(s), the number of devices on which or through the Service(s) is being used, and payment data (including without limitation information provided when authorizing recurring payments). You agree to notify us promptly, in accordance with the terms of this Agreement, if there is any change in the information that you have provided to us. Failure to provide and maintain accurate information is a breach of this Agreement.

**c. Information Provided to Third Parties.** Comcast is not responsible for any information provided by you to third parties, and this information is not subject to the privacy provisions of this Agreement or the privacy notice for the Service(s). In addition you are responsible for controlling access to any XFINITY Equipment and any other device you use to access the Services ("Connected Device"). You assume all privacy, security, and other risks associated with providing any individual with access to a Connected Device or providing any information, including CPNI or personally identifiable information, to third parties via the Service(s). For a description of the privacy protections associated with providing information to third parties, you should refer to the privacy policies, if any, provided by those third parties.

**d. Protection of Comcast's Information and Marks.** The Service(s), XFINITY Equipment and related documents are protected by trademark, copyright or other intellectual property laws, and international treaty provisions. All websites, corporate names, service marks, trademarks, trade names, logos, and domain names (collectively "marks") of Comcast and its affiliates are and shall remain the exclusive property of Comcast. Nothing in this Agreement shall grant you the right or license to use any of the marks.

e. **Export Laws.** You expressly agree to comply with all applicable export and re-export laws, including, but not limited to, the Export Administration Act, the Arms Export Control Act, and their implementing regulations. You further expressly agree not to use the Service(s) in any way that violates any provision of such laws or their implementing regulations.

f. **Retention of Rights.** Nothing contained in this Agreement shall be construed to limit Comcast's rights and remedies available at law or in equity. Upon termination of this Agreement for any reason, Comcast and its suppliers reserve the right to delete all your data, files, electronic messages or other Customer information that is stored on Comcast's or its suppliers' servers or systems. In addition, you may forfeit your account user name and all e-mail, IP and Web space addresses, and voice mail. In the event you cancel XFINITY Voice without porting your voice service and the telephone number to another service provider, you will forfeit the telephone number. We shall have no liability whatsoever as the result of the loss of any such data, names, addresses, or numbers.

## 16. NOTICE METHOD FOR CHANGES TO THIS AGREEMENT

We will provide you notice of changes to this Agreement consistent with applicable law. The notice may be provided on your monthly bill, as a bill insert, in a newspaper, by e-mail, or by other permitted communication. If you find the change unacceptable, you have the right to cancel your Service(s). However, if you continue to receive the Service(s) after the change, we will consider this your acceptance of the change.

- **For XFINITY Internet and XFINITY Voice Customers.** Comcast may deliver any required or desired notice to you in any of the following ways, as determined in our sole discretion: (1) by posting it on www.comcast.net, www.comcast.com or another website about which you have been notified, (2) by sending notice via first class U.S. postal mail or overnight mail to your Premises; (3) by sending notice to the e-mail address on Comcast's account records, or (4) by hand delivery. You agree that any one of the foregoing will constitute sufficient notice and you waive any claims that these forms of notice are insufficient or ineffective. Because we may from time to time notify you about important information regarding the Service(s) and this Agreement by these methods, you agree to regularly check your postal mail, e-mail and all postings at www.comcast.net, www.comcast.com or on another website about which you have been notified or you bear the risk of failing to do so.

## 17. IMPORTANT INFORMATION

If you are unable to get a problem resolved to your satisfaction at your local Comcast office, you may write to the Comcast Corporate Offices at 1701 John F. Kennedy Blvd., Philadelphia, PA 19103-2838 with concerns and complaints.

- **Massachusetts Customers:** In addition if you are unsatisfied with our handling of your complaint, you may contact your local franchise authority: the Consumer Division of the Department of Telecommunications and Cable (DTC) toll free at 1-800-392-6066 or you may write to them at Two South Station, Boston, MA 02110.

- **Connecticut Customers:** If you experience a problem with your Service(s), please contact us first and give us an opportunity to resolve your problem. If the matter is not resolved to your satisfaction please contact the Connecticut Department of Utility Control at 1-800-382-4586 (toll free within Connecticut) or 1-860-827-2622 (outside Connecticut) or TDD 1-860-827-2837.

- **New York Customers:** If you experience a problem with your Service(s), please contact us first and give us an opportunity to resolve your problem. If your concerns have not been resolved contact your local government, or call the **New York State Public Service Commission (PSC) at 1-800-342-3377,** or write to: **Customer Service Representative, New York State Public Service Commission, Office of Customer Services,** Three Empire State Plaza, Albany, New York 12223-1350.

- **New Hampshire and Maine Customers:** The Office of the Attorney General Consumer Protection and Antitrust Bureau has the authority to enforce Consumer Protection Laws and provide assistance in the mediation of consumer complaints. Customers should file written complaints concerning any alleged misrepresentations and unfair or deceptive practices of the cable company to:

Maine – Office of the Attorney General, Department of Consumer Fraud and Antitrust,
State House Station #6, Augusta, ME 04333
New Hampshire – Office of the Attorney General, Department of Consumer Fraud and
Antitrust, 25 Capital Street, Concord, NH 03301

- **Vermont Customers:** The Vermont Department of Public Service can provide assistance
in the resolution of consumer complaints. Customers should file complaints with the
Customer Hotline at 1-800-622-4496.

# ADDITIONAL PROVISIONS APPLICABLE TO XFINITY INTERNET SERVICE

**In addition to the provisions above that are applicable to XFINITY Video, XFINITY Internet and XFINITY Voice, the following are specifically applicable to XFINITY Internet Customers.**

1. **INTELLECTUAL PROPERTY RIGHTS**
   a. **Ownership of Addresses.** You acknowledge that use of XFINITY Internet does not give you any ownership or other rights in any Internet/on-line addresses provided to you, including, but not limited to, Internet Protocol ("IP") addresses, e-mail addresses, and Web addresses. We may modify or change these addresses at any time without notice and shall in no way be required to compensate you for these changes. Upon termination of an XFINITY Internet account, we reserve the right permanently to delete or remove any or all addresses associated with the account.
   b. **Authorization.** Comcast does not claim any ownership of any material that you publish, transmit or distribute using XFINITY Internet. By using XFINITY Internet to publish, transmit, or distribute material or content, you (1) warrant that the material or content complies with the provisions of this Agreement, (2) consent to and authorize Comcast, its agents, suppliers, and affiliates to reproduce, publish, distribute, and display the content worldwide and (3) warrant that you have the right to provide this authorization. You acknowledge that material posted or transmitted using XFINITY Internet may be copied, republished or distributed by third parties, and you agree to indemnify, defend, and hold harmless Comcast, its agents, suppliers, and affiliates for any harm resulting from these actions.
   c. **Copyright.** Title and intellectual property rights to XFINITY Internet are owned by Comcast, its agents, suppliers, or affiliates or their licensors or otherwise by the owners of such material and are protected by copyright laws and treaties. You may not copy, redistribute, resell, or publish any part of XFINITY Internet without any required express prior written consent from Comcast or other owner of such material.
   d. **Material Downloaded Through XFINITY Internet.** In addition to any content that may be provided by us, you may access material through XFINITY Internet that is not owned by Comcast. Specific terms and conditions may apply to your use of any content or material made available through XFINITY Internet that is not owned by Comcast. You should read those terms and conditions to learn how they apply to you and your use of any non-Comcast content.

2. **ADDITIONAL LIMITATIONS ON COMCAST'S LIABILITY FOR XFINITY INTERNET**
   a. **Responsibility for Content.** You acknowledge that there is some content and material on the Internet or otherwise available through XFINITY Internet that may be offensive to some individuals, may be unsuitable for children, may violate federal, state or local laws, rules or regulations, or may violate your protected rights or those of others. We assume no responsibility for this content or material. Anyone who accesses such content and material does so at his or her own risk. NEITHER COMCAST NOR ITS AFFILIATES, SUPPLIERS, EMPLOYEES, AGENTS, CONTRACTORS, DISTRIBUTORS, LICENSORS OR BUSINESS PARTNERS SHALL HAVE ANY LIABILITY WHATSOEVER FOR ANY CLAIMS, LOSSES, ACTIONS, DAMAGES, SUITS, OR PROCEEDINGS ARISING OUT OF OR OTHERWISE RELATING TO ACCESS TO SUCH CONTENT OR MATERIAL BY YOU OR OTHERS. Questions or complaints regarding content or material should be addressed to the content or material provider. You acknowledge that software programs are commercially available that claim to be able to restrict access to sexually explicit or other objectionable material on the Internet.

We make no representation or warranty regarding the effectiveness of such programs.

**b. Eavesdropping.** The public Internet is used by numerous persons or entities including, without limitation, other subscribers to XFINITY Internet. As is the case with all shared networks like the public Internet, there is a risk that you could be subject to "eavesdropping." This means that other persons or entities may be able to access and/or monitor your use of XFINITY Internet. If you post, store, transmit, or disseminate any sensitive or confidential information, you do so at your sole risk. NEITHER COMCAST NOR ITS AFFILIATES, SUPPLIERS, OR AGENTS SHALL HAVE ANY LIABILITY WHATSOEVER FOR ANY CLAIMS, LOSSES, ACTIONS, DAMAGES, SUITS, OR PROCEEDINGS ARISING OUT OF OR OTHERWISE RELATING TO SUCH ACTIONS BY YOU. You acknowledge that software programs are commercially available that claim to be capable of encryption or anonymization. We make no representation or warranty regarding the effectiveness of these programs.

**c. FTP/HTTP Service Setup.** You acknowledge that when using XFINITY Internet there are certain applications such as FTP (File Transfer Protocol) or HTTP (Hyper Text Transfer Protocol) that may be used by other persons or entities to gain access to your Customer Equipment. You are solely responsible for the security of your Customer Equipment or any other equipment you choose to use in connection with the Service(s), including without limitation any data stored on such equipment. NEITHER COMCAST NOR ITS AFFILIATES, SUPPLIERS, EMPLOYEES, AGENTS, OR CONTRACTORS SHALL HAVE ANY LIABILITY WHATSOEVER FOR ANY CLAIMS, LOSSES, ACTIONS, DAMAGES, SUITS OR PROCEEDINGS RESULTING FROM, ARISING OUT OF, OR OTHERWISE RELATING TO THE USE OF SUCH APPLICATIONS BY YOU, OR THE ACCESS BY OTHERS TO YOUR CUSTOMER EQUIPMENT OR OTHER EQUIPMENT OF YOURS.

**d. Facilities Allocation.** Comcast reserves the right to determine, in its discretion, and on an ongoing basis, the nature and extent of its facilities allocated to support XFINITY Internet, including, but not limited to, the amount of bandwidth to be utilized and delivered in conjunction with XFINITY Internet.

   i. The Terms and Conditions of Sale for Products for XFINITY Internet Customers is available at www.comcast.com/termsofservice/termHSI.html.

**3. WIRELESS INTERNET ACCESS THROUGH XFINITY WIFI**

If you subscribe to the XFINITY Performance Internet service or above you may also access the Internet and use XFINITY Internet wirelessly ("XFINITY WiFi") through our access points, HHS and access points of affiliated companies providing wireless Internet access at no additional charge by using your XFINITY user ID and password to log in. If you use an XFINITY WiFi access point owned or operated by Comcast to access XFINITY Internet, including an HHS your use will be subject to the terms of this Agreement, the XFINITY WiFi terms of service and our acceptable use policies. If you use an access point owned or operated by one of our affiliated companies to access the Internet, you may be subject to the terms and conditions and acceptable use policies of our affiliate as well. If you subscribe to XFINITY Internet at a level below XFINITY Performance Internet service, XFINITY WiFi may be made available to you on a trial, sponsored or pay per use basis subject to different terms. Your use of XFINITY WiFi indicates your acceptance of the applicable terms. If you do not accept the applicable terms, you should not use XFINITY WiFi Service. XFINITY WiFi is not available in all locations and availability is subject to change without notice.

# ADDITIONAL PROVISIONS APPLICABLE TO XFINITY VOICE SERVICE

**In addition to the General Terms and Conditions above, the following terms and conditions are specifically applicable to XFINITY Voice Customers.**

**1. SPECIAL NOTICE FOR COMCAST DIGITAL VOICE SUBSCRIBERS: LIMITATIONS OF XFINITY VOICE SERVICE**

**a. Limitations.** XFINITY Voice includes 911/Enhanced 911 and certain plans include text-to-911 (where emergency authorities make such service available) functionality (collectively "911/E911") that may differ from the 911/E911 functionality furnished by other providers.

As such, it may have certain limitations. CAREFULLY READ THE INFORMATION BELOW. YOU ACKNOWLEDGE AND ACCEPT ANY LIMITATIONS OF 911/E911. YOU AGREE TO CONVEY THESE LIMITATIONS TO ALL PERSONS WHO MAY PLACE CALLS OR TEXTS OVER THE SERVICES. IF YOU HAVE ANY QUESTIONS ABOUT 911/E911, CALL 1-800-XFINITY.

    **i.  Correct Address:** In order for your 911/E911 calls to be properly directed to emergency services, Comcast must have your correct Premises address. If you move XFINITY Voice to a different address without Comcast's approval, 911/E911 calls may be directed to the wrong emergency authority, may transmit the wrong address, and/or XFINITY Voice (including 911/E911) may fail altogether. Therefore, you must call 1-800-XFINITY before you move XFINITY Voice to a new address. Comcast will need several business days to update your Premises address in the E911 system so that your 911/E911 calls can be properly directed. All changes in service address require Comcast's prior approval. In order to utilize text-to-911 service, you must be eligible to use the XFINITY Connect Mobile Application ("XCMA") and activate Voice 2go,™ properly authenticated and logged into the XCMA using a supported mobile device and operating system, and connected to the Internet over a Wi-Fi or commercial mobile radio service network. In order for text-to-911 (where emergency authorities make such service available) to be properly directed to emergency services, you must provide permission for the XCMA to request and receive your location from your mobile device's operating system.

    **ii.  Service Interruptions:** XFINITY Voice uses the electrical power in your home. If there is an electrical power outage, 911 calling may be interrupted if a battery backup in the associated voice-capable modem is not installed, fails, or is exhausted after several hours. Furthermore, calls, including calls and texts to 911/E911, may not be completed if there is a problem with network facilities, including network congestion, network/equipment/power failure, or another technical problem.

    **iii.Suspension and Termination by Comcast:** You understand and acknowledge that all XFINITY Voice, including 911/E911, as well as all online features of XFINITY Voice, where we make these features available, will be disabled if your account is suspended or terminated.

    **iv. Telephone Number Assignments:** The telephone numbers utilized for XFINITY Voice are assigned in accordance with applicable federal and state numbering rules. Therefore, XFINITY Voice cannot accommodate the assignment of a telephone number outside of the telephone rate center to which that number is appropriately assigned.

  **b.  Limitation of Liability and Indemnification.** YOU ACKNOWLEDGE AND AGREE THAT COMCAST WILL NOT BE LIABLE FOR ANY SERVICE OUTAGE, INABILITY TO DIAL OR TEXT 911 USING THE SERVICE(S), AND/OR INABILITY TO ACCESS EMERGENCY SERVICE PERSONNEL. YOU AGREE TO DEFEND, INDEMNIFY, AND HOLD HARMLESS COMCAST AND ITS AFFILIATES, SUPPLIERS OR AGENTS FROM ANY AND ALL CLAIMS, LOSSES, DAMAGES, FINES, PENALTIES, COSTS, AND EXPENSES (INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEYS' FEES) BY, OR ON BEHALF OF, YOU OR ANY THIRD PARTY OR USER OF THE SERVICE(S) RELATING TO THE FAILURE OR OUTAGE OF THE SERVICE(S), INCLUDING THOSE RELATED TO 911/E911.

**2.  ADDITIONAL XFINITY VOICE-SPECIFIC PROVISIONS REGARDING CUSTOMER EQUIPMENT**

  **a.  Incompatible Equipment and Services.** You acknowledge and understand that XFINITY Voice may not support or be compatible with:

    i.  Non-Recommended Configurations as defined in Section 6(b) [including, but not limited to, voice-capable modems not currently certified by Comcast as compatible with the Service(s)];

    ii.  Certain non-voice communications equipment, including certain makes or models of alarm and home security systems, certain medical monitoring devices, personal emergency alert, and home detention devices, certain fax machines, and certain "dial-up" modems;

    iii. Rotary-dial phone handsets, and certain makes and models of other voice-related

communications equipment including key systems, private branch exchange (PBX) equipment, answering machines, and traditional Caller ID units;

iv. Casual/dial around (10-10) calling; 976, 900, 700, or 500 number calling;

v. 311, 511, or other N11 calling (other than 411, 611, 711, and 911); and

vi. Other call types not expressly set forth in our product literature (e.g., outbound shore-to-ship calling); and

vii. Certain service codes such as automatic callback and automatic recall (e.g., *66, *69) due to compatibility limitations with other carrier signal functions.

## 3. VOICE-CAPABLE MODEM BACKUP BATTERY

If the voice-capable modem is equipped with a backup battery, such battery is used to provide service during a power outage to your home where power to Comcast's network remains available. The length of time that XFINITY Voice will be available during a power outage will depend on the following: (i) the backup battery remains properly installed in the voice-capable modem; (ii) the condition and age of the backup battery; and (iii) the amount of XFINITY Voice usage when the voice-capable modem is utilizing power from the backup battery. You understand and acknowledge that: (i) the performance of the backup battery is not guaranteed; and (ii) you will not be able to use XFINITY Voice if electrical power to the voice-capable modem is interrupted and the voice-capable modem does not have a functioning backup battery. A voice-capable modem backup battery does not power cordless phones or other equipment connected to the telephone line that require electricity from your Premises, such as telecommunications devices used to assist customers with disabilities.

## 4. TRANSFER OF YOUR PHONE NUMBER(S)

For information about switching to another provider from XFINITY Voice and the assignment of telephone numbers related to XFINITY Voice Service please call 1-800-XFINITY.

## 5. CUSTOMER INFORMATION

Comcast and its suppliers reserve the right both during the term of this Agreement and upon its termination to delete your voicemail, call detail, data, files, or other information that is stored on Comcast's or its suppliers' servers or systems, in accordance with our storage policies. You understand and acknowledge that we shall have no liability whatsoever as a result of the loss or removal of any such voicemail, call detail, data, files, or other information.

## 6. INTEGRATED SERVICES

Use of XFINITY Voice's integrated services provided through online portals such as applicable communications center or voice center are governed by the GENERAL TERMS AND CONDITIONS of this Agreement.

## 7. ADDITIONAL TERMS OF SERVICE

To view additional terms of service applicable to XFINITY Voice in Maine, please go to http://www.comcast.com/tariffs.

# EXHIBIT B

## Comcast Corporation Profile of David N. Watson

(Screenshot taken on 5/16/2017 from http://corporate.comcast.com/news-information/leadership-overview/david-n-watson )



David N. Watson serves as President and Chief Executive Officer, Comcast Cable and Senior Executive Vice President, Comcast Corporation. In this role, he is responsible for all business aspects of the Company's cable operations.

Previously, Dave served as Chief Operating Officer where he drove the operating strategy and execution that have led to phenomenal growth at Comcast Cable into the nation's largest ISP and one of the largest video providers. His leadership also has been critical to Comcast's efforts to improve customer service and transform the customer experience. As COO, Dave led all of the cable company's operations and business functions, including sales and marketing, the product teams for Xfinity Internet, Xfinity X1, Xfinity Voice and Xfinity Home, the Comcast Business division, as well as oversight of the Company's three operating divisions and Comcast Spotlight, the Company's advertising sales unit.

Previously, Dave held a number of leadership roles at Comcast since he joined the Company in 1991 and led multiple divisions and operating units. He has also led some of the industry's most important transitions from analog to IPTV, from the early rollout of high-speed data to the delivery of gigabit speeds and the expansion of residential products and commercial business services.

Dave has worked for three decades in the cable and cellular industries and held leadership roles for the nation's top communications services providers. Before joining Comcast Cable in 1991, he served for seven years with Comcast Cellular Communications, Inc., first as Senior Vice President of sales and marketing, and later as President. As President of Comcast Cellular, Dave led the unit's operations prior to its sale to SBC Communications. Previously, he headed sales and marketing efforts at Bell Atlantic Mobile and Metrophone.

A graduate of the University of Richmond, he holds a BA in political science. Dave resides with his family in Rosemont, PA.

1

# EXHIBIT C



# COMCAST

**Thomas R. Nahan**
Senior Vice President and
Senior Deputy General Counsel

Tel: 215.286.5912
Fax: 215.286.7089
Thomas_Nathan@comcast.com

February 25, 2016

Daniel Hattis, Esq.
71 Bellevue Way NE, #1645
Bellevue, WA 98009

Dear Mr. Hattis:

I am responding to your letter date December 24, 2015 in which you allege that your client, Mr. Christopher Robertson, was improperly charged. Specifically, you allege that Comcast "falsely advertises and promises a certain price for cable service package, but then actually charges a different and higher price by tacking on surprise mandatory fees..." More specifically, you claim that Comcast's charges to your client for a video service transfer fee, internet service transfer fee and broadcast tv service fee were all improper because Mr. Robertson was not aware of these fees when he signed up for service.

Although not stated in the letter, it is my understanding that Mr. Robertson receives service from Comcast at a residence on ▉▉▉▉ in Sacramento, California. If that is inaccurate, please correct my understanding.

You also do not identify any advertising that you claim your client relied on that was inaccurate. If there was a particular advertisement you believe was misleading, I ask that you please identify the medium and month, if possible, so that I may investigate the claim. In the absence of that information, I am unable to answer your claims with particularity. I can say, however, that the company is cognizant of its responsibilities that its ads be accurate and accordingly takes care to ensure that ads disclose where a quoted package price is subject to additional fees and charges.

My review of the ▉▉▉▉ account shows that on November 9, 2015, Internet Plus 25 service was ordered via the sales portal on xfinity.com. Because of an outstanding balance, the account was unable to be self-activated until the balance was cleared. Consequently, service was not activated until November 15. There is a prominent hyperlink labeled "Pricing and Other Information" in the box containing the "Add to

February 25, 2016
Page Two

Cart" button where service would have been ordered. Opening that link provides the details of the Internet Plus 25 package. If you open it you will see that the terms make specific reference to the broadcast tv fee.

The charges for the transfer fees were one time transactional charges that applied to the particular transaction conducted by your client. The charges ($6 each) appeared on the first invoice dated November 14, 2015 and were credited back on the second invoice dated December 8, 2015. They are also mentioned in a telephone conversation with Mr. Robertson at the time service was activated, although not by name. The agent explained that Mr. Robertson would see the charges but that they would be credited back. In fact, the video transfer fee and internet transfer fees were credited back to Mr. Robertson's account on his next invoice dated December 8, 2015. I have enclosed a copy of that invoice for your reference.

This is consistent with a chat transcript of November 14, 2015. That transcript contains no complaint or mention of the broadcast tv fee. It does, however, contain a statement by Mr. Robertson questioning the internet and video transfer fees and the response of the company's agent that Mr. Robertson would see them removed on the next invoice which, as noted above, they were. A brief second brief chat session occurred on December 4, 2015 but there is no mention of any fees or charges in that session.

Contrary to your allegations, neither the transfer fees nor the broadcast tv fee is claimed to be or presented as a government charge or tax. It appears in the Section of Mr. Robertson's invoices titled: "Other Charges and Credits" on the left hand side of page 2 of the invoice. You will note that there is an entirely separate section of the bill titled "Taxes, Surcharges and Fees" on the right side of the invoice.

For all the foregoing reasons, the company does not share your view that its invoiced charges to Mr. Robertson were in any respect, misleading, unfair or in violation of California law. If you have other questions regarding your client's account, please direct them to me.

Very truly yours,

Thomas R. Nathan
Deputy General Counsel

Enclosure

# EXHIBIT D

**Subject:** Re: Adkins
**Date:** Monday, November 28, 2016 at 5:06:56 AM Pacific Standard Time
**From:** Duffy, Seamus C.
**To:** Daniel Hattis
**CC:** Stortz, Michael J., Jason Skaggs

Hey Dan, if you are just naming the parent Comcast CORP you should be fine. People sometimes name the operating entity, which I believe is Comcast Cable Communications LLC, but in my experience we don't make an issue between the two so you are fine with CORP.

Sent from my iPhone

On Nov 28, 2016, at 3:10 AM, Daniel Hattis <dan@hattislaw.com> wrote:

Hello Seamus,

I hope you had a happy Thanksgiving. I have copied my cocounsel Jason Skaggs on this email.

I am mailing out hard copies Monday to your attention of the complaint and waiver of summons and related documents. Please return a copy of the waiver of summons in the envelope enclosed with the hard copies (if possible I would appreciate a scanned copy of the completed waiver also emailed to me at dan@hattislaw.com).
You can also download these documents immediately at:

QUESTION: Could you please get back to me re: who are the entities who are the proper defendant(s) in the case. Comcast Corp has various subsidiaries, and it isn't entirely obvious to me if there are other Comcast entities that should be named.

With regard to your earlier question re: consenting/declining the magistrate judge: (1) per the Order Setting Initial CMC, the magistrate judge asks that defendants consent or decline to the magistrate within 14 days of appearing in the case; however (2) under local rule 73-1, parties have longer than that: "Parties must either file written consent to the jurisdiction of the magistrate judge, or request reassignment to a district judge, by the deadline for filing the initial case management conference statement."

Thank you,

Dan Hattis
Hattis Law
Office: 650.980.1990
Mobile: 650.284.8495
Fax: 425.412.7171
www.hattislaw.com

# EXHIBIT E



HATTIS LAW PLLC
P.O. Box 1645
Bellevue, WA 98009
Phone: 650.980.1990
www.hattislaw.com

August 17, 2017

**VIA U.S. MAIL RETURN RECEIPT REQUESTED**

Brian L. Roberts, CEO
Comcast Corporation
1701 John F Kennedy Blvd
Philadelphia, PA 19103-2838

Agent for Service of Process for Comcast Corp.
CT Corporation System
818 West Seventh Street, Suite 930
Los Angeles, CA 90017

David N. Watson, CEO
Comcast Cable Communications, LLC
1701 John F Kennedy Blvd
Philadelphia, PA 19103-2838

Agent for Service of Process for Comcast Cable
CT Corporation System
818 West Seventh Street, Suite 930
Los Angeles, CA 90017

Re: My Client: Charles Tillage, Comcast Account No. ███████
Notice of Violation of California Consumers Legal Remedies Act and Demand

Dear Mr. Roberts and Mr. Watson,

I represent Charles Tillage, who subscribed to Comcast service and who is being wrongfully charged a monthly Broadcast TV Fee and Regional Sports Fee, and who is also being wrongfully charged a higher package price in year two of his contract.

In June 2016 Mr. Tillage signed up for a Comcast bundled plan when he moved to a new apartment. The Comcast sales representative told Mr. Tillage that the total monthly bill would be $129.99 per month. Mr. Tillage was not informed that Comcast would additionally charge him each month for the Broadcast TV Fee and the Regional Sports Fee (the "Fees").

In May 2017, Mr. Tillage was surprised and upset to learn that he would also be charged an additional $30 per month starting in month 13 of his contract above the fixed rate that Comcast had promised him. Comcast had not previously disclosed this price increase to Mr. Tillage, and Mr. Tillage had never agreed to this increased charge above the promised fixed rate of his contract.

In July 2017, Comcast further increased the Broadcast TV Fee and the Regional Sports Fee monthly charges to Mr. Tillage. Meanwhile, Mr. Tillage had never agreed to pay those Fees in the first place, let alone agreed to further increases in these Fees in the middle of his promised fixed-price contract.

Comcast's practice of advertising and promising one price for its services, while in fact charging a different higher price, is unlawful and breaches Comcast's agreements with its customers.

August 17, 2017
Page 2

Comcast's material misrepresentations, active concealment, and failures to disclose violate the California Legal Remedies Act, California Civil Code Section 1750 *et seq.*, in the following manner: (1) Comcast misrepresents that its subscription services have characteristics, benefits, or uses that they do not have (Cal. Civ. Code §1770(a)(5)); (2) Comcast advertises its subscription services with intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9)); (3) Comcast misrepresents that its subscription services confer or involve rights, remedies, or obligations that they do not have (Cal. Civ. Code § 1770(a)(14)); (4) Comcast misrepresents that its subscription services are supplied in accordance with previous representations when they are not (Cal. Civ. Code § 1770(a)(16)). Additionally, Comcast inserted unconscionable provisions in its customer contracts (Cal. Civ. Code § 1770(a)(19)).

We demand that within thirty (30) days of receiving this letter, Comcast agree to (1) refrain from engaging in the illegal and deceptive practices described above; (2) return all money California Comcast customers paid for the Broadcast TV Fee and the Regional Sports Fee; and (3) return all money California Comcast customers paid in the form of inadequately disclosed increases in the package price in year two of their two year contracts. If Comcast refuses to provide the demanded relief within thirty (30) days, we may seek compensatory and punitive damages and restitution pursuant to the California Consumers Legal Remedies Act.

I can be reached at (650) 980-1990 or dan@hattislaw.com.

Yours truly,

Daniel M. Hattis

**SENDER: COMPLETE THIS SECTION**

- Complete Items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

David N Watson CEO
Comcast Cable Communications
1701 John F Kennedy Blvd
Philadelphia PA 19103-2838

9590 9402 2898 7094 1626 75

2. Article Number (Transfer from service label)

7017 0660 0000 6330 3365

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X     COMCAST CORPORATION
ONE COMCAST CENTER
PHILADELPHIA PA 19103-2838

☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:          ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053     Domestic Return Receipt

# USPS Tracking® Results

FAQs › (http://faq.usps.com/?articleId-220900)

**Track Another Package +**

Remove ✕

**Tracking Number:** 70170660000063303365

▶        ▶            ▶   Delivered

## Product & Tracking Information

See AvailableActions

**Postal Product:**
First-Class Mail®

**Features:**
Certified Mail™
Return Receipt

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| **August 29, 2017, 5:40 am** | **Delivered** | **PHILADELPHIA, PA 19104** |
| ▲ | | |
| Your item was delivered at 5:40 am on August 29, 2017 in PHILADELPHIA, PA 19104. | | |
| August 28, 2017, 12:25 pm | Out for Delivery | PHILADELPHIA, PA 19103 |
| August 28, 2017, 12:15 pm | Sorting Complete | PHILADELPHIA, PA 19103 |
| August 28, 2017, 4:45 am | Arrived at Unit | PHILADELPHIA, PA 19103 |
| August 23, 2017, 9:38 am | In Transit to Destination | ON ITS WAY TO PHILADELPHIA, PA 19103 |
| August 22, 2017, 9:38 am | In Transit to Destination | ON ITS WAY TO PHILADELPHIA, PA 19103 |
| August 21, 2017, 9:38 am | In Transit to Destination | ON ITS WAY TO PHILADELPHIA, PA 19103 |
| August 20, 2017, 4:38 am | Departed USPS Regional Destination Facility | PHILADELPHIA PA DISTRIBUTION CENTER |
| August 19, 2017, 2:11 pm | Arrived at USPS Regional Destination Facility | PHILADELPHIA PA DISTRIBUTION CENTER |
| August 19, 2017, 9:16 am | In Transit to Destination | ON ITS WAY TO PHILADELPHIA, PA 19103 |
| August 18, 2017, 9:16 am | In Transit to Destination | ON ITS WAY TO PHILADELPHIA, PA 19103 |
| August 17, 2017, 9:16 am | Departed USPS Regional Origin Facility | SAN FRANCISCO CA DISTRIBUTION CENTR |
| August 17, 2017, 9:05 pm | Arrived at USPS Regional Origin Facility | SAN FRANCISCO CA DISTRIBUTION CENTR |

# EXHIBIT F

2016-06-25 00:00:00 EST

MOSS BEACH

CA

Account Number:

Offer:

---

**Digital Starter Video and Performance Internet XF Double Play includes:**

•**XFINITY Digital Starter for primary outlet**

•**XFINITY Performance Internet or Performance Pro Internet (where available)**

•**For $79.99 per month for months 1-12 and $99.99 per month for months 13-24.**

---

### 24 MONTH TERM CUSTOMER AGREEMENT

Dear JOE LOOMIS

Thank you for choosing Comcast!

A description of the Offer ("Offer") you have ordered is set forth above. The Offer is subject to the terms and conditions of this agreement ("Agreement"), including the minimum term and early termination provisions under Section 5 below, and Comcast's Agreement for Residential Services.

Term and Conditions

1. If you do not cancel this Agreement within 30 days of the date of service installation/activation, as applicable, you will be billed for the services at the rates specified under the Offer. If you wish to cancel this Agreement, you must call Comcast at 1-800-XFINITY. Upon cancellation you are required to return all equipment provided by Comcast.

2. If you cancel this Agreement within 30 days of the date services are installed / activated, as applicable, the early termination fee specified in Section 5 shall not apply.

3. If you install service with a self-installation kit, the 30 day period referenced above begins on the day your service is activated and if your service is installed by a Comcast installer, the 30 day period begins on the date of installation.

4. You will receive the services under the Offer for the first 24 MONTH S from the date the service is activated / installed, at the price specified above. Equipment, installation, taxes and fees, including Broadcast TV Fee (currently up to $5.00/mo.), Regional Sports Fee (currently up to $3.00/mo.) and if XFINITY Digital Voice is included, regulatory recovery fees and other applicable charges (e.g. per-call or international charges) are extra, such charges and fees are subject to change during and after the term of this Agreement. AFTER THE 24 MONTH PERIOD, COMCAST'S THEN CURRENT APPLICABLE CHARGES WILL APPLY. You agree to maintain the service for 24 MONTH S ("Term") with your account in good standing. Comcast is not responsible for lost or misdirected agreements.

5. AN EARLY TERMINATION FEE OF UP TO $230.00 SHALL APPLY IF YOU TERMINATE ALL XFINITY SERVICES DURING THE TERM OF THIS AGREEMENT. DURING THE TERM OF THIS AGREEMENT, THE EARLY TERMINATION FEE WILL BE REDUCED BY $10.00 EVERY MONTH, BEGINNING WITH THE SECOND MONTH AFTER THE ACTIVATION /

INSTALLATION DATE. IN ADDITION, IF SERVICE IS DOWNGRADED, COMCAST'S APPLICABLE CHARGES FOR SERVICE AND EQUIPMENT WITHOUT A 24 MONTH AGREEMENT WILL APPLY TO ANY REMAINING SERVICES. YOU ALSO AGREE THAT FOLLOWING THE 24 MONTH PERIOD, COMCAST'S APPLICABLE CHARGES FOR SERVICES AND EQUIPMENT WITHOUT A 24 MONTH TERM AGREEMENT SHALL APPLY UNLESS SERVICE IS CANCELLED BY CALLING 1-(800)-XFINITY.

6. If during the Term of this Agreement you cancel service because you move your residence to a location within a Comcast serviceable area and you reconnect to XFINITY TV, XFINITY Internet, XFINITY Digital Voice or XFINITY Home service within 30 days of your service disconnection, the amount of the early termination fee will be credited upon proof of installation. To receive the credit, you must contact Comcast by calling 1-855-487-0252 within forty-five (45) days of service disconnection.

7. Services under the Offer are for one outlet (except as may be specified under the above Offer and for XFINITY Digital Voice). Comcast's applicable charges for installation, equipment, and other services not specifically included in the Offer described above (including without limitation, pay per view, and other non-recurring charges) are additional. The provisions of this Agreement supplement the Comcast Agreement for Residential Services (as amended in accordance with its terms).

8. Comcast may rearrange, delete, add to or otherwise change programming or features or offerings contained in the services.

Again, thank you for choosing Comcast. Please call us if you have any questions.

Sincerely,

Comcast Customer Service

DP_VI_STPI_$79.99x12_2Y_Q414_230ETF

# EXHIBIT G



HATTIS LAW PLLC
P.O. Box 1645
Bellevue, WA 98009
Phone: 650.980.1990
www.hattislaw.com

April 17, 2017

**VIA U.S. MAIL RETURN RECEIPT REQUESTED**

Brian L. Roberts, CEO
Comcast Corporation
1701 John F Kennedy Blvd
Philadelphia, PA 19103-2838

Agent for Service of Process for Comcast Corp.
CT Corporation System
818 West Seventh Street, Suite 930
Los Angeles, CA 90017

David N. Watson, CEO
Comcast Cable Communications, LLC
1701 John F Kennedy Blvd
Philadelphia, PA 19103-2838

Agent for Service of Process for Comcast Cable
CT Corporation System
818 West Seventh Street, Suite 930
Los Angeles, CA 90017

Re: My Client: Joseph Loomis, Comcast Account No. ▮▮▮▮▮▮▮▮
Notice of Violation of California Consumer Legal Remedies Act and Demand

Dear Mr. Roberts and Mr. Watson,

I represent Joseph Loomis, who signed up for Comcast cable television and Internet service and who is being wrongfully charged a monthly Broadcast TV Fee and Regional Sports Fee (the "Fees"). I send this letter to notify Comcast Corporation and Comcast Cable Communications, LLC (collectively, "Comcast") and all of its subsidiaries and affiliates of its wrongful conduct and to demand that Comcast rectify its unlawful actions within 30 days of receipt of this letter.

Comcast is perpetrating a massive bait-and-switch scheme on its over two million California cable television subscribers, whereby Comcast falsely advertises its cable television service packages for much lower prices than it actually charges.

Comcast's advertising, and its sales staff, mislead consumers into falsely believing that the advertised price for its service packages is the actual price consumers will pay except for equipment charges and bona fide taxes and government fees. However, Comcast intentionally and deceptively chooses to exclude the Fees from the advertised price of its service packages. Comcast never qualifies the lower price with an asterisk or other adjacent marker, and any disclosures which Comcast makes about the Fees are not only inadequate, but are themselves deceptive. Comcast designed its disclaimers regarding the Fees to mislead consumers into falsely believing the Fees are taxes or government charges over which Comcast has no control, rather than disclosing the truth that the Fees are discretionary disguised double-charges for the channels that Comcast has promised are already included in the lower advertised package price (e.g., ABC, CBS, NBC, FOX, and local sports channels).

April 17, 2017
Page 2

Comcast doubles down on this deception through its practice of lying to customers who ask or complain about the Fees, explicitly telling them that the Fees are taxes or government-imposed charges.

Comcast perpetrates this scheme to hook and trap new customers into one-year or two-year contracts at "guaranteed" fixed rates with significant early termination penalties, with the intent of charging the customers more than promised via the deceptive and hidden Fees. Even worse, Comcast then repeatedly and systematically raises its prices *even higher* on these trapped customers via the backdoor method of repeatedly increasing the Fees in the middle of their contract despite having promised the customers a locked-in monthly rate.

Comcast has increased the Fees by 800% since they were first introduced in 2014, and the Fees now add as much as $12.00 per month to customer cable bills, costing California consumers over $200 million per year.

Mr. Loomis received 5 different quotes in June 2016 from Comcast sales agents in the process of signing up for a two-year Comcast bundled television and Internet service package. In each and every case: (1) the Comcast sales agent did not disclose the Broadcast TV Fee and the Regional Sports Fee; and (2) the Comcast sales agent told Mr. Loomis that the only additional charges beyond the quoted price was "taxes."

In August 2016 Mr. Loomis was surprised and upset to see on his bill that he was being charged $8.00 in the form of the Fees. Mr. Loomis called Comcast customer service several times to complain about the Fees and spoke with several Comcast agents. Comcast agents falsely told him that the Fees were "required by federal law" and were "taxes," and stated that the Fees could not be removed from his bill.

Mr. Loomis then mailed a letter to Comcast offices documenting his experience and demanding that Comcast remove the Fees or reduce his bill by an offsetting amount equal to the Fees. A Comcast agent contacted Mr. Loomis and agreed to credit his account $192.00, representing a refund of 24 months of $8.00 in monthly Fees. But the agent told Mr. Loomis that despite the credit, Comcast could increase the Fees at any time after the first three months of the two-year contract term, such that the $192.00 credit would not cover the future increases in Fees.

Mr. Loomis then submitted a complaint to the FCC about Comcast's practices. In response to the FCC complaint, Mr. Loomis received a call from another Comcast agent. The agent told Mr. Loomis he was "surprised" that the prior agent had granted him a credit, and similarly told Mr. Loomis that Comcast could increase the Fees at any time.

Mr. Loomis then mailed a second letter of complaint to Comcast, stating that he objected to any future increase in the Fees, and reminding Comcast that he had never agreed to the Fees in the first place. Yet another agent from Comcast contacted Mr. Loomis in response to this second letter. The agent repeated the line that Comcast could raise the Fees at any time, and then appeared to threaten Mr. Loomis that if he continued to complain, Comcast could reverse the $192.00 credit.

April 17, 2017
Page 3

A couple of months later, Comcast notified Mr. Loomis in his March 10, 1017 bill that Comcast would be increasing the Broadcast TV Fee from $5.00 to $7.00, and the Regional Sports Fee from $3.00 to $5.00, effective July 1, 2017 - approximately half-way into his two-year promised fixed-rate contract. Mr. Loomis suffers imminent and certain harm and damages as a result of Comcast's misrepresentations and omissions and failure to honor its agreements with him.

Comcast's material misrepresentations, active concealment, and failures to disclose violate the California Legal Remedies Act, California Civil Code Section 1750 *etseq.*, in the following manner: (1) Comcast misrepresents that its subscription services have characteristics, benefits, or uses that they do not have (Cal. Civ. Code § 1770(a)(5)); (2) Comcast advertises its subscription services with intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9)); (3) Comcast misrepresents that its subscription services confer or involve rights, remedies, or obligations that they do not have (Cal. Civ. Code § 1770(a)(14)); (4) Comcast misrepresents that its subscription services are supplied in accordance with previous representations when they are not (Cal. Civ. Code § 1770(a)(16)). Additionally, Comcast inserted unconscionable provisions in its customer contracts including prohibiting public injunctive relief in any forum (Cal. Civ. Code § 1770(a)(19).

We demand that within thirty (30) days of receiving this letter, Comcast agree to (1) refrain from engaging in the illegal and deceptive practices described above; and (2) return all money California Comcast customers paid for the Broadcast TV Fee and the Regional Sports Fee. If Comcast refuses to provide the demanded relief within thirty (30) days, we will seek compensatory and punitive damages and restitution on behalf Mr. Loomis and a California class of Comcast customers pursuant to the California Consumer Legal Remedies Act.

I invite you to contact me to discuss this demand at any time. I can be reached at (650) 980-1990 or dan@hattislaw.com.

Very truly yours,

Daniel M. Hattis

# EXHIBIT H

**Offer Page Screenshot Taken By Plaintiff Adkins on September 26, 2016**



# EXHIBIT I

**"Pricing & Other Info." Dialog Box Screenshot Taken By Plaintiff Adkins on 9/26/16**



# EXHIBIT J

**"TV Options" Page Screenshot TakenBy Plaintiff Adkins on 9/26/16**



# EXHIBIT K

**"Internet Options" Page Screenshot Taken By Plaintiff Adkins on 9/26/16**



# EXHIBIT L

**Installation Options Page Screenshot Taken By Plaintiff Adkins on 9/26/16**



# EXHIBIT M

**Screenshots of "Monthly Total" Dialog Box on 3/26/2016**



# EXHIBIT N

**Order Submittal Page Screenshot Taken By Plaintiff Adkins on 9/26/16**



# EXHIBIT O

**Minimum Term Agreement Dialog Box Screenshot Taken By Plaintiff Adkins on 9/26/16**

## Minimum Term Agreement

The offer you selected requires a minimum term agreement and is subject to an early termination fee if all XFINITY services are cancelled during the agreement term. A copy of the agreement will be sent to the mail or email address you provided. You have the option to cancel the minimum term agreement within 30 days of the date the services under the offer are installed/activated without incurring an early termination fee. If you wish to cancel the agreement, you must contact Comcast by calling 1-800-XFINITY. If you cancel the agreement during the 30 day period, the charges for your remaining services may increase to the non-term contract rate. If you do not cancel the minimum term agreement within the 30 day period, the terms of the minimum term agreement will automatically apply.

Close Window

1

# EXHIBIT P

## Order Summary Email Received by Plaintiff Adkins



From: **Comcast Online Communications** <online.communications@alerts.comcast.net>
Date: Mon, Sep 26, 2016 at 1:35 PM
Subject: Almost Done! Your order is nearly complete
To:

Important Information from Comcast

### xfinity

Help & Support | My Account

## Hi Dan,

Thank you for choosing Comcast! Your recent order is being reviewed. In the event additional information is required to complete your order, we may contact you at the telephone number provided. Once your order is complete, you will receive a final email confirmation with your order number and a summary of your XFINITY services from Comcast. Please keep in mind that order details are not finalized until you receive your confirmation email.

If you do not receive your confirmation email or a call from us within 24 hours, please call us at 1-877-316-9975 from 9 am to 9 pm local standard time to speak with a customer service representative.

We look forward to completing your order.

| Your Account Details | Your Order Summary |
|---|---|
| **Confirmation Number** 1609268059602 | **Service** Starter XF Double Play |
| **Billing Contact Information** Mr. Dan Adkins | **Monthly Fees** $79.99 |
| | **One-time Fees** $14.99 |
| **Billing Address** Same as Service Address | **Service Address** |

### Installation

#### Self Installation

We will ship your Self-install kit to:

Have a question about self-installation?
Please visit our help section to get started using your services.

Sincerely,
XFINITY Team

**Learn more about the** Comcast Customer Guarantee.

COMCAST

This is a service-related email. Comcast will occasionally send you service-related emails to inform you of service upgrades or new benefits.

Comcast respects your privacy. For a complete description of our privacy policy, click here.

© 2015 Comcast. All rights reserved. All trademarks are the property of their respective owners.

Comcast Cable, One Comcast Center, 1701 JFK Boulevard, Philadelphia, PA 19103
Attn: Email Communications

# EXHIBIT Q

# xfinity

**Dan Adkins**

Account number

For service at:

OAKLAND CA

**Thanks for choosing XFINITY from Comcast**

| Your monthly account summary | |
|---|---|
| Previous balance | 0.00 |
| No payment received | 0.00 |
| **New charges** | |
| XFINITY bundle | 79.99 |
| Additional services and equipment | 15.00 |
| Other charges and credits | 22.98 |
| Taxes and fees | 10.00 |

**Amount due** **$127.97**

Payment due Oct 23, 2016

Need help?
Visit xfinity.com/customersupport,
use the My Account app, or
call 1-800-934-6489 (1-800-XFINITY)

Ready to pay?
Visit xfinity.com/myaccount or
use the My Account app

❗ **Welcome to XFINITY**

This bill includes any installation and service charges. Future charges will be posted on the 01 day of each month.

Payments made during installation might not be reflected on this statement, but you can check your up-to-date balance by visiting xfinity.com/myaccount or by calling us at 1-800-934-6489.

**Service updates**
See the "additional information" section for upcoming service updates

---

Detach the bottom portion of this bill and enclose with your payment

Please write your account number on your check or money order

---

# xfinity

9602 S 300 W. STE B SANDY UT 84070-3302
8155 4000  NO RP 01 10222016 YNNNNYNN 01 004901  0024

DAN ADKINS

OAKLAND, CA



| | |
|---|---|
| Account number | |
| Payment due | **Oct 23, 2016** |
| **Please pay** | **$127.97** |
| **Amount enclosed** | $ |

Make checks payable to Comcast
Do not send cash

COMCAST
PO BOX 34744
SEATTLE WA  98124-1744

8155400395163643 00127977

## Did you know?

XFINITY® Internet customers have free access to millions of XFINITY WiFi hotspots, so you can connect on the go. Visit xfinity.com/wifi to learn more.



## Missed it? Catch it today.

With XFINITY On Demand, recent episodes of top shows are available at no extra cost. Watch now on your TV, online at xfinity.com/tv or on the go with the XFINITY TV app.





Restrictions apply. Not available in all areas. Services and features vary based on service level. Check with your service center regarding standard data charges that may apply. NBCU celebrity names are trademarks of NBC, a division of NBC Universal. © NBC Universal Media LLC. All rights reserved.



## Need help? We're here for you.



Visit **xfinity.com/customersupport**
Call **1-800-934-6489 (1-800-XFINITY)**

**Billing support**
Open 7 am-9 pm, 7 days a week

**Technical support**
Open 24 hours, 7 days a week

**Forgot your email or username?**
Go to xfinity.com/myusername

Please notify us within 120 days of the bill date with any questions on charges billed to your account.

Find your nearest XFINITY customer service center location and operating hours at xfinity.com/storelocator.



## Additional payment options



**Automatic payment**
Sign up at xfinity.com/myaccount



**Online**
Visit xfinity.com/myaccount



**By app**
Use the My Account app



**By phone**
Call 1-800-934-6489 (1-800-XFINITY)

## Moving? Let us help.

The XFINITY Movers Edge® program makes it easy to stay connected to your TV, Internet and Voice service.

Visit **xfinity.com/moversedge**
Call **1-855-668-3343**
(1-855-MOV-EDGE)





Account number

4000 NO RP 01 10022016 YNNNNYNN 01 004901 0024

Services from Oct 05, 2016 to Nov 04, 2016

## Your new charges in detail

| XFINITY bundle | $79.99 |
| --- | --- |
| Starter Double Play | 129.95 |
| Includes Digital Starter, Digital Converter With Access to On Demand Programming and Performance Pro Internet | |
| Bundle Discount | -49.96 cr |

| Additional services and equipment | | $15.00 |
| --- | --- | --- |
| **XFINITY TV** | | |
| Term Agreement Applies | | 0.00 |
| 24 Month Term Agreement On Account. Visit Www.xfinity.com/myaccount For Details. | | |
| Showtime | | 10.00 |
| Service Discount | | -10.00 cr |
| Streampix | | 4.99 |
| Service Discount | | -4.99 cr |
| **XFINITY Internet** | | |
| Speed Increase | | 15.00 |
| Blast! Pro Internet | | |

| Other charges and credits | | $22.98 |
| --- | --- | --- |
| Broadcast TV Fee | | 5.00 |
| Regional Sports Fee | | 3.00 |
| **Installation charges** | | |
| Video Self Install Kit | 10/01 | 7.49 |
| Self Install Kit | 10/01 | 7.49 |

| Taxes and fees | $10.00 |
| --- | --- |
| Franchise Fee | 3.54 |
| Utility Tax | 4.70 |
| PEG Access Support | 0.70 |
| FCC User Fee | 0.08 |
| State Sales Tax | 0.98 |
| **New charges** | **$127.97** |

## Additional information

The Broadcast TV Fee recovers a portion of the costs of retransmitting television broadcast signals.

The Regional Sports Fee recovers a portion of the costs to transmit certain regional sports networks.

Hearing/speech impaired call 711

**Closed captioning**
Our products and services are made for everyone to enjoy. For closed captioning concerns and other accessibility issues affecting customers with disabilities, visit comcastsupport.com/accessibility for live chat, email accessibility@comcast.com, call 1-855-270-0379, fax 1-866-599-4268 or write to Comcast, 1701 John F. Kennedy Blvd., Philadelphia, PA 19103-2838, Attn: K Wilkinson.

Beginning Nov 17, FYI (ch 275), FYI HD (ch 772), Viceland (ch 276) and Viceland HD (ch 805) will no longer be available on our Digital Starter or Digital Economy tier. FYI and Viceland will now be available on our Digital Preferred tier.



Your Local Franchise Authority Is:
City of Oakland, Office of the City Clerk
FCC Unit #CA0589
One Frank Ogawa Plaza, 2nd Fl., Oakland, CA 94612
(The above is not a payment or service center)

# EXHIBIT R

October 7, 2016

Comcast
3055 Comcast Place
Livermore, CA 94551

Re:     Account: ███████████████
        Bill date: Oct 1, 2016

Dear Sir or Madam:

I just received my first bill, and while I have no complaints about the service so far, I was disappointed to find that the bill didn't match the $79.99 per month "Starter Double Play with Blast!" package that I signed up for.

I ask that you correct my bill and future bills to match the offer I signed up for.

I have included screenshots of the offer details. It states clearly one-time charges of $14.99, and monthly charges of $79.99.

1.  In the addition to the expected $79.99 monthly charge for the package, there were the following line items:
    a.  Blast! Pro Internet     $15.00
    b.  Broadcast TV Fee        $5.00
    c.  Regional Sports Fee     $3.00
2.  Blast Pro Internet was included in my package, but billed separately as an additional service.
3.  There are two $7.49 charges for the self-install kit. I only picked up one kit from the local service center. That appears to be a double charge.
4.  I am using a CableCARD in my own device, so I should get a $2.50 monthly credit on my bill per your policy: http://www.xfinity.com/equipmentpolicy

I look forward to you addressing these errors.

Respectfully Yours,

Dan Adkins

# xfinity

Bill date Oct 01, 2016
Services from Oct 05, 2016 to Nov 04, 2016

Page 1 of 7

**Dan Adkins**

Account number

For service at:

OAKLAND CA

## Your monthly account summary

| | |
|---|---|
| Previous balance | 0.00 |
| No payment received | 0.00 |
| **New charges** | |
| XFINITY bundle | 79.99 |
| Additional services and equipment | 15.00 |
| Other charges and credits | 22.98 |
| Taxes and fees | 10.00 |

**Thanks for choosing XFINITY from Comcast**

**Amount due**     **$127.97**

Payment due Oct 23, 2016

Need help?
Visit xfinity.com/customersupport,
use the My Account app, or
call 1-800-934-6489 (1-800-XFINITY)

Ready to pay?
Visit xfinity.com/myaccount or
use the My Account app

❗ **Welcome to XFINITY**

This bill includes any installation and service charges.
Future charges will be posted on the 01 day of each
month.

Payments made during installation might not be
reflected on this statement, but you can check your
up-to-date balance by visiting xfinity.com/myaccount
or by calling us at 1-800-934-6489.

**Service updates**
See the "additional information" section for upcoming service
updates.

---

Detach the bottom portion of this bill and enclose with your payment

Please write your account number on your check or money order

# xfinity

9602 S 300 W. STE B SANDY UT 84070-3302
8155 4000  NO RP 01 10022016 YNNNNYNN 01 004901  0024

**DAN ADKINS**

OAKLAND, CA



| | |
|---|---|
| Account number | |
| Payment due | **Oct 23, 2016** |
| **Please pay** | **$127.97** |
| **Amount enclosed** | $ |

Make checks payable to Comcast
Do not send cash

COMCAST
PO BOX 34744
SEATTLE WA  98124-1744

8155400395163643001127977

Services from Oct 05, 2016 to Nov 04, 2016

## Your new charges in detail

| XFINITY bundle | $79.99 |
|---|---|
| Starter Double Play | 129.95 |
| Includes Digital Starter, Digital Converter With Access to On Demand Programming and Performance Pro Internet | |
| Bundle Discount | -49.96 cr |

| Additional services and equipment | $15.00 |
|---|---|
| **XFINITY TV** | |
| Term Agreement Applies | 0.00 |
| 24 Month Term Agreement On Account. Visit Www.xfinity.com/myaccount For Details. | |
| Showtime | 10.00 |
| Service Discount | -10.00 cr |
| Streampix | 4.99 |
| Service Discount | -4.99 cr |
| **XFINITY Internet** | |
| Speed Increase | 15.00 |
| Blast! Pro Internet | |

*credit?*

| Other charges and credits | $22.98 |
|---|---|
| Broadcast TV Fee | 5.00 |
| Regional Sports Fee | 3.00 |

*monthly charges*

| Installation charges | | |
|---|---|---|
| Video Self Install Kit | 10/01 | 7.49 |
| Self Install Kit | 10/01 | 7.49 |

*duplicate?*

| Taxes and fees | $10.00 |
|---|---|
| Franchise Fee | 3.54 |
| Utility Tax | 4.70 |
| PEG Access Support | 0.70 |
| FCC User Fee | 0.08 |
| State Sales Tax | 0.98 |
| **New charges** | **$127.97** |

Hearing/speech impaired call 711

**Closed captioning**
Our products and services are made for everyone to enjoy. For closed captioning concerns and other accessibility issues affecting customers with disabilities, visit comcastsupport.com/accessibility for live chat, email accessibility@comcast.com, call 1-855-270-0379, fax 1-866-599-4268 or write to Comcast, 1701 John F. Kennedy Blvd., Philadelphia, PA 19103-2838, Attn: K Wilkinson.

Beginning Nov 17, FYI (ch 275), FYI HD (ch 772), Viceland (ch 276) and Viceland HD (ch 805) will no longer be available on our Digital Starter or Digital Economy tier. FYI and Viceland will now be available on our Digital Preferred tier.

Your Local Franchise Authority Is:
City of Oakland, Office of the City Clerk
FCC Unit #CA0589
One Frank Ogawa Plaza, 2nd Fl., Oakland, CA 94612
(The above is not a payment or service center)

## Additional information

The Broadcast TV Fee recovers a portion of the costs of retransmitting television broadcast signals.

The Regional Sports Fee recovers a portion of the costs to transmit certain regional sports networks.



Congratulations, your credit check was successful.

# Review your order details

Print

| | ONE-TIME CHARGES | MONTHLY CHARGES |
|---|---|---|
| **DOUBLE PLAY** **Starter XF Double Play** 2 year minimum term upon order starting upon installation | | $79.99/mo |
| Promo — Get X1 DVR™ service for $10/month for 12 months SHOWTIME® included for 24 months Blast!® Pro speeds included for 12 months | | Included |
| **TV** Edit **140+ Channels Plan** XFINITY On Demand | | Included |
| X1 Digital Service | | Included |
| Minimum Term Agreement | | Included |
| Streampix | | Included |
| X1 Service Activation | | Included |
| **Internet** Edit Blast!® Pro | | Included |
| Internet Modem Owned | | Included |
| Blast Pro Internet | | Included |

**Account Details** Edit

**Mr. Dan Adkins**

**Service Address**
OAKLAND CA,

**Installation** Edit

**Self-Install Kit**
$14.99 shipping
Get It September 30 to October 1

**Shipping Address**
Same as service address

**Billing Info** Edit

**Billing Address**
Same as service address

## Installation

| | ONE-TIME CHARGES | MONTHLY CHARGES |
|---|---|---|
| Self-Install Kit - Get It September 30 to October 1 Edit | $14.99 | |
| **Total** | $14.99 | $79.99 |

By checking the box below and clicking on "Submit Your Order" I represent that I am 18 years of age or older, I have read and agree to the Comcast Agreement for Residential Services, and I have read and agree to the terms of the Minimum Term Agreement. I have read and understand the Comcast Privacy Notice

Back to Account Info

**Submit Your Order**

Restrictions apply. Not available in all areas. Limited to residential customers. Requires subscription to Xfinity Voice, Internet and TV services. Equipment, installation, taxes and fees, including Broadcast TV Fee and other applicable charges extra. Pricing subject to change. Service limited to a single outlet. May not be combined with other offers. After promotional period, or if any service is cancelled or downgraded, regular rates apply. Call for details or see additional info at Comcast.com. TV: Limited Basic service subscription required to receive other levels of service. 30-Day Money-Back Guarantee applies to one month's recurring service charge and standard installation up to $500. All rights reserved. ©2016 Comcast. All rights reserved.

# EXHIBIT S



**HATTIS LAW**
Phone: 650.980.1990
www.hattislaw.com
P.O. Box 1645
Bellevue, WA 98009

October 8, 2016

**Transmitted Via Facsimile to 215.286.7089**
**Emailed to Litigation Paralegal Claudia Salcedo at: Claudia_Salcedo@comcast.com**

Thomas R. Nathan
Senior Vice President and Senior Deputy General Counsel
Comcast Corporation
One Comcast Center
Philadelphia, PA 19103-2838

Re:   Notice of Illegal and Deceptive Practices
      Notice of Violation of California Consumer Legal Remedies Act
      My Clients:   Dan Adkins, Account No. ███████████

Dear Mr. Nathan,

        We represent Dan Adkins and ███████████, who signed up for Comcast XFINITY television services. Both are being wrongfully charged a monthly Broadcast TV Fee. Mr. Adkins is also wrongfully being charged a Regional Sports Fee.

        In addition, Comcast is wrongly billing Mr. Adkins for other excess amounts. Mr. Adkins is being overcharged $15.00 per month for Blast! Pro Internet, which Comcast promised him was included in his $79.99 XFINITY Bundle price. He is also not receiving the $2.50 monthly credit he is supposed to receive for using a CableCARD in his own device. Also disturbing is that the Terms and Conditions posted to Mr. Adkins' online account do not match the terms he was promised on your website. Your website, besides stating that Blast! Pro Internet was included in his package, also promised the $79.99 package price would increase to $89.99 after 12 months. However the Terms and Conditions posted to Mr. Adkins' account show that the price will increase to $99.99 (not $89.99) after 12 months, and also do not reflect the promised inclusion at no extra cost of Blast! Pro Internet. Finally, there are two self-install charges on Mr. Adkins' first bill which appear duplicative because he picked up only one installation kit from his local service center; in fact perhaps there should be no self-install fee at all because when he signed up on the website it described the self-install charge as a "shipping" charge.

        Comcast's practice of advertising and promising one price for its services, while in fact charging a different higher price, is unlawful and breaches Comcast's agreements with its customers.

October 8, 2016
Page 2

Comcast's material misrepresentations, active concealment, and failures to disclose also violate the California Legal Remedies Act, California Civil Code Section 1750 *et seq.*, in the following manner: (1) Comcast misrepresents that its subscription services have characteristics, benefits, or uses that they do not have (Cal. Civ. Code § 1770(a)(5)); (2) Comcast advertises its subscription services with intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9)); (3) Comcast misrepresents that its subscription services confer or involve rights, remedies, or obligations that they do not have (Cal. Civ. Code § 1770(a)(14)); and (4) Comcast misrepresents that its subscription services are supplied in accordance with previous representations when they are not (Cal. Civ. Code § 1770(a)(16)).

We demand that Comcast agree to (1) refrain from engaging in the illegal and deceptive practices described above; and (2) return all money Comcast customers have paid for the Broadcast TV Fee, Regional Sports Fee, and other overcharges in violation of the promises made to them by Comcast.

Meanwhile, I remind Comcast of its duties to preserve evidence regarding this matter including customer records, online chats, and recorded calls with my clients.

Very truly yours,

Daniel M. Hattis

# EXHIBIT T

**Direct Mail Ad Received by Plaintiff Robertson in Late 2015 – Sacramento, CA – Page 1**

000881
Cvhristopher Robertson Or Our Neighbor At

Sacramento CA
‖‖‖‖ᵖᵘˡᵖᵈᵒᵈᵖᵖˡˡ‖‖‖ᵖ‖‖‖ᵈᵖˡᵖᵈᵖˡᵖˡᵖˡᵈᵖᵈ‖‖‖ᵖᵈᵖᵖᵈ‖‖‖‖



## Get the
## X1 Triple Play at a
## special holiday price.


Now with
FASTER
download
speeds



Call today! **1-855-611-9980**

---

Dear Cvhristopher,

This holiday season, we're making a great deal even better. For a limited time, you'll get fast, reliable Internet, incredible entertainment, and home phone — at a lower price. You'll also get X1. It'll change the way you experience TV.

XFINITY® Triple Play
TV, Internet & Voice


per month for 12 months

| The fastest in-home **WiFi** | **HBO®** or **SHOWTIME®** included for 12 months | Add **X1 DVR™** service for $10 more per month for 12 months |

### XFINITY gives you more to celebrate.

- Get the **X1 Entertainment Operating System®** — search smarter, get personalized recommendations, even change channels with your voice

- Over 140 channels plus HBO® or SHOWTIME®

- **XFINITY Internet** — now with download speeds up to 75 Mbps

- **XFINITY Voice** with unlimited nationwide talk and text, plus international calling

- Enjoy the largest On Demand library with the top 100 shows preloaded

- Plus, add X1 DVR service for just $10 more per month for 12 months so you can watch and record up to 6 shows at the same time

### Hurry! This limited-time holiday offer ends 11/22/15!

Take advantage of this exciting opportunity to switch to the **XFINITY Triple Play** at the reduced price of just **$89.99 per month for 12 months with a 2-year term agreement.** You'll get tons of channels, including HBO® or SHOWTIME® and thousands of XFINITY On Demand™ shows and movies — included at no additional cost. Call **1-855-611-9980** today.

Sincerely,

Your XFINITY Team

P.S.  Ask how you can get a **FREE Samsung Galaxy Tab® A** or
a **$500 Visa® Prepaid Card** when you select a qualifying HD Triple Play.



## CALL NOW! 1-855-611-9980 or visit xfinity.com

**Direct Mail Ad Received by Plaintiff Robertson in Late 2015 – Sacramento, CA – Page 2**



## Tech the Halls

xfinity
the future of awesome®

### X1 makes family gatherings a lot more fun.

This holiday, you can have all the entertainment and bandwidth you need for family and friends to have a great time. X1 gives you thousands of On Demand shows and moves. So there's something for everyone. Plus, the top 100 shows are preloaded and ready to watch.

### Like fast Internet? Try the fastest.

XFINITY® delivers **the fastest Internet in America** according to Speedtest.net. You get reliably fast Internet speeds so everyone can get online at the same time to stream movies, upload holiday pics, play games and so much more.



SPEEDTEST by OOKLA

AMERICA'S FASTEST INTERNET

### Say "Frosty" and you're all set.

With the voice remote, you can use commands to change channels, search for shows and get recommendations. It's an easy way to find all your holiday favorites.



## Make your holidays even more special with XFINITY.
# CALL NOW! 1-855-611-9980



COMCAST

Restrictions apply. Not available in all areas. Features and programming vary depending on area and level of service. Share capability limited to X1 customers with a DVR-compatible set-top box and XFINITY Voice service. WiFi claim based on September and November 2014 studies by Allion Test Labs, Inc. Actual speeds vary and are not guaranteed. Call for mobile fees and complete details, or visit xfinity.com. © 2015 Comcast. All rights reserved. NBCU celebrity endorsement not implied. All networks are divisions of NBCUniversal. CNBC (Network) Media, LLC All Rights Reserved.

Offer ends 11/22/15. Restrictions apply. Not available in all areas. Limited to new residential customers. Requires subscription to Starter XF Triple Play with Digital Starter TV, Performance Internet and Unlimited Voice service. 2-year term agreement required. Early termination fee applies. Equipment, installation, taxes and fees, including regulatory recovery fees, Broadcast TV Fee (up to $3.50/mo.), Regional Sports Fee (up to $1.00/mo.) and other applicable charges extra, and subject to change during and after the promo. After 12 months, service charge for the Starter XF Triple Play increases to $114.99/mo. for months 13-24. After promo, or if any service is cancelled or downgraded, regular charges apply. Comcast's service charge for the Starter XF Triple Play is $144.95-$154.95/mo., for HBO® is $19.99/mo., SHOWTIME® is $19.99/mo. HD Technology Fee is $10.00/mo. and for DVR service is $9.95/mo. (pricing subject to change). TV & Internet limited to a single outlet. May not be combined with other offers. XFINITY On Demand selections subject to charge indicated at time of purchase. Availability of top 100 shows varies based on service package. Internet: WiFi claims based on September and November 2014 studies by Allion Test Labs, Inc. Actual speeds vary and are not guaranteed. Voice: $29.95 activation fee applies. Service (including 911/emergency services) may not function after an extended power outage. Visa® Prepaid Card and Samsung Galaxy offers require subscription to qualifying HD Triple Play bundle 2-year term agreement

# EXHIBIT U



HATTIS LAW
Phone: 650.980.1990
www.hattislaw.com
1171 Bellevue Way NE #1645
Bellevue, WA 98009
1134 Crane Street, Suite 216
Menlo Park, CA 94025

December 24, 2015

**VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED**

Arthur R. Block, EVP & General Counsel
Comcast Corporation
1701 John F Kennedy Blvd
Philadelphia, PA 19103-2838

Agent for Service of Process for Comcast Corporation
CT Corporation System
818 West Seventh Street, Suite 930
Los Angeles, CA 90017

Re:　My Client: Christopher Robertson
　　　Notice of Illegal and Deceptive Practices Concerning Inadequately Disclosed Fees
　　　Notice of Violation of California Consumer Legal Remedies Act

Dear Mr. Block,

　　　We represent Christopher Robertson, who signed up for Comcast XFINITY services and who is now being wrongfully charged a monthly "Broadcast TV fee." We send this letter to notify Comcast and all of its subsidiaries and affiliates of its wrongful conduct and to demand that Comcast rectify its unlawful actions within 30 days of receipt of this letter.

　　　Comcast falsely advertises and promises a certain price for cable service packages, but then actually charges a different and higher price by tacking on surprise mandatory fees such as a monthly "Broadcast TV Fee," a monthly "Regional Sports Fee," a "Video Transfer Fee," and a "CHSI Transfer Fee." Compounding the fraud, when customers contact Comcast to inquire about the Broadcast TV Fee and the Regional Sports Fee, Comcast customer service representatives often lie to the customers and tell them the fee is a mandatory tax or regulatory fee that Comcast must pay and which Comcast merely passes on to the consumer. In fact, these fees are clever inventions by Comcast to enable it to charge a higher price for its services while deceptively continuing to advertise a lower price.

　　　Before Mr. Robertson signed up for Comcast XFINITY service, he spoke and chatted online with Comcast sales representatives, who explicitly promised him that the contract price they quoted him would be the actual price he paid under the contract. Relying on Comcast's representations, Mr. Robertson signed up for Comcast XFINITY service and received his "Welcome Kit" on or about November 6, 2015.

　　　On December 1, 2015, Mr. Robertson received his first bill. The total bill was higher than Comcast had promised, due to several inadequately disclosed fees: (1) a $3.50 Broadcast TV Fee; (2) a $6 Video Transfer Fee; and (3) a $6 CHSI Transfer Fee. Mr. Robertson then went to Comcast's website and opened a web chat with a customer service representative to demand that Comcast remove these fees.

December 24, 2015
Page 2

The representative told Mr. Robertson that he could remove the Video Transfer Fee and the CHSI Transfer Fee, but that the Broadcast TV Fee could not be removed because it was a mandatory monthly charge. As a result of Comcast's deception, Mr. Robertson is wrongfully being required to pay this fee through the remainder of his 12 month contract.

Mr. Robertson's experience is typical of that of thousands, if not millions, of Comcast cable customers nationwide.

Comcast's practice of advertising and promising one price for its services, while in fact charging a different and higher price due to inadequately disclosed and deceptive fees, is unlawful for multiple reasons.

First, Comcast is breaching its agreement with its customers.

Second, this deceptive behavior constitutes fraud and an unfair business practice.

Third, Comcast compounds the fraud by lying to customers about the nature of the fees when customers inquire about them, *e.g.* by telling customers that the Broadcast TV Fee is a fee or tax mandated by the government which Comcast merely passes through to consumers.

Fourth, Comcast's material misrepresentations, active concealment, and failures to disclose violate the California Legal Remedies Act, California Civil Code Section 1750 *et seq.*, in the following manner: (1) Comcast misrepresents that its subscription services have characteristics, benefits, or uses that they do not have (Cal. Civ. Code § 1770(a)(5)); (2) Comcast advertises its subscription services with intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9)); (3) Comcast misrepresents that its subscription services confer or involve rights, remedies, or obligations that they do not have (Cal. Civ. Code § 1770(a)(14)); and (4) Comcast misrepresents that its subscription services are supplied in accordance with previous representations when they are not (Cal. Civ. Code § 1770(a)(16)).

The above enumeration and explication are completely without limitation and merely scratch the surface.

We demand that within thirty (30) days of receiving this letter, Comcast agree to (1) refrain from engaging in the illegal and deceptive practices described above; and (2) return all money Comcast customers paid for the Broadcast TV Fee, the Regional Sports Fee, the Video Transfer Fee, and the CHSI Transfer Fee. If Comcast refuses to provide the demanded relief within thirty (30) days, we will seek compensatory and punitive damages, restitution, and injunctive relief.

We sincerely hope to confer with you to resolve these violations without the need for litigation. I invite you to contact me to discuss this demand at any time. I can be reached at (650) 980-1990 or dan@hattislaw.com.

Very truly yours,

Daniel M. Hattis

# EXHIBIT V

# xfinity

**Christopher Robertson**

Account number

For service at:

SACRAMENTO CA

**Thanks for choosing XFINITY from Comcast**

Bill date May 08, 2016
Services from May 13, 2016 to Jun 12, 2016

Page 1 of 4

| Your monthly account summary | |
|---|---|
| Previous balance | 61.03 |
| Payment - Thank You Apr 19, 2016 | -61.03 cr |
| New charges | |
| XFINITY bundle | 49.99 |
| Additional services and equipment | 5.00 |
| Other charges and credits | 3.25 |
| Taxes and fees | 2.79 |

| Amount due | **$61.03** |
|---|---|

Payment due May 30, 2016

**Need help?**
Visit xfinity.com/customersupport,
use the My Account app, or
call 1-800-934-6489 (1-800-XFINITY)

**Ready to pay?**
Visit xfinity.com/myaccount or
use the My Account app

**➲ Manage your services online or on the go**
Access the one-stop destination to pay your bill and
manage your services. Visit xfinity.com/myaccount or
use the My Account app.

**Service updates**
See the "additional information" section for upcoming service
updates.

---

Detach the bottom portion of this bill and enclose with your payment

Please write your account number on your check or money order

# xfinity

9602 S 300 W. STE B SANDY UT 84070-3302
8155 6000  NO RP 08 05092016 NNNNNNNN 01 94838

CHRISTOPHER ROBERTSON

SACRAMENTO, CA

| | |
|---|---|
| Account number | |
| Payment due | **May 30, 2016** |
| **Please pay** | **$61.03** |
| **Amount enclosed** | $ |

Make checks payable to Comcast
Do not send cash

COMCAST
PO BOX 34744
SEATTLE WA  98124-1744

8155600385589315000б103б

## Did you know?

XFINITY® Internet customers have free access to millions of XFINITY WiFi hotspots, so you can connect on the go. Visit xfinity.com/wifi to learn more.



## Missed it? Catch it today.

With XFINITY On Demand, recent episodes of top shows are available at no extra cost. Watch now on your TV, online at xfinity.com/tv or on the go with the XFINITY TV app.





Restrictions may apply. Not available in all areas. Services and features vary based on service level. Check with your wireless carrier regarding standard data charges that may apply. NBCU editorial endorsement not implied. NBC; a division of NBC Universal. © NBC Universal Media LLC. All rights reserved.

## Need help? We're here for you.



Visit **xfinity.com/customersupport**
Call **1-800-934-6489 (1-800-XFINITY)**

**Billing support**
Open 7 am-9 pm, 7 days a week

**Technical support**
Open 24 hours, 7 days a week

**Forgot your email or username?**
Go to xfinity.com/myusername

Please notify us within 60 days of the bill date with any questions on charges billed to your account.

Find your nearest XFINITY customer service center location and operating hours at xfinity.com/storelocator.



## Additional payment options


**Automatic payment**
Sign up at xfinity.com/myaccount


**Online**
Visit xfinity.com/myaccount


**By app**
Use the My Account app


**By phone**
Call 1-800-934-6489 (1-800-XFINITY)

## Moving? Let us help.

The XFINITY Movers Edge® program makes it easy to stay connected to your TV, Internet and Voice service.

Visit **xfinity.com/moversedge**
Call **1-855-668-3343**
(1-855-MOV-EDGE)





6000  NO RP 08 05092016 NNNNNNNNN 01 994838



Services from May 13, 2016 to Jun 12, 2016

## Your new charges in detail

| XFINITY bundle | $49.99 |
|---|---|
| Internet Plus 25 Choice | 67.95 |
| Includes Limited Basic, Streampix, Selected Premium Channel, Digital Converter, and Performance Internet 25 | |
| Service Discount | -17.96 cr |

| Additional services and equipment | $5.00 |
|---|---|
| **XFINITY TV** | |
| Term Agreement Applies | 0.00 |
| 12 Month Term Agreement On Account. Visit Www.xfinity.com/myaccount For Details. | |
| Showtime | 0.00 |
| Included IN Bundle | |
| **XFINITY Internet** | |
| Speed Increase | 10.00 |
| Performance Internet | |
| Service Discount | -5.00 cr |

| Other charges and credits | $3.25 |
|---|---|
| Broadcast TV Fee | 3.25 |

| Taxes and fees | $2.79 |
|---|---|
| Franchise Fee | 0.99 |
| Utility Tax | 1.32 |
| PEG Access Support | 0.22 |
| FCC User Fee | 0.08 |
| State Sales Tax | 0.18 |

| New charges | $61.03 |
|---|---|

### Additional information

The Broadcast TV Fee recovers a portion of the costs of retransmitting television broadcast signals.

Hearing/speech impaired call 711

**Closed captioning**
Our products and services are made for everyone to enjoy. For closed captioning concerns and other accessibility issues affecting customers with disabilities, visit comcastsupport.com/accessibility for live chat, email accessibility@comcast.com, call 1-855-270-0379, fax

1-888-612-7402 or write to Comcast, 1701 John F. Kennedy Blvd., Philadelphia, PA 19103-2838, Attn: K Wilkinson.

Beginning April 19, KICU-Heroes & Icons will be added to your lineup on channel 180. Heroes & Icons features contemporary and classic TV westerns, war dramas & police dramas with heroic characters and iconic stars.

Beginning May 17, Aspire will be added to the Digital Economy package on channel 480.

Your Local Franchising Authority Is:
Sacramento Metropolitan Cable TV Commission
799 G Street, 4th Floor, Sacramento, CA 95814-1212
Phone #: (916) 874-6661
FCC Unit #CA1088
www.sacmetrocable.tv
(The above is not a payment or service center)



Account number

5000  NO RP 08 05092016 NNNNNNNN O1 994838

Services from May 13, 2016 to Ju 12, 2016

# XFINITY® Products And Services Price List

Alameda County–Sunol, Alameda, Albany, Arbuckle, Atherton, Atwater, Beale AFB, Belmont, Belvedere Tiburon, Benicia, Berkeley, Biggs, Brisbane, Buellton, Burlingame, Butte County, Calistoga, Campbell, American Canyon, Carmel, Castro Valley, Chico, Chowchilla, Cloverdale, Clovis, Coalinga, Colma-Daly City, Colma, Colusa County, Colusa, Corcoran, Corning, Corte Madera, Cotati, Crockett, Crows Landing, Cupertino, Daly City, Davis, Dinuba, Dos Palos, Dublin, East Palo Alto, El Cerrito, El Dorado County, ESorbrante-Richmond, Elk Grove, Emeryville, Fairfax, Fairfield, Firebaugh, Fowler, Fremont, Fresno County-Del Ray, Fresno, Galt, Glenn County, Grass Valley, Griley, Gustine, Hanford, Hayward-San Lorenzo, Hayward, Healdsburg, Hercules, Huron, Kensington-Richmond Heights, Kerman, Kings County, Kingsburg, Larkpur, Laton, Le Grand & Planada-Le Grand, Le Grand & Planada-Planada, Lemoore, Live Oak City, Livermore-San Ramon, Livermore, Lodi, Lompoc, Los Altos Hills, los Altos, Los Banos, Los Gatos, Madera County, Madera, Magalia, Marin County, Marina, Marysville, Maxwell, Mendota, Menlo Park, Merced–Beachwood Area, Meced, Milbrae, Mill Valley, Milpitas, Monte Sereno, Monterey, Mountain House, Mountain View, Napa, NAS (Lemoore Naval Air Station), Nevada City, Newark, Newman Novato, Oakdale, Oakland, Oliverhurst, Orland, Oroville, Pacific Grove, Pacifica, Palo Alto, Paradise, Parlier, Patterson, Pebble Beach, Penngrove, Petluma, Piedmont, Pinole, Placer County, Placerville, Pleasanton, Port Costa, Portola Valley, Redwood City, Reedley, Richmond, Rio Vista, Riverdale, Rodeo, Robnert Park, Roseville, Ross, Sacramento, Salinas, San Anselmo, San Carlos, San Francisco, San Joaquin, San Joaquin, San Jose, San Leandro, San Mateo County, San Mateo, San Pablo, San Rafael, San Ramon, Sand City, Sanger, Santa Barbara, Santa Clara, Santa Maria, Solvang, Santa Nella, Santa Rosa, Saratoga, Sausalit, Seaside, Sebastopol, Selma, Solano County, Sonoma County, Sonoma, South Atwater, South San Francisco, St. Helena, Stanford, Stockton, Suisun City, Sunnyvæ, Sunol, Sutter County Rollup, The Presidio Trust, Tracy, Travis AFB, Treasure Island, Tulare County, Tulare, Union City, Vacaville, Vallejo, Visalia, Wincton, Wheatland, Williams, Willows, Windsor, Woodside, Yolo County, Yountville, Yuba City, Yuba County, CA



## We're writing to let you know that starting on July 1, 2016, prices for select XFINITY TV fees will change.

Such changes are a function of a variety of factors including increases to business costs as well as product and technology upgrades. Please know that we have made an effort to reduce some fees and minimize the scope of our increases.

If you have any questions, please call us anytime at 1-855-688-9460.

Below is a summary of the price changes:

## Starting on July 1, 2016 the following XFINITY services and fees will be changing.

| Double Play Packages | Today | 07/01/16 |
|---|---|---|
| Starter XF DoublePlay | $126.94 | **$129.95** |
| Preferred XF Double Play | $144.94 | **$147.95** |

| Basic Services | Today | 07/01/16 |
|---|---|---|
| Broadcast TV Fee | $3.25 | **$5.00** |

| Basic and Digital Ancillary Services | Today | 07/01/16 |
|---|---|---|
| HBO® | $19.99 | **$15.00** |
| Showtime® | $19.99 | **$10.00** |
| Starz® | $19.99 | **$10.00** |
| Cinemax® | $19.99 | **$10.00** |
| The Movie Channel® | $19.99 | **$10.00** |
| Digital Adapter Additional Outlet Service *(SD or HD)* | $2.99 | **$3.99** |

| Miscellaneous Fees | Today | 07/01/16 |
|---|---|---|
| Service ProtectionPlan | $4.99 | **$5.99** |
| Regional Sports Network Fee | $1.00 | **$3.00** |

If you're currently receiving services on a promotional basis, under a minimum term agreement associated with a specific rate, or in the guaranteed period of one of our PricePrice™ plans, the prices for those specific services will not be affected during the applicable period.

8155/1000, 0010-0330, 0510-0520
8155/2000, 0010-0400, 0420, 0440     8155/5000, 0010-0470
8155/3000, 0010-0480, 0510     8155/6000, 0010-0400, 0420, 0450-0480, 0510-0590, 0670-0680, 0710-0720, 0750-0760
8155/4000, 0150-0260, 0380-0440     8155/7000, 0010-0070



the future of awesome®

SA4GF01P

# EXHIBIT W



**MT. HOOD CABLE REGULATORY COMMISSION**

Serving Multnomah County and the Cities of
Fairview, Gresham, Portland, Troutdale and Wood Village

Ellen Klem, Director of Consumer Outreach & Education
Oregon Department of Justice
1162 Court St. NE
Salem, OR 97301

Emailed as an attachment to: Ellen.Klem@doj.state.or.us on March 15, 2017

Dear Ms. Klem,

As local government agencies that assist individual cable TV subscribers with resolving complaints against cable companies, we are writing to request a meeting to discuss a disturbing trend that we believe might have consumer protection implications under Oregon law. Based on a March 8 Oregonian article about Century Link complaints, we believe you are also aware of the issue. We would like to have some initial discussions about possible options for moving forward.

The issues of concern revolve around "fees" cable companies charge to subscribers that are not included in the stated monthly rates for cable TV programming packages but that subscribers are required to pay monthly as part of the programming package (ie. A subscriber cannot "opt out" of the fee and still receive the programming package). The subscriber complaints we've received generally take three different, but related forms: Subscribers with long-term service contracts for set rates are charged new add-on fees and increases to those fees resulting in monthly rates higher than the contract amount; subscribers are told a monthly programming package rate but their bill for the programming package – with all the required "fees" added - is much higher; or the rates advertised by a company do not include the fees and therefore, the programming package is not actually available at the advertised rate.

For example, a complaint received in January from Ms. Sisson, a Comcast cable customer, mirrors those of Comcast and other cable company customers across the state. She signed a term contract for a specific cable package at a specific advertised rate, only to learn later the extent of the additional fees and that these fees are often increased again during the agreed upon contract period with no apparent limit to the increases. She has a service contract and the monthly amount she actually pays for her programming package is more than her contracted amount; and Comcast states that it can increase and/or add on fees even though the programming package received by the subscriber is the same.

We began receiving complaints about add-on fees in December 2013. This practice was first implemented by Comcast and other cable companies have followed their lead and adopted similar fees. Currently the add-on fees can result in monthly programming package rates of at least $10 more than the contracted or advertised rates. The fees in question are not government imposed fees/taxes, fees for leasing equipment, or one-time fees for a service.

Under Federal law and FCC rules, local cable commissions and governments are largely prohibited from regulating cable rates and prices. We are seeking the assistance and investigative powers of the Attorney General's Office to help assist with complaints of Ms. Sisson and others like her. We would like to discuss whether you or your staff might see any paths forward under the Oregon Unlawful Trade Practices Act or other regulations.

Please contact Scott Ellertson, MHCRC Program Coordinator, to schedule a time to meet. His contact information is scott.ellertson@portlandoregon.gov or 503-823-0039. We look forward to hearing from soon.

Sincerely,

Julie Omelchuck, Program Manager
Mt. Hood Cable Regulatory Commission (Portland, Gresham, Troutdale, Fairview, Wood Village and Multnomah County)

Fred Christ,
Metropolitan Area Cable Commission (Washington County and 14 cities)

Reba Crocker, Right-of-Way Contract Coordinator
City of Milwaukie

Pam Berrian, Telecommunication & Cable Program Manager
City of Eugene

# EXHIBIT X

**Screenshot of Service Package Offer Webpage for Sacramento, CA on 1/14/2016**





# EXHIBIT Y

DocuSign Envelope ID: 17EE30C4-269F-4B00-____-2C1D2235ADE4

1  Daniel M. Hattis (SBN 132141)
   Paul Karl Lukacs (SBN197007)
2  HATTIS LAW PLLC
   P.O. Box 1645
3  Bellevue, WA 98009
   Telephone: (650) 980-1190
4  Facsimile: (425) 412-7171
   Email: dan@hattislaw.com
5  Email: pkl@hattislaw.com

6  Attorneys for Plaintiffs and the Proposed Class

7                SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                        COUNTY OF SAN FRANCISCO

9

10  CHARLES TILLAGE,                      Case No. _____
    JOSEPH LOOMIS,
11  DAN ADKINS, and                       **DECLARATION OF CHARLES TILLAGE**
    CHRISTOPHER ROBERTSON,                **PURSUANT TO CALIFORNIA**
12  Individually, As Private Attorneys    **CONSUMERS LEGAL REMEDIES ACT**
    General, and On Behalf All Others
13  Similarly Situated,                   **(California Civil Code §1780(d))**

14  Plaintiffs,

15  v.

16
    COMCAST CORPORATION,
17  COMCAST CABLE
    COMMUNICATIONS,LLC, and
18  DOES 1-20, inclusive,

19  Defendants.

20

21

22

23

24

25

26

27

28

                                          DECLARATION OF CHARLES TILLAGE
                                          PURSUANT TO CALIFORNIA CLRA

1       I, Charles Tillage, hereby declare and state as follows:

2       1.     I am over the age of 18, and a Plaintiff in this action. The facts contained in this

3  declaration are based on my personal knowledge, and if called upon to do so, I could and would

4  testify competently hereto.

5       2.     The complaint in this action, filed concurrently with this declaration, is filed in the

6  proper place for trial under California Civil Code § 1780(d), because this is a county in which

7  Comcast does business and where a substantial portion of the transactions occurred.

8

9       I declare under penalty of perjury under the laws of the United States and the State of

10  California that the foregoing is true and correct.

11

12  Executed on   9/18/2017       , in San Francisco, California.

13

14  By:   _Charles Tillage_____

15       CHARLES TILLAGE

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Daniel M. Hattis (SBN 232141)
     Paul Karl Lukacs (SBN 197007)
2    HATTIS LAW PLLC
     P.O. Box 1645
3    Bellevue, WA 98009
     Telephone: (650) 980-1990
4    Facsimile: (425) 412-7171
     Email: dan@hattislaw.com
5    Email: pkl@hattislaw.com

6    Attorneys for Plaintiffs and the Proposed Class

7                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                           COUNTY OF SAN FRANCISCO

9

10   CHARLES TILLAGE,                          Case No. _____
     JOSEPH LOOMIS,
11   DAN ADKINS, and                           **DECLARATION OF JOSEPH LOOMIS**
     CHRISTOPHER ROBERTSON,                    **PURSUANT TO CALIFORNIA**
12   Individually, As Private Attorneys        **CONSUMERS LEGAL REMEDIES ACT**
     General, and On Behalf of All Others
13   Similarly Situated,                       **(California Civil Code §1780(d))**

14          Plaintiffs,

15   v.

16
     COMCAST CORPORATION,
17   COMCAST CABLE
     COMMUNICATIONS, LLC, and
18   DOES 1-20, inclusive,

19          Defendants.

20

21

22

23

24

25

26

27

28

1      I, Joseph Loomis, hereby declare and state as follows:

2      1.      I am over the age of 18, and a Plaintiff in this action.  The facts contained in this

3 declaration are based on my personal knowledge, and if called upon to do so, I could and would

4 testify competently hereto.

5      2.      The complaint in this action, filed concurrently with this declaration, is filed in the

6 proper place for trial under California Civil Code § 1780(d), because San Francisco County is a

7 County in which Comcast does business.

8

9      I declare under penalty of perjury under the laws of the United States and the State of

10 California that the foregoing is true and correct.

11

12 Executed on _9/20/2017_____, in Moss Beach, California.

13

14 By:   *Joseph Loomis*

     DocuSigned by:

     948DBDEB07EF41B...

15      JOSEPH LOOMIS

16

17

18

19

20

21

22

23

24

25

26

27

28

DocuSign Envelope ID: FC0935B0-F354-414A-9⬤⬤AA9FE7FDB938

1   Daniel M. Hattis (SBN 232141)
    Paul Karl Lukacs (SBN 197007)
2   HATTIS LAW PLLC
    P.O. Box 1645
3   Bellevue, WA 98009
    Telephone: (650) 980-1990
4   Facsimile: (425) 412-7171
    Email: dan@hattislaw.com
5   Email: pkl@hattislaw.com

6   Attorneys for Plaintiffs and the Proposed Class

7

8                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          COUNTY OF SAN FRANCISCO

10  CHARLES TILLAGE,                        Case No. _____
    JOSEPH LOOMIS,
11  DAN ADKINS, and                         **DECLARATION OF DAN ADKINS**
    CHRISTOPHER ROBERTSON,                  **PURSUANT TO CALIFORNIA**
12  Individually, As Private Attorneys      **CONSUMERS LEGAL REMEDIES ACT**
    General, and On Behalf of All Others
13  Similarly Situated,                     **(California Civil Code §1780(d))**

14          Plaintiffs,

15  v.

16
    COMCAST CORPORATION,
17  COMCAST CABLE
    COMMUNICATIONS, LLC, and
18  DOES 1-20, inclusive,

19          Defendants.

20

21

22

23

24

25

26

27

28
                                            DECLARATION OF DAN ADKINS PURSUANT
                                                        TO CALIFORNIA CLRA

1    I, Dan Adkins, hereby declare and state as follows:

2       1.    I am over the age of 18, and a Plaintiff in this action. The facts contained in this

3    declaration are based on my personal knowledge, and if called upon to do so, I could and would

4    testify competently hereto.

5       2.    The complaint in this action, filed concurrently with this declaration, is filed in the

6    proper place for trial under California Civil Code § 1780(d), because this is a county in which

7    Comcast does business and where a substantial portion of the transactions occurred.

8

9       I declare under penalty of perjury under the laws of the United States and the State of

10   California that the foregoing is true and correct.

11

12   Executed on _9/15/2017_____, in Oakland, California.

13

14   By: ___Dan Adkins_____

15   DAN ADKINS

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF DAN ADKINS PURSUANT
TO CALIFORNIA CLRA

DocuSign Envelope ID: 2645ACB1-8DA3-401E-9⬤3D6B510B4093

1   Daniel M. Hattis (SBN 232141)
    Paul Karl Lukacs (SBN 197007)
2   HATTIS LAW PLLC
    P.O. Box 1645
3   Bellevue, WA 98009
    Telephone: (650) 980-1990
4   Facsimile: (425) 412-7171
    Email: dan@hattislaw.com
5   Email: pkl@hattislaw.com

6   Attorneys for Plaintiffs and the Proposed Class

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                       COUNTY OF SAN FRANCISCO

10

11  CHARLES TILLAGE,                     Case No. _____
    JOSEPH LOOMIS,
12  DAN ADKINS, and                      **DECLARATION OF CHRISTOPHER
    CHRISTOPHER ROBERTSON,               ROBERTSON PURSUANT TO
13  Individually, As Private Attorneys   CALIFORNIA CONSUMERS LEGAL
    General, and On Behalf of All Others REMEDIES ACT**
14  Similarly Situated,
                                         **(California Civil Code §1780(d))**
15  Plaintiffs,

16  v.

17  COMCAST CORPORATION,
    COMCAST CABLE
18  COMMUNICATIONS, LLC, and
    DOES 1-20, inclusive,
19
    Defendants.
20

21

22

23

24

25

26

27

28
    _____
                        DECLARATION OF CHRISTOPHER ROBERTSON
                            PURSUANT TO CALIFORNIA CLRA

DocuSign Envelope ID: 2645ACB1-8DA3-401E-9___3D6B510B4093

1    I, Christopher Robertson, hereby declare and state as follows:

2        1.    I am over the age of 18, and a Plaintiff in this action.  The facts contained in this

3    declaration are based on my personal knowledge, and if called upon to do so, I could and would

4    testify competently hereto.

5        2.    The complaint in this action, filed concurrently with this declaration, is filed in the

6    proper place for trial under California Civil Code § 1780(d), because this is a county in which

7    Comcast does business and where a substantial portion of the transactions occurred.

8

9        I declare under penalty of perjury under the laws of the United States and the State of

10   California that the foregoing is true and correct.

11

12   Executed on _9/16/2017_____.

13

14   By: _____

15   CHRISTOPHER ROBERTSON

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF CHRISTOPHER ROBERTSON
PURSUANT TO CALIFORNIA CLRA

# EXHIBIT Z

**Subject:** RE: Demand Letter

**Date:**  Monday, October 10, 2016 at 6:05:34 AM Pacific Daylight Time

**From:**  Salcedo, Claudia

**To:**  Daniel Hattis

**CC:**  Nathan, Tom

Good morning Mr. Hattis,

We have received your correspondence of October 8th. Please note that the correct e-mail address for Mr. Nathan is Tom_Nathan@comcast.com
We will research this matter.


Kind Regards,


**Claudia Salcedo**
Litigation Paralegal
Comcast Cable Law Department
215-286-3770  Direct
215-286-3572  Fax
e-mail: Claudia_Salcedo@comcast.com


**From:** Daniel Hattis [mailto:dan@hattislaw.com]
**Sent:** Saturday, October 08, 2016 3:25 AM
**To:** Salcedo, Claudia <Claudia_Salcedo@comcast.com>
**Cc:** Thomas_Nathan@comcast.com
**Subject:** Demand Letter

Dear Ms. Salcedo,

Please see the attached letter, addressed to Senior Vice President and Senior Executive Counsel Thomas R. Nathan, and please forward it to Mr. Nathan's office. The corporate email address on Mr. Nathan's letterhead (Thomas_Nathan@comcast.com) on which he previously wrote me, rejects any email sent to it with the error that no such email address exists.

Thank you,

Dan Hattis
Hattis Law
Office: 650.980.1990
Mobile: 650.284.8495
Fax: 425.412.7171
www.hattislaw.com

Confidential: This email may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify me immediately and then delete the message and any attachments.

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

**DATE:** **MAR-07-2018**

**TIME:** **10:30AM**

**PLACE:** **Department 610**
**400 McAllister Street**
**San Francisco, CA  94102-3680**

All parties must appear and comply with Local Rule 3.

---

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.  However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed, served and lodged in Department 610 twenty-five (25) days before the case management conference.

---

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.  **This case is eligible for electronic filing and service per Local Rule 2.11.  For more information, please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

---

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**
(SEE LOCAL RULE 4)

---

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3869

**See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.**

1   Daniel M. Hattis (SBN 232141)
    Paul Karl Lukacs (SBN 197007)
2   HATTIS LAW PLLC
    P.O. Box 1645
3   Bellevue, WA 98009
    Telephone: (650) 980-1990
4   Facsimile: (425) 412-7171
    Email: dan@hattislaw.com
5   Email: pkl@hattislaw.com

6   (Additional Attorneys Listed
    After Signature Line)
7
8   Attorneys for Plaintiffs and the Proposed Class

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                    COUNTY OF SAN FRANCISCO

11

12   CHARLES TILLAGE,                    Case No. CGC-17-561739
     JOSEPH LOOMIS,
13   DAN ADKINS, and                     **PLAINTIFFS'**
     CHRISTOPHER ROBERTSON,              **PROOFS OF**
14   Individually, As Private Attorneys  **SERVICE OF SUMMONS**
     General, and On Behalf of All Others
15   Similarly Situated,                 [Hon. Teri L. Jackson — Dept. 610]

16   Plaintiffs,

17   v.

18   COMCAST CORPORATION,
     COMCAST CABLE
19   COMMUNICATIONS, LLC, and
     DOES 1-20, inclusive,
20
     Defendants.
21

22

23

24

25

26

27

28

1
2
## NOTICE

3      Please take notice that the plaintiffs in this civil action have caused the Summons, the

4  Complaint and other materials to be served upon Defendant Comcast Corporation and Defendant

5  Comcast Cable Communications, LLC. A true and correct copy of the Proof of Service of Summons

6  as to each defendant is attached.

7

8      Dated:  October 13, 2017                    Respectfully submitted,

9

10

11                                                 Paul Karl Lukacs

12                                                 Daniel M. Hattis (SBN 232141)
                                                   Paul Karl Lukacs (SBN 197007)
13                                                 HATTIS LAW PLLC
                                                   P.O. Box 1645
14                                                 Bellevue, WA 98009
                                                   Telephone: (650) 980-1990
15                                                 Facsimile: (425) 412-7171
                                                   Email: dan@hattislaw.com
16                                                 Email: pkl@hattislaw.com

17                                                 Tony J. Tanke (SBN 74054)
                                                   LAW OFFICES OF TONY J. TANKE
18                                                 2050 Lyndell Terrace, Suite 240
                                                   Davis, CA 95616
19                                                 Telephone: (530) 758-4530
                                                   Email: appeals@tankelaw.com
20
                                                   Jason Skaggs (SBN 202190)
21                                                 SKAGGS FAUCETTE LLP
                                                   530 Lytton Ave 2nd FL
22                                                 Palo Alto, CA 94301
                                                   Telephone: (650) 617-3226
23                                                 Email: jason@skaggsfaucette.com

24                                                 Attorneys for Plaintiffs and the Proposed Class

25

26

27

28

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Daniel M. Hattis, 232141<br>Hattis Law PLLC<br>P.O. Box 1645<br>Bellevue, WA 98009<br>TELEPHONE NO.: (650)284-8495<br>ATTORNEY FOR *(Name)*: Plaintiff | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
Superior Court of California, San Francisco County
400 McAllister Street
San Francisco, CA 94102

| PLAINTIFF/PETITIONER: Charles Tillage, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Comcast Corporation, et al. | CGC-17-561739 |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.:<br>None |
|---|---|

**BY FAX**

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action.

2. I served copies of:   Complaint, Civil Case Cover Sheet, Summons, Notice to Plaintiff, Alternative Dispute Resolution Program Information Package, Case Management Statement, Expedited Jury Trial Information Sheet, Early Settlement Program

3. a. Party served:   Comcast Corporation

   b. Person Served: Gabriela Sanchez/CT Corporation System - Person Authorized to Accept Service of Process

4. Address where the party was served:   818 West Seventh Street, Suite 930
   Los Angeles, CA 90017

5. I served the party
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on (date): 10/09/2017          (2) at (time): 3:00PM

6. The "Notice to the Person Served" (on the summons) was completed as follows:

   d. on behalf of:

Comcast Corporation
under: CCP 416.10 (corporation)

7. **Person who served papers**
   a. Name:       Jimmy Lizama
   b. Address:    One Legal - 194-Marin
              504 Redwood Blvd #223
              Novato, CA 94947

   c. Telephone number: 415-491-0606
   d. The fee for service was: $ 39.95
   e I am:
      (3) registered California process server.
         (i)  Employee or independent contractor.
         (ii) Registration No.: 4553
         (iii) County: Los Angeles

8. I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.
Date:  10/11/2017

Jimmy Lizama
(NAME OF PERSON WHO SERVED PAPERS)                                    (SIGNATURE)

Form Adopted for Mandatory Use
Judicial Council of California POS-010
[Rev. Jan 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

OL# 11425245

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Daniel M. Hattis, 232141<br>Hattis Law PLLC<br>P.O. Box 1645<br>Bellevue, WA 98009<br>TELEPHONE NO.: (650)284-8495<br>ATTORNEY FOR *(Name):* Plaintiff | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
Superior Court of California, San Francisco County
400 McAllister Street
San Francisco, CA 94102

| PLAINTIFF/PETITIONER: Charles Tillage, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Comcast Corporation, et al. | CGC-17-561739 |

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>None |
|---|---|

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action.   **BY FAX**

2. I served copies of:   Complaint, Civil Case Cover Sheet, Summons, Notice to Plaintiff, Alternative Dispute Resolution Program Information Package, Case Management Statement, Expedited Jury Trial Information Sheet, Early Settlement Program

3. a. Party served:   Comcast Cable Communications, LLC

   b. Person Served: Gabriela Sanchez/CT Corporation System - Person Authorized to Accept Service of Process

4. Address where the party was served:   818 West Seventh Street, Suite 930
   Los Angeles, CA 90017

5. I served the party
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on (date): 10/09/2017      (2) at (time): 3:00PM

6. The "Notice to the Person Served" (on the summons) was completed as follows:



   d. on behalf of:

Comcast Cable Communications, LLC
under: Other: Limited Liability Company

7. **Person who served papers**
   a. Name:        Jimmy Lizama
   b. Address:     One Legal - 194-Marin
                   504 Redwood Blvd #223
                   Novato, CA 94947

   c. Telephone number: 415-491-0606
   d. The fee for service was: $ 39.95
   e I am:
        (3) registered California process server.
             (i)  Employee or independent contractor.
             (ii) Registration No.: 4553
             (iii) County:  Los Angeles

8. I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.
Date:  10/11/2017


Jimmy Lizama
_____
(NAME OF PERSON WHO SERVED PAPERS)                                    (SIGNATURE)

Form Adopted for Mandatory Use
Judicial Council of California POS-010
[Rev. Jan 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

OL# 11425246

**PROOF OF SERVICE**
[C.C.P. § 1013a]

I, PAUL KARL LUKACS, declare that:

I am over the age of 18 years, am not a party to this cause, and am an active member of the State Bar of California. My business address is Hattis Law, PLLC, 1401 Twenty-First Street, Suite 400, Sacramento, CA 95811, and I am employed in the County of Sacramento.

On October 13, 2017, I caused to be served the following document(s), which are here set forth by the exact title:

PLAINTIFFS' PROOFS OF SERVICE OF SUMMONS

I served said document by the following method:

[X] BY FIRST CLASS U.S. MAIL — DIRECT DEPOSIT (C.C.P. § 1013a(1), (2)): I deposited the document(s) in the mail, on the date stated hereinabove, by placing a sealed envelope containing said document(s), with first-class U.S. postage thereon fully prepaid, into the blue metal U.S.P.S. collection box located at 1405 Twenty-First Street in Sacramento, California, and bearing U.S.P.S. Location ID 9581400041.

Each person served was shown on the face of the envelope as follows:

Comcast Corporation and Comcast Cable Communications, LLC
c/o CT Corporation System
818 West Seventh Street, Suite 930
Los Angeles, CA 90017
[Registered agent for Comcast Corporation and Comcast Cable Communications, LLC]

Michael J. Stortz, Esq.
Drinker Biddle & Reath LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
[Presumptive counsel for Comcast Corporation and Comcast Cable Communications, LLC]

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

Executed on October 13, 2017, at Sacramento, California.

PAUL KARL LUKACS

 CT Corporation

**Service of Process Transmittal**
11/02/2017
CT Log Number 532228394

TO: Rosemarie Pierce
Comcast Corporation
1701 John F. Kennedy Blvd, One Comcast Center - 50th Floor
Philadelphia, PA 19103

RE: **Process Served in California**

FOR: Comcast Corporation (Domestic State: PA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Charles Tillage, et al., Pltfs. vs. Comcast Corporation, et al., Dfts. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Proof(s), Notice |
| **COURT/AGENCY:** | San Francisco County - Superior Court - San Francisco, CA Case # CGC17561739 |
| **NATURE OF ACTION:** | Notice that the plaintiffs in this civil action have caused the Summons Complaint and other materials to be served upon Defendant Comcast Corporation and Defendant Comcast Cable Communications, LLC |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Regular Mail on 11/02/2017 postmarked on 10/13/2017 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | Daniel M. Hattis HATTIS LAW PLLC P.O. Box 1645 Bellevue, WA 98009 650-980-1990 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 11/02/2017, Expected Purge Date: 11/07/2017 Image SOP |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 818 West Seventh Street Los Angeles, CA 90017 |
| **TELEPHONE:** | 213-337-4615 |

Page 1 of 2 / GG

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

 **CT Corporation**

**Service of Process Transmittal**
11/02/2017
CT Log Number 532228394

TO:     Rosemarie Pierce
        Comcast Corporation
        1701 John F. Kennedy Blvd, One Comcast Center - 50th Floor
        Philadelphia, PA 19103

RE:     **Process Served in California**

FOR:    Comcast Corporation  (Domestic State: PA)

**DOCKET HISTORY:**

| DOCUMENT(S) SERVED: | DATE AND HOUR OF SERVICE: | TO: | CT LOG NUMBER: |
|---|---|---|---|
| First Amended Complaint, Exhibits | By Process Server on 10/27/2017 | Rosemarie Pierce Comcast Corporation | 532191829 |
| Summons, Complaint, Attachment(s), Exhibit(s) | By Process Server on 10/09/2017 | Rosemarie Pierce Comcast Corporation | 532067825 |
| Letter | By Certified Mail on 08/21/2017 postmarked on 08/17/2017 | Rosemarie Pierce Comcast Corporation | 531797246 |

Page 2 of  2 / GG

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Paul Karl Lukacs, Esq.
Hattis Law PLLC
1401 Twenty-First Street, Suite 400
Sacramento, CA 95811

SACRAMENTO CA 957

13 OCT 2017 PM 6 L



USA FOREVER

Comcast Corporation and
Comcast Cable Communications, LLC
c/o CT Corporation System
818 West Seventh Street, Suite 930
Los Angeles, CA 90017

90017-347630

1   Daniel M. Hattis (SBN 232141)
    Paul Karl Lukacs (SBN 197007)
2   HATTIS LAW PLLC
    P.O. Box 1645
3   Bellevue, WA 98009
    Telephone: (650) 980-1990
4   Facsimile: (425) 412-7171
    Email: dan@hattislaw.com
5   Email: pkl@hattislaw.com

6   (Additional Attorneys Listed
    After Signature Line)
7
8   Attorneys for Plaintiffs and the Proposed Class

9                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                          COUNTY OF SAN FRANCISCO

11

12  CHARLES TILLAGE,                      Case No. CGC-17-561739
    JOSEPH LOOMIS,
13  DAN ADKINS, and                       **PLAINTIFFS'**
    CHRISTOPHER ROBERTSON,                **PROOFS OF**
14  Individually, As Private Attorneys    **SERVICE OF SUMMONS**
    General, and On Behalf of All Others
15  Similarly Situated,                   [Hon. Teri L. Jackson — Dept. 610]

16  Plaintiffs,

17  v.

18  COMCAST CORPORATION,
    COMCAST CABLE
19  COMMUNICATIONS, LLC, and
    DOES 1-20, inclusive,
20
    Defendants.
21

22

23

24

25

26

27

28

1
2

## NOTICE

3         Please take notice that the plaintiffs in this civil action have caused the Summons, the

4   Complaint and other materials to be served upon Defendant Comcast Corporation and Defendant

5   Comcast Cable Communications, LLC. A true and correct copy of the Proof of Service of Summons

6   as to each defendant is attached.

7

8       Dated:   October 13, 2017              Respectfully submitted,

9

10

11                                             Paul Karl Lukacs

12                                             Daniel M. Hattis (SBN 232141)
                                               Paul Karl Lukacs (SBN 197007)
13                                             HATTIS LAW PLLC
                                               P.O. Box 1645
14                                             Bellevue, WA 98009
                                               Telephone: (650) 980-1990
15                                             Facsimile: (425) 412-7171
                                               Email: dan@hattislaw.com
16                                             Email: pkl@hattislaw.com

17                                             Tony J. Tanke (SBN 74054)
                                               LAW OFFICES OF TONY J. TANKE
18                                             2050 Lyndell Terrace, Suite 240
                                               Davis, CA 95616
19                                             Telephone: (530) 758-4530
                                               Email: appeals@tankelaw.com
20
                                               Jason Skaggs (SBN 202190)
21                                             SKAGGS FAUCETTE LLP
                                               530 Lytton Ave 2nd FL
22                                             Palo Alto, CA 94301
                                               Telephone: (650) 617-3226
23                                             Email: jason@skaggsfaucette.com

24                                             Attorneys for Plaintiffs and the Proposed Class

25

26

27

28

                                                                              PLAINTIFFS'
                                    - 1 -                    PROOFS OF SERVICE OF SUMMONS

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Daniel M. Hattis, 232141<br>Hattis Law PLLC<br>P.O. Box 1645<br>Bellevue, WA 98009<br>TELEPHONE NO.: (650)284-8495<br>ATTORNEY FOR (Name): Plaintiff | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF |
|---|
| Superior Court of California, San Francisco County |
| 400 McAllister Street |
| San Francisco, CA 94102 |

| PLAINTIFF/PETITIONER: Charles Tillage, et al. | CASE NUMBER:<br>CGC-17-561739 |
|---|---|
| DEFENDANT/RESPONDENT: Comcast Corporation, et al. | |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>None |

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action. **BY FAX**

2. I served copies of: Complaint, Civil Case Cover Sheet, Summons, Notice to Plaintiff, Alternative Dispute Resolution Program Information Package, Case Management Statement, Expedited Jury Trial Information Sheet, Early Settlement Program

3. a. Party served: Comcast Corporation

   b. Person Served: Gabriela Sanchez/CT Corporation System - Person Authorized to Accept Service of Process

4. Address where the party was served: 818 West Seventh Street, Suite 930
   Los Angeles, CA 90017

5. I served the party

   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on (date): 10/09/2017          (2) at (time): 3:00PM

6. The "Notice to the Person Served" (on the summons) was completed as follows:

   d. on behalf of:

   Comcast Corporation
   under: CCP 416.10 (corporation)

7. Person who served papers
   a. Name:          Jimmy Lizama
   b. Address:      One Legal - 194-Marin
                         504 Redwood Blvd #223
                         Novato, CA 94947

   c. Telephone number: 415-491-0606
   d. The fee for service was: $ 39.95
   e I am:
      (3) registered California process server.
         (i)  Employee or independent contractor.
         (ii)  Registration No.: 4553
         (iii)  County: Los Angeles

8. I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.
Date: 10/11/2017

Jimmy Lizama
(NAME OF PERSON WHO SERVED PAPERS)                    (SIGNATURE)

Form Adopted for Mandatory Use
Judicial Council of California POS-010
[Rev. Jan 1, 2007]

**PROOF OF SERVICE OF SUMMONS**                    Code of Civil Procedure, § 417.10

OL# 11425245

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Daniel M. Hattis, 232141<br>Hattis Law PLLC<br>P.O. Box 1645<br>Bellevue, WA 98009<br>TELEPHONE NO.: (650)284-8495<br>ATTORNEY FOR *(Name):* Plaintiff | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF<br>Superior Court of California, San Francisco County<br>400 McAllister Street<br>San Francisco, CA 94102 | |

| PLAINTIFF/PETITIONER: Charles Tillage, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Comcast Corporation, et al. | CGC-17-561739 |
| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.:<br>None |

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action. **BY FAX**

2. I served copies of:   Complaint, Civil Case Cover Sheet, Summons, Notice to Plaintiff, Alternative Dispute Resolution Program Information Package, Case Management Statement, Expedited Jury Trial Information Sheet, Early Settlement Program

3. a. Party served:   Comcast Cable Communications, LLC

   b. Person Served: Gabriela Sanchez/CT Corporation System – Person Authorized to Accept Service of Process

4. Address where the party was served:   818 West Seventh Street, Suite 930
   Los Angeles, CA 90017
5. I served the party
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on (date): 10/09/2017          (2) at  (time): 3:00PM
6. The "Notice to the Person Served" (on the summons) was completed as follows:

   d. on behalf of:

Comcast Cable Communications, LLC
under: Other: Limited Liability Company
7. Person who served papers
   a. Name:       Jimmy Lizama
   b. Address:    One Legal - 194-Marin
                  504 Redwood Blvd #223
                  Novato, CA 94947

   c. Telephone number: 415-491-0606
   d. The fee for service was: $ 39.95
   e I am:
       (3) registered California process server.
           (i)  Employee or independent contractor.
           (ii)  Registration No.: 4553
           (iii) County: Los Angeles
8. I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.
Date: 10/11/2017

Jimmy Lizama
(NAME OF PERSON WHO SERVED PAPERS)

(SIGNATURE)

Form Adopted for Mandatory Use
Judicial Council of California POS-010
[Rev. Jan 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

OL# 11425246

1

## PROOF OF SERVICE
[C.C.P. § 1013a]

2

3     I, PAUL KARL LUKACS, declare that:

4     I am over the age of 18 years, am not a party to this cause, and am an active member of the
State Bar of California. My business address is Hattis Law, PLLC, 1401 Twenty-First Street,
5     Suite 400, Sacramento, CA 95811, and I am employed in the County of Sacramento.

6     On October 13, 2017, I caused to be served the following document(s), which are here set
7     forth by the exact title:

8     PLAINTIFFS' PROOFS OF SERVICE OF SUMMONS

9     I served said document by the following method:

10    [X] BY FIRST CLASS U.S. MAIL — DIRECT DEPOSIT (C.C.P. § 1013a(1), (2)): I
11    deposited the document(s) in the mail, on the date stated hereinabove, by placing a sealed
      envelope containing said document(s), with first-class U.S. postage thereon fully prepaid, into the
12    blue metal U.S.P.S. collection box located at 1405 Twenty-First Street in Sacramento, California,
      and bearing U.S.P.S. Location ID 9581400041.
13

14    Each person served was shown on the face of the envelope as follows:

15    Comcast Corporation and Comcast Cable Communications, LLC
      c/o CT Corporation System
16    818 West Seventh Street, Suite 930
      Los Angeles, CA 90017
17    [Registered agent for Comcast Corporation and Comcast Cable Communications, LLC]

18    Michael J. Stortz, Esq.
19    Drinker Biddle & Reath LLP
      50 Fremont Street, 20th Floor
20    San Francisco, CA 94105-2235
      [Presumptive counsel for Comcast Corporation and Comcast Cable Communications, LLC]
21

22    I declare under penalty of perjury under the laws of the State of California and the United
      States of America that the above is true and correct.
23

24    Executed on October 13, 2017, at Sacramento, California.

25

26    PAUL KARL LUKACS

27

28

Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
HATTIS LAW PLLC
P.O. Box 1645
Bellevue, WA 98009
Telephone: (650) 980-1990
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

(Additional Attorneys Listed
After Signature Line)

Attorneys for Plaintiffs and the Proposed Class

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*
**10/25/2017**
**Clerk of the Court**
BY: WILLIAM TRUPEK
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| CHARLES TILLAGE, JOSEPH LOOMIS, DAN ADKINS, and CHRISTOPHER ROBERTSON, Individually, As Private Attorneys General, and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>COMCAST CORPORATION, COMCAST CABLE COMMUNICATIONS, LLC, and DOES 1-20, inclusive,<br><br>Defendants. | Case No. CGC-17-561739<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1. **Violation of Unfair Competition Law, Business & Professions Code §17200 *et seq.***<br><br>2. **Violation of False Advertising Law, Business & Professions Code §17500 *et seq.***<br><br>3. **Violation of Consumers Legal Remedies Act, Civil Code §1750 *et seq.***<br><br>4. **Permanent Public Injunctive Relief**<br><br>5. **Breach of Contract**<br><br>**JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY ................................................................ - 1 -

II.      PARTIES ........................................................................................................... - 4 -

III.     JURISDICTION AND VENUE ....................................................................... - 4 -

IV.     PLAINTIFFS' FACTUAL ALLEGATIONS ................................................ - 5 -

        A.    Plaintiff Charles Tillage ...................................................................... - 5 -

        B.    Plaintiff Joseph Loomis ....................................................................... - 9 -

        C.    Plaintiff Dan Adkins .......................................................................... - 15 -

        D.    Plaintiff Christopher Robertson ......................................................... - 23 -

V.      COMMON FACTUAL ALLEGATIONS OF COMCAST'S
         CALIFORNIA-WIDE AND NATIONWIDE SCHEME ............................... - 29 -

        A.    Comcast Engages in False and Misleading Advertising About the Prices
             It Charges for Its Cable Television Service Packages ........................ - 31 -

        B.    Comcast's Sales Agents Make False and Misleading Statements About
             the Prices Comcast Charges for Its Cable Television Service Packages .......... - 33 -

        C.    Comcast Lies to Customers Who Enquire or Complain About the
             Broadcast TV Fee or the Regional Sports Fee By Telling Them the Charges
             Are Taxes or Government Fees ........................................................... - 34 -

        D.    Comcast's Form Contracts Do Not Adequately Disclose the Broadcast TV
             Fee or the Regional Sports Fee .......................................................... - 36 -

        E.    Comcast Falsely Advertises Guaranteed, Locked-In Prices for Its Term
             Contracts, When Comcast In Fact Repeatedly Raises Its Prices
             Mid-Contract Via Increases in the Broadcast TV Fee and the Regional
             Sports Fee........................................................................................... - 37 -

        F.    Comcast's Bait-and-Switch Scheme Is Central to Its Marketing Plan
             and Accounts for an Increasingly Large Part of Comcast's Total Revenues
             and Profits ........................................................................................... - 39 -

VI.     CLASS ACTION ALLEGATIONS ................................................................ - 40 -

CAUSES OF ACTION ............................................................................................... - 42 -

COUNT I – California Business & Professions Code § 17200 *et seq.* ("UCL") ................. - 42 -

COUNT II – California Business & Professions Code § 17500 *et seq.* ("FAL") ................ - 43 -

COUNT III – California Civil Code § 1750 *et seq.* ("CLRA")............................................ - 45 -

COUNT IV – Permanent Public Injunctive Relief ............................................................... - 49 -

COUNT V – Breach of Contract ............................................................................................ - 49 -

PRAYER FOR RELIEF ............................................................................................. - 50 -

JURY DEMAND .......................................................................................................... - 52 -

FIRST AMENDED COMPLAINT

Plaintiffs, demanding trial by jury as to all issues so triable, allege on personal knowledge and on information and belief, as follows:

## I.   INTRODUCTION AND SUMMARY

1.     This proposed class action alleges that Comcast Corporation and Comcast Cable Communications, LLC (collectively, "Comcast") is engaging in a massive bait-and-switch scheme of falsely advertising its cable television service packages for much lower prices than it actually charges.

2.     Comcast's advertising, and its sales staff, misled Plaintiffs, and continue to mislead California consumers, into falsely believing that the advertised price for Comcast's television service packages is the actual price consumers will pay – except for equipment charges and bona fide taxes and government fees.

3.     However, Comcast excludes from the advertised price of its service packages two self-created charges named the Broadcast TV Fee and the Regional Sports Fee (collectively, the "Bogus Fees"). The Bogus Fees are additional discretionary impositions invented by Comcast to pad its bottom line.

4.     The Bogus Fees are disguised double-charges for the same channel programming that Comcast has promised is *already included* in the advertised service package price (e.g., ABC, CBS, NBC, FOX, and local sports channels). For example, Comcast will advertise a service package as including local broadcast channels and as available for a promotional flat monthly price subject only to government-imposed charges and one-time installation fees; Comcast will then turn around and charge the Broadcast TV Fee – in addition to the set monthly price – for those same local broadcast channels.

5.     Comcast *never* qualifies the advertised price with an asterisk or other adjacent marker, and the hidden disclosures that Comcast makes about the Bogus Fees are not only inadequate, but are themselves deceptive. Comcast's disclaimers are designed to mislead consumers into falsely believing the Bogus Fees are taxes or government charges over which Comcast has no control.

6.      When customers inquire or complain about the Bogus Fees, Comcast doubles down on its initial deception by engaging in a practice of outright lying to customers. Comcast tells customers that the Bogus Fees are taxes or government charges rather than what they truly are: self-created fees used to double-charge Comcast's customers for the same channel programming that Comcast promised would be included in the advertised price.

7.      Comcast perpetrates this scheme to hook and trap customers into 1-year or 2-year contracts at supposedly "guaranteed" locked-in rates with significant early termination penalties, with the intent or effect of charging the customers more than it has promised via the deceptive and hidden Bogus Fees.

8.      Even worse, a few months into customers' purported fixed-price term contracts, Comcast raises its prices *even higher* on these trapped customers via the backdoor method of increasing the Bogus Fees. Comcast's justification for the mid-contract price increases is pure double-talk: Comcast claims that its "guaranteed" promotional price for the service package has remained the same, and that only "applicable fees" "that are not included in your agreement" have increased. This is cold comfort to California consumers. They see their total monthly payments for television service packages increase over the purportedly "locked-in" price level that Comcast's own misleading advertising and representations led the consumers to expect.

9.      Comcast has increased the Bogus Fees by 800% since they were first introduced in 2014, and the Bogus Fees now add as much as $12 per month to customer cable bills. Plaintiffs estimate that Comcast earns approximately $2 billion per year nationwide from these sham double-charges – over $200 million annually from its 2 million California television subscribers alone.

10.      In short, Comcast engages in a California-wide and nationwide scheme in which:

(a)      Comcast promises consumers cable television service at a locked-in, fixed monthly price (i.e., the cost for the channel programming plus bona fide taxes) for a set term of one or two years, and that local broadcast television channels are included in the promised price;

(b)      Comcast invents a Broadcast TV Fee, ostensibly to defray Comcast's costs to provide the television broadcast channels (e.g., ABC, NBC, CBS, and FOX);

(c)     Comcast invents a Regional Sports Fee, ostensibly to defray Comcast's costs to provide regional sports programming (i.e., local sports channels);

(d)     Comcast fails to adequately disclose the existence of the two Bogus Fees to consumers in Comcast's advertising and during the order process — in fact, Comcast quotes fixed monthly prices which do not include the Bogus Fees and which do not contain any asterisk, disclaimer, or other communication device to alert consumers to the Bogus Fees in a manner calculated to secure their knowing and voluntary consent;

(e)     Comcast imposes the Bogus Fees on its customers, which raises the total monthly price of service above the lower fixed price Comcast previously promised and advertised to the customers;

(f)     The Broadcast TV Fee and the Regional Sports Fee are effectively double-charges for the local broadcast channels and sports channels – because Comcast misleads consumers into believing that the fixed monthly price (plus bona fide taxes) includes all Bogus Fees, i.e., that the fixed monthly price is all that consumers have to pay to receive the channels Comcast has promised are included;

(g)     When customers ask about the Bogus Fees, Comcast flat out lies and says that the Bogus Fees are imposed by the government and/or that Comcast has no control over the Bogus Fees; and

(h)     Even though Comcast represented to consumers that the monthly price of the cable television services was "locked-in" and "guaranteed" for a contract period of one or two years, Comcast continually increases the price of its television programming during this time via the backdoor method of increasing the Bogus Fees mid-contract, which raises the total monthly price of service above the fixed price Comcast previously promised and advertised to customers.

11.     Plaintiffs bring this lawsuit on behalf of themselves individually, as private attorneys general, and on behalf of a proposed class to recover their damages and/or restitution and to put an end to Comcast's Bogus Fees bait-and-switch scheme to prevent future injury to themselves and the general public.

II.    **PARTIES**

12.    Plaintiff Charles Tillage is an individual residing in San Francisco, California.

13.    Plaintiff Joseph Loomis is an individual residing in Moss Beach, California.

14.    Plaintiff Dan Adkins is an individual residing in Oakland, California.

15.    Plaintiff Christopher Robertson is an individual who resided in Sacramento, California during the term of the Comcast service contract which is the subject of this lawsuit.

16.    Defendant Comcast Corporation is a multinational, mass media company incorporated in Pennsylvania and headquartered in Philadelphia, Pennsylvania. It is the largest broadcasting and cable company in the world by revenue, and it is the largest home television and Internet service provider in the United States.

17.    Defendant Comcast Cable Communications, LLC ("Comcast Cable"), according to Comcast Corporation's 2015 Form 10-K, is a "100% owned cable holding company subsidiary" of Comcast Corporation. Comcast Cable is headquartered in Philadelphia, Pennsylvania, and incorporated in Delaware.

18.    Comcast markets its cable services under the XFINITY brand name.

III.    **JURISDICTION AND VENUE**

19.    This Court has subject matter jurisdiction over this civil action pursuant to, without limitation, the California Constitution, Article VI, Section 10, and Code of Civil Procedure § 410.10.

20.    This Court has personal jurisdiction over Comcast Cable because, without limitation: (1) Comcast Cable has purposely availed itself of the privilege of conducting business activities in California; (2) Comcast Cable currently maintains systematic and continuous business contacts with this State including marketing, selling and issuing cable television service packages and bundles to Plaintiffs and other California consumers; (3) Comcast Cable has entered into contracts with Plaintiffs and other California consumers regarding their cable television service packages; and (4) Comcast Cable maintains offices and retail locations in this State.

Comcast Cable has sufficient minimum contacts with this state to render the exercise of jurisdiction by this Court permissible.

21.     This Court has personal jurisdiction over Comcast Corporation because Comcast Corporation has entered into contracts with certain Plaintiffs and with certain California consumers regarding their cable television service packages.

22.     This Court also has personal jurisdiction over Comcast Corporation because, without limitation, Comcast Corporation executives are responsible for business aspects of Comcast's cable operations and Comcast Corporation agreed to be named as a defendant.

23.     Venue is proper in the San Francisco Superior Court because, without limitation: (1) Comcast engages in and performs business activities in the City and County of San Francisco; and (2) Plaintiff Charles Tillage entered into an agreement to purchase Comcast's cable television services while in the City and County of San Francisco, and he received Comcast cable television services while in the City and County of San Francisco.

## IV.     PLAINTIFFS' FACTUAL ALLEGATIONS

### A.     Plaintiff Charles Tillage

24.     In June 2016, Plaintiff Charles Tillage moved into a new apartment in San Francisco, California.

25.     The management company for the apartment complex provided a move-in information package to Mr. Tillage, which included the phone number for the Comcast sales representative who was assigned to the apartment complex.

26.     Mr. Tillage called AT&T to see if AT&T offered Internet and television service to his apartment, but he was told AT&T did not provide service to his location.

27.     Mr. Tillage also looked into getting DirecTV for television service at his apartment. However, the apartment complex rules prohibited residents from putting the satellite dish on the balcony railing, and other residents told him that the reception was not good when using a stand on the balcony.

28.    Mr. Tillage called the Comcast sales representative assigned to the apartment complex.

29.    The Comcast sales representative recommended Mr. Tillage sign up for a bundled service plan which included certain television channels, broadband Internet, and phone service, which the representative offered and promised would have a total fixed price of $129.99 under a 2-year contract.

30.    The agent explained that there would be a termination charge if Mr. Tillage ended his contract early, but that if Mr. Tillage moved he could move his contract with him to the new address.

31.    Relying on the Comcast representative's representations and promises to him on the phone call, Mr. Tillage accepted the offer from the Comcast representative. He placed an order for the bundled plan.

32.    Mr. Tillage had agreed to commit himself to a 2-year contract in reliance on Comcast's promise of a guaranteed and predictable lower price for his service during those two years.

33.    The Comcast representative did not tell Mr. Tillage that Comcast would charge him an additional amount each month for the Broadcast TV Fee and the Regional Sports Fee.

34.    Mr. Tillage never agreed to pay these Bogus Fees, which were essentially double-charges for the channels the Comcast representative had promised him were already included in the package price.

35.    Mr. Tillage never received a confirmation email or letter of his order.

36.    Mr. Tillage never signed or otherwise agreed to the Subscriber Agreement concerning the contract. Comcast did not mail, email, or otherwise transmit or present to Mr. Tillage a copy of the Subscriber Agreement upon the placing of his order.

37.    Mr. Tillage never signed or otherwise agreed to the document which Comcast dubs the Minimum Term Agreement. Comcast did not inform Mr. Tillage of the existence of a Minimum Term Agreement document before Mr. Tillage placed the order for his service. Comcast did not mail, email, or otherwise transmit or present to Mr. Tillage a copy of a Minimum

1  Term Agreement upon the placing of Mr. Tillage's order. A Minimum Term Agreement was

2  never posted to or available to Mr. Tillage in the Comcast online customer portal.

3       38.    Mr. Tillage was not aware of the existence of a purported 30-day Money-Back

4  Guarantee by Comcast, and this option was never presented to him in any of his communications

5  with Comcast.

6       39.    The first bill Mr. Tillage received from Comcast under the contract was dated June

7  16, 2016. Mr. Tillage did not understand the bill due to the fourteen different credits and charges

8  in the "Other charges and credits" section.

9       40.    However, it appeared to Mr. Tillage that Comcast was imposing charges that were

10  not included in the total price the Comcast representative had promised him.

11       41.    Mr. Tillage called the Comcast representative assigned to the apartment complex

12  with whom he signed up, but the representative was unable to answer any of his questions.

13       42.    Mr. Tillage then called Comcast's main customer service phone number to

14  complain about the bill which was higher than promised. The Comcast agent he spoke to told him

15  that Comcast could not reduce the charges on the bill.  However, the agent offered to give him

16  three free movie coupons.

17       43.    When Mr. Tillage received his July 2017 bill, he was surprised to see that Comcast

18  had increased the monthly Broadcast TV Fee from $5.00 to $7.00 and the Regional Sports Fee

19  from $3.00 to $5.00. Meanwhile, Mr. Tillage had never agreed to pay those Bogus Fees in the

20  first place, let alone agreed to further increases in these Bogus Fees in the middle of his promised

21  fixed-price contract.

22       44.    On August 17, 2017, Mr. Tillage (through counsel) mailed a letter to Comcast

23  Corporation CEO Brian L. Roberts and Comcast Cable CEO David N. Watson demanding,

24  among other things, that Comcast stop its deceptive practices and return all money paid by

25  California Comcast customers for the Broadcast TV Fee and the Regional Sports Fee. See

26  **Exhibit A**. In response to the letter, Comcast has neither given nor agreed to give within a

27  reasonable time an appropriate correction, repair, replacement or other remedy.

28

FIRST AMENDED COMPLAINT

45.     On August 22, 2017 Mr. Tillage mailed a letter to Comcast notifying Comcast that he desired to opt out of the arbitration provision in the Subscriber Agreement. That same day, Mr. Tillage also opted out of the arbitration provision on Comcast's "Arbitration Opt Out" webpage.

46.     On September 14, 2017, a Comcast agent named Cheyenne, who identified herself as being from "Comcast's Executive Office," sent an email to Mr. Tillage's counsel in response to the August 17, 2017 letter. In Cheyenne's email response, Comcast ignored all of Mr. Tillage's demands and falsely asserted that Mr. Tillage had agreed to pay the Broadcast TV Fee and the Regional Sports Fee.

47.     As a current Comcast subscriber, Mr. Tillage is in jeopardy of impending, actual and/or imminent injury in the future. For example, for each month in the future, he will be forced to pay the Bogus Fees. Mr. Tillage will also be subject to Comcast's unilateral, unknowable increases in the Bogus Fees despite his being in the middle of a purportedly fixed-rate contract.

48.     Mr. Tillage does not have objections to the quality of the cable services which Comcast provides. Mr. Tillage objects to the fact the Comcast is charging him a price which is different from and higher than the price Comcast promised and advertised and/or continues to promise and advertise.

49.     Like many consumers and current Comcast customers, Mr. Tillage is regularly presented with advertising from Comcast regarding Comcast's cable television and other services. In many of these advertisements, Comcast is attempting to sell Mr. Tillage additional services or to fold Mr. Tillage's current services into a larger package of services.

50.     Mr. Tillage's contract with Comcast expires in June 2018. Mr. Tillage currently has no other reasonable alternative to Comcast for television service at his apartment building. If Mr. Tillage were to move to a new dwelling where he had a choice of cable television providers, he would seriously consider continuing to subscribe to Comcast based on a decision regarding which provider advertised and offered the best quality at the lowest truthful price.

51.     Mr. Tillage faces the threat of actual and/or imminent harm by not being able to rely with any confidence upon the truthfulness of Comcast's future advertising. Comcast's false advertising threatens to invade Mr. Tillage's statutory right (under, without limitation,

California's Unfair Competition Law, False Advertising Law and Consumers Legal Remedies Act) to receive truthful information from Comcast about its services. Mr. Tillage might decide that Comcast offers the highest quality product yet decline to purchase Comcast or upgrade his services because he is unsure if he can rely upon Comcast's advertising. Or Mr. Tillage might purchase or upgrade Comcast cable services in the future as he may reasonably, but incorrectly, assume that Comcast has cleaned up its act and is now advertising truthfully about its prices. The bottom line is that Mr. Tillage should not be put to the task of sorting out which of Comcast's future representations regarding the prices of cable television service packages are truthful and which are misleading, deceptive or false; California law relieves him of that burden.

52.     In sum, Mr. Tillage relied upon Comcast's promises, misrepresentations, and omissions, which in conjunction with Comcast's acts and practices alleged herein caused Mr. Tillage to suffer harm, injury in fact, and lost money or property. If not enjoined by order of this Court, Comcast will continue to injure Mr. Tillage through the misconduct alleged herein.

**B.     Plaintiff Joseph Loomis**

53.     As of June 2016, Plaintiff Joseph Loomis received broadband Internet service from Comcast at his home in Moss Beach, California.

54.     On or about June 21, 2016, Mr. Loomis engaged in an online chat with a Comcast sales chat agent named "Surinder."

55.     Surinder offered Mr. Loomis a Starter Double Play service package bundle which included both Internet and television service at a fixed monthly price of $79.99 for months 1-12 and $99.94 for months 13-24.

56.     Surinder made no mention of the existence of the Broadcast TV Fee or the Regional Sports Fee.

57.     Surinder stated, "With the changes, the new monthly bill would be $79.99/mo + taxes for the next 12 months."

58.     Relying on Surinder's representations, Mr. Loomis accepted the offer and told Surinder to place the order under this new contract.

1   59.   Surinder told Mr. Loomis that he would "receive an email confirmation within the

2   next 2 hours with all the information."

3   60.   Mr. Loomis never received an email order confirmation for the order placed with

4   Surinder.

5   61.   Mr. Loomis did not sign or otherwise agree to the Subscriber Agreement

6   concerning the new contract. Comcast did not mail, email, or otherwise transmit or present to Mr.

7   Loomis a copy of the Subscriber Agreement upon the placing of his order.

8   62.   Mr. Loomis never signed or otherwise agreed to the document which Comcast

9   dubs the Minimum Term Agreement. Comcast did not inform Mr. Loomis of the existence of a

10   Minimum Term Agreement document before Mr. Loomis placed the order for the new contract.

11   Comcast did not mail, email, or otherwise transmit or present to Mr. Loomis a copy of a

12   Minimum Term Agreement upon the placing of his order.

13   63.   The first bill Mr. Loomis received from Comcast under the new contract was dated

14   July 10, 2016. Mr. Loomis did not fully understand the July 10 bill due to the twenty different

15   pro-rated credits and charges in the "Other charges and credits" section, such that it was unclear

16   to him the items for which he was being charged versus the items for which there were offsetting

17   credits.

18   64.   The second bill Mr. Loomis received under the new contract was dated August 10,

19   2016. In this bill, the only line items listed in the "Other charges and credits" section were

20   charges for the Broadcast TV Fee ($5.00) and the Regional Sports Fee ($3.00) for a total of $8.00,

21   this time with no offsetting credits.

22   65.   Mr. Loomis was upset about these mysterious unauthorized charges (which are

23   referred to in this Complaint as the "Bogus Fees"), which had not been previously disclosed to

24   him and which caused his bill to be $8.00 higher than promised.

25   66.   Mr. Loomis called Comcast customer service several times to complain about the

26   Bogus Fees and spoke with several Comcast agents. Comcast agents falsely and repeatedly told

27   him that the Bogus Fees were "required by federal law" and were "taxes."

28

FIRST AMENDED COMPLAINT

67.     When the Comcast agents told him that they could not remove the Bogus Fees from his bill because they were required by law and that everyone with television service had to pay them, Mr. Loomis requested that the agents reduce his base package price of $79.99 by $8.00 per month to offset the amount of the Bogus Fees to honor his promised monthly price. The agents refused, telling Mr. Loomis they were unable to do so and that their hands were tied.

68.     On August 16, 2016, Mr. Loomis drafted a letter in which he documented his experience and enclosed a copy of his chat session with Surinder containing the terms of his agreement which did not include the Bogus Fees. Mr. Loomis demanded in the letter that Comcast remove the $8.00 in Bogus Fees from his monthly bills, or, alternatively, that Comcast reduce his monthly bill by $8.00 to offset the amount of the Bogus Fees in order to comply with the agreed upon contractual terms. Mr. Loomis mailed the letter to three different Comcast addresses including Comcast's corporate headquarters in Philadelphia, Pennsylvania.

69.     On September 12, 2016, in response to his letters, Mr. Loomis received an email and voicemail from "Mark" of Comcast's "Executive Customer Relations" department. The email stated that Mark was his "case manager."

70.     Mr. Loomis spoke by telephone to Mark. Mark acknowledged that Mr. Loomis had not been informed of the Bogus Fees, and he gave Mr. Loomis a credit of $192.00, representing a refund of 24 months of $8.00 in monthly Bogus Fees.

71.     But Mark told Mr. Loomis that despite this credit, Comcast could increase the Broadcast TV Fee or the Regional Sports Fee, or add other fees, anytime after the first three months of the 2-year purported fixed-rate contract term, and that Mr. Loomis would be responsible for the increases and additional fees.

72.     Mr. Loomis asked Mark how could that be since he had a 24 month agreement with Comcast for a guaranteed price per month plus tax only.

73.     Mark said the only thing Comcast can guarantee in a 24-month contract is that the "package price" will remain the same.

74.     Mr. Loomis responded to Mark that increasing the Bogus Fees after the first three months is just a surreptitious way of increasing the "guaranteed" package price.

75.     Mark replied that "all the cable companies do this," and that Comcast's "contract" permitted it.

76.     Mr. Loomis told Mark he had never seen, signed, or agreed to any such "contract," and he asked Mark to send it to him.

77.     Mark sent to Mr. Loomis, via US Postal Service, a 24-month Minimum Term Agreement, which Mr. Loomis received on September 26, 2016.  Mr. Loomis had never seen the document before.

78.     Mr. Loomis examined the Minimum Term Agreement, and saw that the undefined terms "Broadcast TV Fee" and "Regional Sports Fee" were buried in a sentence combined with taxes and government fees, implying to him that these charges were somehow mandated by the government and being levied by the government, not by Comcast. Mr. Loomis did not sign or otherwise agree to be bound by the Minimum Term Agreement.

79.     On October 23, 2016, Mr. Loomis submitted a complaint to the FCC outlining: (1) Comcast's practice of imposing the unauthorized Bogus Fees in breach of its promises to him; and (2) Comcast's assertion that it could increase the Bogus Fees after three months into his 2-year contract despite Comcast's having promised him a guaranteed locked-in rate that did not include these charges which were not part of his contract in the first place.

80.     In response to this FCC complaint, Mr. Loomis received a call from a Comcast agent named "Robert."

81.     Robert told Mr. Loomis that what Comcast was doing regarding its billing was "legal."

82.     Mr. Loomis informed Robert that he had previously received a $192.00 credit from Comcast representing a refund of 24 months of $8.00 in monthly Bogus Fees.

83.     Robert told Mr. Loomis he was "surprised" that Comcast had granted him the credit.

84.     Mr. Loomis told Robert that Mark, the agent who had granted the credit, had told Mr. Loomis that Comcast could increase these Bogus Fees – which Mr. Loomis never agreed to in the first place – at any time, and that the $192.00 would not cover these increases. Mr. Loomis

1   asked Robert if Comcast's position was indeed that it could increase the Bogus Fees at any time

2   during the contract and hold Mr. Loomis responsible for the increases.

3       85.     Robert responded that yes, Comcast could increase the Broadcast TV Fee and the

4   Regional Sports Fee from time to time even during the 24-month fixed-rate contract, and that

5   Comcast could even unilaterally add new fees mid-contract if it so desired.

6       86.     On November 18, 2016, Mr. Loomis received an email from the FCC that

7   Comcast had provided the FCC with a response and that his complaint was now closed.

8       87.     Mr. Loomis then mailed a letter of complaint to the FCC dated December 9, 2016,

9   with a copy to Comcast. Mr. Loomis stated in the letter that, despite Comcast granting him the

10   $192.00 credit for the unauthorized Bogus Fees, Comcast agents had told him that Comcast could

11   increase these unauthorized charges in the future at any time during the term of his purported

12   fixed-rate contract and that he would be responsible for paying the resulting higher service price.

13   Mr. Loomis wrote that he objected to any future increase in the Bogus Fees, and he stated that he

14   had not agreed to the Bogus Fees in the first place, let alone to their increase in the middle of his

15   promised fixed-rate contract.

16       88.     On December 28, 2016, in response to the letter, Mr. Loomis received a phone call

17   from another Comcast agent named "Ryan." Ryan told Mr. Loomis, as Comcast agents Mark and

18   Robert had told him previously, that Comcast could raise the Broadcast TV Fee and the Regional

19   Sports Fee at any time during the promised fixed-rate contract. Mr. Loomis then got the

20   impression from Ryan's demeanor and words that he was implying that if Mr. Loomis continued

21   to complain, Comcast could even reverse the $192.00 credit.

22       89.     Approximately two months later, Comcast stated in the fine print of Mr. Loomis'

23   March 10, 2017 bill that Comcast would be increasing the Broadcast TV Fee from $5.00 to $7.00,

24   and the Regional Sports Fee from $3.00 to $5.00, effective July 1, 2017 — approximately half-

25   way through his 2-year purported fixed-price contract.

26       90.     On April 17, 2017, Mr. Loomis (through counsel) mailed a letter to Comcast

27   Corporation CEO Brian L. Roberts and Comcast Cable CEO David N. Watson demanding,

28   among other things, that Comcast stop its deceptive practices and return all money paid by

FIRST AMENDED COMPLAINT

California Comcast customers for the Broadcast TV Fee and the Regional Sports Fee. See **Exhibit B**. In response to the letter, Comcast has neither given nor agreed to give within a reasonable time an appropriate correction, repair, replacement or other remedy.

91.     On April 21, 2017, in response to the April 17, 2017 demand letter, Mr. Loomis received a phone call from a Comcast agent named "Keethora." Keethora told Mr. Loomis she was calling from "Comcast's Executive Office" in response to the letter and wanted to discuss his dispute over the Broadcast TV Fee and the Regional Sports Fee.

92.     Keethora falsely told Mr. Loomis that the Broadcast TV Fee and the Regional Sports Fee were required by the federal government and were regulated by the FCC. Keethora told Mr. Loomis that Comcast's hands were tied and that Comcast was powerless to do anything about the Broadcast TV Fee and the Regional Sports Fee charges.

93.     Mr. Loomis did not receive a further response from Keethora or from any other Comcast representative or department.

94.     As a current Comcast subscriber, Mr. Loomis is in jeopardy of impending, actual and/or imminent injury in the future. For example, for each month in the future, he will be forced to pay the Bogus Fees. Mr. Loomis will also be subject to Comcast's unilateral, unknowable increases in the Bogus Fees despite his being in the middle of a purportedly fixed-rate contract.

95.     Mr. Loomis does not have objections to the quality of the cable services which Comcast provides. In fact, Mr. Loomis likes his Comcast service; he finds the actual quality of the service to be satisfactory, and Comcast is the only available provider which offers Mr. Loomis the bundle of services he seeks. But Mr. Loomis objects to the fact that Comcast is charging him a price which is different from and higher than the price Comcast promised and advertised and/or continues to promise and advertise.

96.     Like many consumers and current Comcast customers, Mr. Loomis is regularly presented with advertising from Comcast regarding Comcast's cable television and other services. In many of these advertisements, Comcast is attempting to sell Mr. Loomis additional services or to fold Mr. Loomis' current services into a larger package of services.

97.     Mr. Loomis' contract with Comcast expires in June 2018. If competing cable service providers started offering television and broadband Internet in his location, or if Mr. Loomis were to move to a new dwelling where he had a choice of cable service providers, he would seriously consider continuing to subscribe to Comcast based on a decision regarding which provider advertised and offered the best quality at the lowest truthful price.

98.     Mr. Loomis faces the threat of actual and/or imminent harm by not being able to rely with any confidence upon the truthfulness of Comcast's future advertising. Comcast's false advertising threatens to invade Mr. Loomis' statutory right (under, without limitation, California's Unfair Competition Law, False Advertising Law and Consumers Legal Remedies Act) to receive truthful information from Comcast about its services. Mr. Loomis might decide that Comcast offers the highest quality product yet decline to purchase Comcast or upgrade his services because he is unsure if he can rely upon Comcast's advertising. Or Mr. Loomis might purchase or upgrade Comcast cable services in the future as he may reasonably, but incorrectly, assume that Comcast has cleaned up its act and is now advertising truthfully about its prices.  The bottom line is that Mr. Loomis should not be put to the task of sorting out which of Comcast's future representations regarding the prices of its cable television service packages are truthful and which are misleading, deceptive or false; California law relieves him of that burden.

99.     In sum, Comcast failed to honor its representations to Mr. Loomis, made false statements to him, and is charging Mr. Loomis more for his cable service package than what Comcast had said it would charge. Mr. Loomis relied upon Comcast's misrepresentations and omissions, which, in conjunction with Comcast's acts and practices alleged herein, caused Mr. Loomis to suffer imminent harm, injury in fact, and lost money or property. If not enjoined by order of this Court, Comcast will continue to injure Mr. Loomis through the misconduct alleged herein.

**C.     Plaintiff Dan Adkins**

100.    After moving to a new home in Oakland, California, Plaintiff Dan Adkins went online to Comcast's website on September 26, 2016 to research Comcast's service package

offerings. Mr. Adkins wanted to sign up for a bundle package with television and broadband Internet that would work with his TiVo video recorder device.

101.    Based on a review of Comcast's offerings, Mr. Adkins narrowed his choice to two packages: Comcast's Starter Double Play package at $69.99 per month versus the Starter Double Play with "Blast" (i.e., faster Internet) at $79.99 per month.

102.    On the offer webpage for the packages, Mr. Adkins noticed that next to the prominently advertised package prices there was small print which stated "per month for 12 mo. With 2-year agreement." However, there was no asterisk or qualifier next to the advertised prices, and nothing on the page stated what the price would be in months 13-24. This made Mr. Adkins wary, because it was not clear what he would be charged after the first year.

103.    Mr. Adkins then noticed a small text link below the "Add to Cart" button for each package labeled "Pricing & Other Info." Mr. Adkins clicked on the "Pricing & Other Info." link, and a pop-up dialog box then appeared containing over 20 lines of small print. Buried in the "Pricing & Other Info." fine print was the information he was looking for, i.e., what the price would be for months 13-24. The tiny text stated that for both the $69.99 and the $79.99 packages, the price for months 13-24 would be $89.99.

104.    Based on these representations, Mr. Adkins decided on the $79.99 Starter Double Play with Blast Internet.

105.    Mr. Adkins decided to take screenshots of the offer page and of nearly every page of the order process as he viewed them that day on September 26, 2016, to make sure he had documentation of Comcast's offer to him so he could refute any possible later surprise charges.

106.    Mr. Adkins took a screenshot of the offer page which advertised the Starter Double Play packages. The screenshot of the offer page taken by Mr. Adkins is attached as **Exhibit C**. There was no asterisk or other qualifier next to the prices; the only small print was the text stating the advertised price would be charged for 12 months. The ad stated that the prices included "140 Channels" of TV and "24/7 Sports coverage on all major networks."

107.    In making his decision to proceed with his purchase, Mr. Adkins relied on these representations that the $79.99 price for the Starter Double Play with Blast was the total monthly

1   cost for those channels, including the broadcast television channels, plus Blast Internet. Mr.

2   Adkins took a screenshot of the pop-up dialog box which appeared after he clicked on the

3   "Pricing & Other Info." link. See **Exhibit D**.

4   108.   Mr. Adkins then clicked on the prominent blue "Add to cart" button. Mr. Adkins

5   then viewed the "TV Options" webpage. The screenshot taken by Mr. Adkins of the TV Options

6   webpage is attached as **Exhibit E**.  Mr. Adkins viewed the "My Order Summary" box on the right

7   side of the page which listed the various "Options" that were "Included" at no extra charge, "One-

8   time Charges" of $14.99, and the "Monthly Total" of $79.99. Based on these representations, Mr.

9   Adkins understood that the $79.99 "Monthly Total" price was the total amount Comcast would

10   charge him for television and Internet service with the exception of taxes (Mr. Adkins did not

11   require any additional television equipment and already had his own modem). Mr. Adkins did not

12   want the included X1 Digital Service receiver for his television, because he wanted to choose a

13   cable card instead for his TiVo. However, there was no option for him to choose a cable card on

14   the page. The webpage made no mention of the Broadcast TV Fee or the Regional Sports Fee.

15   109.   Mr. Adkins then clicked on the blue "Next" button. He then viewed the "Internet

16   Options" webpage.  The screenshot taken by Mr. Adkins of the Internet Options page is attached

17   as **Exhibit F**. The identical "My Order Summary" box was on the right side. Mr. Adkins accepted

18   the default option to "use my own equipment" for no charge because he owned his own modem.

19   The webpage made no mention of the Broadcast TV Fee or the Regional Sports Fee.

20   110.   Mr. Adkins then clicked on the blue "Next" button. He then viewed a webpage

21   with installation options.  The screenshot taken by Mr. Adkins of the installation options page is

22   attached as **Exhibit G**. He accepted the default option of self installation and standard shipping

23   for the self-install kit. Mr. Adkins observed the identical "My Order Summary" box on the right

24   side as compared to the two previous pages. The webpage made no mention of the Broadcast TV

25   Fee or the Regional Sports Fee.

26   111.   On each webpage displaying the "My Order Summary" (see **Exhibits E-G**),

27   Comcast displayed to Mr. Adkins a prominent blue question mark next to the "Monthly Total"

28   amount. Upon hovering over the question mark, a text box appeared stating:

FIRST AMENDED COMPLAINT

**This is the base monthly total of all recurring charges for the services you have selected**. It does not include tax or one-time charges (such as installation or Pay-Per-View fees) that may appear on individual bills.

(Emphasis added.) Mr. Adkins viewed and relied upon this language and statement that the "Monthly Total" price of $79.99 was the total of all recurring monthly charges except for tax for the services Comcast was providing. Although Mr. Adkins did not take a screenshot of this language, an example of how this text box is displayed when the consumer hovers over the prominent blue question mark is provided in **Exhibit H** (which contains screenshots taken March 6, 2016 of a webpage in the online order process for service in the Sacramento, California area, red highlight added).

112.    Mr. Adkins then clicked on the blue "Next" button on the installation webpage, which brought him to an account info webpage where he entered his personal and payment information. These webpages made no mention of the Broadcast TV Fee or the Regional Sports Fee.

113.    After entering and confirming his personal and payment information, Mr. Adkins was brought to the final order submittal webpage. The screenshot taken by Mr. Adkins of the order submittal page is attached as **Exhibit I**. The order submittal page contained yet another list of all the services and items included in the package, and at the bottom showed a "Total" of "Monthly Charges" of $79.99. As always, there was no asterisk or qualifier regarding this total monthly price.

114.    Mr. Adkins observed and read the tiny fine print at the bottom of the order submittal webpage which stated: "Equipment, installation, taxes and fees, including regulatory recovery fees and other applicable charges extra." This fine print, like the rest of the page and all the other pages of the online order process, made no mention of the Broadcast TV Fee or the Regional Sports Fee.

115.    Mr. Adkins observed some small text above the large blue "Submit Your Order" button, with a check box which stated that by checking the small box he represented "I have read and agree to the Comcast Agreement for Residential Services" and "agree to the terms of the

Minimum Term Agreement." Mr. Adkins clicked on the link for the Comcast Agreement for Residential Services, which displayed the Subscriber Agreement with 23 pages of small type. Mr. Adkins took a screenshot of the agreement, and quickly scanned the agreement, specifically looking to see if there was an arbitration clause and if it was possible to opt out of the arbitration clause. Meanwhile, the 23-page Subscriber Agreement made no mention of the Broadcast TV Fee or the Regional Sports Fee.

116. Mr. Adkins then returned to the order submittal webpage, and clicked on the link labeled "Minimum Term Agreement." A pop up window of text then appeared, which Mr. Adkins took a screenshot of (the screenshot is attached as **Exhibit J**). The text was not of an actual Minimum Term Agreement; instead, it simply mentioned the existence of an early termination fee and stated that a Minimum Term Agreement would later be emailed or mailed to him. The entirety of the displayed text is as follows (italics are added):

> **Minimum Term Agreement**. The offer you selected requires a minimum term agreement and is subject to an early termination fee if all XFINITY services are cancelled during the agreement term. *A copy of the agreement will be sent to the mail or email address you provided.* You have the option to cancel the minimum term agreement within 30 days of the date the services under the offer are installed/activated without incurring an early termination fee. If you wish to cancel the agreement, you must contact Comcast by calling 1-800-XFINITY. If you cancel the agreement during the 30 day period, the charges for your remaining services may increase to the non-term contract rate. If you do not cancel the minimum term agreement within the 30 day period, the terms of the minimum term agreement will automatically apply.

117. Thus, despite Comcast requiring Mr. Adkins to check the box on the order submittal webpage that "I have read and agree to the terms of the Minimum Term Agreement," it was *impossible* for him to actually do so, because according to the pop-up box, the actual Minimum Term Agreement document would not be sent to him until later – if it was ever sent at all.

118. Therefore, Mr. Adkins did not agree and could not have possibly agreed to the Comcast Minimum Term Agreement prior to submitting his order online.

119. Mr. Adkins then submitted his order by clicking on the blue "Submit Your Order" button at the bottom of the page.

120.    Relying on Comcast's representations and promises to him in its website advertising and throughout the online purchase process, Mr. Adkins reasonably expected and believed that his total monthly bill for his television and Internet service for months 1-12 would be $79.99 plus taxes and government fees. Mr. Adkins also understood that his total monthly bill for months 13-24 would be $89.99 plus taxes and government fees.

121.    Mr. Adkins had agreed to commit himself to a 2-year contract in reliance on Comcast's promise of a guaranteed and predictable lower price for his service during those two years.

122.    Later that day, on September 26, 2016, Mr. Adkins received an "Order Summary" email from Comcast stating his order was being reviewed and that the order would not be finalized until he received a confirmation email. This Order Summary email is attached as **Exhibit K**. The Order Summary stated his "Monthly Fees" would be $79.99 and "One-time Fees" would be $14.99. The email did not mention the Broadcast TV Fee or the Regional Sports Fee, even in the fine print at the bottom of the email.

123.    Mr. Adkins then opted out of Comcast's arbitration clause on Comcast's "Arbitration Opt Out" webpage.

124.    On September 28, 2016, two days after placing his order online, Mr. Adkins called Comcast customer service to ask about two concerns: (1) Mr. Adkins never received the "confirmation email" that the September 26, 2016 "Order Summary" email told him would be forthcoming; and (2) he wanted a cable card for his TiVo instead of the cable box. The first agent he spoke to was unable to help him, so he called a second time. The second Comcast agent asked him to confirm that "the order was placed for a Double Play Starter XF at $79.99, you own your own modem, and requested self installation kit, correct?" Mr. Adkins confirmed this was correct. The agent told Mr. Adkins that Mr. Adkins could switch the box for a cable card at a local Comcast service center.

125.    Mr. Adkins never received an order confirmation email from Comcast.

126.    Mr. Adkins received his first bill on October 6, 2016. See **Exhibit L**. Mr. Adkins noticed that Comcast was charging him a $5.00 Broadcast TV Fee and a $3.00 Regional Sports

Fee, which he did not understand and which had not been previously disclosed to him. Mr.

Adkins also noticed that Comcast was charging him an additional $15.00 for Blast Pro Internet,

contrary to Comcast's repeated promises to him on the offer webpage and throughout the order

process that Blast Pro Internet was "Included" for no additional charge (in fact, Comcast had

called the $79.99 package he selected "Starter Double Play with Blast!"). See Mr. Adkins'

screenshots of the offer webpage and the online order process at **Exhibits C, E-G, I**).

127.    Upset by these extra charges, Mr. Adkins wrote a letter to Comcast, which he

mailed on October 7, 2016, asking Comcast to remove the Broadcast TV Fee, the Regional Sports

Fee, and the Blast Pro Internet monthly charges. See **Exhibit M**. Mr. Adkins included print-outs

of the screenshots he had taken during the order process. He also asked Comcast to give him a

$2.50 monthly credit for using a cable card in his own device pursuant to Comcast policy, and

questioned whether he had been double-charged for the self-install kit.

128.    On or about October 7, 2016, Mr. Adkins opted out of the Comcast's arbitration

agreement a second time, this time taking a screenshot so that he had documentary evidence of

his opt-out.

129.    Mr. Adkins never signed or otherwise agreed to the document which Comcast

dubs the Minimum Term Agreement. Comcast did not present a copy of a Minimum Term

Agreement to Mr. Adkins before he ordered his Comcast service. Comcast did not mail, email, or

otherwise transmit or present to Mr. Adkins a copy of a Minimum Term Agreement after Mr.

Adkins ordered his Comcast service.

130.    Mr. Adkins was not aware of the existence of a purported 30-day Money-Back

Guarantee by Comcast, and this option was never presented to him in any of his communications

with Comcast regarding his complaints.

131.    On October 8, 2016, Mr. Adkins (through counsel) faxed and emailed a letter to

Comcast demanding, among other things, that Comcast stop its deceptive practices and return all

money paid by Comcast customers for the Broadcast TV Fee and the Regional Sports Fee. See

**Exhibit N**. In response to the letter, Comcast has neither given nor agreed to give within a

FIRST AMENDED COMPLAINT

reasonable time an appropriate correction, repair, replacement or other remedy with regard to the Bogus Fees.

132.    Starting on Mr. Adkins' July 2017 bill, Comcast raised the Broadcast TV Fee from $5.00 to $7.00 and the Regional Sports Fee from $3.00 to $5.00. Mr. Adkins never agreed to these double-charges for the channels in his service package in the first place. Further, the main reason Mr. Adkins agreed to a 2-year contract was in reliance on Comcast's promise of a guaranteed and predictable lower price for his service for those two years. Now, 9 months into his 24-month fixed-rate contract, Comcast was utilizing the Bogus Fees as a sneaky, backdoor way to increase its rates in breach of Comcast's agreement with him.

133.    As a current Comcast subscriber, Mr. Adkins is in jeopardy of impending, actual and/or imminent injury in the future. For example, for each month in the future, he will be forced to pay the Bogus Fees. Mr. Adkins will also be subject to Comcast's unilateral, unknowable increases in the Bogus Fees despite his being in the middle of a purportedly fixed-rate contract.

134.    Mr. Adkins does not have objections to the quality of the cable services which Comcast provides. But Mr. Adkins objects to the fact that Comcast is charging him a price which is different from and higher than the price Comcast advertised and/or continues to promise and advertise.

135.    Like many consumers and current Comcast customers, Mr. Adkins is regularly presented with advertising from Comcast regarding Comcast's cable television and other services. In many of these advertisements, Comcast is attempting to sell Mr. Adkins additional services or to fold Mr. Adkins' current services into a larger package of services.

136.    When his Comcast contract expires in September 2018, Mr. Adkins will have to decide whether or not to keep subscribing to Comcast. Mr. Adkins would seriously consider continuing to subscribe to Comcast based on a decision regarding which provider advertised and offered the best quality at the lowest truthful price.

137.    Mr. Adkins faces the threat of actual and/or imminent harm by not being able to rely with any confidence upon the truthfulness of Comcast's future advertising. Comcast's false advertising threatens to invade Mr. Adkins' statutory right (under, without limitation, California's

1  Unfair Competition Law, False Advertising Law and Consumers Legal Remedies Act) to receive

2  truthful information from Comcast about its services. Mr. Adkins might decide that Comcast

3  offers the highest quality product yet decline to purchase Comcast or upgrade his services

4  because he is unsure if he can rely upon Comcast's advertising. Or Mr. Adkins might purchase or

5  upgrade Comcast cable services in the future as he may reasonably, but incorrectly, assume that

6  Comcast has cleaned up its act and is now advertising truthfully about its prices. The bottom line

7  is that Mr. Adkins should not be put to the task of sorting out which of Comcast's future

8  representations regarding the prices of its cable television service packages are truthful and which

9  are misleading, deceptive or false; California law relieves him of that burden.

10      138.    In sum, Mr. Adkins relied upon Comcast's promises, misrepresentations, and

11  omissions, which in conjunction with Comcast's acts and practices alleged herein caused Mr.

12  Adkins to suffer harm, injury in fact, and lost money or property. If not enjoined by order of this

13  Court, Comcast will continue to injure Mr. Adkins through the misconduct alleged herein.

14      **D.    Plaintiff Christopher Robertson**

15      139.    Prior to November 2015, Plaintiff Christopher Robertson, then a resident of

16  Sacramento, California, subscribed to DirecTV for television and AT&T for Internet and phone

17  service. Towards the end of 2015, he learned that AT&T was going to increase the monthly

18  service rate from approximately $40.00 per month to approximately $55.00 per month.

19  Meanwhile, Mr. Robertson did not watch much television and decided he did not need his

20  DirecTV subscription.

21      140.    In October 2015, Mr. Robertson received a direct mail advertisement from

22  Comcast promoting a "Triple Play" "deal" with television, broadband Internet, and phone service.

23  A copy of the flyer is attached as **Exhibit O**.

24      141.    The first page of the flyer prominently advertised a price of "$89.99 per month for

25  12 months" for a "Triple Play" package of "TV, Internet & Voice," which was purportedly

26  discounted from a strike-through price of $99.00. The sale price and the strike-through price were

27  featured in huge text in two locations on the page.

28

142.     There was no asterisk or qualifier next to the giant "$89.99" advertised price, and there was no mention of the Broadcast TV Fee or the Regional Sports Fee on the page.

143.     The first page of the flyer stated that the $89.99 price included "Over 140 channels" and listed bullets with other features that were included in the package.

144.     There was no fine print anywhere on the first page of the flyer. The footer of the first page displayed "CALL NOW!" in huge text adjacent to Comcast's phone number and website address.

145.     The second page of the flyer did not appear to contain information about the pricing or details regarding the service. Mr. Robertson did not notice or read the fine print which was only on the bottom of the second page and which was not referenced at all by the first page.

146.     The mailer piqued Mr. Robertson's interest in what other service offers were available from Comcast. Mr. Robertson went to Comcast's website and began researching Comcast's service offerings. On Comcast's website, Mr. Robertson read various statements in which Comcast said it had made improvements including in customer service. Mr. Robertson priced out various Comcast offerings available to him, and determined that the advertised price for a bundle package of Internet plus basic television at $49.99 was cheaper than the price for broadband Internet alone.

147.     On or about November 9, 2015, Mr. Robertson returned to the Comcast website. Mr. Robertson selected a $49.99 bundled service package of broadband Internet plus television on an offer webpage, and proceeded to go through the online purchase process. The service package included only a few television channels (primarily the broadcast channels ABC, CBS, NBC and FOX which Comcast stated were included in the $49.99 plan price), along with broadband Internet.

148.     Mr. Robertson observed the prominently advertised $49.99 price, which was offered pursuant to a 1-year agreement. Mr. Robertson did not notice, or have any reason to search for and click on – given there was no asterisk or other qualifier next to the $49.99 advertised price – the small "Pricing & Other Info." text link below the "Add to Cart" button.

149.   The webpages Mr. Robertson viewed during the online purchase process were substantially similar in format, style, and content to the pages viewed by Plaintiff Dan Akins (see **Exhibits C, E-I**), differing primarily in the prices and the specific included features.

150.   On each page of the online purchase process, Comcast prominently displayed to Mr. Robertson the $49.99 price as the "Monthly Total." Next to this "Monthly Total" amount was a prominent blue question mark which caused to display the following representation viewed by Mr. Robertson: "This is the base monthly total of all recurring charges for the services you have selected. It does not include tax or one-time charges (such as installation or Pay-Per-View fees) that may appear on individual bills."

151.   Based on these representations, Mr. Robertson understood that the $49.99 "Monthly Total" price was the total amount Comcast would charge him for television and Internet service with the exception of taxes (Mr. Robertson did not require any additional television equipment and he already had his own modem).

152.   Mr. Robertson went through the online purchase process. Prior to submitting his order, he entered into an online chat with a Comcast agent by clicking on an online chat dialog box which popped up on one of the purchase process webpages.

153.   Mr. Robertson told the chat agent he was interested in the $49.99 broadband Internet plus television service package. Mr. Robertson asked the agent what the total monthly bill would be for the $49.99 plan, and told the agent he wanted to confirm other fees would not be later added to the bill.

154.   The chat agent assured Mr. Robertson there would be no extra charges with the exception of taxes and government fees. The agent told Mr. Robertson that the monthly total during the 1-year contract would be the $49.99 advertised price plus approximately $10.00 in taxes and government fees.

155.   The chat agent did not mention the existence of the Broadcast TV Fee, and Mr. Robertson was never informed about the Broadcast TV Fee during the online order process.

156.     Relying on the representations of the Comcast chat agent, as well as on his understanding of Comcast's representations in its flyer and online as described above, Mr. Robertson placed the order for service.

157.     Based on Comcast's representations and promises to him in its flyer, on its website, and by the Comcast chat agent, Mr. Robertson reasonably expected and believed that the total monthly bill for his television and Internet service for 12 months would be $49.99 plus approximately $10 in taxes and government fees. In reality, contrary to the chat agent's representations to him, the monthly taxes and government fees (labeled as "Taxes and fees" on the Comcast bill) amounted to less than $3.00. Meanwhile, the monthly charge for the Broadcast TV Fee (which was a discretionary, sham double-charge for the same broadcast channels Comcast had already promised him were included in the advertised package price) was $3.25 – higher than all of the true "Taxes and fees" combined.

158.     Meanwhile, Mr. Robertson had agreed to commit himself to a 1-year contract in reliance on Comcast's promise of a guaranteed fixed lower price for his service for those twelve months.

159.     Mr. Robertson received his first bill on or about November 14, 2015. He was surprised to see that the bill was $73.94, much higher than Comcast had promised. Upon further examination of the bill, Mr. Robertson saw a $6.00 Video Transfer Fee, a $6.00 CHSI Transfer Fee, and a $3.25 Broadcast TV Fee.

160.     Mr. Robertson initiated an online chat on Comcast's website with a customer service agent, and he asked that these charges be removed from his bill. The chat agent said he could remove the Video Transfer Fee and CHSI Transfer Fee. The agent apologized that nobody had told Mr. Robertson about the Broadcast TV Fee, but told him that it was impossible to waive the charge because it was a fee all customers had to pay. The agent was unable to explain or define what the Broadcast TV Fee was.

161.     On December 2, 2015, Mr. Robertson opted out of Comcast's arbitration clause on Comcast's "Arbitration Opt Out" webpage.

162.     On December 24, 2015, Mr. Robertson (through counsel) mailed a letter to Comcast demanding that Comcast end its unlawful scheme and return all money Comcast customers paid for the Broadcast TV Fee and the Regional Sports Fee. See **Exhibit P**.

163.     On February 25, 2016, Comcast Senior Vice President Thomas R. Nathan mailed a response letter in which Comcast denied liability and refused to provide any of the requested relief whatsoever.

164.     On March 19, 2016, Mr. Robertson initiated an online chat with a Comcast customer service agent. Mr. Robertson asked the agent to remove the Broadcast TV Fee charge from his bills and to refund his past payments of the charge.

165.     The agent stated that the Broadcast TV Fee was a "Government approved charge implemented by Comcast to all cable service subscribers."

166.     Mr. Robertson complained to the agent that he had not been told about the charge, and that "I signed a 1 year agreement to pay a specific amount for a specific service from Comcast, that is the amount I should be paying each month." He stated that "Comcast told me one price, then charged me another."

167.     The agent responded that the "Broadcast TV Fee is part of the fees for having cable service which is on top of the service price you currently have."

168.     The agent refused to refund or stop charging the Broadcast TV Fee, stating "it cannot be refunded … since you have agreed to sign up for the package with us."

169.     On Mr. Robertson's May 8, 2016 bill, Comcast appended a "Products and Services Price List" which stated that "Starting on July 1, 2016 the following XFINITY services and fees will be changing." The list showed that the Broadcast TV Fee would be increasing on July 1, 2016 to $5.00. Yet contrary to the stated upcoming increase, a statement at the bottom of the page declared: "If you're currently receiving services on a promotional basis, under a minimum term agreement associated with a specific rate, or in the guaranteed period of one of our SurePrice plans, the prices for those specific services will not be affected during the applicable period." See Mr. Robertson's May 8, 2016 bill at **Exhibit Q**.

170.     Starting on Mr. Robertson's July 8, 2016 bill, Comcast increased the Broadcast TV Fee from $3.25 to $5.00.

171.     Mr. Robertson never agreed to this double-charge for the broadcast channels – which comprised most of the few channels included in his package – in the first place. Further, Mr. Robertson agreed to a 1-year contract in reliance on Comcast's promise of a guaranteed and fixed lower price for his service during those twelve months. Yet now, with 4 months still remaining on his 12 month contract, Comcast was utilizing the Broadcast TV Fee as a sneaky, backdoor way to increase its rates in breach of Comcast's agreement with him.

172.     Mr. Robertson never signed or otherwise agreed to the document which Comcast dubs the Minimum Term Agreement. Comcast did not present a copy of a Minimum Term Agreement to Mr. Robertson before he ordered his Comcast service. Comcast did not mail, email, or otherwise transmit or present to Mr. Robertson a copy of a Minimum Term Agreement upon the placing of his order.

173.     Soon after Mr. Robertson's 1-year contract with Comcast expired at the end of 2016, Mr. Robertson terminated his service with Comcast.

174.     Mr. Robertson did not have objections to the quality of the cable television service which Comcast provided. But Mr. Robertson objects to the fact that Comcast charged him a price which was different from and higher than the price Comcast promised and advertised and/or continues to promise and advertise.

175.     Mr. Robertson faces the threat of actual and/or imminent harm by not being able to rely with any confidence upon the truthfulness of Comcast's future advertising. Mr. Robertson would seriously consider subscribing to Comcast in the future based on a decision regarding which provider advertised and offered the best quality at the lowest truthful price. Comcast's false advertising threatens to invade Mr. Robertson's statutory right (under, without limitation, California's Unfair Competition Law, False Advertising Law and Consumers Legal Remedies Act) to receive truthful information from Comcast about its services. Mr. Robertson might decide that Comcast offers the most suitable product yet decline to purchase Comcast because he is unsure if he can rely upon Comcast's advertising. Or Mr. Robertson might purchase Comcast

cable services in the future as he may reasonably, but incorrectly, assume that Comcast has

cleaned up its act and is now advertising truthfully about its prices. The bottom line is that Mr.

Robertson should not be put to the task of sorting out which of Comcast's future representations

regarding the prices of its cable television service packages are truthful and which are misleading,

deceptive or false; California law relieves him of that burden.

176.     Mr. Robertson relied upon Comcast's promises, misrepresentations, and

omissions, which in conjunction with Comcast's acts and practices alleged herein caused Mr.

Robertson to suffer harm, injury in fact, and lost money or property. If not enjoined by order of

this Court, Comcast will continue to injure Mr. Robertson through the misconduct alleged herein.

## V.     COMMON FACTUAL ALLEGATIONS OF COMCAST'S CALIFORNIA-WIDE AND NATIONWIDE SCHEME

177.     The experiences of Plaintiffs Charles Tillage, Joseph Loomis, Dan Adkins, and

Christopher Robertson are typical of millions of Californians and tens of millions of consumers

throughout the United States. Since 2014, these consumers have been victims of Comcast's

nationwide scheme of charging more for its services than Comcast advertised and promised them

it would charge.

178.     Plaintiffs bring this lawsuit on behalf of themselves individually, as private

attorneys general, and also as a class action.

179.     Plaintiffs seek damages and/or restitution. If successful, Comcast will be forced to

pay out all of the revenue generated by the Bogus Fees during the class period.

180.     Plaintiffs also seek public injunctive relief for the benefit of themselves and for the

benefit of millions of other California consumers. If successful, the lawsuit will also likely benefit

tens of millions of consumers and Comcast customers nationwide because the Comcast

advertising practices which are the subject of this Complaint are uniform and standard throughout

the country.

181.     Comcast began perpetrating this Broadcast TV Fee and Regional Sports Fee bait-

and-switch scheme in 2014. Prior to 2014, Comcast included all programming charges for the

broadcast channels (like it did for all the other channels Comcast promised and provided to its

customers) in the advertised and billed "sticker price." After all, paying television networks for video content and transmission rights is a basic cost of doing business for a cable company, and one would expect any such charges to be included in Comcast's advertised and stated price for television service packages which included those channels.

182.    In January 2014, Comcast introduced the Broadcast TV Fee as a shady backdoor way to increase prices to its prospective and current television service subscribers, while continuing to advertise and promise a lower "sticker price" for its service packages. Rather than implementing a top-line price increase for its television service packages and bundles, Comcast instead kept the advertised price the same and hid the price increase in a newly invented and inadequately disclosed "Broadcast TV Fee." In reality, the Broadcast TV Fee was a bogus double-charge for the broadcast television channels Comcast had promised were already included in the advertised package price.

183.    In January 2015, Comcast expanded this scheme by introducing the "Regional Sports Fee" in order to similarly disguise programming price increases for local sports channels. Similar to the Broadcast TV Fee, the Regional Sports Fee was a bogus double-charge for local sports channels which Comcast had promised were already included in the advertised "sticker price" for the package purchased by the customer.

184.    Comcast charges the Broadcast TV Fee to all Comcast cable television subscribers. Comcast charges the Regional Sports Fee to Comcast cable television subscribers with the Digital Starter Package or a higher level of service.

185.    Comcast perpetrates this scheme, which affects all of its over two million California cable television subscribers, in order to increase demand for its services and to increase its profits. Comcast tricks customers into thinking they will pay the lower advertised "sticker price," rather than the significantly higher price they will actually be charged. The Bogus Fees now add as much as $12.00 per month to California customer bills, often accounting for more than 10% of the subscriber's total bill.

186.    Comcast's advertising (defined for purposes of this Complaint as all of Comcast's communications to or with current or potential customers) is likely to mislead or deceive an

ordinary or reasonable consumer. Comcast's advertising is misleading or false because the price certain advertised for cable television service packages is not the price actually charged; Comcast increases the price it actually charges by adding the Bogus Fees and then increasing the Bogus Fees in the middle of a supposedly fixed-rate contract.

187.    Consumers are paying a premium for a falsely advertised product or service. Consumers have been exposed to false information, which caused Comcast to charge and receive higher prices than advertised, and many of those consumers would not have purchased Comcast's services or have agreed to pay the price they paid but for the misleading or deceptive advertising.

A.    **Comcast Engages in False and Misleading Advertising About the Prices It Charges for Its Cable Television Service Packages.**

188.    In its website advertising and online order process, Comcast *never* includes an asterisk or qualifier next to the prominently displayed price for its television service packages which could put the consumer on notice that the monthly sticker price does not include the invented (and automatically billed) Broadcast TV Fee and Regional Sports Fee. E.g., see **Exhibits C-I**. On each page of the online order process, Comcast prominently displays the advertised price as the "Monthly Total," despite that total not including the cost of the Broadcast TV Fee and the Regional Sports Fee. *Id.*

189.    Comcast displays a prominent blue question mark next to the "Monthly Total" amount; when one hovers over the question mark, a text box appears stating:

> **This is the base monthly total of all recurring charges for the services you have selected**. It does not include tax or one-time charges (such as installation or Pay-Per-View fees) that may appear on individual bills.

See **Exhibit H**. But the stated "base monthly total" does not include the cost of the Broadcast TV Fee and the Regional Sports Fee, which are in fact recurring double-charges for ABC, NBC, CBS, FOX and local sports channels which Comcast has already advertised and promised are included in the package price.

190.    For example, see the offer webpage screenshot taken by Plaintiff Adkins at **Exhibit C**. Comcast advertises the $79.99 price as including "140 Channels" of TV and "24/7 Sports coverage on all major networks." This offer is deceptive because the $79.99 price does not

1   include the additional – and automatically charged –  $8.00 for the monthly Broadcast TV Fee

2   ($5.00) and Regional Sports Fee ($3.00) to provide those very same channels. This $8.00 in

3   double-charges represents a 10% price increase above the promised and advertised price for the

4   television and Internet service package.

5          191.    For example, see the offer webpage screenshot of service packages advertised on

6   Comcast's website for the Sacramento, California area on January 14, 2016, attached as

7   **Exhibit R** (red highlight added). The webpage advertisement specifically and prominently states

8   that the Internet Plus 75 bundle includes "local channels like ABC, NBC & FOX" for the price of

9   $54.99, and even includes the logos for NBC and FOX in the ad. This statement that the package

10   price is $54.99 is false and misleading because the true price of the bundle is $58.24, i.e., $54.99

11   plus the $3.25 automatically-applied Broadcast TV Fee, which is charged to provide the very

12   channels (ABC, NBC and FOX) that Comcast has promised are included in the $54.99 monthly

13   price.

14          192.    Comcast makes similar misrepresentations and omissions in its other forms of

15   advertising such as direct mail. As reflected in the advertising flyer mailed to Plaintiff Robertson

16   (see **Exhibit O**), Comcast likewise never includes an asterisk or qualifier next to the prominently

17   advertised price for its service packages, and Comcast buries its unreferenced disclaimers in tiny

18   fine print in a location consumers are unlikely to notice.

19          193.    Meanwhile, Comcast's hidden advertising disclaimers, in the event they are seen

20   by consumers, are themselves misleading. The disclaimers are designed to falsely imply that the

21   Bogus Fees are government-imposed charges. For example, buried in the fine print on the bottom

22   of page 2 of the flyer sent to Mr. Robertson is the following sentence: "Equipment, installation,

23   **_taxes and fees, including_** regulatory recovery fees, Broadcast TV Fee (up to $3.50/mo.),

24   Regional Sports Fee (up to $1.00/mo.) and other applicable charges extra …" (emphasis added).

25   *Id.*

26          194.    A reasonable consumer would assume the phrase "taxes and fees" which explicitly

27   "includ[e]" the strange and undefined terms "Broadcast TV Fee" and "Regional Sports Fee,"

28   refers to taxes and government fees outside of Comcast's control.

195.    Comcast's representations on its website and in its advertising are false, because it charges more than it promises it will charge for television service packages, via the deceptive Broadcast TV Fee and Regional Sports Fee.

B.    **Comcast's Sales Agents Make False and Misleading Statements About the Prices Comcast Charges for Its Cable Television Service Packages.**

196.    Comcast sales agents – including telesales agents, online chat agents, and in-store sales staff – universally do not disclose or mention the existence of the Broadcast TV Fee and the Regional Sports Fee to prospective customers. Further, when they quote customers the total order price, the agents uniformly and falsely say that the stated price is the total price "*plus taxes*" or "*plus taxes and fees*." A reasonable consumer would interpret the phrase "taxes and fees" to mean government or regulatory charges, as opposed to discretionary, double-charges for channels Comcast has already promised are included in the advertised package price.

197.    For example, a Comcast online sales chat agent lied to Plaintiff Loomis by falsely promising him a specific, all-inclusive price, with the only extra charge being "plus tax" – but where in fact the quoted price did not include the Bogus Fees and where the agent never disclosed the existence of the Bogus Fees.

198.    For example, a Comcast online sales chat agent lied to Plaintiff Robertson by falsely promising him there would be no extra charges above the advertised and promised $49.99 package price except for taxes and government fees – but where in fact the $49.99 price did not include the Broadcast TV Fee and where the agent did not disclose the existence of the Broadcast TV Fee.

199.    Other Comcast customers similarly placed their orders in reliance on statements by Comcast sales agents that the quoted price was the total cost plus taxes or plus taxes and government fees, but were not informed by the sales agents of the existence of the Broadcast TV Fee and/or the Regional Sports Fee.

200.    For example, when John Bailey, a Comcast customer from Covington, Washington, spoke with a Comcast telesales agent on July 23, 2016 to upgrade his Internet-only package to a Double Play package with Internet plus television service, the agent falsely promised

him the total price would be the advertised package price "plus taxes," and the agent did not disclose the additional $5.00 Broadcast TV Fee.[1]

201.    For example, when Dian Wordinger of Mishawaka, Indiana, signed up for Comcast in person at a Comcast service center in June 2017, the agent behind the counter falsely promised her that the total monthly bill would be "$75.98 before taxes," even hand-writing that phrase on Ms. Wordinger's paperwork. The agent made no disclosure of the additional Bogus Fees which would in fact be charged to her.

202.    The experiences of Plaintiffs Loomis and Robertson, and the experiences of these other named Comcast customers, are typical of the experiences of other Comcast customers and prospective customers. Through the discovery process in this case, Plaintiffs will obtain further evidence showing that Comcast has a uniform, standard policy of directing and/or encouraging its sales agents to deceptively state that the advertised price plus equipment charges is the total monthly service price plus "taxes" or "taxes and fees," and that Comcast policy is for sales agents to not mention or disclose the existence of the Broadcast TV Fee or the Regional Sports Fee (which in many cases adds more than 10% to the cost of the bill).

C.      **Comcast Lies to Customers Who Enquire or Complain About the Broadcast TV Fee or the Regional Sports Fee By Telling Them the Charges Are Taxes or Government Fees.**

203.    When customers contact Comcast to ask or complain about the Broadcast TV Fee and/or the Regional Sports Fee, Comcast doubles down on its deception through its practice of lying to customers by saying that these Bogus Fees are taxes or government-imposed fees over which Comcast has no control.

204.    For example, when Plaintiff Loomis called Comcast to complain about the surprise Bogus Fees in August 2016, Comcast agents repeatedly and falsely told him that the Bogus Fees were "required by federal law" and were "taxes." When a Comcast agent from the "Comcast Executive Office" called Mr. Loomis on April 21, 2017 in direct response to his demand letter regarding the Bogus Fees, the agent told Mr. Loomis that the Broadcast TV Fee and the Regional

_____

[1] Plaintiffs are in possession of the official Comcast audio recording of this call.

1    Sports Fee were required by the federal government and were regulated by the FCC, and that

2    Comcast's hands were tied and that Comcast could do nothing about the Bogus Fees.

3         205.    For example, when Plaintiff Robertson contacted a Comcast chat agent to

4    complain about the Broadcast TV Fee, the agent told him the Broadcast TV Fee was a

5    "Government approved charge implemented by Comcast to all cable subscribers."

6         206.    Plaintiffs' experiences are typical. Other consumers have described identical

7    behavior by Comcast.

8         207.    For example, Comcast customers have posted on Comcast's official online "Help

9    & Support Forums" that they were falsely told by Comcast agents that the Broadcast TV Fee and

10   the Regional Sports Fee are taxes or government fees:

11            Posted on Comcast's Website on June 11, 2016:
              I called comcast today to complain about the extra [Broadcast TV Fee and
12            Regional Sports Fee] charges that are added to the bill. I was told that it was a tax.
              IT IS NOT A TAX, it is a fee charged by Comcast. They are charging us an extra
13            $8 per month, without giving us any additional services. I believe we have a class
              action lawsuit waiting to happen.[2]
14

15            Posted on Comcast's Website on July 19, 2015:
              Upon review of my Comcast bills I called today, Sunday, to find out why I was
16            being charged for a $3 Broadcast TV fee and a $1 Regional Sports Fee. These
              charges appeared in my June and July bills under the section "Other Charges &
17            Credits" and I wanted to get a better understanding of what and why these charges
              appeared all of a sudden and if they can be removed. As an aside, I don't watch
18            sports. The call center agent explained they were state and government taxes and
              could not be removed. I asked her why they didn't appear in the "Taxes,
19            Surcharges, and Fees" section and she corrected herself and stated that they are not
              State fees but that they are government fees that Comcast had been approved to
20            charge customers.[3]
21

22        208.    For example, when Comcast customer Jonathan Bailey of Covington, Washington,

23   spoke to a Comcast "customer loyalty department" telephone agent on August 23, 2016 and

24   demanded that Comcast remove the previously undisclosed $5.00 Broadcast TV Fee from his bill,

25   the agent responded, "There's no way we can remove the fee, it's from the state." When Mr.

26   _____

27   [2] http://forums.xfinity.com/t5/Billing/Broadcast-TV-Fee/td-p/2671674

28   [3] http://forums.xfinity.com/t5/Billing/broadcast-tv-fee/td-p/2457405

Bailey asked the agent to give him a $5.00 monthly credit instead, the agent refused, stating, "Well, we can't credit you $5.00 a month for a fee that is a state tax."[4]

209.    For example, when Dian Wordinger of Mishawaka, Indiana emailed the Comcast agent who had signed her up for service to complain about the undisclosed Bogus Fees, the agent replied that the Broadcast TV Fee "is all a part of taxes."

210.    The experiences of Plaintiffs Loomis and Robertson, and the experiences of these other Comcast customers, are typical and representative of Comcast's general practices. Through the discovery process in this case, Plaintiffs will obtain further evidence showing that Comcast has a policy of encouraging and/or condoning its customer service agents to lie to customers who complain about the Bogus Fees by telling them the Bogus Fees are taxes or government fees.

### D.    Comcast's Form Contracts Do Not Adequately Disclose the Broadcast TV Fee or the Regional Sports Fee.

211.    Comcast's form Subscriber Agreement does not mention the Broadcast TV Fee or Regional Sports Fee anywhere in its 23 pages of small type.

212.    Section 2(a) of the Subscriber Agreement, which concerns the "Charges, Fees, and Taxes You Must Pay," is larded from top to bottom with references to government-imposed taxes, fees, and programs, and implies that all additional monthly non-equipment fees are government-related:

> **Charges, Fees, and Taxes You Must Pay.** You agree to pay all charges associated with the Service(s), including, but not limited to, installation/service call charges, monthly service charges, XFINITY Equipment (as defined below) charges, measured and per call charges, applicable federal, state, and local taxes and fees (however designated), regulatory recovery fees for municipal, state and federal government fees or assessments imposed on Comcast, permitted fees and cost recovery charges, or any programs in which Comcast participates, including, but not limited to, public, educational, and governmental access, universal service, telecom relay services for the visually/hearing impaired, rights-of-way access, and programs supporting the 911/E911 system and any fees or payment obligations imposed by governmental or quasi-governmental bodies for the sale, installation, use, or provision of the Service(s). YOU WILL BE RESPONSIBLE FOR PAYING ANY GOVERNMENT IMPOSED FEES AND TAXES THAT BECOME APPLICABLE RETROACTIVELY. We will provide you with notice and an effective date of any change in our prices or fees, unless the change in price

---

[4] Plaintiffs are in possession of the official Comcast audio recording of this call.

> is related to a change in governmental or quasi-governmental taxes, fees, or assessments, in which case we may elect not to provide notice except where required by applicable law. Not all fees apply to all Service(s).

Section 2(a).

213. Comcast's separate Minimum Term Agreement document also does not adequately disclose the Bogus Fees. Meanwhile, in many cases – such as in the cases of *all four Plaintiffs* – Comcast does not get customer consent to its terms and does not mail, email, or otherwise transmit or present the Minimum Term Agreement to the customer.

214. In bold, boxed text at the top of the Minimum Term Agreement, Comcast prominently displays the guaranteed monthly price for the contract term, *with no asterisk or qualifier*.

215. Comcast only mentions the Broadcast TV Fee and the Regional Sports Fee in a single disclaimer sentence in the Minimum Term Agreement which states that they are part of "taxes and fees." For example:

> Equipment, installation, **taxes and fees, including** Broadcast TV Fee (currently up to $5.00/mo.), Regional Sports Fee (currently up to $3.00/mo.) and if XFINITY Digital Voice is included, regulatory recovery fees and other applicable charges (e.g. per-call or international charges) are extra, such charges and fees are subject to change during and after the term of this Agreement.

(emphasis added).

216. A reasonable consumer would interpret the phrase "taxes and fees" to mean non-discretionary government charges, as opposed to discretionary, double-charges for channels Comcast has already promised are included in the advertised package price.

**E.** **Comcast Falsely Advertises Guaranteed, Locked-In Prices for Its Term Contracts, When Comcast In Fact Repeatedly Raises Its Prices Mid-Contract Via Increases in the Broadcast TV Fee and the Regional Sports Fee.**

217. Comcast has induced millions of consumers to enter into 1-year or 2-year service contracts by promising them a "locked-in" and "guaranteed" low promotional rate which will not increase during the term of the contract. Comcast traps these customers by imposing a significant "termination fee" if they end their services early in mid-contract. For example, the Minimum

Term Agreement for Plaintiff Loomis specifies a $230.00 termination fee, which is slowly reduced over time.[5]

218.    Yet contrary to Comcast's representations and advertising, and in breach of these promises, Comcast has a policy of increasing the Broadcast TV Fee and the Regional Sports Fee in the middle of "guaranteed" fixed-rate customer contracts as a backdoor way to repeatedly raise its prices on these trapped customers.

219.    For example, in month 13 of Plaintiff Tillage's 24-month purported fixed-rate contract, Comcast increased the charges for the Broadcast TV Fee from $5.00 to $7.00 and for the Regional Sports Fee from $3.00 to $5.00.

220.    For example, in month 12 of Plaintiff Loomis' 24-month purported fixed-price contract, Comcast increased the charges for the Broadcast TV Fee from $5.00 to $7.00 and for the Regional Sports Fee from $3.00 to $5.00.

221.    For example, in month 9 of Plaintiff Adkins' 24-month purported fixed-price contract, Comcast increased the charges for the Broadcast TV Fee from $5.00 to $7.00 and for the Regional Sports Fee from $3.00 to $5.00.

222.    For example, in month 8 of Plaintiff Robertson's 12-month purported fixed-rate contract, Comcast increased the charge for the Broadcast TV Fee from $3.25 to $5.00.

223.    Comcast's stated justification for increasing the Bogus Fees mid-contract is pure double-talk: Comcast insists that its "guaranteed" fixed promotional price for the service package has remained the same, and that only "applicable fees" "that are not included in your agreement" have increased.

224.    For example, when Plaintiff Loomis asked Comcast agents how Comcast could increase the monthly price for his services mid-contract despite having promised him a guaranteed flat lower rate, the agents told him: (1) the only thing Comcast guarantees in a 24-month contract is that the "package price" will remain the same, and (2) this package price does

---

[5] Plaintiff Loomis does not concede that he agreed to or is bound by the Minimum Term Agreement.

not include the Broadcast TV Fee and the Regional Sports Fee which may be increased from time

to time mid-contract.

225.    For example, Comcast posted on its website the following response to a customer

regarding forthcoming mid-contract increases of the Broadcast TV Fee and the Regional Sports

Fee:

> You[r] 24 month agreement will not increase, so *your package price will remain the same*. However, you will notice an increase on your statement for *the services/fees that are not included in your agreement*. After reviewing your account, it shows that the following factors of your monthly subscription will be effected: Broadcast TV Fee will increase to $5.00. Regional Sports Network Fee will increase to $3.00.

See post dated December 16, 2015, on the Comcast online Help & Support Forum, available at:

http://forums.xfinity.com/t5/Customer-Service/Question-regarding-new-rates-effective-in-

January/td-p/2658968 (emphasis added).

226.    Comcast falsely advertises "guaranteed" lower fixed-rate pricing to induce

customers to enter into long-term contracts, when in fact Comcast never honors these

representations made to its customers.

### F.    Comcast's Bait-and-Switch Scheme Is Central to Its Marketing Plan and Accounts for an Increasingly Large Part of Comcast's Total Revenues and Profits.

227.    Comcast perpetrates this massive bait-and-switch scheme, which affects all of its

over two million California television service subscribers, in order to increase demand for its

services and to increase its profits. Comcast hooks and traps customers into 1-year or 2-year

contracts, with the intent or effect of charging them more than promised and then, to add insult to

injury, Comcast soon further raises the price *even higher* in the middle of the promised fixed-rate

term via increases in the Broadcast TV Fee and the Regional Sports Fee.

228.    Comcast has increased these Bogus Fees by 800% since they were first introduced

in 2014. Comcast regularly and methodically increases the Broadcast TV Fee and the Regional

Sports Fee on *all of its customers* at least once a year, regardless of whether the customer is in the

middle of a promised fixed-rate term contract. The Broadcast TV Fee and the Regional Sports

Fee now add as much as $12.00 per month to California customer bills, often accounting for more than 10% of the subscriber's total bill.

229.   Comcast will continue its false advertising and fraudulent representations to prospective and current customers regarding the Bogus Fees until it is forced by law to stop. The scheme is far too profitable. Plaintiffs estimate that Comcast earns approximately $2 billion per year from these sham double-charges – over $200 million annually from its California customers alone.

## VI.   CLASS ACTION ALLEGATIONS

230.   Plaintiffs bring this injunctive relief class-action lawsuit on behalf of themselves and the members of the following class (the "Class"):

> **All persons who received cable television services in California from Comcast and whom Comcast charged a "Broadcast TV Fee" and/or a "Regional Sports Fee" within the applicable statute of limitations.**

231.   Specifically excluded from the Class are Comcast and any entities in which Comcast has a controlling interest, Comcast's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

232.   ***Numerosity.*** Plaintiff does not know the exact number of Class members but believes that the Class comprises approximately two million California consumers. As such, Class members are so numerous that joinder of all members is impracticable.

233.   ***Commonality and predominance.*** Well-defined, nearly identical legal or factual questions affect the members of the Class. These questions predominate over questions that might affect individual Class members. These common questions include, but are not limited to, the following:

a.   Whether Comcast's advertising of its cable television packages at a fixed monthly price was part of a California-wide and nationwide advertising campaign;

b.   Whether an ordinary consumer who heard, saw, read or otherwise perceived any aspect of Comcast's advertising campaign (including disclosures contained in advertising and in contracts) was likely to be deceived as to a material term of the advertising,

1   such as the price the consumer would pay each month for the cable television services being

2   offered or how long the price would remain the same;

3         c.     Whether Comcast's charging of the Broadcast TV Fee or the Regional

4   Sports Fee increased the total monthly cost of Comcast's cable television services to a total higher

5   than an ordinary consumer would reasonably expect after hearing, seeing, reading, or otherwise

6   perceiving any aspect of Comcast's advertising campaigns (including disclosures contained in

7   advertising and in contracts);

8         d.     Whether the Broadcast TV Fee or the Regional Sports Fee is imposed by a

9   government;

10         e.     Whether the Broadcast TV Fee or the Regional Sports Fee is a pass-

11   through of a government or regulatory charge;

12         f.     What percentage, if any, of the Broadcast TV Fee or the Regional Sports

13   Fee does Comcast turn over to a government or use to defray regulatory costs;

14         g.     Whether Comcast has represented to potential or current subscribers (in

15   advertising, direct communications, or in customer bills or otherwise) that the Broadcast TV Fee

16   or the Regional Sports Fee is imposed by a government;

17         h.     Whether Comcast has represented to potential or current subscribers (in

18   advertising, direct communications, or in customer bills or otherwise) that the Broadcast TV Fee

19   or the Regional Sports Fee is a pass-through of a government or regulatory charge;

20         i.     Whether Plaintiffs and the Class have suffered injury in fact and have lost

21   money or property as a result of such unfair competition and other actions; and/or

22         j.     Whether Comcast should be enjoined from further engaging in the

23   misconduct alleged herein.

24        234.    ***Typicality.*** Plaintiffs' claims are typical of Class members' claims. Plaintiffs and

25   Class members all sustained injury as a direct result of Comcast's standard practices and schemes.

26        235.    ***Adequacy.*** Plaintiffs will fairly and adequately protect Class members' interests.

27   Plaintiffs have no interests antagonistic to Class members' interests. Plaintiffs have retained

28   counsel who has considerable experience and success in prosecuting complex class action and

consumer protection cases.

236.   ***Superiority.*** A class action is the superior method for fairly and efficiently adjudicating this controversy for the following reasons, without limitation:

a.   Class members' interests are relatively small compared to the burden and expense required to litigate each of their claims individually, so it would be impracticable for Class members to seek individual redress for Comcast's illegal and deceptive conduct;

b.   Even if Class members could afford individual litigation, the court system could not. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court; and

c.   Plaintiffs anticipate no unusual difficulties in managing this class action.

## CAUSES OF ACTION

### COUNT I
**Violation of California's Unfair Competition Law**
**(California Business and Professions Code § 17200 *et seq.*)**

237.   Plaintiffs reallege and incorporate by reference Paragraphs 1 through 236, inclusive, as though alleged in this Count.

238.   Comcast's practices, misrepresentations, and omissions alleged herein constitute unlawful, unfair, or fraudulent business practices in violation of California Business and Professions Code § 17200 *et seq.*

239.   The misrepresentations and omissions by Comcast alleged herein were the type of misrepresentations and omissions that are regularly considered to be material, i.e., a reasonable person would attach importance to them and would be induced to act on the information in making purchase decisions.

240.   Plaintiffs reasonably relied upon Comcast's material misrepresentations and omissions in purchasing their television service packages.

241.    As a result of the foregoing, Plaintiffs and other California consumers: (1) have been injured and have lost money or property; (2) continue to be harmed on an ongoing basis; and (3) are entitled to injunctive relief.

242.    Comcast should be ordered to disgorge or make restitution of all monies improperly accepted, received or retained, including, without limitation, all revenues or monies obtained from or due to the Bogus Fees.

243.    The balance of the equities favors the entry of permanent injunctive relief against Comcast. Plaintiffs and the Class will be irreparably harmed absent the entry of permanent injunctive relief against Comcast. Plaintiffs and the Class lack an adequate remedy at law. A permanent injunction against Comcast is in the public interest. Comcast's unlawful behavior is likely to reoccur absent the entry of a permanent injunction.

244.    Plaintiffs seek permanent injunctive relief in the form of a Judgment and Permanent Injunction containing the prohibitions and mandates pled hereinbelow, including in the Prayer, or as the Court otherwise deems just and proper.

245.    Unless restrained by this Court, Comcast will continue to engage in unfair, deceptive, and unlawful conduct, as alleged above, in violation of California Business and Professions Code § 17200 *et. seq.*, harming Plaintiffs and other California consumers.

<u>COUNT II</u>
**Violation of California's False Advertising Law**
**(California Business and Professions Code § 17500 *et seq.*)**

246.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 236, inclusive, as though alleged in this Count.

247.    Comcast has committed acts of untrue and misleading advertising, as defined by California Business and Professions Code § 17500 ("False Advertising Law" or "FAL"), by engaging in the acts and practices described herein with the intent and/or the effect of inducing consumers to purchase its cable television service packages.

248.    Comcast falsely advertised to Plaintiffs and California consumers that it would charge them a fixed monthly rate for television service packages, when in fact Comcast intended

1    to charge them and/or did charge them a much higher rate via an inadequately disclosed and

2    deceptive Broadcast TV Fee and Regional Sports Fee. By this means (and as elsewhere pled

3    herein), Comcast has engaged in false advertising by disseminating or causing to be made or

4    disseminated any such statement as part of a plan or scheme with the intent not to sell those

5    services, professional or otherwise, so advertised at the price stated therein, or as so advertised.

6         249.    Comcast falsely advertised to Plaintiffs and California consumers that the charges

7    for the broadcast television and local sports channels were included in the advertised price, when

8    in fact Comcast intended to double-charge them and/or did double-charge them for the broadcast

9    television and local sports channels in the form of the Bogus Fees.

10        Comcast falsely advertised to Plaintiffs and California consumers that the long-term

11             contracts it advertised were at a fixed and/or guaranteed monthly rate, when in fact

12             Comcast increased the monthly rate mid-contract via increases in the Bogus Fees.

13        250.    Comcast deceived Plaintiffs and California consumers by omitting, hiding and/or

14   disguising said Bogus Fees in its statements to Plaintiffs and consumers and in its advertising and

15   customer agreements, and by falsely implying and/or stating that the Bogus Fees were non-

16   discretionary government charges or taxes.

17        251.    Comcast's misrepresentations and omissions deceive or have a tendency to

18   deceive the general public.

19        252.    The misrepresentations and omissions by Comcast alleged herein were the type of

20   representations and omissions that are regularly considered to be material, i.e., a reasonable

21   person would attach importance to them and would be induced to act on the information in

22   making purchase decisions.

23        253.    Plaintiffs reasonably relied on Comcast's false advertising in purchasing their

24   cable service packages.

25        254.    As a result of the foregoing, Plaintiffs and other California consumers: (1) have

26   been injured and have lost money or property; (2) continue to be harmed on an ongoing basis and

27   are in danger of being harmed in the future; and (3) are entitled to injunctive relief.

28

FIRST AMENDED COMPLAINT

255.     Comcast should be ordered to disgorge or make restitution of all monies improperly accepted, received or retained, including, without limitation, all revenues or monies obtained from or due to the Bogus Fees.

256.     The balance of the equities favors the entry of permanent injunctive relief against Comcast. Plaintiffs and the Class will be irreparably harmed absent the entry of permanent injunctive relief against Comcast. Plaintiffs and the Class lack an adequate remedy at law. A permanent injunction against Comcast is in the public interest. Comcast's unlawful behavior is likely to reoccur absent the entry of a permanent injunction.

257.     Plaintiffs seek permanent injunctive relief in the form of a Judgment and Permanent Injunction containing the prohibitions and mandates pled hereinbelow, including in the Prayer, or as the Court otherwise deems just and proper.

258.     Unless restrained by this Court, Comcast will continue to engage in untrue and misleading advertising, as alleged above, in violation of California Business and Professions Code § 17500 *et seq.*, harming Plaintiffs and other California consumers.

### COUNT III
### Violation of the Consumers Legal Remedies Act
### (California Civil Code § 1750 *et seq.*)

259.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 236, inclusive, as though alleged in this Count.

260.     Comcast and each Doe defendant is a "person," as defined by California Civil Code § 1761(c).

261.     Plaintiffs are "consumers," as defined by California Civil Code § 1761(d).

262.     The television service packages marketed and sold by Comcast constitute "goods" and "services" as defined by California Civil Code § 1761(a) and (b).

263.     Plaintiffs' purchases of Comcast's television service packages each constitute a "transaction" as defined by Civil Code § 1761(e) and "a transaction intended to result or that results in the sale or lease of goods or services to any consumer," as per Civil Code § 1770(a).

1    264.    Venue is proper in San Francisco Superior Court under California Civil Code §

2    1780(d) because, without limitation: (1) Comcast engages in and performs business activities in

3    the City and County of San Francisco; and (2) Plaintiff Charles Tillage entered into an agreement

4    to purchase Comcast's cable television services while in the City and County of San Francisco,

5    and he received Comcast cable television services while in the City and County of San Francisco.

6    265.    Plaintiffs' declarations establishing that this Court has proper venue for this action

7    are attached hereto as **Exhibit S**.

8    266.    Comcast misled Plaintiffs and California consumers to believe it would charge

9    them an advertised and promised fixed monthly rate for television programming, but in fact

10   Comcast charged a much higher rate via the inadequately disclosed and deceptive Broadcast TV

11   Fee and Regional Sports Fee charges.

12   267.    Comcast misled Plaintiffs and California consumers by promising them that the

13   charges for the broadcast television and local sports channels were included in the advertised and

14   stated price, when Comcast in fact intended to double-charge them and did double-charge them

15   for the broadcast television and local sports channels in the form of the Bogus Fees.

16   268.    Comcast misled Plaintiffs and California consumers by inducing them into signing

17   long-term contracts by promising a lower fixed monthly rate, while in fact intending to increase

18   and in fact increasing their monthly rate mid-contract via increases in the Bogus Fees.

19   269.    Comcast deceived Plaintiffs and California consumers by omitting, hiding and/or

20   disguising said Bogus Fees in its statements to Plaintiffs and consumers and in its advertising and

21   customer agreements, and by falsely implying or stating that the Bogus Fees were non-

22   discretionary government charges or taxes.

23   270.    Comcast's misrepresentations, active concealment, and failures to disclose

24   violated the CLRA in ways including, but not limited to, the following:

25       a.    Comcast represented that its television service packages had

26   characteristics, benefits, or uses that they did not have (Cal. Civ. Code § 1770(a)(5));

27       b.    Comcast advertised its television service packages with an intent not to sell

28   them as advertised (Cal. Civ. Code § 1770(a)(9));

1          c.      Comcast made false or misleading statements of fact concerning reasons

2  for, existence of, or amounts of price reductions (Cal. Civ. Code § 1770(a)(13));

3          d.      Comcast misrepresented that its television service packages conferred

4  rights, remedies or obligations that they did not have (Cal. Civ. Code § 1770(a)(14));

5          e.      Comcast represented that its television service packages were supplied in

6  accordance with previous representations when they were not (Cal. Civ. Code § 1770(a)(16)); and

7          f.      Comcast inserted unconscionable provisions in its customer contracts (Cal.

8  Civ. Code § 1770(a)(19)).

9      271.    Comcast's misrepresentations and nondisclosures regarding its television service

10  packages were material to Plaintiffs because Plaintiffs considered, and a reasonable person would

11  have considered, them important in deciding whether to purchase Comcast's television service

12  packages, and because Comcast had a duty to disclose the truth.

13      272.    Plaintiffs reasonably relied upon Comcast's material misrepresentations and

14  nondisclosures, and had they known the truth, they would have acted differently.

15      273.    As a direct and proximate result of Comcast's material misrepresentations and

16  nondisclosures, Plaintiffs have suffered monetary damages and been irreparably harmed.

17      274.    In accordance with California Civil Code §1782(a), on December 24, 2015,

18  Plaintiff Christopher Robertson (through counsel) served Comcast with notice of its CLRA

19  violations by certified mail, return receipt requested. See **Exhibit P**. Comcast Senior Vice

20  President Thomas R. Nathan responded to the CLRA notice demand letter in a letter dated

21  February 25, 2016 in which Comcast denied liability and refused to provide any of the requested

22  relief whatsoever. See **Exhibit T**.

23      275.    On October 8, 2016, Plaintiff Dan Adkins (through counsel) emailed to Comcast

24  paralegal Claudia Salcedo a CLRA notice demand letter addressed to Mr. Nathan. See **Exhibit N**.

25  Ms. Salcedo acknowledged receipt of the notice in a reply email on October 10, 2016. See

26  **Exhibit U**. Comcast did not respond to the notice letter except to acknowledge its receipt.

27      276.    On April 17, 2017, Plaintiff Joseph Loomis (through counsel) mailed a CLRA

28  notice demand letter to Comcast Corporation and to Comcast Cable Communications, LLC. See

**Exhibit B**. On April 21, 2017, a Comcast agent named "Keethora" called Mr. Loomis and told him she was from the "Comcast Executive Office" and that she was calling in response to the demand letter. Keethora falsely told Mr. Loomis that the Broadcast TV Fee and the Regional Sports Fee were required by the federal government and were regulated by the FCC. Keethora told Mr. Loomis that Comcast's hands were tied and that Comcast could do nothing about the Bogus Fees. Mr. Loomis did not receive a further response from Keethora or from any other Comcast representative or department.

277.    On August 17, 2017, Plaintiff Charles Tillage (through counsel) mailed a CLRA notice demand letter to Comcast Corporation and to Comcast Cable Communications, LLC. See **Exhibit A.** On September 14, 2017, a Comcast agent from "Comcast's Executive Office" responded to the demand letter in an email to Mr. Tillage's counsel. In the email response, Comcast ignored all of Mr. Tillage's demands and falsely asserted that Mr. Tillage had agreed to pay the Broadcast TV Fee and the Regional Sports Fee.

278.    Comcast has failed to provide appropriate relief for its CLRA violations within 30 days of its receipt of each of Plaintiffs' demand notices.

279.    Comcast should be ordered to pay actual damages to Plaintiffs and to the Class in an amount at least equal to all monies improperly accepted, received or retained, including, without limitation, all revenues or monies obtained from or due to the Bogus Fees.

280.    Comcast engaged in malice, fraud and/or oppression when Comcast decided to engage and did engage in the acts pled herein, and Comcast continues to act with malice, fraud or oppression in so doing.

281.    Comcast should, either in the alternative or cumulatively or otherwise, be ordered to disgorge or make restitution of all monies improperly accepted, received or retained, including, without limitation, all revenues or monies obtained from or due to the Bogus Fees.

282.    The balance of the equities favors the entry of permanent injunctive relief against Comcast. Plaintiffs and the Class will be irreparably harmed absent the entry of permanent injunctive relief against Comcast. Plaintiffs and the Class lack an adequate remedy at law. A

permanent injunction against Comcast is in the public interest. Comcast's unlawful behavior is likely to reoccur absent the entry of a permanent injunction.

283.     Plaintiffs seek permanent injunctive relief in the form of a Judgment and Permanent Injunction containing the prohibitions and mandates pled hereinbelow, including in the Prayer, or as the Court otherwise deems just and proper.

**COUNT IV**
**Permanent Public Injunctive Relief**
**(C.C.P. § 3422 and All Inherent or Other Authority)**

284.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 236, inclusive, as though alleged in this Count.

285.     If not enjoined by order of this Court, Comcast will continue to injure Plaintiffs and California consumers through the misconduct alleged herein.

286.     Plaintiffs seek permanent public injunctive relief in the form of a Judgment and Permanent Injunction containing the prohibitions and mandates pled hereinbelow, including in the Prayer, or as the Court otherwise deems just and proper.

287.     The balance of the equities favors the entry of permanent public injunctive relief against Comcast. Plaintiffs and the Class will be irreparably harmed absent the entry of permanent public injunctive relief against Comcast. Plaintiffs and the Class lack an adequate remedy at law. A permanent injunction against Comcast is in the public interest. Comcast's unlawful behavior is likely to reoccur absent the entry of a permanent injunction.

**COUNT V**
**Breach of Contract**

288.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 236, inclusive, as though alleged in this Count.

289.     All of the plaintiffs and all of the members of the Class have entered into contracts with Comcast.

290.     All of the contracts between Comcast, on the one hand, and Plaintiffs and the members of the Class, on the other hand, contained the following material term: Comcast would

1    provide the ordered cable television service package, and, in exchange, the customer would pay a

2    price certain.

3        291.    Each plaintiff and each member of the Class has performed, for the relevant time

4    frame, all of each's material obligations under the contract or have been excused from any non-

5    performance.

6        292.    Comcast has breached the contract by charging all of the plaintiffs and all of the

7    members of the Class a price for the television service package which is greater than the price

8    certain. As to all of the plaintiffs and all of the members of the Class, Comcast charged a price

9    greater than the agreed-upon price certain by charging the Broadcast TV Fee and/or by increasing

10   the Broadcast TV Fee in the middle of the purportedly fixed-rate contract. As to some of the

11   plaintiffs (Tillage, Loomis and Adkins) and some of the members of the Class, Comcast charged

12   a price greater than the agreed-upon price certain by charging the Regional Sports Fee and/or by

13   increasing the Regional Sports Fee in the middle of a purportedly fixed-rate contract.

14       293.    Plaintiffs and the members of the Class have been damaged by Comcast's breach.

15   For example, Plaintiffs and the members of the Class have been damaged in an amount which is

16   equal to the total amount paid to Comcast by each plaintiff and by each member of the Class

17   above the agreed-upon price certain, i.e., in the amount of the Broadcast TV Fee and the Regional

18   Sports Fee.

19                                **PRAYER FOR RELIEF**

20       Plaintiffs request that the Court order relief and enter judgment against Defendant

21   Comcast Corporation and Defendant Comcast Cable Communications, LLC (collectively,

22   "Comcast"), jointly and severally or as otherwise appropriate, as follows:

23       1.      That the Court enter an order certifying the proposed Class and appointing

24   Plaintiffs and their counsel to represent the Class;

25       2.      For damages, including actual damages;

26       3.      For disgorgement or restitution, including, without limitation, restitutionary

27   disgorgement of all profits and unjust enrichment that Comcast obtained as a result of its

28   misconduct alleged herein;

1        4.       For punitive and exemplary damages;

2        5.       For pre-judgment and post-judgment interest;

3        6.       That Comcast and all of their parent corporations, subsidiaries, affiliates,

4    successors, assigns and the like, are each immediately, permanently and finally enjoined and

5    restrained from doing any of the following:

6               (a)      Failing to include the total dollar amount of the combined Broadcast TV

7    Fee and Regional Sports Fee in all prices in all advertisements (as broadly defined for purposes of

8    the Judgment) which contain a price for services on which the Broadcast TV Fee or the Regional

9    Sports Fee is levied (e.g., a $79.00/month service package on which Comcast levies an additional

10   $12.00 in the form of the combined Broadcast TV Fee and Regional Sports Fee must be

11   advertised in all advertisements as costing the consumer $91.00/month, with no other dollar

12   amount to appear or be used in the advertisement as the cost to the consumer of said services);

13              (b)      Failing to clearly and conspicuously disclose to the consumer, before the

14   consumer enters into a contract with Comcast and at all times thereafter when Comcast mentions

15   the Broadcast TV Fee and/or the Regional Sports Fee, that the Broadcast TV Fee and the

16   Regional Sports Fee are created and imposed by Comcast and are not government taxes or

17   government fees;

18              (c)      Listing, for purposes of advertising or billing or for any other purpose, the

19   Broadcast TV Fee or the Regional Sports Fee in or under a section, clause, or phrase labeled or

20   described as "taxes," "taxes and fees," or the like;

21              (d)      Failing to list the Broadcast TV Fee or the Regional Sports Fee in a

22   separate section labeled "Discretionary Comcast Charges" in any order summary, any order

23   confirmation, or any customer bill;

24              (e)      Increasing the Broadcast TV Fee or the Regional Sports Fee during a time

25   certain if Comcast advertised or promised a price certain for services during that time certain;

26   and/or

27              (f)      Whatever other permanent injunctive relief the Court deems just and

28   proper.

FIRST AMENDED COMPLAINT

7.      That Comcast and all of their parent corporations, subsidiaries, affiliates, successors, assigns and the like, are each immediately, permanently and finally enjoined and restrained from charging the Broadcast TV Fee and/or the Regional Sports Fee or any like or equivalent fee however named or denominated to customers who were affected by the misconduct alleged herein;

8.      That Comcast pay Plaintiffs' and the Class's attorneys' fees to the extent allowed by law;

9.      That Comcast pay Plaintiffs' and the Class's costs to the extent allowed by law;

10.      That the Court retain jurisdiction to police Comcast's compliance with the permanent injunctive relief, and/or

11.      Such other relief as the Court deems just and proper including, without limitation, temporary or preliminary injunctive relief.

### JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated:  October 25, 2017                    Respectfully submitted,

_____
Daniel M. Hattis

Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
HATTIS LAW PLLC
P.O. Box 1645
Bellevue, WA 98009
Telephone: (650) 980-1990
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

Tony J. Tanke (SBN 74054)
LAW OFFICES OF TONY J. TANKE
2050 Lyndell Terrace, Suite 240
Davis, CA 95616
Telephone: (530) 758-4530
Email: appeals@tankelaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jason Skaggs (SBN 202190)
SKAGGS FAUCETTE LLP
530 Lytton Ave 2nd FL
Palo Alto, CA 94301
Telephone: (650) 617-3226
Email: jason@skaggsfaucette.com

Attorneys for Plaintiffs and the Proposed Class

# EXHIBIT A



**HATTIS LAW PLLC**
P.O. Box 1645
Bellevue, WA 98009
Phone: 650.980.1990
www.hattislaw.com

August 17, 2017

## VIA U.S. MAIL RETURN RECEIPT REQUESTED

Brian L. Roberts, CEO
Comcast Corporation
1701 John F Kennedy Blvd
Philadelphia, PA 19103-2838

Agent for Service of Process for Comcast Corp.
CT Corporation System
818 West Seventh Street, Suite 930
Los Angeles, CA 90017

David N. Watson, CEO
Comcast Cable Communications, LLC
1701 John F Kennedy Blvd
Philadelphia, PA 19103-2838

Agent for Service of Process for Comcast Cable
CT Corporation System
818 West Seventh Street, Suite 930
Los Angeles, CA 90017

Re:    My Client:  Charles Tillage, Comcast Account No. ███████
        Notice of Violation of California Consumers Legal Remedies Act and Demand

Dear Mr. Roberts and Mr. Watson,

      I represent Charles Tillage, who subscribed to Comcast service and who is being wrongfully charged a monthly Broadcast TV Fee and Regional Sports Fee, and who is also being wrongfully charged a higher package price in year two of his contract.

      In June 2016 Mr. Tillage signed up for a Comcast bundled plan when he moved to a new apartment. The Comcast sales representative told Mr. Tillage that the total monthly bill would be $129.99 per month. Mr. Tillage was not informed that Comcast would additionally charge him each month for the Broadcast TV Fee and the Regional Sports Fee (the "Fees").

      In May 2017, Mr. Tillage was surprised and upset to learn that he would also be charged an additional $30 per month starting in month 13 of his contract above the fixed rate that Comcast had promised him. Comcast had not previously disclosed this price increase to Mr. Tillage, and Mr. Tillage had never agreed to this increased charge above the promised fixed rate of his contract.

      In July 2017, Comcast further increased the Broadcast TV Fee and the Regional Sports Fee monthly charges to Mr. Tillage. Meanwhile, Mr. Tillage had never agreed to pay those Fees in the first place, let alone agreed to further increases in these Fees in the middle of his promised fixed-price contract.

      Comcast's practice of advertising and promising one price for its services, while in fact charging a different higher price, is unlawful and breaches Comcast's agreements with its customers.

August 17, 2017
Page 2

Comcast's material misrepresentations, active concealment, and failures to disclose violate the California Legal Remedies Act, California Civil Code Section 1750 *et seq*., in the following manner: (1) Comcast misrepresents that its subscription services have characteristics, benefits, or uses that they do not have (Cal. Civ. Code § 1770(a)(5)); (2) Comcast advertises its subscription services with intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9)); (3) Comcast misrepresents that its subscription services confer or involve rights, remedies, or obligations that they do not have (Cal. Civ. Code § 1770(a)(14)); (4) Comcast misrepresents that its subscription services are supplied in accordance with previous representations when they are not (Cal. Civ. Code § 1770(a)(16)). Additionally, Comcast inserted unconscionable provisions in its customer contracts (Cal. Civ. Code § 1770(a)(19)).

We demand that within thirty (30) days of receiving this letter, Comcast agree to (1) refrain from engaging in the illegal and deceptive practices described above; (2) return all money California Comcast customers paid for the Broadcast TV Fee and the Regional Sports Fee; and (3) return all money California Comcast customers paid in the form of inadequately disclosed increases in the package price in year two of their two year contracts. If Comcast refuses to provide the demanded relief within thirty (30) days, we may seek compensatory and punitive damages and restitution pursuant to the California Consumers Legal Remedies Act.

I can be reached at (650) 980-1990 or dan@hattislaw.com.

Yours truly,

Daniel M. Hattis

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

David N Watson CEO
Comcast Cable Communications
1701 John F Kennedy Blvd
Philadelphia PA 19103-2858

9590 9402 2898 7094 1626 75

2. Article Number (Transfer from service label)

7017 0660 0000 6330 3365

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X COMCAST CORPORATION
ONE COMCAST CENTER
PHILADELPHIA, PA 19103-2838

☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ ... Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053     Domestic Return Receipt

# USPS Tracking® Results

FAQs ❯ (http://faq.usps.com/?articleId=220900)

**Track Another Package  +**

Remove ✕

**Tracking Number:** 70170660000063303365

▶            ▶            ▶    Delivered

## Product & Tracking Information

See Available Actions

**Postal Product:**
First-Class Mail®

**Features:**
Certified Mail™
Return Receipt

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| **August 29, 2017, 5:40 am** | **Delivered** | **PHILADELPHIA, PA 19104** |
| | ▲ | |
| Your item was delivered at 5:40 am on August 29, 2017 in PHILADELPHIA, PA 19104. | | |
| August 28, 2017, 12:25 pm | Out for Delivery | PHILADELPHIA, PA 19103 |
| August 28, 2017, 12:15 pm | Sorting Complete | PHILADELPHIA, PA 19103 |
| August 28, 2017, 4:45 am | Arrived at Unit | PHILADELPHIA, PA 19103 |
| August 23, 2017, 9:38 am | In Transit to Destination | ON ITS WAY TO PHILADELPHIA, PA 19103 |
| August 22, 2017, 9:38 am | In Transit to Destination | ON ITS WAY TO PHILADELPHIA, PA 19103 |
| August 21, 2017, 9:38 am | In Transit to Destination | ON ITS WAY TO PHILADELPHIA, PA 19103 |
| August 20, 2017, 4:38 am | Departed USPS Regional Destination Facility | PHILADELPHIA PA DISTRIBUTION CENTER |
| August 19, 2017, 2:11 pm | Arrived at USPS Regional Destination Facility | PHILADELPHIA PA DISTRIBUTION CENTER |
| August 19, 2017, 9:16 am | In Transit to Destination | ON ITS WAY TO PHILADELPHIA, PA 19103 |
| August 18, 2017, 9:16 am | In Transit to Destination | ON ITS WAY TO PHILADELPHIA, PA 19103 |
| August 17, 2017, 9:16 pm | Departed USPS Regional Origin Facility | SAN FRANCISCO CA DISTRIBUTION CENTER |
| August 17, 2017, 9:05 pm | Arrived at USPS Regional Origin Facility | SAN FRANCISCO CA DISTRIBUTION CENTER |

# EXHIBIT B



**HATTIS LAW PLLC**
P.O. Box 1645
Bellevue, WA 98009
Phone: 650.980.1990
www.hattislaw.com

April 17, 2017

## VIA U.S. MAIL RETURN RECEIPT REQUESTED

Brian L. Roberts, CEO                    Agent for Service of Process for Comcast Corp.
Comcast Corporation                      CT Corporation System
1701 John F Kennedy Blvd                 818 West Seventh Street, Suite 930
Philadelphia, PA 19103-2838              Los Angeles, CA 90017

David N. Watson, CEO                      Agent for Service of Process for Comcast Cable
Comcast Cable Communications, LLC         CT Corporation System
1701 John F Kennedy Blvd                 818 West Seventh Street, Suite 930
Philadelphia, PA 19103-2838              Los Angeles, CA 90017

Re:     My Client:  Joseph Loomis, Comcast Account No. ███████████
        Notice of Violation of California Consumer Legal Remedies Act and Demand

Dear Mr. Roberts and Mr. Watson,

I represent Joseph Loomis, who signed up for Comcast cable television and Internet service and who is being wrongfully charged a monthly Broadcast TV Fee and Regional Sports Fee (the "Fees"). I send this letter to notify Comcast Corporation and Comcast Cable Communications, LLC (collectively, "Comcast") and all of its subsidiaries and affiliates of its wrongful conduct and to demand that Comcast rectify its unlawful actions within 30 days of receipt of this letter.

Comcast is perpetrating a massive bait-and-switch scheme on its over two million California cable television subscribers, whereby Comcast falsely advertises its cable television service packages for much lower prices than it actually charges.

Comcast's advertising, and its sales staff, mislead consumers into falsely believing that the advertised price for its service packages is the actual price consumers will pay except for equipment charges and bona fide taxes and government fees. However, Comcast intentionally and deceptively chooses to exclude the Fees from the advertised price of its service packages. Comcast never qualifies the lower price with an asterisk or other adjacent marker, and any disclosures which Comcast makes about the Fees are not only inadequate, but are themselves deceptive. Comcast designed its disclaimers regarding the Fees to mislead consumers into falsely believing the Fees are taxes or government charges over which Comcast has no control, rather than disclosing the truth that the Fees are discretionary disguised double-charges for the channels that Comcast has promised are already included in the lower advertised package price (e.g., ABC, CBS, NBC, FOX, and local sports channels).

April 17, 2017
Page 2

Comcast doubles down on this deception through its practice of lying to customers who ask or complain about the Fees, explicitly telling them that the Fees are taxes or government-imposed charges.

Comcast perpetrates this scheme to hook and trap new customers into one-year or two-year contracts at "guaranteed" fixed rates with significant early termination penalties, with the intent of charging the customers more than promised via the deceptive and hidden Fees. Even worse, Comcast then repeatedly and systematically raises its prices *even higher* on these trapped customers via the backdoor method of repeatedly increasing the Fees in the middle of their contract despite having promised the customers a locked-in monthly rate.

Comcast has increased the Fees by 800% since they were first introduced in 2014, and the Fees now add as much as $12.00 per month to customer cable bills, costing California consumers over $200 million per year.

Mr. Loomis received 5 different quotes in June 2016 from Comcast sales agents in the process of signing up for a two-year Comcast bundled television and Internet service package. In each and every case: (1) the Comcast sales agent did not disclose the Broadcast TV Fee and the Regional Sports Fee; and (2) the Comcast sales agent told Mr. Loomis that the only additional charges beyond the quoted price was "taxes."

In August 2016 Mr. Loomis was surprised and upset to see on his bill that he was being charged $8.00 in the form of the Fees. Mr. Loomis called Comcast customer service several times to complain about the Fees and spoke with several Comcast agents. Comcast agents falsely told him that the Fees were "required by federal law" and were "taxes," and stated that the Fees could not be removed from his bill.

Mr. Loomis then mailed a letter to Comcast offices documenting his experience and demanding that Comcast remove the Fees or reduce his bill by an offsetting amount equal to the Fees. A Comcast agent contacted Mr. Loomis and agreed to credit his account $192.00, representing a refund of 24 months of $8.00 in monthly Fees. But the agent told Mr. Loomis that despite the credit, Comcast could increase the Fees at any time after the first three months of the two-year contract term, such that the $192.00 credit would not cover the future increases in Fees.

Mr. Loomis then submitted a complaint to the FCC about Comcast's practices. In response to the FCC complaint, Mr. Loomis received a call from another Comcast agent. The agent told Mr. Loomis he was "surprised" that the prior agent had granted him a credit, and similarly told Mr. Loomis that Comcast could increase the Fees at any time.

Mr. Loomis then mailed a second letter of complaint to Comcast, stating that he objected to any future increase in the Fees, and reminding Comcast that he had never agreed to the Fees in the first place. Yet another agent from Comcast contacted Mr. Loomis in response to this second letter. The agent repeated the line that Comcast could raise the Fees at any time, and then appeared to threaten Mr. Loomis that if he continued to complain, Comcast could reverse the $192.00 credit.

April 17, 2017
Page 3

A couple of months later, Comcast notified Mr. Loomis in his March 10, 2017 bill that Comcast would be increasing the Broadcast TV Fee from $5.00 to $7.00, and the Regional Sports Fee from $3.00 to $5.00, effective July 1, 2017 - approximately half-way into his two-year promised fixed-rate contract. Mr. Loomis suffers imminent and certain harm and damages as a result of Comcast's misrepresentations and omissions and failure to honor its agreements with him.

Comcast's material misrepresentations, active concealment, and failures to disclose violate the California Legal Remedies Act, California Civil Code Section 1750 *et seq.*, in the following manner: (1) Comcast misrepresents that its subscription services have characteristics, benefits, or uses that they do not have (Cal. Civ. Code § 1770(a)(5)); (2) Comcast advertises its subscription services with intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9)); (3) Comcast misrepresents that its subscription services confer or involve rights, remedies, or obligations that they do not have (Cal. Civ. Code § 1770(a)(14)); (4) Comcast misrepresents that its subscription services are supplied in accordance with previous representations when they are not (Cal. Civ. Code § 1770(a)(16)). Additionally, Comcast inserted unconscionable provisions in its customer contracts including prohibiting public injunctive relief in any forum (Cal. Civ. Code § 1770(a)(19).

We demand that within thirty (30) days of receiving this letter, Comcast agree to (1) refrain from engaging in the illegal and deceptive practices described above; and (2) return all money California Comcast customers paid for the Broadcast TV Fee and the Regional Sports Fee. If Comcast refuses to provide the demanded relief within thirty (30) days, we will seek compensatory and punitive damages and restitution on behalf Mr. Loomis and a California class of Comcast customers pursuant to the California Consumer Legal Remedies Act.

I invite you to contact me to discuss this demand at any time. I can be reached at (650) 980-1990 or dan@hattislaw.com.

Very truly yours,

Daniel M. Hattis

# EXHIBIT C

**Offer Page Screenshot Taken By Plaintiff Adkins on September 26, 2016**



# EXHIBIT D

**"Pricing & Other Info." Dialog Box Screenshot Taken By Plaintiff Adkins on 9/26/16**



# EXHIBIT E

**"TV Options" Page Screenshot Taken By Plaintiff Adkins on 9/26/16**



# EXHIBIT F

**"Internet Options" Page Screenshot Taken By Plaintiff Adkins on 9/26/16**



# EXHIBIT G

**Installation Options Page Screenshot Taken By Plaintiff Adkins on 9/26/16**



1

# EXHIBIT H

**Screenshots of "Monthly Total" Dialog Box on 3/26/2016**



# EXHIBIT I

**Order Submittal Page Screenshot Taken By Plaintiff Adkins on 9/26/16**



1

# EXHIBIT J

**Minimum Term Agreement Dialog Box Screenshot Taken By Plaintiff Adkins on 9/26/16**

## Minimum Term Agreement

The offer you selected requires a minimum term agreement and is subject to an early termination fee if all XFINITY services are cancelled during the agreement term. A copy of the agreement will be sent to the mail or email address you provided. You have the option to cancel the minimum term agreement within 30 days of the date the services under the offer are installed/activated without incurring an early termination fee. If you wish to cancel the agreement, you must contact Comcast by calling 1-800-XFINITY. If you cancel the agreement during the 30 day period, the charges for your remaining services may increase to the non-term contract rate. If you do not cancel the minimum term agreement within the 30 day period, the terms of the minimum term agreement will automatically apply.

Close Window

# EXHIBIT K

**Order Summary Email Received by Plaintiff Adkins**

From: **Comcast Online Communications** <online.communications@alerts.comcast.net>
Date: Mon, Sep 26, 2016 at 1:35 PM
Subject: Almost Done! Your order is nearly complete
To: ████████████████████████

Important information from Comcast

 xfinity.                                  Help & Support  |  My Account

## Hi Dan,

Thank you for choosing Comcast! Your recent order is being reviewed. In the event additional information is required to complete your order, we may contact you at the telephone number provided. Once your order is complete, you will receive a final email confirmation with your order number and a summary of your XFINITY services from Comcast. Please keep in mind that order details are not finalized until you receive your confirmation email.

If you do not receive your confirmation email or a call from us within 24 hours, please call us at 1-877-316-9975 from 9 am to 9 pm local standard time to speak with a customer service representative.

We look forward to completing your order.

| **Your Account Details** | **Your Order Summary** |
|---|---|
| **Confirmation Number** 1609268059602 | **Service** Starter XF Double Play |
| **Billing Contact Information** Mr. Dan Adkins ████████████ | **Monthly Fees** $79.99 |
| | **One-time Fees** $14.99 |
| **Billing Address** Same as Service Address | **Service Address** ████████████ |

### Installation

**Self Installation**

We will ship your Self-install kit to:
████████████

Have a question about self-installation?
Please visit our help section to get started using your services.

Sincerely,
XFINITY Team

 **Learn more** about the Comcast Customer Guarantee.                         COMCAST

This is a service-related email. Comcast will occasionally send you service-related emails to inform you of service upgrades or new benefits.

Comcast respects your privacy. For a complete description of our privacy policy, click here.

© 2015 Comcast. All rights reserved. All trademarks are the property of their respective owners.

Comcast Cable, One Comcast Center, 1701 JFK Boulevard, Philadelphia, PA 19103
Attn: Email Communications

# EXHIBIT L

Bill date Oct 07, 2016
Services from Oct 05, 2016 to Nov 04, 2016

Page 1 of 7



**Dan Adkins**

Account number

For service at:

OAKLAND CA

**Thanks for choosing XFINITY from Comcast**

### Your monthly account summary

| | |
|---|---|
| Previous balance | 0.00 |
| No payment received | 0.00 |
| **New charges** | |
| XFINITY bundle | 79.99 |
| Additional services and equipment | 15.00 |
| Other charges and credits | 22.98 |
| Taxes and fees | 10.00 |

| **Amount due** | **$127.97** |
|---|---|
| | Payment due Oct 23, 2016 |

Need help?
Visit xfinity.com/customersupport,
use the My Account app, or
call 1-800-934-6489 (1-800-XFINITY)

Ready to pay?
Visit xfinity.com/myaccount or
use the My Account app

❶ **Welcome to XFINITY**

This bill includes any installation and service charges.
Future charges will be posted on the 01 day of each
month.

Payments made during installation might not be
reflected on this statement, but you can check your
up-to-date balance by visiting xfinity.com/myaccount
or by calling us at 1-800-934-6489.

**Service updates**
See the "additional information" section for upcoming service
updates.

---

Detach the bottom portion of this bill and enclose with your payment

Please write your account number on your check or money order



9602 S 300 W. STE B SANDY UT 84070-3302
8155 4000  NO RP 01 10022016 YNNNNYNN 01 004901  0024

DAN ADKINS

OAKLAND, CA

| Account number | |
|---|---|
| Payment due | **Oct 23, 2016** |
| **Please pay** | **$127.97** |
| Amount enclosed | $ |

Make checks payable to Comcast
Do not send cash

COMCAST
PO BOX 34744
SEATTLE WA  98124-1744

8155400395163643001279 77

## Did you know?

XFINITY® Internet customers have free access to millions of XFINITY WiFi hotspots, so you can connect on the go. Visit xfinity.com/wifi to learn more.



## Missed it? Catch it today.

With XFINITY On Demand, recent episodes of top shows are available at no extra cost. Watch now on your TV, online at xfinity.com/tv or on the go with the XFINITY TV app.




Restrictions apply. Not available in all areas. Services and features vary based on service level. Check with your wireless carrier regarding standard data charges that may apply. MNBC endorsement or implied. NBC, a division of NBC Universal. © NBC Universal Media LLC. All rights reserved.



## Need help? We're here for you.



Visit **xfinity.com/customersupport**
Call **1-800-934-6489 (1-800-XFINITY)**

**Billing support**
Open 7 am-9 pm, 7 days a week

**Technical support**
Open 24 hours, 7 days a week

**Forgot your email or username?**
Go to xfinity.com/myusername

Please notify us within 120 days of the bill date with any questions on charges billed to your account.

Find your nearest XFINITY customer service center location and operating hours at xfinity.com/storelocator.



## Additional payment options



**Automatic payment**
Sign up at xfinity.com/myaccount



**Online**
Visit xfinity.com/myaccount



**By app**
Use the My Account app



**By phone**
Call 1-800-934-6489 (1-800-XFINITY)

## Moving? Let us help.

The XFINITY Movers Edge® program makes it easy to stay connected to your TV, Internet and Voice service.

Visit **xfinity.com/moversedge**
Call **1-855-668-3343**
(1-855-MOV-EDGE)





Services from Oct 05, 2016 to Nov 04, 2016

## Your new charges in detail

| XFINITY bundle | $79.99 |
|---|---|
| Starter Double Play | 129.95 |
| Includes Digital Starter, Digital Converter With Access to On Demand Programming and Performance Pro Internet | |
| Bundle Discount | –49.96 cr |

| Additional services and equipment | $15.00 |
|---|---|
| **XFINITY TV** | |
| Term Agreement Applies | 0.00 |
| 24 Month Term Agreement On Account. Visit Www.xfinity.com/myaccount For Details. | |
| Showtime | 10.00 |
| Service Discount | –10.00 cr |
| Streampix | 4.99 |
| Service Discount | –4.99 cr |
| **XFINITY Internet** | |
| Speed Increase | 15.00 |
| Blast! Pro Internet | |

| Other charges and credits | | $22.98 |
|---|---|---|
| Broadcast TV Fee | | 5.00 |
| Regional Sports Fee | | 3.00 |
| **Installation charges** | | |
| Video Self Install Kit | 10/01 | 7.49 |
| Self Install Kit | 10/01 | 7.49 |

| Taxes and fees | $10.00 |
|---|---|
| Franchise Fee | 3.54 |
| Utility Tax | 4.70 |
| PEG Access Support | 0.70 |
| FCC User Fee | 0.08 |
| State Sales Tax | 0.98 |
| **New charges** | **$127.97** |

### Additional information

The Broadcast TV Fee recovers a portion of the costs of retransmitting television broadcast signals.

The Regional Sports Fee recovers a portion of the costs to transmit certain regional sports networks.

Hearing/speech impaired call 711

**Closed captioning**
Our products and services are made for everyone to enjoy. For closed captioning concerns and other accessibility issues affecting customers with disabilities, visit comcastsupport.com/accessibility for live chat, email accessibility@comcast.com, call 1-855-270-0379, fax 1-866-599-4268 or write to Comcast, 1701 John F. Kennedy Blvd., Philadelphia, PA 19103-2838, Attn: K Wilkinson.



Beginning Nov 17, FYI (ch 275), FYI HD (ch 772), Viceland (ch 276) and Viceland HD (ch 805) will no longer be available on our Digital Starter or Digital Economy tier. FYI and Viceland will now be available on our Digital Preferred tier.

Your Local Franchise Authority Is:
City of Oakland, Office of the City Clerk
FCC Unit #CA0589
One Frank Ogawa Plaza, 2nd Fl., Oakland, CA 94612
(The above is not a payment or service center)

# EXHIBIT M

October 7, 2016

Comcast
3055 Comcast Place
Livermore, CA 94551

Re:    Account: █████████████
       Bill date: Oct 1, 2016

Dear Sir or Madam:

I just received my first bill, and while I have no complaints about the service so far, I was disappointed to find that the bill didn't match the $79.99 per month "Starter Double Play with Blast!" package that I signed up for.

I ask that you correct my bill and future bills to match the offer I signed up for.

I have included screenshots of the offer details. It states clearly one-time charges of $14.99, and monthly charges of $79.99.

1. In the addition to the expected $79.99 monthly charge for the package, there were the following line items:
   a. Blast! Pro Internet    $15.00
   b. Broadcast TV Fee    $5.00
   c. Regional Sports Fee  $3.00
2. Blast Pro Internet was included in my package, but billed separately as an additional service.
3. There are two $7.49 charges for the self-install kit. I only picked up one kit from the local service center. That appears to be a double charge.
4. I am using a CableCARD in my own device, so I should get a $2.50 monthly credit on my bill per your policy: http://www.xfinity.com/equipmentpolicy

I look forward to you addressing these errors.

Respectfully Yours,

Dan Adkins

# xfinity

Bill date Oct 01, 2016

**Dan Adkins**

Account number
▓▓▓▓▓▓▓▓▓▓

For service at:
▓▓▓▓▓▓▓▓
OAKLAND CA ▓▓▓▓▓

## Your monthly account summary

| | |
|---|---:|
| Previous balance | 0.00 |
| No payment received | 0.00 |
| **New charges** | |
| XFINITY bundle | 79.99 |
| Additional services and equipment | 15.00 |
| Other charges and credits | 22.98 |
| Taxes and fees | 10.00 |

## Thanks for choosing XFINITY from Comcast

**Amount due**          **$127.97**

Payment due Oct 23, 2016

Need help?
Visit xfinity.com/customersupport,
use the My Account app, or
call 1-800-934-6489 (1-800-XFINITY)

Ready to pay?
Visit xfinity.com/myaccount or
use the My Account app

❗ **Welcome to XFINITY**

This bill includes any installation and service charges.
Future charges will be posted on the 01 day of each
month.

Payments made during installation might not be
reflected on this statement, but you can check your
up-to-date balance by visiting xfinity.com/myaccount
or by calling us at 1-800-934-6489.

**Service updates**
See the "additional information" section for upcoming service
updates.

---

Detach the bottom portion of this bill and enclose with your payment          Please write your account number on your check or money order

# xfinity

9602 S 300 W. STE B SANDY UT 84070-3302
8155 4000  NO RP 01 10022016 YNNNNYNN 01 004901 0024

DAN ADKINS ▓▓▓▓▓▓
OAKLAND, CA ▓▓▓▓▓



| | |
|---|---|
| Account number | ▓▓▓▓▓▓▓▓▓▓ |
| Payment due | **Oct 23, 2016** |
| **Please pay** | **$127.97** |
| **Amount enclosed** | $ |

Make checks payable to Comcast
Do not send cash

COMCAST
PO BOX 34744
SEATTLE WA  98124-1744

8155400395163643001279??

Services from Oct 05, 2016 to Nov 04, 2016

## Your new charges in detail

| XFINITY bundle | $79.99 |
|---|---|

| | |
|---|---|
| Starter Double Play | 129.95 |
| Includes Digital Starter, Digital Converter With Access to On Demand Programming and Performance Pro Internet | |
| Bundle Discount | -49.96 cr |

| Additional services and equipment | $15.00 |
|---|---|

**XFINITY TV**

| | |
|---|---|
| Term Agreement Applies | 0.00 |
| 24 Month Term Agreement On Account. Visit Www.xfinity.com/myaccount For Details. | |
| Showtime | 10.00 |
| Service Discount | -10.00 cr |
| Streampix | 4.99 |
| Service Discount | -4.99 cr |

**XFINITY Internet**

| | |
|---|---|
| Speed Increase | 15.00 |
| Blast! Pro Internet | |

*credit?*

| Other charges and credits | $22.98 |
|---|---|

| | |
|---|---|
| Broadcast TV Fee | 5.00 |
| Regional Sports Fee | 3.00 |

*monthly charges*

**Installation charges**

| | | |
|---|---|---|
| Video Self Install Kit | 10/01 | 7.49 |
| Self Install Kit | 10/01 | 7.49 |

*duplicate?*

| Taxes and fees | $10.00 |
|---|---|

| | |
|---|---|
| Franchise Fee | 3.54 |
| Utility Tax | 4.70 |
| PEG Access Support | 0.70 |
| FCC User Fee | 0.08 |
| State Sales Tax | 0.98 |

| **New charges** | **$127.97** |
|---|---|

## Additional information

The Broadcast TV Fee recovers a portion of the costs of retransmitting television broadcast signals.

The Regional Sports Fee recovers a portion of the costs to transmit certain regional sports networks.

Hearing/speech impaired call 711

**Closed captioning**
Our products and services are made for everyone to enjoy. For closed captioning concerns and other accessibility issues affecting customers with disabilities, visit comcastsupport.com/accessibility for live chat, email accessibility@comcast.com, call 1-855-270-0379, fax 1-866-599-4268 or write to Comcast, 1701 John F. Kennedy Blvd., Philadelphia, PA 19103-2838, Attn: K Wilkinson.

Beginning Nov 17, FYI (ch 275), FYI HD (ch 772), Viceland (ch 276) and Viceland HD (ch 805) will no longer be available on our Digital Starter or Digital Economy tier. FYI and Viceland will now be available on our Digital Preferred tier.

Your Local Franchise Authority Is:
City of Oakland, Office of the City Clerk
FCC Unit #CA0589
One Frank Ogawa Plaza, 2nd Fl., Oakland, CA 94612
(The above is not a payment or service center)



## Browse XFINITY® Double Play Offers

New Customer Offers in Oakland, CA 94618 | Not Your Location? Change Location | Current Customer? See Offers



1. Installation → 2. Account Info → 3. Review → Launch XFINITY

Congratulations, your credit check was successful.



# Review your order details

Print

| | ONE-TIME CHARGES | MONTHLY CHARGES |
|---|---|---|
| **DOUBLE PLAY**<br>**Starter XF Double Play**<br>2 year minimum term agreement starting upon installation | | $79.99/mo |
| **Promo**<br>Get X1 DVR™ service for $10/month for 12 months SHOWTIME® included for 24 months Blast!® Pro speeds included for 12 months | | Included |
| **TV** Edit<br>**140+ Channels Plan** | | Included |
| XFINITY On Demand | | |
| X1 Digital Service | | Included |
| Minimum Term Agreement | | Included |
| Streampix | | Included |
| X1 Service Activation | | Included |
| **Internet** Edit<br>**Blast!® Pro** | | Included |
| Internet Modem Owned | | Included |
| Blast Pro Internet | | Included |

**Account Details** Edit

**Mr. Dan Adkins**

Service Address

OAKLAND CA,

**Installation** Edit

**Self-Install Kit**
$14.99 shipping
Get It September 30 to October 1

**Shipping Address**
Same as service address

**Billing Info** Edit

**Billing Address**
Same as service address

## Installation

| | ONE-TIME CHARGES | MONTHLY CHARGES |
|---|---|---|
| Self-Install Kit - Get It September 30 to October 1 Edit | $14.99 | |
| **Total** | $14.99 | $79.99 |

☐ By checking the box below and clicking on "Submit Your Order" I represent that I am 18 years of age or older, I have read and agree to the Comcast Agreement for Residential Services, and I have read and agree to the terms of the Minimum Term Agreement. I have read and understand the Comcast Privacy Notice

Back to Account Info

**Submit Your Order**

Restrictions apply. Not available in all areas. Limited to residents at all addresses. Requires subscription to XFINITY Voice Unlimited. Rave. Equipment, installation, taxes and fees, including regulatory recovery fees and other applicable charges extra. Pricing subject to change. Offer pricing based on promotional monthly rate. Service requires subscription to other services. Call clear for installation on August 2014 and prices. Money back guarantee applies to one month's recurring service charge and standard installation up to $500. Call for restrictions and complete details. ©2008 Comcast. All rights reserved.

# EXHIBIT N



**HATTIS LAW**
Phone: 650.980.1990
www.hattislaw.com
P.O. Box 1645
Bellevue, WA 98009

October 8, 2016

**Transmitted Via Facsimile to 215.286.7089**
**Emailed to Litigation Paralegal Claudia Salcedo at: Claudia_Salcedo@comcast.com**

Thomas R. Nathan
Senior Vice President and Senior Deputy General Counsel
Comcast Corporation
One Comcast Center
Philadelphia, PA 19103-2838

Re:    Notice of Illegal and Deceptive Practices
       Notice of Violation of California Consumer Legal Remedies Act
       My Clients:    Dan Adkins, Account No. ▮▮▮▮▮▮▮
       ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Dear Mr. Nathan,

        We represent Dan Adkins and ▮▮▮▮▮▮▮▮, who signed up for Comcast XFINITY
television services.  Both are being wrongfully charged a monthly Broadcast TV Fee. Mr.
Adkins is also wrongfully being charged a Regional Sports Fee.

        In addition, Comcast is wrongly billing Mr. Adkins for other excess amounts.  Mr.
Adkins is being overcharged $15.00 per month for Blast! Pro Internet, which Comcast promised
him was included in his $79.99 XFINITY Bundle price. He is also not receiving the $2.50
monthly credit he is supposed to receive for using a CableCARD in his own device. Also
disturbing is that the Terms and Conditions posted to Mr. Adkins' online account do not match
the terms he was promised on your website. Your website, besides stating that Blast! Pro
Internet was included in his package, also promised the $79.99 package price would increase to
$89.99 after 12 months. However the Terms and Conditions posted to Mr. Adkins' account show
that the price will increase to $99.99 (not $89.99) after 12 months, and also do not reflect the
promised inclusion at no extra cost of Blast! Pro Internet. Finally, there are two self-install
charges on Mr. Adkins' first bill which appear duplicative because he picked up only one
installation kit from his local service center; in fact perhaps there should be no self-install fee at
all because when he signed up on the website it described the self-install charge as a "shipping"
charge.

        Comcast's practice of advertising and promising one price for its services, while in fact
charging a different higher price, is unlawful and breaches Comcast's agreements with its
customers.

October 8, 2016
Page 2

Comcast's material misrepresentations, active concealment, and failures to disclose also violate the California Legal Remedies Act, California Civil Code Section 1750 *et seq.*, in the following manner: (1) Comcast misrepresents that its subscription services have characteristics, benefits, or uses that they do not have (Cal. Civ. Code § 1770(a)(5)); (2) Comcast advertises its subscription services with intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9)); (3) Comcast misrepresents that its subscription services confer or involve rights, remedies, or obligations that they do not have (Cal. Civ. Code § 1770(a)(14)); and (4) Comcast misrepresents that its subscription services are supplied in accordance with previous representations when they are not (Cal. Civ. Code § 1770(a)(16)).

We demand that Comcast agree to (1) refrain from engaging in the illegal and deceptive practices described above; and (2) return all money Comcast customers have paid for the Broadcast TV Fee, Regional Sports Fee, and other overcharges in violation of the promises made to them by Comcast.

Meanwhile, I remind Comcast of its duties to preserve evidence regarding this matter including customer records, online chats, and recorded calls with my clients.

Very truly yours,

Daniel M. Hattis

# EXHIBIT O

**Direct Mail Ad Received by Plaintiff Robertson in Late 2015 – Sacramento, CA – Page 1**

000081
Cvhristopher Robertson Or Our Neighbor At

Sacramento CA





Get the
**X1 Triple Play** at a
special holiday price.


Now with FASTER download speeds

Call today! **1-855-611-9980**

Dear Cvhristopher,

This holiday season, we're making a great deal even better. For a limited time, you'll get fast, reliable Internet, incredible entertainment, and home phone -- at a lower price. You'll also get X1. It'll change the way you experience TV.

XFINITY™ Triple Play
TV, Internet & Voice



The fastest in-home **WiFi**

**HBO®** or **SHOWTIME®** included for 12 months

Add **X1 DVR™** service for $10 more per month for 12 months

XFINITY gives you more to celebrate.

- Get the **X1 Entertainment Operating System®** — search smarter, get personalized recommendations, even change channels with your voice
- Over 140 channels plus **HBO®** or **SHOWTIME®**
- **XFINITY Internet** — now with download speeds up to 75 Mbps

- **XFINITY Voice** with unlimited nationwide talk and text, plus international calling
- Enjoy the largest On Demand library with the top 100 shows preloaded
- Plus, add **X1 DVR** service for just $10 more per month for 12 months so you can watch and record up to 6 shows at the same time

Hurry! This limited-time holiday offer ends 11/22/15!

Take advantage of this exciting opportunity to switch to the **XFINITY Triple Play** at the reduced price of just **$89.99 per month for 12 months with a 2-year term agreement.** You'll get tons of channels, including HBO® or SHOWTIME® and thousands of XFINITY On Demand™ shows and movies — included at no additional cost. Call 1-855-611-9980 today.

Sincerely,

Your XFINITY Team

P.S.  Ask how you can get a **FREE Samsung Galaxy Tab®** A or
a **$500 Visa® Prepaid Card** when you select a qualifying HD Triple Play.



CALL NOW! **1-855-611-9980** or visit **xfinity.com**

**Direct Mail Ad Received by Plaintiff Robertson in Late 2015 – Sacramento, CA – Page 2**



## xfinity
the future of awesome

# Tech the Halls

Dr. Seuss' How The Grinch Stole Christmas available on the XFINITY TV app

### X1 makes family gatherings a lot more fun.

This holiday, you can have all the entertainment and bandwidth you need for family and friends to have a great time. X1 gives you thousands of On Demand shows and movies. So there's something for everyone. Plus, the top 100 shows are preloaded and ready to watch.

### Like fast Internet? Try the fastest.

XFINITY® delivers **the fastest Internet in America** according to Speedtest.net. You get reliably fast Internet speeds so everyone can get online at the same time to stream movies, upload holiday pics, play games and so much more.



SPEEDTEST by OOKLA
AMERICA'S FASTEST INTERNET

### Say "Frosty" and you're all set.

With the voice remote, you can use commands to change channels, search for shows and get recommendations. It's an easy way to find all your holiday favorites.



## Make your holidays even more special with XFINITY.
# CALL NOW! 1-855-611-9980


COMCAST

Restrictions apply. Not available in all areas. Features and programming vary depending on area and level of service. Share capability limited to X1 customers with a DVR-compatible set-top box and XFINITY Voice service. WiFi claims based on September and November 2014 studies by Allion Test Labs, Inc. Actual speeds vary and are not guaranteed. Call for restrictions and complete details, or visit xfinity.com. © 2015 Comcast. All rights reserved. NBCU celebrity endorsement not implied. All networks are divisions of NBCUniversal. ©NBCUniversal Media, LLC. All Rights Reserved.

Offer ends 11/22/15. Restrictions apply. Not available in all areas. Limited to new residential customers. Requires subscription to Starter XF Triple Play with Digital Starter TV, Performance Internet and Unlimited Voice service. 2-year term agreement required. Early termination fee applies. Equipment, installation, taxes and fees, including regulatory recovery fees, broadcast TV Fee (up to $3.50/mo.), Regional Sports Fee (up to $1.00/mo.) and other applicable charges extra, and subject to change during and after the promo. After 12 months, service charge for the Starter XF Triple Play increases to $114.99/mo. for months 13-24. After promo, or if any service is cancelled or downgraded, regular charges apply. Comcast's service charge for the Starter XF Triple Play is $144.95-$154.95/mo., for HBO® is $19.99/mo., SHOWTIME® is $9.99/mo., HD Technology Fee is $10.00/mo. and for DVR service is $9.95/mo. (pricing subject to change). TV & Internet limited to a single outlet. May not be combined with other offers. TV: XFINITY On Demand selections subject to charge indicated at time of purchase. Availability of top 100 shows varies based on service package. Internet: WiFi claims based on September and November 2014 studies by Allion Test Labs, Inc. Actual speeds vary and are not guaranteed. Voice: $29.95 activation fee applies. Service (including 911/emergency services) may not function after an extended power outage. Visa® Prepaid Card and Samsung Galaxy offers require subscription to qualifying HD Triple Play bundle. 2-year term agreement

2

# EXHIBIT P



**HATTIS LAW**
Phone: 650.980.1990
www.hattislaw.com
1171 Bellevue Way NE #1645
Bellevue, WA 98009
1134 Crane Street, Suite 216
Menlo Park, CA 94025

December 24, 2015

**VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED**

Arthur R. Block, EVP & General Counsel
Comcast Corporation
1701 John F Kennedy Blvd
Philadelphia, PA 19103-2838

Agent for Service of Process for Comcast Corporation
CT Corporation System
818 West Seventh Street, Suite 930
Los Angeles, CA 90017

Re:   My Client:  Christopher Robertson
      Notice of Illegal and Deceptive Practices Concerning Inadequately Disclosed Fees
      Notice of Violation of California Consumer Legal Remedies Act

Dear Mr. Block,

　　　We represent Christopher Robertson, who signed up for Comcast XFINITY services and who is now being wrongfully charged a monthly "Broadcast TV fee."  We send this letter to notify Comcast and all of its subsidiaries and affiliates of its wrongful conduct and to demand that Comcast rectify its unlawful actions within 30 days of receipt of this letter.

　　　Comcast falsely advertises and promises a certain price for cable service packages, but then actually charges a different and higher price by tacking on surprise mandatory fees such as a monthly "Broadcast TV Fee," a monthly "Regional Sports Fee," a "Video Transfer Fee," and a "CHSI Transfer Fee."  Compounding the fraud, when customers contact Comcast to inquire about the Broadcast TV Fee and the Regional Sports Fee, Comcast customer service representatives often lie to the customers and tell them the fee is a mandatory tax or regulatory fee that Comcast must pay and which Comcast merely passes on to the consumer.  In fact, these fees are clever inventions by Comcast to enable it to charge a higher price for its services while deceptively continuing to advertise a lower price.

　　　Before Mr. Robertson signed up for Comcast XFINITY service, he spoke and chatted online with Comcast sales representatives, who explicitly promised him that the contract price they quoted him would be the actual price he paid under the contract.  Relying on Comcast's representations, Mr. Robertson signed up for Comcast XFINITY service and received his "Welcome Kit" on or about November 6, 2015.

　　　On December 1, 2015, Mr. Robertson received his first bill.  The total bill was higher than Comcast had promised, due to several inadequately disclosed fees:  (1) a $3.50 Broadcast TV Fee; (2) a $6 Video Transfer Fee; and (3) a $6 CHSI Transfer Fee.  Mr. Robertson then went to Comcast's website and opened a web chat with a customer service representative to demand that Comcast remove these fees.

December 24, 2015
Page 2

The representative told Mr. Robertson that he could remove the Video Transfer Fee and the CHSI Transfer Fee, but that the Broadcast TV Fee could not be removed because it was a mandatory monthly charge. As a result of Comcast's deception, Mr. Robertson is wrongfully being required to pay this fee through the remainder of his 12 month contract.

Mr. Robertson's experience is typical of that of thousands, if not millions, of Comcast cable customers nationwide.

Comcast's practice of advertising and promising one price for its services, while in fact charging a different and higher price due to inadequately disclosed and deceptive fees, is unlawful for multiple reasons.

First, Comcast is breaching its agreement with its customers.

Second, this deceptive behavior constitutes fraud and an unfair business practice.

Third, Comcast compounds the fraud by lying to customers about the nature of the fees when customers inquire about them, *e.g.* by telling customers that the Broadcast TV Fee is a fee or tax mandated by the government which Comcast merely passes through to consumers.

Fourth, Comcast's material misrepresentations, active concealment, and failures to disclose violate the California Legal Remedies Act, California Civil Code Section 1750 *et seq.*, in the following manner: (1) Comcast misrepresents that its subscription services have characteristics, benefits, or uses that they do not have (Cal. Civ. Code § 1770(a)(5)); (2) Comcast advertises its subscription services with intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9)); (3) Comcast misrepresents that its subscription services confer or involve rights, remedies, or obligations that they do not have (Cal. Civ. Code § 1770(a)(14)); and (4) Comcast misrepresents that its subscription services are supplied in accordance with previous representations when they are not (Cal. Civ. Code § 1770(a)(16)).

The above enumeration and explication are completely without limitation and merely scratch the surface.

We demand that within thirty (30) days of receiving this letter, Comcast agree to (1) refrain from engaging in the illegal and deceptive practices described above; and (2) return all money Comcast customers paid for the Broadcast TV Fee, the Regional Sports Fee, the Video Transfer Fee, and the CHSI Transfer Fee. If Comcast refuses to provide the demanded relief within thirty (30) days, we will seek compensatory and punitive damages, restitution, and injunctive relief.

We sincerely hope to confer with you to resolve these violations without the need for litigation. I invite you to contact me to discuss this demand at any time. I can be reached at (650) 980-1990 or dan@hattislaw.com.

Very truly yours,

Daniel M. Hattis

# EXHIBIT Q

Bill date May 09, 2016
Services from May 13, 2016 to Jun 12, 2016

Page 1 of 4

# xfinity

**Christopher Robertson**

Account number

For service at:

SACRAMENTO CA

**Thanks for choosing XFINITY from Comcast**

| Your monthly account summary | |
|---|---|
| Previous balance | 61.03 |
| Payment  - Thank You Apr 19, 2016 | -61.03 cr |
| **New charges** | |
| XFINITY bundle | 49.99 |
| Additional services and equipment | 5.00 |
| Other charges and credits | 3.25 |
| Taxes and fees | 2.79 |
| **Amount due** | **$61.03** |
| Payment due May 30, 2016 | |

Need help?
Visit xfinity.com/customersupport,
use the My Account app, or
call 1-800-934-6489 (1-800-XFINITY)

Ready to pay?
Visit xfinity.com/myaccount or
use the My Account app

❯ **Manage your services online or on the go**
Access the one-stop destination to pay your bill and
manage your services. Visit xfinity.com/myaccount  or
use the My Account app.

**Service updates**
See the "additional information" section for upcoming service
updates.

---

Detach the bottom portion of this bill and enclose with your payment

Please write your account number on your check or money order



9602 S 300 W. STE B SANDY UT 84070-3302
8155 5000  NO RP 08 05092016 NNNNNNNN 01 994838

CHRISTOPHER ROBERTSON

SACRAMENTO, CA

| | |
|---|---|
| Account number | |
| Payment due | **May 30, 2016** |
| **Please pay** | **$61.03** |
| Amount enclosed | $ |

Make checks payable to Comcast
Do not send cash

COMCAST
PO BOX 34744
SEATTLE WA   98124-1744

8155600385589315000061036

## Did you know?

XFINITY® Internet customers have free access to millions of XFINITY WiFi hotspots, so you can connect on the go. Visit xfinity.com/wifi to learn more.



## Missed it? Catch it today.

With XFINITY On Demand, recent episodes of top shows are available at no extra cost. Watch now on your TV, online at xfinity.com/tv or on the go with the XFINITY TV app.



Restrictions apply. Not available in all areas. Services and features vary based on service level. Check with your wireless carrier regarding standard data charges that may apply. NBC33 indirectly and/or were not implied. NBC, a division of NBC Universal. © NBC Universal Media LLC. All rights reserved.




## Need help? We're here for you.



Visit **xfinity.com/customersupport**
Call **1-800-934-6489 (1-800-XFINITY)**

**Billing support**
Open 7 am-9 pm, 7 days a week

**Technical support**
Open 24 hours, 7 days a week

**Forgot your email or username?**
Go to xfinity.com/myusername

Please notify us within 60 days of the bill date with any questions on charges billed to your account.

Find your nearest XFINITY customer service center location and operating hours at xfinity.com/storelocator.



## Additional payment options



**Automatic payment**
Sign up at xfinity.com/myaccount



**Online**
Visit xfinity.com/myaccount



**By app**
Use the My Account app



**By phone**
Call 1-800-934-6489 (1-800-XFINITY)

## Moving? Let us help.

The XFINITY Movers Edge® program makes it easy to stay connected to your TV, Internet and Voice service.

Visit **xfinity.com/moversedge**
Call **1-855-668-3343**
(1-855-MOV-EDGE)




Services from May 13, 2016 to Jun 12, 2016

## Your new charges in detail

| XFINITY bundle | $49.99 |
|---|---|
| Internet Plus 25 Choice | 67.95 |
| Includes Limited Basic, Streampix, Selected Premium Channel, Digital Converter, and Performance Internet 25 | |
| Service Discount | -17.96 cr |

| Additional services and equipment | $5.00 |
|---|---|
| **XFINITY TV** | |
| Term Agreement Applies | 0.00 |
| 12 Month Term Agreement On Account. Visit Www.xfinity.com/myaccount For Details. | |
| Showtime | 0.00 |
| Included IN Bundle | |
| **XFINITY Internet** | |
| Speed Increase | 10.00 |
| Performance Internet | |
| Service Discount | -5.00 cr |

| Other charges and credits | $3.25 |
|---|---|
| Broadcast TV Fee | 3.25 |

| Taxes and fees | $2.79 |
|---|---|
| Franchise Fee | 0.99 |
| Utility Tax | 1.32 |
| PEG Access Support | 0.22 |
| FCC User Fee | 0.08 |
| State Sales Tax | 0.18 |

| New charges | $61.03 |
|---|---|

### Additional information

The Broadcast TV Fee recovers a portion of the costs of retransmitting television broadcast signals.

Hearing/speech impaired call 711

**Closed captioning**
Our products and services are made for everyone to enjoy. For closed captioning concerns and other accessibility issues affecting customers with disabilities, visit comcastsupport.com/accessibility for live chat, email accessibility@comcast.com, call 1-855-270-0379, fax

1-888-612-7402 or write to Comcast, 1701 John F. Kennedy Blvd., Philadelphia, PA 19103-2838, Attn: K Wilkinson.

Beginning April 19, KICU-Heroes & Icons will be added to your lineup on channel 180. Heroes & Icons features contemporary and classic TV westerns, war dramas & police dramas with heroic characters and iconic stars.

Beginning May 17, Aspire will be added to the Digital Economy package on channel 480.

Your Local Franchising Authority Is:
Sacramento Metropolitan Cable TV Commission
799 G Street, 4th Floor, Sacramento, CA 95814-1212
Phone #: (916) 874-6661
FCC Unit #CA1088
www.sacmetrocable.tv
(The above is not a payment or service center)



Services from May 13, 2016 to Jun 12, 2016

# XFINITY® Products And Services Price List

Alameda County–Sunol, Alameda, Albany, Arbuckle, Atherton, Atwater, Beale AFB, Belmont, Belvedere Tiburon, Benicia, Berkeley, Biggs, Brisbane, Buellton, Burlingame, Butte County, Calistoga, Campbell, American Canyon, Carmel, Castro Valley, Chico, Chowchilla, Cloverdale, Clovis, Coalinga, Colma-Daly City, Colma, Colusa County, Colusa, Corcoran, Corning, Corte Madera, Cotati, Crockett, Crows Landing, Cupertino, Daly City, Davis, Dinuba, Dos Palos, Dublin, East Palo Alto, El Cerrito, El Dorado County, El Sorbrante-Richmond, Elk Grove, Emeryville, Fairfax, Fairfield, Firebaugh, Fowler, Fremont, Fresno County-Del Ray, Fresno, Galt, Glenn County, Grass Valley, Gridley, Gustine, Hanford, Hayward-San Lorenzo, Hayward, Healdsburg, Hercules, Huron, Kensington-Richmond Heights, Kerman, Kings County, Kingsburg, Larkspur, Laton, Le Grand & Planada-Le Grand, Le Grand & Planada-Planada, Lemoore, Live Oak City, Livermore-San Ramon, Livermore, Lodi, Lompoc, Los Altos Hills, Los Banos, Los Gatos, Madera County, Madera, Magalia, Marin County, Marina, Marysville, Maxwell, Mendota, Menlo Park, Merced–Beachwood Area, Merced, Milbrae, Mill Valley, Milpitas, Monte Sereno, Monterey, Mountain House, Mountain View, Napa, NAS (Lemoore Naval Air Station), Nevada City, Newark, Newman, Novato, Oakdale, Oakland, Oliverhurst, Orland, Oroville, Pacific Grove, Pacifica, Palo Alto, Paradise, Parlier, Patterson, Pebble Beach, Penngrove, Petaluma, Piedmont, Pinole, Placer County, Placerville, Pleasanton, Port Costa, Portola Valley, Redwood City, Reedley, Richmond, Rio Vista, Riverdale, Rodeo, Rohnert Park, Roseville, Ross, Sacramento, Salinas, San Anselmo, San Carlos, San Francisco, San Joaquin, San Joaquin, San Jose, San Leandro, San Mateo County, San Mateo, San Pablo, San Rafael, San Ramon, Sand City, Sanger, Santa Barbara, Santa Clara, Santa Maria, Solvang, Santa Nella, Santa Rosa, Saratoga, Sausalito, Seaside, Sebastopol, Selma, Solano County, Sonoma County, Sonoma, South Atwater, South San Francisco, St. Helena, Stanford, Stockton, Suisun City, Sunnyvale, Sunol, Sutter County Rollup, The Presidio Trust, Tracy, Travis AFB, Treasure Island, Tulare County, Tulare, Union City, Vacaville, Vallejo, Visalia, Wincton, Wheatland, Williams, Willows, Windsor, Woodside, Yolo County, Yountville, Yuba City, Yuba County, CA

## We're writing to let you know that starting on July 1, 2016, prices for select XFINITY TV fees will change.

Such changes are a function of a variety of factors including increases to business costs as well as product and technology upgrades. Please know that we have made an effort to reduce some fees and minimize the scope of our increases.

If you have any questions, please call us anytime at 1-855-688-9460.

Below is a summary of the price changes:

## Starting on July 1, 2016 the following XFINITY services and fees will be changing.

| Double Play Packages | Today | 07/01/16 |
|---|---|---|
| Starter XF Double Play | $126.94 | **$129.95** |
| Preferred XF Double Play | $144.94 | **$147.95** |

| Basic Services | Today | 07/01/16 |
|---|---|---|
| Broadcast TV Fee | $3.25 | **$5.00** |

| Basic and Digital Ancillary Services | Today | 07/01/16 |
|---|---|---|
| HBO® | $19.99 | **$15.00** |
| Showtime® | $19.99 | **$10.00** |
| Starz® | $19.99 | **$10.00** |
| Cinemax® | $19.99 | **$10.00** |
| The Movie Channel® | $19.99 | **$10.00** |
| Digital Adapter Additional Outlet Service (SD or HD) | $2.99 | **$3.99** |

| Miscellaneous Fees | Today | 07/01/16 |
|---|---|---|
| Service Protection Plan | $4.99 | **$5.99** |
| Regional Sports Network Fee | $1.00 | **$3.00** |

If you're currently receiving services on a promotional basis, under a minimum term agreement associated with a specific rate, or in the guaranteed period of one of our SurePrice™ plans, the prices for those specific services will not be affected during the applicable period.



the future of awesome®

8155/1000, 0010-0330, 0510-0520
8155/2000, 0010-0400, 0420, 0440    8155/5000, 0010-0470
8155/3000, 0010-0480, 0510    8155/6000, 0010-0400, 0420, 0450-0480, 0510-0590, 0670-0680, 0710-0720, 0750-0760
8155/4000, 0150-0260, 0380-0640    8155/7000, 0010-0070

SA4GF01P

# EXHIBIT R

**Screenshot of Service Package Offer Webpage for Sacramento, CA on 1/14/2016**





# EXHIBIT S

Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
HATTIS LAW PLLC
P.O. Box 1645
Bellevue, WA 98009
Telephone: (650) 980-1990
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

Attorneys for Plaintiffs and the Proposed Class

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

|  |  |
|---|---|
| CHARLES TILLAGE, JOSEPH LOOMIS, DAN ADKINS, and CHRISTOPHER ROBERTSON, Individually, As Private Attorneys General, and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> COMCAST CORPORATION, COMCAST CABLE COMMUNICATIONS, LLC, and DOES 1-20, inclusive, <br><br> Defendants. | Case No. _____ <br><br> **DECLARATION OF CHARLES TILLAGE PURSUANT TO CALIFORNIA CONSUMERS LEGAL REMEDIES ACT** <br><br> **(California Civil Code §1780(d))** |

DocuSign Envelope ID: 17EE30C4-269F-4B00-BDE3-2CED2235ADE4

1    I, Charles Tillage, hereby declare and state as follows:

2        1.    I am over the age of 18, and a Plaintiff in this action.  The facts contained in this

3    declaration are based on my personal knowledge, and if called upon to do so, I could and would

4    testify competently hereto.

5        2.    The complaint in this action, filed concurrently with this declaration, is filed in the

6    proper place for trial under California Civil Code § 1780(d), because this is a county in which

7    Comcast does business and where a substantial portion of the transactions occurred.

8

9        I declare under penalty of perjury under the laws of the United States and the State of

10   California that the foregoing is true and correct.

11

12   Executed on ____9/18/2017_____, in San Francisco, California.

13

14   By:  *Charles Tillage*

15        CHARLES TILLAGE

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF CHARLES TILLAGE
PURSUANT TO CALIFORNIA CLRA

DocuSign Envelope ID: 2BF6D6BB-2C64-4727-A384-5A7AF4395503

1   Daniel M. Hattis (SBN 232141)
    Paul Karl Lukacs (SBN 197007)
2   HATTIS LAW PLLC
    P.O. Box 1645
3   Bellevue, WA 98009
    Telephone: (650) 980-1990
4   Facsimile: (425) 412-7171
    Email: dan@hattislaw.com
5   Email: pkl@hattislaw.com

6   Attorneys for Plaintiffs and the Proposed Class

7

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

                COUNTY OF SAN FRANCISCO
9

10  CHARLES TILLAGE,                Case No. _____

11  JOSEPH LOOMIS,
    DAN ADKINS, and             **DECLARATION OF JOSEPH LOOMIS**
12  CHRISTOPHER ROBERTSON,      **PURSUANT TO CALIFORNIA**
    Individually, As Private Attorneys    **CONSUMERS LEGAL REMEDIES ACT**
13  General, and On Behalf of All Others
    Similarly Situated,             **(California Civil Code §1780(d))**
14
    Plaintiffs,
15
    v.
16
    COMCAST CORPORATION,
17  COMCAST CABLE
    COMMUNICATIONS, LLC, and
18  DOES 1-20, inclusive,

19    Defendants.

20

21

22

23

24

25

26

27

28

DocuSign Envelope ID: 2BF6D6BB-2C64-4727-A384-5A7AF4395503

1    I, Joseph Loomis, hereby declare and state as follows:

2    1.    I am over the age of 18, and a Plaintiff in this action.  The facts contained in this

3    declaration are based on my personal knowledge, and if called upon to do so, I could and would

4    testify competently hereto.

5    2.    The complaint in this action, filed concurrently with this declaration, is filed in the

6    proper place for trial under California Civil Code § 1780(d), because San Francisco County is a

7    County in which Comcast does business.

8

9    I declare under penalty of perjury under the laws of the United States and the State of

10   California that the foregoing is true and correct.

11

12   Executed on ___9/20/2017_____, in Moss Beach, California.

13

14   By: _Joseph Loomis_____

15   JOSEPH LOOMIS

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF JOSEPH LOOMIS
PURSUANT TO CALIFORNIA CLRA

- 1 -

Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
HATTIS LAW PLLC
P.O. Box 1645
Bellevue, WA 98009
Telephone: (650) 980-1990
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

Attorneys for Plaintiffs and the Proposed Class

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

|  |  |
|---|---|
| CHARLES TILLAGE, JOSEPH LOOMIS, DAN ADKINS, and CHRISTOPHER ROBERTSON, Individually, As Private Attorneys General, and On Behalf of All Others Similarly Situated, Plaintiffs, v. COMCAST CORPORATION, COMCAST CABLE COMMUNICATIONS, LLC, and DOES 1-20, inclusive, Defendants. | Case No. _____ **DECLARATION OF DAN ADKINS PURSUANT TO CALIFORNIA CONSUMERS LEGAL REMEDIES ACT** **(California Civil Code §1780(d))** |

DocuSign Envelope ID: FC0935B0-F354-414A-91E7-AA9EE7FDB938

1       I, Dan Adkins, hereby declare and state as follows:

2       1.     I am over the age of 18, and a Plaintiff in this action.  The facts contained in this

3 declaration are based on my personal knowledge, and if called upon to do so, I could and would

4 testify competently hereto.

5       2.     The complaint in this action, filed concurrently with this declaration, is filed in the

6 proper place for trial under California Civil Code § 1780(d), because this is a county in which

7 Comcast does business and where a substantial portion of the transactions occurred.

8

9       I declare under penalty of perjury under the laws of the United States and the State of

10 California that the foregoing is true and correct.

11

12 Executed on ___9/15/2017_____, in Oakland, California.

13

14 By:   *Dan Adkins*
_____
748FBE039F6742D...

15 DAN ADKINS

16

17

18

19

20

21

22

23

24

25

26

27

28

DocuSign Envelope ID: 2645ACB1-8DA3-401E-95DB-3D6B510B4093

Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
HATTIS LAW PLLC
P.O. Box 1645
Bellevue, WA 98009
Telephone: (650) 980-1990
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

Attorneys for Plaintiffs and the Proposed Class

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| CHARLES TILLAGE, JOSEPH LOOMIS, DAN ADKINS, and CHRISTOPHER ROBERTSON, Individually, As Private Attorneys General, and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> COMCAST CORPORATION, COMCAST CABLE COMMUNICATIONS, LLC, and DOES 1-20, inclusive, <br><br> Defendants. | Case No. _____ <br><br> **DECLARATION OF CHRISTOPHER ROBERTSON PURSUANT TO CALIFORNIA CONSUMERS LEGAL REMEDIES ACT** <br><br> **(California Civil Code §1780(d))** |

1    I, Christopher Robertson, hereby declare and state as follows:

2    1.    I am over the age of 18, and a Plaintiff in this action.  The facts contained in this

3    declaration are based on my personal knowledge, and if called upon to do so, I could and would

4    testify competently hereto.

5    2.    The complaint in this action, filed concurrently with this declaration, is filed in the

6    proper place for trial under California Civil Code § 1780(d), because this is a county in which

7    Comcast does business and where a substantial portion of the transactions occurred.

8

9    I declare under penalty of perjury under the laws of the United States and the State of

10   California that the foregoing is true and correct.

11

12   Executed on ___9/16/2017_____.

13

14   By: _____

15   CHRISTOPHER ROBERTSON

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF CHRISTOPHER ROBERTSON
PURSUANT TO CALIFORNIA CLRA

- 1 -

# EXHIBIT T



**Thomas R. Nathan**
Senior Vice President and
Senior Deputy General Counsel

Tel: 215.286-5912
Fax: 215.286-7089
Thomas_Nathan@comcast.com

February 25, 2016

Daniel Hattis, Esq.
71 Bellevue Way NE, #1645
Bellevue, WA 98009

Dear Mr. Hattis:

I am responding to your letter date December 24, 2015 in which you allege that your client, Mr. Christopher Robertson, was improperly charged. Specifically, you allege that Comcast "falsely advertises and promises a certain price for cable service package, but then actually charges a different and higher price by tacking on surprise mandatory fees…" More specifically, you claim that Comcast's charges to your client for a video service transfer fee, internet service transfer fee and broadcast tv service fee were all improper because Mr. Robertson was not aware of these fees when he signed up for service.

Although not stated in the letter, it is my understanding that Mr. Robertson receives service from Comcast at a residence on ████████ in Sacramento, California. If that is inaccurate, please correct my understanding.

You also do not identify any advertising that you claim your client relied on that was inaccurate. If there was a particular advertisement you believe was misleading, I ask that you please identify the medium and month, if possible, so that I may investigate the claim. In the absence of that information, I am unable to answer your claims with particularity. I can say, however, that the company is cognizant of its responsibilities that its ads be accurate and accordingly takes care to ensure that ads disclose where a quoted package price is subject to additional fees and charges.

My review of the ████████ account shows that on November 9, 2015, Internet Plus 25 service was ordered via the sales portal on xfinity.com. Because of an outstanding balance, the account was unable to be self-activated until the balance was cleared. Consequently, service was not activated until November 15. There is a prominent hyperlink labeled "Pricing and Other Information" in the box containing the "Add to

February 25, 2016
Page Two

Cart" button where service would have been ordered. Opening that link provides the details of the Internet Plus 25 package. If you open it you will see that the terms make specific reference to the broadcast tv fee.

The charges for the transfer fees were one time transactional charges that applied to the particular transaction conducted by your client. The charges ($6 each) appeared on the first invoice dated November 14, 2015 and were credited back on the second invoice dated December 8, 2015. They are also mentioned in a telephone conversation with Mr. Robertson at the time service was activated, although not by name. The agent explained that Mr. Robertson would see the charges but that they would be credited back. In fact, the video transfer fee and internet transfer fees were credited back to Mr. Robertson's account on his next invoice dated December 8, 2015. I have enclosed a copy of that invoice for your reference.

This is consistent with a chat transcript of November 14, 2015. That transcript contains no complaint or mention of the broadcast tv fee. It does, however, contain a statement by Mr. Robertson questioning the internet and video transfer fees and the response of the company's agent that Mr. Robertson would see them removed on the next invoice which, as noted above, they were. A brief second brief chat session occurred on December 4, 2015 but there is no mention of any fees or charges in that session.

Contrary to your allegations, neither the transfer fees nor the broadcast tv fee is claimed to be or presented as a government charge or tax. It appears in the Section of Mr. Robertson's invoices titled: "Other Charges and Credits" on the left hand side of page 2 of the invoice. You will note that there is an entirely separate section of the bill titled "Taxes, Surcharges and Fees" on the right side of the invoice.

For all the foregoing reasons, the company does not share your view that its invoiced charges to Mr. Robertson were in any respect, misleading, unfair or in violation of California law. If you have other questions regarding your client's account, please direct them to me.

Very truly yours,

Thomas R. Nathan
Deputy General Counsel

Enclosure

# EXHIBIT U

**Subject:** RE: Demand Letter
**Date:** Monday, October 10, 2016 at 6:05:34 AM Pacific Daylight Time
**From:** Salcedo, Claudia
**To:** Daniel Hattis
**CC:** Nathan, Tom

Good morning Mr. Hattis,

We have received your correspondence of October 8th.  Please note that the correct e-mail address for Mr. Nathan is Tom_Nathan@comcast.com
We will research this matter.

Kind Regards,

**Claudia Salcedo**
Litigation Paralegal
Comcast Cable Law Department
215-286-3770  Direct
215-286-3572  Fax
e-mail: Claudia_Salcedo@comcast.com

---

**From:** Daniel Hattis [mailto:dan@hattislaw.com]
**Sent:** Saturday, October 08, 2016 3:25 AM
**To:** Salcedo, Claudia <Claudia_Salcedo@comcast.com>
**Cc:** Thomas_Nathan@comcast.com
**Subject:** Demand Letter

Dear Ms. Salcedo,

Please see the attached letter, addressed to Senior Vice President and Senior Executive Counsel Thomas R. Nathan, and please forward it to Mr. Nathan's office.  The corporate email address on Mr. Nathan's letterhead (Thomas_Nathan@comcast.com) on which he previously wrote me, rejects any email sent to it with the error that no such email address exists.

Thank you,

Dan Hattis
Hattis Law
Office: 650.980.1990
Mobile: 650.284.8495
Fax: 425.412.7171
www.hattislaw.com

Confidential: This email may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify me immediately and then delete the message and any attachments.

CM-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>Daniel M. Hattis, Esq. (SBN 232141)/Paul Karl Lukacs (SBN 197007)<br>Hattis Law PLLC<br>P.O. Box 1645<br>Bellevue, Washington 98009<br>TELEPHONE NO.: (650) 980-1990 FAX NO. *(Optional)*: (425) 412-7171<br>E-MAIL ADDRESS *(Optional)*: dan@hattislaw.com<br>ATTORNEY FOR *(Name)*: Plaintiffs Charles Tillage, Joseph Loomis, Et Al. | FOR COURT USE ONLY<br><br>**ELECTRONICALLY**<br>**FILED**<br>*Superior Court of California,*<br>*County of San Francisco*<br>**10/31/2017**<br>**Clerk of the Court**<br>**BY:DAVID YUEN**<br>**Deputy Clerk** |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: Civic Center Courthouse

| PLAINTIFF/PETITIONER: CHARLES TILLAGE | CASE NUMBER:<br>CGC-17-561739 |
|---|---|
| DEFENDANT/RESPONDENT: COMCAST CORPORATION | JUDICIAL OFFICER: |
| **NOTICE OF RELATED CASE** | DEPT.: |

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1. a. Title: Dan Adkins and C. Robertson v. Comcast Corporation and Comcast Cable Communications, LLC
   b. Case number: 3:16-cv-05969-VC
   c. Court: ☐ same as above
      ☑ other state or federal court *(name and address)*: 450 Golden Gate Avenue, S.F., CA 94102
   d. Department: U.S. District Court, N.D. Cal. -- Judge Vince Chhabria -- Courtroom 4, 17th Floor
   e. Case type: ☐ limited civil ☑ unlimited civil ☐ probate ☐ family law ☐ other *(specify)*:
   f. Filing date: October 15, 2016
   g. Has this case been designated or determined as "complex?" ☐ Yes ☑ No
   h. Relationship of this case to the case referenced above *(check all that apply)*:
      ☐ involves the same parties and is based on the same or similar claims.
      ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.
      ☐ involves claims against, title to, possession of, or damages to the same property.
      ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.
      ☑ Additional explanation is attached in attachment 1h
   i. Status of case:
      ☑ pending
      ☐ dismissed ☐ with ☐ without prejudice
      ☐ disposed of by judgment

2. a. Title:
   b. Case number:
   c. Court: ☐ same as above
      ☐ other state or federal court *(name and address)*:
   d. Department:

Page 1 of 3

| Form Approved for Optional Use<br>Judicial Council of California<br>CM-015 [Rev. July 1, 2007] | **NOTICE OF RELATED CASE** | Cal. Rules of Court, rule 3.300<br>*www.courtinfo.ca.gov* |

CM-015

| PLAINTIFF/PETITIONER: CHARLES TILLAGE | CASE NUMBER: |
| DEFENDANT/RESPONDENT: COMCAST CORPORATION | CGC-17-561739 |

2. *(continued)*

   e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

   f. Filing date:

   g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

   h. Relationship of this case to the case referenced above *(check all that apply):*

     ☐ involves the same parties and is based on the same or similar claims.

     ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

     ☐ involves claims against, title to, possession of, or damages to the same property.

     ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

     ☐ Additional explanation is attached in attachment 2h

   i. Status of case:

     ☐ pending

     ☐ dismissed ☐ with ☐ without prejudice

     ☐ disposed of by judgment

3. a. Title:

   b. Case number:

   c. Court: ☐ same as above

     ☐ other state or federal court *(name and address):*

   d. Department:

   e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

   f. Filing date:

   g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

   h. Relationship of this case to the case referenced above *(check all that apply):*

     ☐ involves the same parties and is based on the same or similar claims.

     ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

     ☐ involves claims against, title to, possession of, or damages to the same property.

     ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

     ☐ Additional explanation is attached in attachment 3h

   i. Status of case:

     ☐ pending

     ☐ dismissed ☐ with ☐ without prejudice

     ☐ disposed of by judgment

4. ☐ Additional related cases are described in Attachment 4. Number of pages attached: _____

Date: October 10, 2017

Paul Karl Lukacs, Esq., Counsel for Plaintiffs
(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

| | **MC-025** |
|---|---|
| SHORT TITLE: | CASE NUMBER: |
| TILLAGE v. COMCAST CORPORATION | CGC-17-561739 |

**ATTACHMENT** *(Number):* 1h

*(This Attachment may be used with any Judicial Council form.)*

In this civil action, the four plaintiffs and a putative class of California consumers are seeking public injunctive relief -- no damages -- against Comcast for violating the state's Unfair Competition Law, False Advertising Law, the Consumers Legal Remedies Act and the principles of equity.

Two of the four instant plaintiffs attempted to bring these claims in the U.S. District Court for the Northern District of California. Dan Adkins and Christopher Robertson v. Comcast Corporation and Comcast Cable Communications, LLC, Case No. 3:16-cv-05969-VC (filed Oct. 15, 2016).

The U.S. District Court believes that the federal courts lack subject matter jurisdiction to hear the plaintiffs' California-law public injunctive relief claims. The U.S. District Court suggested that the plaintiffs' public injunctive relief claims be pursued in state court, while the plaintiffs' individual monetary claims continue in federal court.

All that being said, the plaintiffs do not believe that there will be a substantial duplication of judicial resources because the federal court and this state court will be deciding different types of claims seeking different remedies. This state case is a class action in which four named plaintiffs are seeking public injunctive relief (no damages), while the federal case is an individual action brought by only two plaintiffs seeking monetary recovery solely on their own behalf.

The two civil actions should both proceed in parallel in their respective courts without coordination.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page _____ of _____

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

www.courtinfo.ca.gov

CM-015

| PLAINTIFF/PETITIONER: CHARLES TILLAGE | CASE NUMBER: |
| DEFENDANT/RESPONDENT: COMCAST CORPORATION | CGC-17-561739 |

## PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF RELATED CASE

*(NOTE: You cannot serve the Notice of Related Case if you are a party in the action. The person who served the notice must complete this proof of service. The notice must be served on all known parties in each related action or proceeding.)*

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*

   1401 Twenty-First Street, Suite 400, Sacramento, CA 95811

2. I served a copy of the *Notice of Related Case* by enclosing it in a sealed envelope with first-class postage fully prepaid and *(check one):*

   a. ☑ deposited the sealed envelope with the United States Postal Service.

   b. ☐ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Related Case* was mailed:

   a. on *(date):* October 10, 2017

   b. from *(city and state):* Sacramento, California

4. The envelope was addressed and mailed as follows:

   a. Name of person served:
   Michael J. Stortz, Esq.
   Street address: 50 Fremont Street, 20th Floor
   City: San Francisco
   State and zip code: California 94105

   c. Name of person served:

   Street address:
   City:
   State and zip code:

   b. Name of person served:

   Street address:
   City:
   State and zip code:

   d. Name of person served:

   Street address:
   City:
   State and zip code:

☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: October 10, 2017

Paul Karl Lukacs
_____
(TYPE OR PRINT NAME OF DECLARANT)

► _____
(SIGNATURE OF DECLARANT)

Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
HATTIS LAW
P.O. Box 1645
Bellevue, WA 98009
Telephone: (650) 980-1990
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

(Additional Attorneys Listed
After Signature Line)

Attorneys for Plaintiffs and the Proposed Class

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| CHARLES TILLAGE, JOSEPH LOOMIS, DAN ADKINS, and CHRISTOPHER ROBERTSON, Individually, As Private Attorneys General, and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> COMCAST CORPORATION, COMCAST CABLE COMMUNICATIONS, LLC, and DOES 1-20, inclusive, <br><br> Defendants. | Case No. CGC-17-561739 <br><br> **PLAINTIFFS' NOTICE OF POSTING OF JURY FEES** <br><br> [Hon. Teri L. Jackson — Dept. 610] |

1

2                                              **NOTICE**

3                PLEASE TAKE NOTICE that, on October 20, 2017, a plaintiff in this civil action posted

4    a jury fees deposit of One Hundred Fifty Dollars ($150) pursuant to Code of Civil Procedure

5    section 631(b). A true and correct copy of the receipt is attached.

6

7    Dated:  October 31, 2017                Respectfully submitted,

8

9

10                                           Paul Karl Lukacs

11                                           Daniel M. Hattis (SBN 232141)
                                             Paul Karl Lukacs (SBN 197007)
12                                           HATTIS LAW
                                             P.O. Box 1645
13                                           Bellevue, WA 98009
                                             Telephone: (650) 980-1990
14                                           Facsimile: (425) 412-7171
                                             Email: dan@hattislaw.com
15                                           Email: pkl@hattislaw.com

16                                           Tony J. Tanke (SBN 74054)
                                             LAW OFFICES OF TONY J. TANKE
17                                           2050 Lyndell Terrace, Suite 240
                                             Davis, CA 95616
18                                           Telephone: (530) 758-4530
                                             Email: appeals@tankelaw.com
19
                                             Jason Skaggs (SBN 202190)
20                                           SKAGGS FAUCETTE LLP
                                             530 Lytton Ave 2nd FL
21                                           Palo Alto, CA 94301
                                             Telephone: (650) 617-3226
22                                           Email: jason@skaggsfaucette.com

23                                           Attorneys for Plaintiffs and the Proposed Class

24

25

26

27

28

                                                            PLAINTIFFS'
                            - 1 -            NOTICE OF POSTING OF JURY FEES

Superior Court of California,
County of San Francisco
Civil/Small Claims

04-20-2017    54717A26J004       EJAVIER
06:57:20

CASE NUMBER: CGC-17-541739

CHARLES TILLAGE ET AL VS. COMCAST CORPOR
ATION ET AL

JURY FEES

FILED BY ADKINS, DAN

FEE:      $150.00 PAID BY CHECK

                 THANK YOU

**PROOF OF SERVICE**
[C.C.P. § 1013a]

I, PAUL KARL LUKACS, declare that:

I am over the age of 18 years, am not a party to this cause, and am an active member of the State Bar of California. My business address is Hattis Law, 1401 Twenty-First Street, Suite 400, Sacramento, CA 95811, and I am employed in the County of Sacramento.

On October 31, 2017, I caused to be served the following document(s), which are here set forth by the exact title:

**PLAINTIFFS' NOTICE OF POSTING OF JURY FEES**

I served said document by the following method:

[X] BY FIRST CLASS U.S. MAIL — DEPOSITED DIRECTLY (C.C.P. § 1013a(1), (2)): I deposited the document(s) in the mail, on the date stated hereinabove, by placing one sealed envelope per addressee containing said document(s), with first-class U.S. postage thereon fully prepaid, into the blue metal U.S.P.S. collection box located at 1405 Twenty-First Street in Sacramento, California, and bearing U.S.P.S. Location ID 9581400041.

Each person served was shown on the face of each respective envelope as follows:

Comcast Corporation and Comcast Cable Communications, LLC
c/o CT Corporation System
818 West Seventh Street, Suite 930
Los Angeles, CA 90017

[Registered agent for Comcast Corporation and Comcast Cable Communications, LLC]

Michael J. Stortz, Esq.
Drinker Biddle & Reath LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235

[Presumptive counsel for Comcast Corporation and Comcast Cable Communications, LLC]

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

Executed on October 31, 2017, at Sacramento, California.

PAUL KARL LUKACS

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Daniel M. Hattis, 232141<br>Hattis Law PLLC<br>P.O. Box 1645<br>Bellevue, WA 98009<br>TELEPHONE NO.: (650)284-8495<br>ATTORNEY FOR *(Name):* Plaintiff | ELECTRONICALLY<br>**F I L E D**<br>*Superior Court of California,*<br>*County of San Francisco*<br>**11/01/2017**<br>Clerk of the Court<br>BY:EDWARD SANTOS<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF

Superior Court of California, San Francisco County

400 McAllister Street

San Francisco, CA 94102

| PLAINTIFF/PETITIONER: Charles Tillage, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Comcast Corporation, et al. | CGC-17-561739 |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.:<br>None |
|---|---|

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action. **BY FAX**

2. I served copies of:   Complaint, Civil Case Cover Sheet, Summons, Notice to Plaintiff, Alternative Dispute Resolution Program Information Package, Case Management Statement, Expedited Jury Trial Information Sheet, Early Settlement Program

3. a. Party served:  Comcast Corporation

   b. Person Served: Gabriela Sanchez/CT Corporation System - Person Authorized to Accept Service of Process

4. Address where the party was served:   818 West Seventh Street, Suite 930
   Los Angeles, CA 90017

5. I served the party
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on (date): 10/09/2017          (2) at  (time): 3:00PM

6. The "Notice to the Person Served" (on the summons) was completed as follows:

   d. on behalf of:

Comcast Corporation
under: CCP 416.10 (corporation)

7. **Person who served papers**
   a. Name:        Jimmy Lizama
   b. Address:     One Legal - 194-Marin
                   504 Redwood Blvd #223
                   Novato, CA 94947

   c. Telephone number: 415-491-0606
   d. The fee for service was: $ 39.95
   e I am:
      (3)  registered California process server.
         (i)  Employee or independent contractor.
         (ii) Registration No.: 4553
         (iii) County:  Los Angeles

8. I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Date:  10/11/2017

Jimmy Lizama
(NAME OF PERSON WHO SERVED PAPERS)                                    (SIGNATURE)

Form Adopted for Mandatory Use
Judicial Council of California POS-010
[Rev. Jan 1, 2007]                    **PROOF OF SERVICE OF SUMMONS**                 Code of Civil Procedure, § 417.10

OL# 11425245

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Daniel M. Hattis, 232141<br>Hattis Law PLLC<br>P.O. Box 1645<br>Bellevue, WA 98009<br>TELEPHONE NO.: (650)284-8495<br>ATTORNEY FOR *(Name):* Plaintiff | ELECTRONICALLY<br>**F I L E D**<br>*Superior Court of California,*<br>*County of San Francisco*<br>**11/02/2017**<br>**Clerk of the Court**<br>BY:EDWARD SANTOS<br>Deputy Clerk |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF |
|---|
| Superior Court of California, San Francisco County |
| 400 McAllister Street |
| San Francisco, CA 94102 |

| PLAINTIFF/PETITIONER: Charles Tillage, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Comcast Corporation, et al. | CGC-17-561739 |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.:<br>None |
|---|---|

**BY FAX**

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action.
2. I served copies of:   Complaint, Civil Case Cover Sheet, Summons, Notice to Plaintiff, Alternative Dispute Resolution Program Information Package, Case Management Statement, Expedited Jury Trial Information Sheet, Early Settlement Program

3. a. Party served:   Comcast Cable Communications, LLC

   b. Person Served: Gabriela Sanchez/CT Corporation System - Person Authorized to Accept Service of Process

4. Address where the party was served:   818 West Seventh Street, Suite 930
   Los Angeles, CA 90017
5. I served the party
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on (date): 10/09/2017         (2) at   (time): 3:00PM
6. The "Notice to the Person Served" (on the summons) was completed as follows:

   d. on behalf of:

Comcast Cable Communications, LLC
under: Other: Limited Liability Company
7. **Person who served papers**
   a. Name:      Jimmy Lizama
   b. Address:   One Legal - 194-Marin
            504 Redwood Blvd #223
            Novato, CA 94947

   c. Telephone number: 415-491-0606
   d. The fee for service was: $ 39.95
   e I am:
      (3)  registered California process server.
        (i)  Employee or independent contractor.
        (ii)  Registration No.: 4553
        (iii)  County:  Los Angeles

8. I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.
Date:   10/11/2017

     Jimmy Lizama
   (NAME OF PERSON WHO SERVED PAPERS)                (SIGNATURE)

Form Adopted for Mandatory Use
Judicial Council of California POS-010
[Rev. Jan 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

OL# 11425246

1   MICHAEL J. STORTZ (SBN 139386)
    michael.stortz@dbr.com
2   MATTHEW J. ADLER (SBN 273147)
    matthew.adler@dbr.com
3   DRINKER BIDDLE & REATH LLP
    50 Fremont Street, 20th Floor
4   San Francisco, California  94105-2235
    Telephone:     415-591-7500
5   Facsimile:     415-591-7510

6   Attorneys for Defendants
    COMCAST CORPORATION and
7   COMCAST CABLE COMMUNICATIONS, LLC

8                      SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                              COUNTY OF SAN FRANCISCO

10

11

12   CHARLES TILLAGE, JOSEPH LOOMIS,          Case No. CGC-17-561739
     DAN ADKINS, and CHRISTOPHER
13   ROBERTSON, Individually, As Private      **DEFENDANTS' ANSWER TO**
     Attorneys General, and On Behalf of All  **PLAINTIFFS' FIRST AMENDED**
14   Others Similarly Situated,               **COMPLAINT**

15              Plaintiffs,
                                              Complaint Filed:   October 6, 2017
16        v.

17   COMCAST CORPORATION, COMCAST
     CABLE COMMUNICATIONS, LLC, and
18   DOES 1-20, inclusive,

19              Defendants.

20

21

22

23

24

25

26

27

28

1    Defendants COMCAST CORPORATION and COMCAST CABLE

2    COMMUNICATIONS, LLC (collectively, "Defendants") hereby answer, plead, and otherwise

3    respond[1] to the unverified First Amended Complaint ("FAC") filed by Plaintiffs CHARLES

4    TILLAGE, JOSEPH LOOMIS, DAN ADKINS, and CHRISTOPHER ROBERTSON

5    (collectively, "Plaintiffs") as follows:

6                                **GENERAL DENIAL**

7    Pursuant to Code of Civil Procedure Section 431.30, Defendants deny, generally and

8    specifically, each and every allegation in the FAC.  Defendants further deny, generally and

9    specifically, that Plaintiffs and/or putative class members are entitled to the relief requested, or

10   that Plaintiffs and/or putative class members have been or will be damaged in any sum, or at all,

11   by reason of any act or omission on the part of Defendants or their agents, servants, or employees.

12                           **AFFIRMATIVE DEFENSES**

13   Defendants have not completed their investigation of the facts of this case, have not

14   completed discovery in this matter, and have not completed their preparation for trial.  The

15   affirmative defenses asserted herein are based on Defendants' knowledge, information, and belief

16   at this time, and Defendants specifically reserve the right to modify, amend, or supplement any

17   affirmative defenses contained herein at any time.  Further, Defendants reserve the right to assert

18   additional defenses as information is gathered through discovery and investigation.

19   Subject to the preceding qualifications, and without admitting any of the facts alleged by

20   Plaintiffs, Defendants plead the following affirmative defenses:

21                        **FIRST AFFIRMATIVE DEFENSE**

22                           **(Failure to State a Claim)**

23   1.    Plaintiffs' and/or putative class members' claims are barred, in whole or in part,

24   because they fail to allege facts sufficient to constitute a cause of action upon which relief can be

25   granted.

26

27   _____

28   [1] By filing this Answer, Defendants do not waive any defenses, objections or motions available to
them under state or federal law.  Comcast Corporation expressly reserves the right to argue that it
is not subject to the personal jurisdiction of this Court or any other court in California.

## SECOND AFFIRMATIVE DEFENSE

### (Agreement to Arbitrate)

2.      Plaintiffs' and/or putative class members' claims are barred, in whole or in part, because they have agreed to arbitrate their claims on an individual basis.

## THIRD AFFIRMATIVE DEFENSE

### (Lack of Personal Jurisdiction)

3.      Plaintiffs' and/or putative class members' claims are barred, in whole or in part, because this Court does not have personal jurisdiction over Defendant Comcast Corporation.

## FOURTH AFFIRMATIVE DEFENSE

### (Lack of Standing)

4.      Plaintiffs' and/or putative class members' claims are barred, in whole or in part, because they do not have standing under Article III of the U.S. Constitution to bring claims alleged therein.

## FIFTH AFFIRMATIVE DEFENSE

### (Preemption)

5.      Plaintiffs' and/or putative class members' claims are barred, in whole or in part, because they are preempted by federal law.

## SIXTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

6.      Plaintiffs' and/or putative class members' claims are barred, in whole or in part, by applicable statutes of limitations.

## SEVENTH AFFIRMATIVE DEFENSE

### (Contractual Limitations Period)

7.      Plaintiffs' and/or putative class members' claims are barred, in whole or in part, by the one-year limitations period in the Comcast Agreement for Residential Services.

## EIGHTH AFFIRMATIVE DEFENSE

### (Statute of Frauds)

8.      Plaintiffs' and/or putative class members' claims are barred, in whole or in part, by

the statute of frauds.

## NINTH AFFIRMATIVE DEFENSE

### (Laches)

9.      Plaintiffs' and/or putative class members' claims are barred, in whole or in part, by the doctrine of laches.

## TENTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

10.     Plaintiffs' and/or putative class members' claims are barred, in whole or in part, by the doctrine of unclean hands.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Estoppel)

11.     Plaintiffs' and/or putative class members' claims are barred, in whole or in part, by the doctrine of estoppel.

## TWELFTH AFFIRMATIVE DEFENSE

### (Adequate Remedy at Law)

12.     Plaintiffs' and/or putative class members' claims are barred, in whole or in part, because they have an adequate remedy at law.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Punitive Damages Unconstitutional)

13.     Any award of punitive damages in this case would (a) violate the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Section 7 of the California Constitution, and could constitute an excessive fine under the Excessive Fines Clauses of the Eighth Amendment (as incorporated by the Due Process Clause of the Fourteenth Amendment) to the United States Constitution and Article I, Section 17 of the California Constitution; and (b) would violate the Fourth, Fifth and Sixth Amendments to the United States Constitution.

///

///

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(Classwide Damages and/or Restitution Unconstitutional)**

14.     Any award of classwide damages and/or restitution would (a) violate the Excessive Fines Clauses of the Eighth Amendment to the United States Constitution (as incorporated by the Due Process Clause of the Fourteenth Amendment) and of Article I, Section 17 of the California Constitution; (b) violate the Due Process Clauses of the Fourteenth Amendment to the United States Constitution, and of Article I, section 7 of the California Constitution, because the standards of liability under these statutes are unduly vague and subjective, and permit retroactive, random, arbitrary, and capricious punishment that serves no legitimate governmental interest; and (c) constitute a taking of property without just compensation in violation of the Takings Clauses of the Fifth Amendment to the United States Constitution (as incorporated by the Due Process Clause of the Fourteenth Amendment) and of Article I, Section 19 of the California Constitution.

**FIFTEENTH AFFIRMATIVE DEFENSE**

**(No Injury)**

15.     Plaintiffs' and/or putative class members' claims are barred, in whole or in part, because they have not suffered any actionable injury or damage on which relief can be granted.

**SIXTEENTH AFFIRMATIVE DEFENSE**

**(Enjoyment of Benefits of Products and Services)**

16.     Plaintiffs' and/or putative class members' claims are barred, in whole or in part, because they have enjoyed the benefits of the products and services which are the subject of the FAC, and are thereby barred from pursuing one or more of the claims for relief set forth in the FAC.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

**(Due Process)**

17.     To the extent that Plaintiffs purport to seek relief on behalf of any person who has not suffered any damages, Plaintiffs' claims violate the Defendants' rights to Due Process under the Fourteenth Amendment to the United States Constitution and under the California Constitution.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Unjust Enrichment)

18.    Plaintiffs' and/or putative class members' claims are barred, in whole or in part, because a remedy thereon would constitute unjust enrichment for Plaintiffs and/or putative class members.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Offset and Recoupment)

19.    Plaintiffs' and/or putative class members' claims are barred, in whole or in part, by the doctrines of offset and recoupment.  Defendants are entitled to offset and recoup against any judgment that may be entered for Plaintiffs and/or putative class members for all obligations owing by them to the Defendants.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Voluntary Payment Doctrine)

20.    Plaintiffs' and/or putative class members' claims are barred, in whole or in part, by the doctrine of voluntary payment.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Waiver)

21.    Plaintiffs' and/or putative class members' claims are barred, in whole or in part, by the doctrine of waiver.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

22.    Plaintiffs' and/or putative class members' claims are barred, in whole or in part, because they have failed to mitigate their alleged damages, if any.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Mootness)

23.    Plaintiffs' and/or putative class members' claims are barred, in whole or in part, by the doctrine of mootness.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

**(Settlement, Release, and Compromise)**

24.     Plaintiffs' and/or putative class members' claims are barred, in whole or in part, by the doctrines of settlement, release, and compromise.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

**(Good Faith)**

25.     Plaintiffs' and/or putative class members' claims are barred, in whole or in part, because Defendants acted in good faith and in accordance with reasonable commercial standards.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

**(Damages Caused by Plaintiffs)**

26.     Plaintiffs' and/or putative class members' claims are barred, in whole or in part, because any alleged damages or injuries resulted, in whole or in part, from Plaintiffs' and/or putative class members' own conduct.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

**(Damages Caused by Plaintiffs' Wrongdoing)**

27.     Plaintiffs' and/or putative class members' claims are barred, in whole or in part, because they (a) failed to exercise ordinary and reasonable care on their own behalf; (b) intentionally or recklessly disregarded their own interests, through action or inaction; and/or (c) otherwise committed wrongdoing, and that such acts and/or omissions were the proximate cause of all or some of their injuries, if any.

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE

**(Acts of Third Parties)**

28.     Plaintiffs' and/or putative class members' claims are barred, in whole or in part, because any alleged damages were not caused by the Defendants, but instead by intervening and superseding causes or circumstances, or by the acts or omissions of third parties for which Defendants are not responsible.

///

///

## TWENTY-NINTH AFFIRMATIVE DEFENSE

### (Right to Petition; Freedom of Speech)

29.     To the extent Plaintiffs and/or putative class members assert any claim arising from Defendants' protected activities, including any written or oral statement made in connection with an issue under consideration or review by a legislative body, such claim is barred by rights of petition or free speech under the United States Constitution and California Constitution, and is otherwise protected under California Code of Civil Procedure 425.16.

## THIRTIETH AFFIRMATIVE DEFENSE

### (Freedom of Speech)

30.     Plaintiffs' and/or putative class members' claims are barred, in whole or in part, to the extent that the relief they seek would restrict Defendants' freedom of speech in violation of the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

### (Safe Harbor Doctrine)

31.     To the extent that Plaintiffs and/or putative class members assert any claim challenging conduct that is permitted under statute, regulation or other principle of law, such claims are barred by the safe harbor doctrine.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

### (Improper Multiplicity of Suits)

32.     Plaintiffs' and/or putative class members' claims are barred, in whole or in part, to the extent the same claims are currently pending in another court and would result in duplicative litigation and an improper multiplicity of suits.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

### (Reservation of Rights; Other Defenses)

33.     Defendants do not currently have sufficient knowledge or information on which to form a belief as to whether they may have additional, as yet unstated, defenses or counterclaims available.  Defendants expressly reserve their right to assert additional affirmative defenses or

1    counterclaims that may be disclosed during the course of additional investigation and discovery.

2    **PRAYER FOR RELIEF**

3    WHEREFORE, Defendants pray for judgment as follows:

4    1.    That Plaintiffs take nothing by way of their FAC;

5    2.    That the FAC, and each and every claim for relief therein, be dismissed with

6    prejudice and that judgment be entered in favor of Defendants and against Plaintiffs;

7    3.    That Defendants be awarded costs of suit incurred herein, including attorneys' fees

8    and expenses; and

9    4.    That Defendants be awarded such other and further relief as the Court deems just

10   and proper.

11

12   Dated: November 7, 2017                    DRINKER BIDDLE & REATH LLP

13

14   By: _____
                                                Michael J. Stortz
15                                              Matthew J. Adler

16                                              Attorneys for Defendants
                                                COMCAST CORPORATION and
17                                              COMCAST CABLE COMMUNICATIONS,
                                                LLC

18

19

20

21

22

23

24

25

26

27

28

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 9 -

## PROOF OF SERVICE

I, LEE ANN L. ALLDRIDGE, declare that:

I am at least 18 years of age, and not a party to the above-entitled action. My business address is 50 Fremont Street, 20th Floor, San Francisco, California 94105, Telephone: (415) 591-7500.  On November 7, 2017, I caused to be served the following document(s):

**DEFENDANTS' ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT**

| | |
|---|---|
| ☑ | **BY MAIL:**  I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service.  I know that the correspondence is deposited in the United States Postal Service on the same day this declaration was executed in the ordinary course of business.  I know that the envelope was sealed, and with postage thereon fully prepaid, placed for collection and mailing on this date, following ordinary business practices, in the United States mail at San Francisco, California to the address(es) set forth below: |
| ☐ | **BY E-MAIL:** I caused such documents to be transmitted by e-mail to the following e-mail address(es) as set forth below: |
| ☐ | **BY OVERNIGHT DELIVERY:**  I enclosed a true copy of said document(s) in a Federal Express envelope to the address(es) set forth below: |
| ☐ | **BY ELECTRONIC VIA FILE AND SERVEXPRESS:**  By submitting an electronic version of the document listed above via File & Serve Xpress.  I certify that said transmission was completed and that all pages contained therein were properly submitted on the recipients designated on the Transaction Receipt located on the File & ServeXpress website |

| | |
|---|---|
| Daniel M. Hattis<br>Paul Karl Lukacs<br>HATTIS LAW<br>P.O. Box 1645<br>Bellevue, WA 98009<br>Telephone: (650) 980-1990<br>Email: dan@hattislaw.com<br>pkl@hattislaw.com<br><br>**Counsel for Plaintiffs<br>and Proposed Class** | Jason Skaggs<br>SKAGGS FAUCETTE LLP<br>430 Lytton Ave 2nd FL<br>Palo Alto, CA 94301<br>Telephone: (650) 617-3226<br>Email: jason@skaggsfaucette.com<br><br>**Counsel for Plaintiffs<br>and Proposed Class** |
| Tony J. Tanke<br>LAW OFFICES OF TONY J. TANKE<br>2050 Lyndell Terrace, Suite 240<br>Davis, CA 95616<br>Telephone: (530) 758-4530<br>Email: appeals@tankelaw.com<br><br>**Counsel for Plaintiffs<br>and Proposed Class** | |

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on November 7, 2017 at San Francisco, California.

_____
LEE ANN L. ALLDRIDGE

PROOF OF SERVICE

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

90445890.1